IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| G+ COMMUNICATIONS, LLC, | § § § § | |
| *Plaintiff*, | | |
| v. | § § § § § § § § | CIVIL ACTION NO. 2:22-CV-00078-JRG |
| SAMSUNG ELECTRONICS CO. LTD., SAMSUNG ELECTRONICS AMERICA, INC., | | |
| *Defendants*. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Samsung Electronics Co., Ltd.'s and Defendant Samsung Electronics America, Inc.'s (collectively, "Samsung") Motion to Dismiss (the "Motion") Counts I, II, and V of G+ Communications, LLC's ("G+") First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 60.) Also before the court is Samsung's Motion to Dismiss Counts I, II, and V of G+'s Counter-Claims-in-Reply (the "Motion to Dismiss the Counterclaims-In-Reply"). (Dkt. No. 42.) Having considered the Motion and its briefing, and the Motion to Dismiss the Counterclaims-In-Reply and its briefing, the Court finds that both should be, and hereby are **DENIED** for the reasons set forth herein.

I.  BACKGROUND

Cellular networks and mobile devices implement standards that allow devices made by different manufacturers to connect with one another in a network environment. OSENGO, KRISTEN, PATENTS AND STANDARDS: PRACTICE, POLICY, AND ENFORCEMENT 1–2 (Michael L. Drapkin et al. eds., *Bloomberg Law* Book Division, 2018). These standards are promulgated by

standards setting organizations ("SSO") that include the European Telecommunications Standards Institute ("ETSI"), and the 3rd Generation Partnership Project ("3GPP"). (*Id.* at 2–41.) Working together, ETSI and 3GPP develop and maintain the standard for 3GPP 5G mobile systems. (Dkt. No. 49 at ¶ 61 (hereinafter "FAC").) A patent embodying technology that is "essential" to implement a standard is called a Standard Essential Patent ("SEP"). *See ETSI Rules of Procedure*, Annex 6, Clause 15. A patent is "essential" if it is not technically possible to practice the standard without infringing the patent. (*Id.*) SSOs have intellectual property rights ("IPR") policies that "define contractual terms for disclosure and licensing of patents that are essential for standard implementation." TAFFET, RICHART & HARRIS, PHIL, PATENTS AND STANDARDS: PRACTICE, POLICY, AND ENFORCEMENT at 4-2 (Michael L. Drapkin et al. eds., *Bloomberg Law* Book Division, 2018).

Clause 3.2 of ETSI's Intellectual Property Right policy states that "IPR holders whether members of ETSI and their AFFILIATES or third parties, should be adequately and fairly rewarded for the use of their IPRs in the implementation of STANDARDS and TECHNICAL SPECIFICATIONS." (*See ETSI Rules of Procedure*, Annex 6, Clause 3.2; *see also* FAC at ¶ 94.) In other words, owners of essential patents "should be … rewarded" when another person, whether a signatory to ETSI or not, uses the patented technology in accordance with a standard. Clause 6.1 of ETSI's IPR policy provides specifics on the mechanics of this procedure:

> When an ESSENTIAL IPR relating to a particular STANDARD or TECHNICAL SPECIFICATION is brought to the attention of ETSI, the Director-General of ETSI shall immediately request the owner to give within three months an irrevocable undertaking in writing that it is prepared to grant irrevocable licenses on fair, reasonable and non-discriminatory ("FRAND") terms and conditions under such IPR to at least the following extent:
> • MANUFACTURE, including the right to make or have made customized components and sub-systems to the licensee's own design for use in MANUFACTURE;
> • sell, lease, or otherwise dispose of EQUIPMENT so MANUFACTURED;

> • repair, use, or operate EQUIPMENT; and
> • use METHODS.
>
> The above undertaking may be made subject to the condition that those who seek licenses agree to reciprocate.

(*ETSI Rules of Procedure*, Annex 6, Clause 6.1; s*ee also* FAC at ¶ 100.) These terms require owners of SEPs to (1) formally declare the patent as essential to the standard and (2) agree to license its contributed patent to companies that practice the standard on specific terms. (*Id.*) ETSI and 3GPP require SEP-holders to license patents on terms that are fair, reasonable, and non-discriminatory ("FRAND"). (*See ETSI Rules of Procedure*, Annex 6, Clause 6.1.) ETSI's IPR policy states that it shall be governed by the laws of France. (FAC at ¶ 62.) G+ and Samsung are both signatories to ETSI. (*Id.* at ¶ 81.)

G+ is the assignee of numerous patents previously held by ZTE Corporation ("ZTE") that ZTE declared are, and remain, essential to practicing the 3GPP 5G Standard. (*Id.* at ¶¶ 64–65.) Five of these patents are at issue in this case (the "Asserted Patents").[1] ZTE declared each of the Asserted Patents to ETSI as essential to practicing the 3GPP 5G Standard. (*Id.*)

From September 2021 through March 2022, G+ corresponded with Samsung representatives on several occasions, and presented technical details evidencing the essentiality of G+'s 5G patents. (*Id.* at ¶¶ 68–76.) Specifically, G+ presented and addressed three of the Asserted Patents to Samsung, for the first time, in a demand letter with supporting charts on September 8, 2021. (*Id.* at ¶ 69.) G+ offered Samsung a license (on what it considered to be a FRAND rate) on January 20, 2022, and it explained its underlying methodologies for concluding that the offer was FRAND. (*Id.* at ¶¶ 71–72.) On February 8, 2022, G+ sent charts to Samsung that mapped certain patents to the 5G standards, including two of the Asserted Patents. (*Id.* at ¶ 70.) Samsung has stated

---

[1] The Asserted Patents are U.S. Patent No. 8,761,776, U.S. Patent No. 10,448,430, U.S. Patent No. 9,184,881, U.S. Patent No. 10,736,130, and U.S. Patent No.10,594,443. FAC at ¶ 123.

it is willing to pay a FRAND rate but believes that the offered rate is not FRAND. (*Id.* at ¶ 73.) However, Samsung has not yet stated what it believes a FRAND rate would be. (*Id.*)

## II.     PROCEDURAL HISTORY AND POSTURE

On March 14, 2022 G+ filed a complaint against Samsung alleging five counts of patent infringement, one for each Asserted Patent. (Dkt. No. 1.) On June 13, 2022, Samsung answered and counterclaimed for breach of the FRAND obligations. It also sought judicial declarations of invalidity and non-infringement on all Asserted Patents. (Dkt. No 18.) G+ moved to dismiss the counterclaims on July 5, 2022. (Dkt. No. 26, hereinafter "G+ Motion".) The Court denied the G+ Motion on September 29, 2022. (Dkt. No 41.)

G+ answered to Samsung's counterclaims on July 6, 2022. (Dkt No. 28.) It then amended this Answer on October 13, 2022, wherein it raised five new affirmative theories of recovery—entitled "Plaintiff's Counterclaims-In-Reply"—relating to the parties' conduct in their FRAND negotiations. (Dkt. No. 42). Of relevance, Count I alleges that Samsung breached its obligations to ETSI by failing to agree to a royalty rate, Count II alleges that Samsung breached its obligations to negotiate in good faith with G+, and Count V alleges that Samsung was unjustly enriched by holding out during such negotiations.

Samsung moved to dismiss these three "Counterclaims-In-Reply" on October 28, 2022. (Dkt. No. 46.) G+ thereafter filed its first amended complaint on November 18, 2022. (FAC.) The FAC almost exactly reiterates the same five "Counterclaims-In-Reply" raised in G+'s amended answer. (*See* Dkt. No. 42; FAC.) Nonetheless, the FAC supersedes the earlier "Counterclaims-In-Reply," so Samsung's Motion to Dismiss the Counterclaims-In-Reply (Dkt. No. 46) is **DENIED AS MOOT**.

Samsung's Motion to Dismiss Counts I, II, and V of the FAC (being substantively the same as the identically numbered "Counterclaims-in-Reply") is now pending before the Court. (Dkt. No. 60.) The Court now turns to this Motion.

## III. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Court can dismiss a complaint that fails to meet this standard. Fed. R. Civ. P. 12(b)(6). To survive dismissal at the pleading stage, a complaint must state enough facts such that the claim to relief is plausible on its face. *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads enough facts to allow the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court accepts well-pleaded facts as true and views all facts in the light most favorable to the plaintiff but is not required to accept the plaintiff's legal conclusions as true. *Id.* "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Twombly,* 550 U.S. at 555.

In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "The court may consider 'the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.'" *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 935 (E.D. Tex. 2016) (quoting *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

## VI.     DISCUSSION

In its Motion, Samsung seeks dismissal of three of G+'s counts: Counts I, II, and V. (*See* Dkt. No. 60 at 1.)

### A.      Count I

In Count I, G+ alleges that Samsung had a duty to take a license from G+ at a FRAND rate under ETSI's IPR policy, that Samsung breached its obligation by failing to agree to any rate for such a license,[2] and that Samsung damaged G+ as a result. (FAC at ¶¶ 93–98.)

Samsung argues that this breach of contract claim must fail because G+ has not adequately pled the existence of a binding contract between Samsung and ETSI. (Dkt. No. 60 at 4–7.) The majority of Samsung's arguments on this point hinge on its assertion that G+ previously admitted that Samsung was a third-party beneficiary to a contract between G+ and ETSI, and that G+ is now trying to convert Samsung to a direct party of that contract. (*See id.*)

In response, G+ argues that it has sufficiently pled facts to show either (1) that "there is a contract between Samsung and ETSI and G+ where Samsung is a third-party beneficiary" or (2) that G+ has pled facts sufficient to "show an implied contract between Samsung and ETSI and G+ Communications." (Dkt. No. 69 at 9–13.)

The Court finds that there are (at least) two separate contracts at issue here: a G+/ETSI contract, and a Samsung/ETSI contract. The parties appear to agree that the G+/ETSI contract exists. G+ and ETSI are direct parties to this contract. (*See id.* at 1–2.) Indeed, G+ and Samsung appear to also agree that Samsung is a third-party beneficiary to this contract. (*See, e.g.*, Dkt. No. 31 at 2 ("Samsung asserts that … (2) Samsung is a Third-Party Beneficiary entitled to the benefits of G+'s FRAND agreement. … G+ does not deny either of these points"); Dkt. No. 60 at 8 ("As

---

[2] For clarity, Samsung has never specifically stated what constitutes a FRAND rate in this context. (FAC at ¶ 73.)

6

G[+] admitted and this Court found, Samsung is a third-party beneficiary to G[+]'s written declaration to ETSI.").) Further, this contract binds G+ to the ETSI IPR policy. (*See* FAC at ¶ 66, 101.) However, G+ is not trying to magically convert this contract from one where Samsung is a third-party beneficiary to one where Samsung is a direct original party.

Rather, G+ sufficiently alleges that there is another contract: the Samsung/ETSI contract, wherein Samsung and ETSI are the direct parties. G+ alleges that Samsung is a signatory to ETSI (FAC at ¶ 81), that as a member of ETSI Samsung is required to conform to the ETSI IPR Policy (*Id.* at ¶¶ 94, 96), and that Samsung has specifically agreed to follow the ETSI IPR policy (*Id.* at ¶ 95). This is a different contract than the one where G+ previously admitted that Samsung was a third-party beneficiary, *i.e.*, the G+/ETSI contract.³ Under these facts, the Court finds it unnecessary to address G+'s implied-contract theory. (*See* Dkt. No. 69 at 10-13.)

Samsung next argues that even if the ETSI IPR policy did contain the terms of an agreement, that Samsung was not obligated to pay G+ under it because Samsung was a third-party beneficiary. (Dkt. No. 60 at 6.) Further, Samsung argues that even if there is/was a contract that exists between it and ETSI, that G+ has not pleaded sufficient factual allegations to show that G+ could be a third-party beneficiary who could enforce the same. (Dkt. No. 60 at 6–7.) The Court will address each argument in turn.

### a. Samsung Argues That There is No Contract That It Has Breached

Samsung's first substantive argument is that Samsung is not contractually obligated to pay G+ a FRAND royalty rate under clause 3.2 of the ETSI IPR Policy because Samsung is a third-party beneficiary, not an original party to the contract. (Dkt. No. 60 at 6.) Samsung then argues that G+ has not pled any extrinsic evidence showing the existence of such a contract. (Dkt. No. 60

---

³ The Court notes that the parties did not specifically argue this in the briefing, but it is readily apparent from the FAC.

at 6 ("Nor does G[+] plead any extrinsic evidence supporting its claim that a contract even exists, including no public statements by ETSI regarding the supposed contract and no public statements by Samsung regarding the supposed contract. In the end, G[+] cannot put forth a prima facie case of the existence of a contract because no such contract exists.").)

In response, G+ relies on the same two arguments: (1) that "there is a contract between Samsung and ETSI and G+ where Samsung is a third-party beneficiary" or (2) that G+ has pled facts sufficient to "show an implied contract between Samsung and ETSI and G+ Communications." (Dkt. No. 69 at 9–13.)

As discussed above, Samsung's arguments miss the mark. G+ has sufficiently alleged the existence of a different contract where Samsung is a direct party: the Samsung/ETSI contract. Moreover, Samsung does not cite *any* law requiring G+ to plead specific extrinsic evidence. (*See* Dkt. No. 60 at 6.) Without such authority, the Court gives this argument no weight.

### b. Samsung Argues That G+ Is Not a Third-Party Beneficiary

Second, Samsung argues that even if there were a contract between Samsung and ETSI, that G+ has not plead factual allegations sufficient to show that G+ would be a third-party beneficiary to this contract who is able to enforce it. (Dkt. No. 60 at 6–7.)

In response, G+ relies on the same two arguments yet again: (1) that "there is a contract between Samsung and ETSI and G+ where Samsung is a third-party beneficiary" or (2) that G+ has pled facts sufficient to "show an implied contract between Samsung and ETSI and G+ Communications." (Dkt. No. 69 at 9–13.)

The Court finds that Texas law appears to track French law on this point, "[a] third party may only enforce a contract when the contracting parties themselves intend to secure some benefit for the third party and entered into the contract directly for the third party's benefit." *Pre-War Art,*

*Inc. v. Stanford Coins & Bullion, Inc.*, 640 Fed. App'x 379, 382 (5th Cir. 2016). *Compare Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061, 1085 (W.D. Wis. 2012) ("Under Wisconsin law, a third-party beneficiary is one whom the contracting parties intended to directly and primarily benefit. The benefit proven must be direct; an indirect benefit incidental to the primary contractual purpose is insufficient. French law is consistent with Wisconsin law on this issue." (citations and quotations omitted)).

Moreover, the Court finds that G+ has sufficiently pled that it was an intended beneficiary of the Samsung/ETSI contract. G+ alleges that Samsung is a signatory of ETSI (FAC at ¶ 80), that ETSI members are bound to the ETSI IPR policy (FAC at ¶ 94), that Clause 3.2 of the ETSI IPR policy requires members to "reward" IPR holders irrespective of whether the IPR holder is a member or a third party (FAC at ¶ 94), and that G+ is a third-party IPR holder (FAC at ¶ 96). This is sufficient at the pleading stage to put Samsung on notice that G+ is an alleged third-party beneficiary. (Dkt. No. 41 at 5.)

**B.    Count II**

In Count II, G+ alleges that Samsung had a duty to negotiate for a FRAND license in good faith due to Samsung's FRAND obligations, that Samsung breached this duty by failing to accept G+'s offer and by failing to make a counteroffer, and that such conduct harmed G+. (FAC at ¶¶ 99–104.)

Samsung first argues that Count II requires Samsung to have a contract with G+, and that this is contrary to positions G+ has taken before this Court. (Dkt. No. 60 at 7.) On this latter point, Samsung argues that (1) G+ has stated that the ETSI IPR policy does not govern the course of negotiations between it and Samsung and (2) that G+ has taken the position that G+ and Samsung have not yet entered into a contract directly with one another. (*Id.*) Further, Samsung argues that

9

G+ does not plead facts alleging that the IPR Policy imposes contractual obligations on Samsung. (*Id.*) Finally, Samsung argues that G+ "conflates the French law pre-contractual duty to negotiate toward a contract with a contractual duty to negotiate."

G+ responds by arguing the same two points as above: (1) that "there is a contract between Samsung and ETSI and G+ where Samsung is a third-party beneficiary" or (2) that G+ has pled facts sufficient to "show an implied contract between Samsung and ETSI and G+ Communications." (Dkt. No. 69 at 9–13.) G+ also argues that Samsung is taking G+'s statements out of context and that G+ has consistently pled that ETSI's IPR Policy requires IPR holders and third-party implementers to negotiate in good faith. (Dkt. No. 77 at 1–3.) G+ also argues that this is not the appropriate stage to determine whether the duty to negotiate in good faith is a pre-contract or contract requirement. (Dkt. No. 77 at 3.)

As a preliminary matter, the Court finds that G+ is taking positions consistent with its prior positions. Indeed, G+ stated that "ETSI itself has acknowledged that negotiations are commercial issues between companies and the IPR policy is silent on the course of negotiation, so long as the final license is issued on FRAND terms." (G+ Motion at 14.) Samsung argues that this statement contradicts G+'s current position that the IPR policy requires parties to offer a license on FRAND terms as part of the duty to negotiate in good faith. (Dkt. No. 76 at 1–3.) This statement was made in the context of G+'s motion to dismiss Samsung's counterclaim that G+ breached its FRAND obligations by failing to make an offer to Samsung that was FRAND. (*Id.* at 13–14.) Further, this statement does not have any bearing on the duty of good faith exhibited during negotiations. While "course of negotiation" may be informative, it is distinct from any duty of good faith owed during negotiation.

10

Further, some of G+'s previous statements to the court might be read to indicate that G+ and Samsung are not direct parties to a contract with one another. (*See* Dkt. No. 60 at 7 (citing G+ Motion at 13–14).) However, G+'s previous statements were referring to a particular potential agreement between Samsung and G+, namely a potential FRAND license, not disclaiming the existence of any contract. Accordingly, G+ is not taking inconsistent positions before the Court in these two respects.

Samsung's argument that G+ is required to plead a contract directly between itself and Samsung, that G+ has not pled facts sufficient to show the existence of such a contract, and so G+ cannot show the existence of an actionable breach is also unpersuasive. (Dkt. No. 60 at 7.) G+ has alleged (1) that Samsung and it are both bound by the ETSI IPR policy (FAC at ¶¶ 31, 63, 66, 81, 96); (2) that G+ owns standard essential patents related to 5G standards and has committed to ETSI to provide licenses to those patents on FRAND terms under the ETSI IPR policy (*Id.* at ¶¶ 64–65, 81, 101); (3) that the ETSI IPR policy is governed by French law (*Id.* at ¶ 62); (4) that the FRAND commitment requires that good faith negotiations be conducted bilaterally by both G+ and Samsung (*Id.* at ¶¶ 100–01); (5) that Samsung's failure to respond substantively to the technical details of the Asserted Patents and its failure to respond substantively to G+'s license offer constitute a breach of Samsung's duty to negotiate in good faith (*Id.* at ¶ 103); and (6) that G+ was harmed (*Id.* at ¶ 104). Such is sufficient to allege a duty to negotiate in good faith and a breach of that duty. *See HTC Corp. v. Telefonaktiebolaget LM Ericsson*, Case No.: 6:18-CV-00243-JRG, 2018 WL 6617795, at *6 (E.D. Tex. 2018). Samsung goes to great lengths to argue that *HTC* is distinguishable from this case because G+ allegedly took inconsistent positions on whether the ETSI IPR policy requires a duty of good faith. (Dkt. No. 76 at 1–3.) However, as discussed above, the Court finds that G+ has not taken inconsistent positions. Further, since the Court finds that G+

11

has adequately pled an actionable breach, it is not necessary to reach G+'s theory that it has pled the existence of an implied contract directly between Samsung and G+. (*See* Dkt. No. 69 at 10–13.)

Samsung's remaining arguments are likewise unpersuasive. Samsung's argument that G+ does not plead facts alleging that the IPR Policy imposes contractual obligations on Samsung is incorrect. As discussed above, G+ has adequately alleged that the IPR Policy imposes enforceable obligations upon Samsung. (Dkt. No. 60 at 7.) Finally, Samsung's argument that G+ "conflates the French law pre-contractual duty to negotiate toward a contract with a contractual duty to negotiate" is not appropriately decided at this stage. (Dkt. No. 60 at 7–9.) "[T]o the extent the parties dispute the scope of French law as it relates to [G+'s] []claims, that issue is more appropriately resolved on a motion pursuant to Federal Rule of Civil Procedure 44.1." *HTC Corp.*, 2018 WL 6617795, at *6.

### C. Count V

In Count V, G+ claims that Samsung was unjustly enriched by failing to agree to a FRAND license as offered by G+, and G+ was damaged as a result. (FAC at ¶¶ 121–22 ("Defendants continue to use the Asserted Patents while refusing to negotiate in good faith for a FRAND royalty for their use. Defendants thus receive a benefit from Plaintiff without compensation and is unjustly enriched at Plaintiff's detriment.").)

Samsung argues that Count V is preempted by the Patent Act. (Dkt. No. 60 at 9–11.) Specifically, it argues that the Patent Act preempts "any attempt to obtain a patent-like royalty for the making, using, or selling of a product." *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411F.3d 1369, 1379, 1382 (Fed. Cir. 2005). The Patent Act allows "damages adequate to compensate for [] infringement." 35 U.S.C. § 284.

G+ argues that Samsung engaged in "holdout," as evidenced by Samsung's "refus[al] to negotiate in good faith," and further that G+ has been damaged by this "holdout" conduct. (*See* Dkt No. 69 at 13; FAC at ¶¶ 121–22, 68–85.)

The Court finds the Patent Act does not preempt G+'s claims. The Patent Act as cited allows compensation for infringement itself, not for holdout conduct. *See* 35 U.S.C. § 284. Since these allegations of harm differ from those recoverable under the Patent Act, the unjust enrichment claim is not preempted. *See Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 342 F.3d 1298, 1306 (Fed. Cir. 2003) (finding no preemption when an unjust enrichment claim is "not simply an attempt to enforce [intellectual] property rights").

## V.   CONCLUSION

For the foregoing reasons, Samsung's Motion (Dkt. No. 60) is **DENIED**. Further, Samsung's Motion to Dismiss the Counterclaims-In-Reply (Dkt. No. 46) is **DENIED AS MOOT**.

**So Ordered this**
**Apr 27, 2023**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE