**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| G+ COMMUNICATIONS, LLC, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> SAMSUNG ELECTRONICS CO., § <br> LTD.; SAMSUNG ELECTRONICS § <br> AMERICA, INC., § <br> § <br> Defendants. § <br> § | Case No. 2:22-CV-00078 JRG <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF G+'S MOTIONS *IN LIMINE* NOS. 1-5**

## TABLE OF CONTENTS

**Page**

I. MIL No. 1: Suggestion of ███████████████████████████ ..........................................1

II. MIL No. 2: Suggestion that the Patents In-Suit are Not Valuable Based On G+ Corporate Structure or Employees ........................................................................................5

III. MIL No. 3: Suggestion that ███████████████████████ ..............................................8

IV. MIL No. 4: Use of G+'s Non-Final Infringement Contentions to Argue Obviousness or Anticipation, and Characterizing Plaintiff's Infringement Theories as Requiring a Finding of Invalidity..........................................................................................10

V. MIL No. 5: Discussion of the Geographical Locations of the Facilities of Samsung and ZTE...................................................................................................................................12

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014) ................................................................................................4, 5

*Garretson v. Clark and others*,
  111 U.S. 120, 4 S.Ct. 291, 28 L.Ed. 371 (1884) ...........................................................................4

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970) ..............................................................................................6

*Hanson v. Alpine Valley Ski Area, Inc.*,
  718 F.2d 1075 (Fed. Cir. 1983) .....................................................................................................6

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
  12 F.4th 476 (5th Cir. 2021) ..........................................................................................................3

*KAIST IP US LLC. V. Samsung Electronics Co. LTD., et al.*,
  No. 2:16-CV-01314-JRG-RSP, Dkt 416 (2018-05-03) ...............................................................11

*Mobile Telecommunications Techs., LLC v. ZTE (USA) Inc.*,
  No. 2:13-CV-946-JRG, 2016 WL 8260584 (E.D. Tex. July 22, 2016) ......................................10

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) .......................................................................................................5

*TiVo, Inc. v. EchoStar Commc'ns Corp.*,
  516 F.3d 1290 (Fed. Cir. 2008) ............................................................................................10, 11

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) ...................................................................................................11

*Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co.*,
  225 U.S. 604, 32 S.Ct. 691, 56 L.Ed. 1222 (1912) .......................................................................4

*Zenith Elecs. Corp. v. PDI Comm. Sys., Inc.*,
  522 F.3d 1348 (Fed. Cir. 2008) ...................................................................................................10

**Statutes**

35 U.S.C. § 284 ..................................................................................................................................5

██████████████████████████████████████

**Rules**

Fed. R. Civ. P. 401 .................................................................................................................................10

Fed. R. Civ. P. 403 .................................................................................................................................10

████████████████████████████████████████████████████████████

I. **MIL No. 1: Suggestion of** ███████████████████████████████

Samsung should be precluded from offering evidence or testimony that ████████ ████████████████████████████. G+ has also moved to exclude allegations of discrimination from the Samsung's damages expert reports. Dkt. 191 at 5-6.

***First***, the jury would have no basis to assess any allegations by Samsung of discrimination by G+. "FRAND" is a contract term that as used by ETSI has no definite meaning. *See, e.g.,* Ex. 1 (Brooks, Roger, and Damien Geradin, "Interpreting and Enforcing the Voluntary FRAND Commitment," citing ETSI/GA 42(03)20) at 20 (""The ETSI IPR Policy does not define FRAND");

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████ Ex. 1 (Brooks et al., citing Rahnasto, Ilkka, "Intellectual Property Rights, External Effects and Anti-Trust Law," 2003, Oxford University Press) at 14 (fn. 26) ("[T]he [FRAND] rule leaves the determination of exact terms for the parties to decide. This case-by-case determination allows parties to a particular licensing transaction to find their own interpretation of 'fair and reasonable'."); Ex. 1 (Brooks et al., citing ETSI/GA 20(94)2 (SC Final Report), ANNEX XII) at 33 (fn. 80) (under heading "Concerns about most favoured licensee provision," ETSI special committee on IPR final report stating that while "License terms and conditions should be nondiscriminatory," "this does not necessarily imply identical terms."); Ex. 4 (2007 ETSI "Guide on IPRs") at § 2.2, § 4.1 ("commercial terms are a matter for discussion between the IPR holder and the potential licensee, outside of ETSI" and "[s]pecific licensing terms and negotiations are commercial issues between the companies and shall not be addressed within ETSI").

The current ETSI IPR policy was preceded by the short-lived 1993 version, which was widely criticized for its strict restrictions on licensing that included a most favored license provision. *See, e.g.,*

Ex. 1 (Brooks et al.) at 32. The U.S. Department of State expressed the following regarding the 1993 IPR policy:

> The United States views the proposed ETSI IPR Policy and Undertaking as a **major departure from accepted international standard-setting practices**.

Ex. 5 (ETSI/GA 15(93)34) at 3 (emphasis added). The European Commission stated the following:

> If agreement is reached between the rightholder and the standard-making body, the terms for licenses must be fair, reasonable, and non-discriminatory. **It is not feasible or appropriate to be more specific** as to what constitutes 'fairness' or 'reasonableness' since these are subjective factors determined by the circumstances surrounding the negotiation."

Ex. 6 ("Communication from the Commission on Intellectual Property Rights and Standardization," Commission of the European Communities, COM (92)445, October 27, 1992) at 18 (emphasis added). The ANSI standardization body stated the following:

> If holders of IPRs are deprived of the ability freely to determine the terms and conditions upon which they will (or will not) make their IPRs available to others, the incentive for investing in innovative research and development will be significantly compromised. Furthermore, the incentive for leaders in the development of technological advancements to participate in the ETSI standardization process will be dramatically undermined.

Ex. 1 (Brooks et al., citing ETSI/GA 12(92)TD3) at 17-18 (fn. 36). Companies complained about the strict licensing requirements and complexity of the 1993 framework, with many threatening to leave ETSI unless the policy was changed. *See, e.g.,* Ex. 7 (EJ Iversen, "Standardization and Intellectual Property Rights: ETSI's controversial search for new IPR procedures," September 1999) ("ETSI received between 12-14 letters from parties . . . who threatened to pull out of ETSI if it implemented the 1993 Policy."); Ex. 1 (Brooks et al., citing ETSI/GA 15(93)26) at 18 (fn. 37) (IBM stating that the 1993 proposal is "a source of deep divisions within the ETSI membership" and for "many members it is the company's strategic assets and policies which are at stake"); *Id.* (citing ETSI/GA 15(93)6) ("IBM has to evaluate now its future involvement in ETSI"); Ex. 8 (ETSI/GA 15(93)29) at 3 (Phillips International B.V. stating "we have constantly expressed our deep concern about the complexity and inoperability" of the 1993 IPR Framework).

Following ETSI's abolition of the 1993 IPR Policy, ETSI has rejected efforts to define "FRAND," including efforts to provide examples of practices that would violate FRAND. *See, e.g.,* Ex. 1 (Brooks et al., citing ETSI/GA 42(03)20 at 10 (fn. 44).

Because "discrimination" is not defined by ETSI, it would be improper for the Court to allow a witness to attempt to define it for the jury. *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 485 (5th Cir. 2021) ("As for the non-discrimination instruction that HTC requested, it is erroneous because it flatly contradicts the agreement between [patentee] and ETSI… [A]s with the other elements of FRAND, **trial courts should … consider the patentee's actual [F]RAND commitment in crafting the jury instruction**.") (internal quotation omitted) (emphasis added). The Fifth Circuit rejected instructing the jury that the discrimination prong is meant to "level the playing field among competitors ... by prohibiting preferential treatment that imposes different costs to different competitors," noting that "ETSI has already rejected a most-favored-licensee approach and chosen to give patent holders some flexibility in coming to reasonable agreements with different potential licensees." *Id.* at 485. Allowing Samsung to argue to the jury that the "discrimination" prong of FRAND under ETSI carries particular requirements for licensing rates would be erroneous.

There is also no evidence in this case of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Even supposing there was a requirement that the damages in this case have some defined relationship to an established licensing rate for the patents-in-suit (which there is not), ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

**Second**, alleged discrimination has no bearing on the issues the jury will be asked to decide. Discrimination is not a factor in a reasonable royalty analysis. The Federal Circuit is clear what factors must go into a SEP royalty analysis:

- 3 -

> As with all patents, the royalty rate for SEPs must be apportioned to the value of the patented invention. *Garretson*, 111 U.S. at 121, 4 S.Ct. 291, 28 L.Ed. 371 (1884); *see also Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co.*, 225 U.S. 604, 617, 32 S.Ct. 691, 56 L.Ed. 1222 (1912) ("[Plaintiff] was only entitled to recover such part of the commingled profits as was attributable to the use of its invention."). When dealing with SEPs, there are two special apportionment issues that arise. **First, the patented feature must be apportioned from all of the unpatented features reflected in the standard. Second, the patentee's royalty must be premised on the value of the patented feature, not any value added by the standard's adoption of the patented technology**. These steps are necessary to ensure that the royalty award is based on the incremental value that the patented **invention** adds to the product, not any value added by the standardization of that technology.

*Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1232 (Fed. Cir. 2014) (emphasis added). Whether or not the royalty is "FRAND" is not one of the apportionment factors, and it would be improper for Samsung's witnesses to give testimony to the jury regarding discrimination in support of Samsung's damages case. The jury is simply advised as to the terms of the undertaking and may weigh it as part of the damages instructions.

In addition, treating "discrimination" as a separate element from FRAND departs from the contract terms. There is nothing in the ETSI agreement that separates out discrimination as a distinct obligation that has meaning separate from the other terms that surround it. Samsung's French law expert acknowledges this.

**Third**, Samsung did not identify during fact discovery a claim of discrimination in any interrogatory responses. As a result, G+ did not take fact discovery on this allegation, including, for example, by collecting information on the differences between the other contracting parties in the

- 4 -

"comparable" agreements and Samsung. Samsung cannot lie behind a log on a theory to the prejudice of G+.

## II. MIL No. 2: Suggestion that the Patents In-Suit are Not Valuable Based On G+ Corporate Structure or Employees

The corporate structure, source of funding, number of employees, and experience of G+'s manager ▆▆▆▆▆ in licensing 5G patents has no bearing on any issue in this case[1] including the value of the asserted patents. Samsung should not be permitted to introduce such evidence as suggesting that the patents are not valuable, which would be prejudicial to G+ and only serve to denigrate ▆▆▆▆ and G+.

It is blackletter patent law that damages must be at least "a reasonable royalty for the **use made** of the invention by the infringer." 35 U.S.C. § 284 (emphasis added). In determining a reasonable royalty, a party "must carefully tie proof of damages to the **claimed invention's footprint** in the market place" and "[a]ny evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute." *ResQNet.com, Inc. v. Lansa, Inc.,* 594 F.3d 860, 869 (Fed. Cir. 2010) (emphasis added). The information about G+ and ▆▆ ▆▆▆ at issue in this MIL is irrelevant to Samsung's use of the inventions and the footprint of the inventions and therefore has no bearing on a determination of damages. This is especially the case with SEPs, because the Federal Circuit holds that in the context of SEPs the commercial relationship of the plaintiff and defendant is irrelevant. *Ericsson, Inc.*, 773 F.3d at 1230-31 ("In a case involving RAND-encumbered patents, many of the Georgia–Pacific factors simply are not relevant…factor 5—

---

[1] Samsung's damages expert Mr. Meyer never relied on the size of G+ (in terms of employees) as part of his damages analysis. To the contrary, Mr. Meyer quoted in his report legal precedent stating that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Ex. 9 (Meyer Op. Rpt.) at ¶ 95.

'[t]he commercial relationship between the licensor and licensee'—is irrelevant because [the patentee] must offer licenses at a *non-discriminatory* rate").

Further, a reasonable royalty is to be determined "on the basis of what the parties to the hypothetical license negotiations would have considered at the time of the negotiations." *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1081 (Fed. Cir. 1983). The parties to the hypothetical negotiation would be the patent holder or its licensee and the infringer. *See Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). It is undisputed that ZTE and Samsung would have been the parties to a hypothetical negotiation in this matter ███████████ █████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████, and thus G+ would **not** have been a party to the hypothetical negotiation. At the time of the hypothetical negotiation, ████████████████████████████ ████████████████████████████████████████████████████████████. Thus, information about G+ and ████████████ has no bearing on the hypothetical negotiation.

G+ has good reason to suspect Samsung intends to introduce such evidence, as Samsung has designated substantial deposition testimony of ████████████ relating to his background, licensing experience specific to 5G patents, the number of employees working for G+, and related matters, including the following:



. Samsung's damages expert Mr. Meyer cited this deposition testimony, but never alleged it would have any bearing on the hypothetical negotiation or damages in this case. *See*, Ex. 9 (Meyer Op. Rpt.) at ¶ 20 (fn. 11), ¶ 58 (fn. 110); Ex. 10 (Meyer Rbt. Rpt.) at ¶ 68; ¶ 103 (fn. 231). The clear effect of raising these irrelevant facts, without any attempt to tie them to the hypothetical negotiation or damages in this case, is to suggest, for example, that the patents must not be valuable because  Such reasoning is contrary to patent damages law and suggesting it to the jury has a high risk of confusion and prejudice to G+.

███████████████████████████████████████████████████████████

III. **MIL No. 3: Suggestion that** ███████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████ The assignment from ZTE to G+ for each asserted patent was recorded and publicly available in November 2020. Exs. 13-16 (assignment histories for '130, '443, '776, and '881 patents). ZTE's sale of patents to G+ was publicly announced and reported in the press at least as of December 2020. Ex. 17 (SAM-GC02917342). ███████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████

Based on the deposition testimony designated by Samsung for use at trial, it appears Samsung intends to argue that ████████████████████████████████████████████

████████████████ For example, Samsung designated testimony of ███████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████

- 8 -

███████████████████████████████████████████████████████

████████████████████████████████████████. Samsung's narrative contradicts █████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████

Whether Samsung was aware of ███████████████████████████████████

████████████████████████████████████████████████████████████████

██████████. It is undisputed that ████████████████████ does not include the patents-in-suit: Samsung does not allege or provide any basis to suggest ████████████████████████

████████████████████████████████████████████████. Samsung does not allege that ████████████████████████████████████████. If Samsung believes it has a claim ████████████████████ it should bring a claim against █████

Allowing Samsung to argue or suggest to the jury that ████████████████████ would create significant prejudice to G+. For example, such accusations have a high risk of suggesting to jurors that Samsung's infringement should be forgiven because ████████████████████ ████████████████████████████ or that damages owed for Samsung's infringement should be mitigated. This is contrary to the law. Samsung has no right to use G+'s intellectual property, and █████████████████████████████████████████ have no relevance whatsoever to the damages owed for Samsung's infringement.

Samsung should be precluded from making any suggestion

### IV. MIL No. 4: Use of G+'s Non-Final Infringement Contentions to Argue Obviousness or Anticipation, and Characterizing Plaintiff's Infringement Theories as Requiring a Finding of Invalidity

Defendants should not be permitted to present evidence or argument of invalidity based on comparing the prior art to G+'s served infringement contentions (in particular outdated contentions). Such opinions are inadmissible under Rule 401 as irrelevant and under Rule 403 because they have no probative value and present substantial "danger of unfair prejudice, confusion of the issues, or misleading the jury." *Mobile Telecommunications Techs., LLC v. ZTE (USA) Inc.*, No. 2:13-CV-946-JRG, 2016 WL 8260584, at *2 (E.D. Tex. July 22, 2016) ("The parties SHALL NOT introduce any references, evidence, testimony (including expert testimony), or argument regarding, or inquire about or elicit any testimony comparing any accused instrumentality to any purported prior art device, prior art patent or any other prior art. The prior art should be compared only to the asserted claims."); Fed. R. Evid. 403; *TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290, 1311-12 (Fed. Cir. 2008). To be clear, this part of the motion *in limine* is directed solely at the use of the infringement contentions themselves in front of the jury.

Separately, the Court should prevent any argument that if G+'s infringement theories presented at trial are accepted the patents are invalid.

"An expert must [compare] the construed claims to the prior art." *TiVo*, 516 F.3d at 1311 (internal citations omitted). An expert may not present an opinion that compares the prior art to plaintiff's infringement analysis and such evidence is properly excluded from trial. *Id.* "[M]ere proof that the prior art is identical, in all material respects, to an allegedly infringing product cannot

constitute clear and convincing evidence of invalidity. Anticipation requires a showing that each element of the claim at issue, properly construed, is found in a single prior art reference." *Zenith Elecs. Corp. v. PDI Comm. Sys., Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008); *see Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1322 (Fed. Cir. 2011) ("[T]he proper framework for challenging the validity of a patent is not for the accused to show that it is practicing the prior art, but to show that every element of the patent claims reads on a single prior art reference.").

Evidence of a patent holder's "view of the claims" as applied to the infringing products has no bearing on the question of validity, and should be excluded to avoid "possible jury confusion by ensuring that the invalidity inquiry [is] focused on the relationship between the prior art and the claims, as construed by the court." *TiVo*, 516 F.3d at 1311-12; *KAIST IP US LLC. V. Samsung Electronics Co. LTD., et al.*, No. 2:16-CV-01314-JRG-RSP, Dkt 416 at 4 (2018-05-03) (granting MIL to preclude "Comparing prior art to Plaintiff's infringement contentions or Samsung's products rather than to claims as construed by the Court"). 





Samsung's experts' invalidity analysis should be limited to a comparison of the prior art references to the claims as construed. Samsung's experts should be precluded from comparing the prior art to aspects of a Samsung product that Plaintiff allegedly accused in its infringement contentions.

## V.   MIL No. 5: Discussion of the Geographical Locations of the Facilities of Samsung and ZTE

Each party should be precluded from discussing the geographical locations of Samsung and ZTE facilities.



- 13 -

██████████████████████████████████████████████████

██████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████
█
████████████████████████████████████████
██████████████████████████████████████████████████████
███████████

████████████████████████████████████████████████

Samsung should be precluded from any attempts to ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████. Opening the door to any discussion of the location of Samsung, G+, or ZTE's operations would create an unnecessary sideshow and risk prejudicing the jury, while providing no relevant information to decide any issues in this case.

████████████████████████████████████

Dated: September 20, 2023

Respectfully Submitted,

*/s/Bradley D. Liddle*

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Scott W. Breedlove
Texas State Bar No. 00790361
sbreedlove@carterarnett.com
Joshua J. Bennett
Texas State Bar No. 24059444
jbennett@carterarnett.com
Bradley D. Liddle
Texas State Bar No. 24074599
bliddle@carterarnett.com
Theresa M. Dawson
Texas State Bar No. 24065128
tdawson@carterarnett.com
Michael Pomeroy
Texas State Bar No. 24098952
mpomeroy@carterarnett.com
**CARTER ARNETT PLLC**
8150 N. Central Expressway
5th Floor
Dallas, Texas 75206
Telephone: (214) 550-8188
Facsimile: (214) 550-8185

Jason Sheasby
California State Bar No. 205455
jsheasby@irell.com
Michael Harbour
California State Bar No. 298185
mharbour@irell.com
Benjamin Manzin-Monnin
California State Bar No. 325381
bmonnin@irell.com
**IRELL & MANELLA LLP**

- 15 -

[redacted]

1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

**ATTORNEYS FOR PLAINTIFF G+ COMMUNICATIONS, LLC**

### CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with counsel for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. regarding the relief sought in this Motion on September 19, 2023. Defendants' counsel advised that they oppose the relief sought.

/s/ Bradley D. Liddle
Bradley D. Liddle

[redacted]

### CERTIFICATE OF SERVICE

I hereby certify that, on September 20, 2023, I e-mailed the foregoing to Defendants' counsel of record.

/s/ Bradley D. Liddle
Bradley D. Liddle