IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| G+ COMMUNICATIONS, LLC, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION NO. 2:22-CV-00078-JRG |
| § | |
| SAMSUNG ELECTRONICS CO. LTD., and § | |
| SAMSUNG ELECTRONICS AMERICA, § | |
| INC., § | |
| § | |
| *Defendants*. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the issue of whether Plaintiff G+ Communications, LLC ("G+") may be liable for breach of its FRAND (Fair, Reasonable, and Non-Discriminatory licensing) obligation encumbering the Patents-in-Suit[1] based, at least in part, on third-party predecessor ZTE Corporation's ("ZTE") conduct prior to G+'s acquisition of the Asserted Patents. (*See* Dkt. No. 518 at 171:10–14.) More specifically, the Court considers whether ZTE's prior actions are imputable to G+ in connection with G+'s FRAND obligations. The Court heard at length from the parties on this topic at the pretrial conference. The Court subsequently ordered targeted briefing from the parties. (Dkt. No. 519 at 68:3–17.) This first round of briefing was insufficient, in the Court's view, so further briefing was ordered and received. (Dkt. No. 532.)

In the briefing, Defendants Samsung Electronics Co. Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung") assert that ZTE's conduct simply follows the patents, such that ZTE's prior conduct may be considered in deciding if G+ breached its obligation to license

---

[1] U.S. Patent Nos. 8,761,776, 9,184,881, 10,594,443, and 10,736,130 (the "Asserted Patents" or the "Patents-in-Suit").

the Patents-in-Suit to Samsung on FRAND terms. (*See* Dkt. Nos. 528-1, 540.) G+ takes the opposite position. (*See* Dkt. No. 530, 541.)

Having considered the arguments and briefing, the Court finds that applicable French law—consistent with American principles regarding personal property—does not, in this case, allow imputation of a prior patent owner's conduct to a subsequent owner when determining if the subsequent owner has breached the FRAND commitment regarding standard essential patents (SEPs).

However, the Court separately finds that Samsung may present evidence of such conduct by predecessor ZTE to the jury for the different and targeted purpose of defending against G+'s allegations of willful patent infringement.

I.  **BACKGROUND**

The Patents-in-Suit are all subject to FRAND obligations arising from their contribution to standards adopted by the European Telecommunication Standards Institute ("ETSI"). (Dkt. No. 345 at 4–5.) ZTE is the prior owner of these patents. (*See* Dkt. No. 528-1 at 2.)  In 2019, prior to G+'s creation and subsequent acquisition of the Patents-in-Suit, Samsung and ZTE began negotiations over a license to ZTE's entire SEP portfolio. (*See* Dkt. No. 528-1 at 2.) A license to ZTE's entire SEP portfolio in 2019 would have included a license to the Patents-in-Suit. However, the negotiations did not proceed quickly. ZTE and Samsung ultimately executed a license on July 9, 2021, but that license did not cover the Patents-in-Suit. (*Id.* at 3–4.)

This is because prior to the execution of the Samsung-ZTE license, ZTE had transferred the Patents-in-Suit to G+. (*See* Dkt. No. 528-1 at 2.) G+ was formed on August 4, 2020 and acquired the Patents-in-Suit per a patent purchase agreement ("PPA") dated September 26, 2020. (*Id.*; Dkt. No. 528-5 at 23:19–20.) By its own admission, G+ was created in coordination with ZTE

2

to license and enforce ZTE's patents. (Dkt. No. 528-5 at 23:5–24:10 (Jeremy Pitcock, G+'s sole member, explaining that G+ was set up as a "special purpose vehicle for, you know, holding and licensing these ZTE patents"), 22:12–23:4 (Pitcock explaining that "I would assume we would all have a *joint interest* in pursuing enforcement of the ZTE intellectual property from the very beginning." (emphasis supplied)).) Since G+ acquired the Patents-in-Suit before Samsung and ZTE executed their July 9, 2021 license, Samsung did not receive a license to the Patents-in-Suit. ZTE did not expressly inform Samsung that it had transferred these patents to G+ though at the time of their transfer to G+, ZTE and Samsung had been in license negotiations for over a year. (Dkt. No. 528-1 at 3.) However, as a party to the ultimate ZTE-Samsung license, Samsung is assumed to have known the full scope and content of that license.

Additionally, Apple, Inc. signed a license with ZTE which did cover the Patents-in-Suit on October 23, 2020. (*Id.*) Indeed, the PPA between G+ and ZTE was executed in September of 2020, but formal transfer of title to the Patents-in-Suit was not effective until October 31, 2020. (*Id.*)

The PPA provides at section 3.a.iii that ZTE retains a 20% net royalty on all proceeds generated from G+'s licensing of the Asserted Patents. (Dkt. No. 528-4.) Additionally, the PPA identifies Samsung as "[w]hitelist[ed]"—*i.e.*, that there was no encumbrance to enforcing the Patents-in-Suit against Samsung. (*Id.* at § 6.7, Ex. V.) Finally, the PPA also requires ZTE to cooperate with G+ to facilitate G+'s licensing efforts. (*See id.* at §§ 7.2, 10.4 ("Seller further covenants and agrees that after the Closing Date, it will upon request, cooperate with Buyer to enable Buyer to enjoy the fullest extent of the right, title and interest in the Patents … .").)

Relevant to this dispute, Samsung seeks to present the jury with the following evidence regarding its breach of FRAND counterclaim:

> (1) the timeline of Samsung's license negotiations with ZTE; (2) ZTE's knowing and purposeful failure to include the Asserted Patents in Samsung's license and its

concealment of its transfer to G[+]; (3) ZTE's license of the Asserted Patents to Samsung's competitor – Apple – around the same time; (4) ZTE's sale of Asserted Patents to G[+]; and (5) ZTE's retention in 20% interest of the Asserted Patents.

(*Id.* at 10.)

## II. ANALYSIS

In its briefing, Samsung argues that ZTE's conduct runs with the Patents-in-Suit and is imputable to G+ because patents are property, and encumbrances run with the property. (*See* Dkt. No. 528-1 at 5.) As support for its theory, Samsung cites *Conversant Wireless* where the Northern District of California held that a breach of the ETSI IPR Policy ran with the patent, waiving the successor-in-interest's right to enforce the patent. (*Id.* at 7 (citing *Conversant Wireless Licensing S.A.R.L. v. Apple, Inc.*, No. 15-cv-05008-NC, 2019 WL 4038419, at *4–7 (N.D. Cal. May 10, 2019)).) Samsung also points to *High Point*, where the Federal Circuit held that a predecessor-in-interest's conduct equitably estopped the plaintiff from pursuing the action against the defendant. (*Id.* at 8–9 (citing *High Point SARL v. Sprint Nextel Corp.*, 817 F.3d 1325, 1331–32 (Fed. Cir. 2016)).) Finally, Samsung relies on *Entropic Communications*, where this Court held that there was "a genuine dispute of material fact as to …what [predecessor] should be considered in this context and if its actions can be imputed to [plaintiff] for purposes of this [unclean hands] equitable defense." (*Id.* at 9–10 (citing *Entropic Commc'ns, LLC, v. Charter Commc'ns, Inc.*, No. 2:22-CV-00125-JRG-RSP at 4 (E.D. Tex. Nov. 27, 2023)).)

None of these cases establish why ZTE's actions rise to the level of and constitute an encumbrance that burdens the Patents-in-Suit for purposes of a breach of FRAND. These cases, at most, establish that a predecessor's actions may, in equity, prevent enforcement of the patents. They say nothing about why a predecessor's actions would burden patents for all purposes, including for holding a successor-in-interest liable for a breach of contract. Neither party disputes

and the Court finds that the FRAND commitment sounds in contract and is a legal obligation, not equitable in nature.

G+ advances two primary arguments in its briefing: (1) that imputing ZTE's conduct to G+ is contrary to French law, and (2) that Samsung has waived its imputation argument. (Dkt. No. 530.)

The Court first analyzes G+'s argument that imputing ZTE's conduct to it runs counter to French law. The ETSI contract that gives rise to the FRAND obligation is subject to French law. (*See id.* at 6.) This is undisputed. G+'s rendition of French law through its expert Dr. Jean-Sebastien Borghetti is also undisputed. (*See* Dkt. No. 530-8.)

> France follows the "privity rule," according to which
>
> a person acquiring a good or a right from someone else is not bound by the contracts entered by the transferor, even in relation to the good or right transferred. Neither is the transferee liable for any breach of contract or duty committed by the transferor before the transfer, even incurred in relation to the good or right transferred.

(*Id.* at 6.) The privity rule does not apply if the parties to the transaction have "agreed on the transfer of the contract or the debt alongside the good or right, and when the contract or undertaking can be regarded as an encumbrance of the good or right that has been transferred." (*Id.* at 7.)

Samsung argues in response that the privity rule should not apply because G+ is not a "pure successor-in-interest" of ZTE, and its actions are not independent of ZTE. (Dkt. No. 540 at 4–5.)

In reply, G+ notes that Samsung is essentially arguing that G+ is the alter ego of ZTE. (Dkt. No. 541 at 3.) It also argues that Samsung has neither disclosed this theory previously nor pointed to evidence sufficient to support that theory. (*Id.* at 3–5.) G+ also argues that Samsung has not put forward any French law to support its theories. (*Id.* at 5.) The PPA also makes clear in section 13.4 that ZTE and G+ are not engaged in a joint venture and their interactions cannot be considered as such. (Dkt. No. 528-4.)

5

While Samsung does not dispute that French law controls (*see* Dkt. No. 530 at 6; Dkt. No. 540), it essentially argues that the privity rule under French law does not apply because G+ is an alter ego of ZTE (*see* Dkt. No. 540 at 3–5). This argument fails. First, Samsung has not provided legal support within French law for this assertion. On such a record, the Court has no basis to simply assume that French law operates as Samsung asserts. Second, Samsung has not demonstrated how the facts before the Court would establish that G+ is an alter ego of ZTE. Establishing that one entity is an alter ego of another is a high bar that is not easily met. The Court concludes that controlling French law before it prevents imputation of ZTE's conduct to G+, under these facts, and that Samsung has failed to establish that G+ is an alter ego of ZTE.

The Court next analyzes whether Samsung has also waived this theory. G+ contends that Samsung failed to raise this theory in its operative counterclaim. (Dkt. No. 530 at 1–2.) That said, Samsung did plead that "G[+] is barred from enforcing the asserted patents against Samsung because of G[+]'s (or its predecessor in interest, ZTE's) failure to comply with its FRAND obligations. (Dkt. No. 540 at 1.)

G+ also contends that Samsung failed to disclose this breach of FRAND theory and ZTE's purported role in such breach in response to G+'s discovery requests. (Dkt. No. 530 at 2.) G+ served a interrogatory that asked Samsung the following:

> Describe the basis for Your assertion that Plaintiff breached a FRAND commitment, including but not limited to the source of the commitment, the scope of the obligation, the time period of the obligation, the material terms of the license required to be offered under the obligation (including the royalty rate and applicable royalty base Samsung asserts Plaintiff is obligated to have offered), the basis for your contention as to each term, and the circumstances in which Samsung would have accepted such an offer.

(*Id.* at 2–3.) Samsung responded as follows:

> The G[+] rates offered in the G[+] Initial Offer, based on Qualcomm rates, and the G[+] Current Offer are not FRAND. Qualcomm's 5G portfolio is of far higher

6

> quality than ZTE's 5G patent portfolio. [Citation omitted] Qualcomm states Qualcomm has "over 150 5G licensing agreements [and is] . . . the most widely licensed in the industry." https://www.qualcomm.com/licensing.
>
> ZTE did not mention the Asserted Patents in ZTE's license negotiations with Samsung. Instead, ZTE focused on dozens of other patents throughout the negotiations. Upon information and belief ZTE's ETSI declarant of the Asserted Patents Dr. Mang Zhu was in attendance for at least one of the Samsung-ZTE license negotiation meetings.
>
> G[+] inflates ZTE's contributions to the standard. Upon information and belief, only two of the Asserted Patents accuse technical specifications sections involving a ZTE contributions, and one of those is a large group contribution from Ericsson and other industry leaders.

(*See* Dkt. No. 540 at 2; Dkt. No. 541 at 2.) G+ argues that Samsung's response to this interrogatory was insufficient to put it on notice, while Samsung argues that its response was sufficient. (*Id.* at 3; Dkt. No. 540 at 1–2.) Finally, G+ argues that Samsung violated Rule 26 by failing to disclose the witness who negotiated the license between Samsung and ZTE. (Dkt. No. 530 at 4.)

As an initial matter, Samsung does not dispute G+'s argument that it has violated Rule 26. (*See* Dkt. No. 540.) Further, the Court finds that Samsung's above interrogatory response does not put G+ on fair notice that Samsung is seeking to impute ZTE's conduct to G+ for breach of FRAND purposes. Passing references to ZTE's conduct are not the same as disclosure of a new legal theory based on direct imputation of another's conduct. The Court is persuaded that Samsung did not put G+ on adequate notice of its imputation theories and that Samsung also failed to meet its Rule 26 obligations.

For all of the foregoing reasons, ZTE's conduct may not be attributed to G+ for breach of FRAND purposes.

However, this holding does not mean that the facts identified by Samsung are irrelevant and may not be presented to the jury in support of other issues the jury will be asked to decide.[2]

Indeed, the Court finds the facts identified by Samsung are relevant and probative as part of Samsung's defense to G+'s charge of willful infringement. If Samsung reasonably believed that it was receiving a license to the Patents-in-Suit as part of the July 9, 2021 license from ZTE, only to later be surprised that G+ is asking for a license to the same patents, such could counter, to some degree, G+'s charge of willfulness. Willful infringement is an inquiry that considers the "totality of the circumstances," and these circumstances fall within that totality. *See WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 970 (Fed. Cir. 2018. These facts may also be relevant to Samsung's general narrative of the case. *See Old Chief v. United States*, 519 U.S. 172, 187 (1997) ("Evidence thus has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.").

In consideration of the above, it is **ORDERED** that Samsung may not seek to impute ZTE's conduct prior to G+'s acquisition of the Asserted Patents to G+ in support of its breach of FRAND counterclaim. However, it is **ORDERED** that such evidence may be presented by Samsung to defend against G+'s claim of willful infringement.

Further, so that the Court might accurately oversee the presentation of this evidence to the jury and ensure that it is not improperly considered, it is **ORDERED** that the parties must seek

---

[2] Samsung identified the following relevant facts, as mentioned above:

> (1) the timeline of Samsung's license negotiations with ZTE; (2) ZTE's knowing and purposeful failure to include the Asserted Patents in Samsung's license and its concealment of its transfer to G[+]; (3) ZTE's license of the Asserted Patents to Samsung's competitor – Apple – around the same time; (4) ZTE's sale of Asserted Patents to G[+]; and (5) ZTE's retention in 20% interest of the Asserted Patents.

(Dkt. No. 528-1 at 10.)

and obtain leave from the Court before presenting any evidence, testimony, or argument to the jury concerning ZTE and its conduct prior to its transfer of the Patents-in-Suit to G+. Additionally, the Court will instruct the jury, prior to the presentation of such evidence, that it is to be considered only and solely as to the issue of willfulness and not with regard to Samsung's breach of FRAND counterclaim.

**So ORDERED and SIGNED this 8th day of January, 2024.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE