# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| G+ COMMUNICATIONS, LLC, | § § § § | |
| Plaintiff, | § § | |
| v. | § § § | Case No. 2:22-cv-00078-JRG |
| SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG ELECTRONICS AMERICA, INC.; | § § § § | **JURY TRIAL DEMANDED** |
| Defendants. | § § § § § | |

## PROPOSED[1] JURY INSTRUCTIONS[2]

## JURY CHARGE

## INTRODUCTION

Ladies and Gentlemen, you are now the jury in this case.  It is my duty to instruct you on the law.

---

[1] G+: G+ abided by every agreed deadline the parties had for these instructions. G+ raised no last minute jury instructions. Samsung provided its last round of extensive edits 30 minutes before filing.  G+ reserves the right to respond. G+ joined the competing objections and responses by combining into a single footnote, and clearly labeling each parties positions, to make the positions clearer for the Court. There is no prejudice to Samsung.

Samsung objects to G+'s conduct with respect to these "joint" jury instructions and reserves the right to raise additional objections and clarify objections to narrow the disputes between the parties.  G+ sent over this 125 page jury instruction "joint submission" only two hours before the deadline, telling Samsung it would unilaterally begin filing, regardless of whether Samsung agreed, at 4 pm CT, thus giving Samsung one hour to respond to G+'s extensive changes.  Further, G+ changed the format and order of all of the objections and footnotes to ensure its positions always came first, even if Samsung was the party proposing the language.  Samsung objects to G+'s unfairly prejudicial tactics and reserves the right to raise additional objections and instructions with the respect to G+'s last-minute jury instructions.

[2] Submissions which are agreed to by both G+ and Samsung are not highlighted.  Submissions proposed by G+ that are not agreed to by Samsung are highlighted in green.  Submissions proposed by Samsung that are not agreed to by G+ are highlighted in yellow.  The parties have entered their objections, explanations, citations, and commentary in footnotes only.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

At the end of the evidence, I will give you detailed instructions about the law to apply in deciding this case and I will give you a list of questions that you are then to answer.  This list of questions is called the "verdict form."  Your answers to those questions will need to be unanimous and those unanimous answers will constitute the verdict in this case.[3]

## INTRODUCTION TO PATENTS[4]

---

[3] Samsung: <u>Authority</u>: Adapted from *TQ Delta, LLC v. CommScope Holding Co.*, No. 2:21-cv-000310-JRG, Preliminary Jury Instructions, Dkt. No. 526, Vol. 1 Tr. 107:25-108:7 (E.D. Tex. Mar. 17, 2023).

[4] G+: Samsung relies throughout these instructions on the *TQ Delta* case (No. 2:21-cv-000310).  G+ does not agree that the instructions in this case should match the instructions in *TQ Delta*. The *TQ Delta* case involved many different issues than this case, and it would be highly prejudicial to simply adopt those instructions as Samsung in many instances proposes.

The *TQ Delta* case involved patents that the parties stipulated were essential to the ITU standard.  Here, Samsung denies the patents are standard essential, and the standard at issue is the ETSI standard. The ETSI standards are governed by French law. The ITU is based in Switzerland.  It is undisputed in this case that under French law, Samsung owed G+ a duty of good faith during pre-suit negotiations for a license to the asserted patents.  There is no mention of such a duty in the *TQ Delta* jury instructions.

G+ alleges that Samsung breached its duty of good faith during pre-suit negotiations, and thus G+'s obligations under FRAND have ceased. Samsung did not move for summary judgment on this claim, and has no basis for seeking to omit jury instructions informing the jury of G+'s claim and the impacts of that claim on G+'s FRAND obligations. There were no such allegations in the *TQ Delta* case. To the contrary, the defendant in *TQ Delta* argued the following in closing statements, suggesting that there is no duty of good faith under Swiss law (or at least none was raised by the patent holder at trial): "***We don't have any obligations. We just get the benefit.*** … We just heard, as we've heard all week, that ***we didn't engage in negotiations***, we didn't provide sales data. ***That's not our obligation. We don't have any obligation***. The only obligation under FRAND is for TQ Delta to provide us with a rate that is non-discriminatory."  *TQ Delta, LLC v. CommScope Holding Co.*, No. 2:21-cv-000310-JRG, Dkt. No. 534, Tr. 103:10-19 (E.D. Tex. Mar. 24, 2023).

Further, as the Court instructed the jury in *TQ Delta,* "The ***ITU has a policy*** called its common patent policy, or CPP [that] ***requires SEP owners to license their patents on specific terms***."  The ETSI IPR policy does not include such a requirement.  ETSI requires that an SEP patent holder be "***prepared to*** grant irrevocable licenses on fair, reasonable and non-discriminatory." ETSI IPR Policy, Clause 6.1. FRAND

I now want to briefly tell you what this case is about. This case involves a dispute relating to four United States patents. I know that each of you saw the patent film this morning, but I need to give you some additional instructions now and on the record about a patent and how one is obtained.

Patents are either granted or denied by the United States Patent and Trademark Office, sometimes simply called, for short, the PTO.

Now a patent is a form of property called "intellectual property." And like all other forms of property, a patent may be bought or sold.

If the PTO grants the inventor a patent, that means that for 20 years from the date of the patent application, the patent owner can keep others from making, using, or selling that invention within the United States or from importing it into the United States without the patent holder's permission.

---

obligations under ETSI can be satisfied in two ways: (1) by offering a FRAND license, or (2) by negotiating in good faith towards a FRAND license. *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 407 F. Supp. 3d 631, 636-37 (E.D. Tex. 2019), aff'd, 12 F.4th 476(5th Cir. 2021) ("[A]s a matter of French law, to satisfy the FRAND obligation, a SEP-owner must either (1) offer a FRAND license, or (2) negotiate in good faith towards a FRAND license.").

These fundamental differences between the *TQ Delta* case and the present case require different instructions to the jury.

Samsung: Except as noted below, all Preliminary Instructions are from *TQ Delta, LLC v. CommScope Holding Co.*, No. 2:21-cv-000310-JRG, Preliminary Jury Instructions, Dkt. No. 526, Tr. 107:12-139:16 (E.D. Tex. Mar. 17, 2023). G+'s complaints are unfounded. The Preliminary Instructions are modeled from *TQ Delta* "except as noted below." The particular claim G+ complains at length about—*i.e.*, G+'s allegation that Samsung failed to include instructions regarding G+'s breach of duty to negotiate in good faith—is explicitly provided in Samsung's proposed instructions below. G+'s attempt to distinguish the ITU from ETSI is irrelevant. The instructions below are well-founded, based on the law, and pertinent to this case. Samsung's proposals should be adopted.

The violation of a patent holder's rights is called infringement, and a patent holder may seek to enforce a patent against persons it believes to be infringers by filing a lawsuit in a federal court. That is [what we have][5] / [why the plaintiff has brought its allegations][6] in this case.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO, the United States Patent and Trademark Office. The PTO is an agency of the United States Government, and it employs trained examiners who review patents and applications for patents.

The application submitted to the PTO includes within it what is called a specification. The specification contains a written description of the claimed invention, telling what the invention is, how it works, how to make it, and how to use it. The specification concludes or ends with one or more numbered sentences. These numbered sentences are the patent claims.

When a patent is eventually granted by the PTO, the claims, ladies and gentlemen, define the boundaries of its protection and give notice to the public of those boundaries.

Patent claims exist in two forms referred to as either independent or dependent claims. An independent claim does not refer to any other claim in the patent. It is independent. It's not necessary to look at any other claim to determine what an independent claim covers.

On the other hand, a dependent claim refers to at least one other claim in the patent. A dependent claim includes each limitation or element of that other claim or claims to which it refers,

---

[5] G+: G+'s proposed instruction is clear: what has occurred in this case is that G+, a patent holder, is "seek[ing] to enforce a patent against persons it **believes to be** infringers." This is the instruction provided in *Ambato Media, LLC v. Clarion Co., Ltd., et. al.,* 2-09-cv-00242-JRG (EDTX Jul. 06, 2012).

[6] G+: Samsung cites no authority for its instruction. G+ objects to Samsung's language, which incorrectly suggests the reason "why" G+ brought this suit is because it had the right to do so. Samsung's widespread infringement and bad faith negotiations, among other things, are why G+ brought this suit.

Samsung: This wording provides the necessary clarification that infringement is alleged in this case, rather than implying "we have" infringement in this case. G+'s proposal is prejudicial to Samsung.

or as we sometimes say, from which it depends, as well as those additional limitations or elements recited within the dependent claim itself.  Therefore, to determine what a dependent patent claim covers, it's necessary to look at both the dependent claim itself and the independent claim or claims to which it refers or from which it depends.

The claims of the patents-in-suit in this case use the word "comprising."  Comprising means including or containing.  A claim that includes the work "comprising," ladies and gentlemen, is not limited to the methods or devices having only the elements that are recited in the claim but also covers methods or devices that add additional elements.

Let me give an example.  If you take a claim that covers a table and the claim recites a table comprising a tabletop, legs, and glue, the claim will cover any table that contains these structures, even if the table also contains other additional structures, such as a leaf to go in the tabletop or wheels to go on the ends of the legs.  Now, that's a simple example using the word comprising and what it means.  In other words, it can have other features in addition to those covered by the patent.

[On the other hand, using the same simple example, if a claim recites a table comprising a tabletop, four legs, and glue, it will not cover a table that has only three legs, even if it still has a tabletop and glue.  In other words, if a single feature recited in the claim is missing, a product is

not covered by that claim. [However, there could still be infringement if the table with three legs was equivalent to the claimed table.]][7],[8]

Now, after the applicant files the application, an examiner at the United States Patent and Trademark Office reviews the application to determine whether or not the claims are patentable, that is to say that they're appropriate for patent protection, and whether or not the specification adequately describes the invention claimed.

In examining a patent application, the examiner reviews certain information about the state of the technology at the time the application was filed. The PTO searches for and reviews this type of information that is publicly available or that is submitted by the applicant. This type of information is called prior art. The examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time.

Prior art is defined by law, and I will give you, at a later time, specific instructions as to what constitutes prior art. However, in general, prior art includes information that demonstrates the state of the technology that existed before the claimed invention was made or before the application for a patent was filed.

---

[7] G+: G+ objects to this sentence as omitting the doctrine of equivalents, whereby a claim may be infringed even if an element is not literally present. Because the doctrine of equivalents is at issue in this case, this sentence of the instruction should not be given. If it is, G+'s added language should be included.

Samsung: Authority: *Vocalife LLC v. Amazon.com, Inc., et al.*, No. 2:19-cv-123-JRG, Trial Tr. at 131-132 (Preliminary Jury Instructions) (E.D. Tex. Oct. 1, 2020); *Optis Wireless Tech., LLC, et al. v. Apple Inc.*, 2:19-cv-0066-JRG, Trial Tr. at 178 (Preliminary Jury Instructions) (E.D. Tex. Aug. 3, 2020). G+ provides no reason to omit this instruction and it is important for the jury to understand the effect of a missing limitation. This instruction does not ignore the doctrine of equivalents, which is explained in a separate instruction.

[8] Samsung: Samsung objects to this instruction as the doctrine of equivalents inquiry would not be about the table as a whole, but rather would be directed to a specific limitation not literally present. Generalized testimony as to the overall similarity between the claims and the accused products is not sufficient to support a finding infringement under the doctrine of equivalents.

A patent contains a list of certain prior art that the examiner has considered. The items on this list are called the cited references. Now, after the prior art search and examination of the application, the examiner informs the applicant in writing of what the examiner has found and whether the examiner considers any claim in the application to be patentable, in which case it would be allowed. This writing from the examiner to the applicant is called an office action. Now, if the examiner rejects the claims, the applicant has an opportunity to respond to the examiner to try and persuade the examiner to allow the claims. The applicant also has a chance to change the claims or to submit new claims. The papers generated during these back-and-forth communications between the examiner and applicant are called the prosecution history.

This process may go back and forth between the applicant and the examiner for some time until the examiner is satisfied that the application meets the requirements for a patent. And in that case, the application issues a United States Patent. Or, in the alternative, if the examiner ultimately concludes that the application should be rejected, then no patent is issued. Sometimes patents are issued after appeals within the PTO or to a court.

[The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all other prior art that will be presented to you. In addition, there is the possibility that mistakes were made or that information was overlooked. Examiners have a lot of work to do and no process is perfect. Also, unlike a court proceeding, patent prosecution takes place without input from those who are later alleged to infringe the patent. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent. It is your job to consider the evidence presented by

the parties and determine independently whether or not Samsung has proven that the patent is invalid.][9]

[A United States patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office, has acted correctly in issuing the patent. This presumption of validity extends to all issued United States patents, including those that claim the benefit of an earlier filed patent application, such as so-called continuation or continuation-in-part applications.][10]

It's your job, ladies and gentlemen, as the jury to consider the evidence presented by the parties and determine independently and for yourselves whether or not the Defendants have proven that any claim of the patents at issue is invalid.

**[INTRODUCTION TO STANDARD ESSENTIAL PATENTS][11]**

---

[9] G+: Samsung misstates and over-simplifies the legal test for validity and improperly denigrates examiners and the PTO by suggesting they may have awarded patents to those that do not "deserve" it or that "mistakes" were made. The instruction contradicts the basic principle underlying the fact that patents are presumed valid.

Samsung: Authority: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction A.1; *Optis Wireless Tech., LLC, et al. v. Apple Inc.*, 2:19-cv-00066-JRG, Trial Tr. at 174-205 (Preliminary Jury Instructions) (E.D. Tex. Aug. 3, 2020). Samsung: This paragraph is verbatim from the FCBA model and properly explains the context of the examination process. There is nothing "denigrating" to examiners or the PTO as G+ alleges.

[10] G+: The presumption of validity is law. Samsung's proposed instruction suggesting "mistakes" by the patent examiner and that some patent holders do not "deserve" their patents is not law. At a minimum, if Samsung's instruction is allowed, it is necessary that it be put in context. This instruction is from Optis Wireless Technology, LLC et al v. Huawei Technologies Co., Ltd. et al 2-17-cv-00123, Dkt. 284 at 15 (EDTX 8/25/2018).

Samsung: The presumption of validity language already appears in the final jury charge. This paragraph is unnecessary in the preliminary instructions, when the jury has not yet been informed about burdens and presumptions. Moreover, repeating the presumption multiple times in this paragraph is prejudicial because it gives it undue emphasis. Nor is this language needed in light of Samsung's proposed instruction that the jury is obligated to assess validity despite the fact that the Patent Office issued a patent.

[11] G+: G+ Objects to this entire instruction as unnecessary and confusing to the jury. G+ contends there should be no FRAND issues from either party raised at trial. *See, e.g.*, Dkt. 228 (G+ Motion for Summary Judgment).

Samsung's breach of FRAND claims involve contract interpretation issues that should be decided by the Court. *See, e.g., Evolved Wireless, LLC v. Apple, Inc.*, No. CV 15-542-JFB-SRF, 2019 WL 831112, at *9

[The wireless communication technology claimed in the asserted patents is governed by certain technical standards. A standard is a uniform design for part of a product. Companies make devices in accordance with the same standards so that the devices made by different manufacturers can work together in the same ecosystem. So, during the course of the trial, it is likely that you'll hear the patents-in-suit referred to as standard essential patents or "SEPs."

---

(D. Del. Feb. 21, 2019) ("In the Proposed Pretrial Order in the *Apple* case, Apple proposes that the claims involving … breach of the FRAND obligations should be tried to the Court. ... The Court agrees. All of those claims require construction of contracts and are matters for the Court to determine as a matter of law. Infringement and invalidity should be tried to the jury … Interpretation of the terms of the various ETSI Intellectual Rights Policies, standards, and specifications at issue in connection with the FRAND obligation are also matters of law for the Court to determine. … Any potential recovery of attorney fees as damages need not be addressed at this time."). Damages for breach of FRAND is also not a jury question. *See, e.g., Evolved Wireless, LLC v. Apple, Inc.,* No. CV 15-542-JFB-SRF, 2019 WL 831112, at *7 (D. Del. Feb. 21, 2019) ("damages for a breach of FRAND obligations are equitable in nature (as analogous to equitable damages for bad faith), the determination is a matter for resolution by the Court.").

To the extent the Court determines FRAND issues are admissible at trial, G+ includes conditional instructions that should also be included.

Samsung: Samsung's breach of contract claim should be presented to the jury in view of this Court's precedent. Specifically, this Court has allowed breach claims regarding good faith negotiations and FRAND obligations related to ETSI to be tried to a jury, which was affirmed by the Fifth Circuit. *See HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 407 F. Supp. 3d 631, 636-37 (E.D. Tex. 2019), aff'd, 12 F.4th 476 (5th Cir. 2021) ("After deliberating, the jury returned a verdict on February 15, 2019, finding that (1) HTC had not shown by a preponderance of the evidence that Ericsson breached its contractual obligation to offer HTC a license, on FRAND terms, to Ericsson's cellular SEPs; (2) that HTC had proven by a preponderance of the evidence that Ericsson had breached its duty of good faith in carrying out its contractual obligation to negotiate with HTC for a license to Ericsson's cellular SEPs; and (3) that Ericsson had proven by a preponderance of the evidence that HTC had breached its duty to negotiate with Ericsson in good faith for a license to Ericsson's cellular SEPs."). Moreover, for the reasons outlined in Samsung's response, G+'s Motion for Summary Judgment should be denied. *See* Dkt. No. 243. Authority: *TQ Delta, LLC v. CommScope Holding Co.*, No. 2:21-cv-000310-JRG, Preliminary Jury Instructions, Dkt. No. 526, Vol. 1 Tr. 115:16-117:22 (E.D. Tex. Mar. 17, 2023); French new Civil Code, Article 1104 (providing "contracts must be negotiated, entered into and performed in good faith") (translated); French new Civil Code, Article 1112 (providing negotiations "must necessarily meet the requirements of good faith"); French old Civil Code, Article 1134 (providing contracts must be "performed in good faith") (translated). These instructions are based on *TQ Delta* and French law and provide important context regarding standard essential patents, FRAND, and the duty to negotiate in good faith under French law before the presentation of evidence begins. The jury should be provided some context regarding these terms, *e.g.*, SEP, ETSI, and FRAND in these preliminary instructions. *See also Huawei Techs. v. Verizon Commc'ns, Inc.*, No. 2:20-cv00030-JRG, Vol. 1 Tr., at 146-47 (E.D. Tex. July 6, 2021).

Standard essential patents, ladies and gentlemen, are patents that [read onto mandatory portions of a standard that standard-compliant devices must incorporate][12] / [ have been declared to be a part of a standard in a certain field.]  This standard is set and maintained by a global body to ensure that certain processes and devices operate and work in the same way anywhere in the world.

For example, it would be counterproductive for your cell phone to work only in the United States such that if you got on a plane and flew to London, England, and got off of the airplane, your cell phone wouldn't work.  The idea is that your phone that you use every day at your home in Texas should work in the United Kingdom or in Europe or in Asia or anywhere else on the planet.

These standards are set by what are known as standard setting organizations, which you might hear referred to for short as SSOs.  The standard setting organization in this case is the European Telecommunications Standards Institute.  The European Telecommunications Standards Institute is often referred to as "ETSI."  ETSI oversees the development of standards related to information and communications technologies.  Because the patents-in-suit are standard essential patents, you will hear about the standards and the contributions of these patents to the standard, all as part of this trial.  ETSI is a standard setting organization.

Now, if a patent implements technology that is covered by a part of a standard and it would not be technically possible to implement that part of the standard without infringing the patent, then the patent is called a standard essential patent, or an SEP.  And this means that if a company

---

[12] G+: This is the standard, and is not prejudicial. *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings* Ltd., 967 F.3d 1380, 1385 (Fed. Cir. 2020).

Samsung: This language is prejudicial to Samsung.  It is also legally incorrect.  There are some SEPs that incorporate optional features for a particular standard, including patents in this case.  There is thus a dispute between the parties about whether the asserted patents "read onto mandatory portions of a standard that standard-compliant devices must incorporate," rendering this an improper jury instruction.

makes a device that implements the part of the standard that's covered by a standard essential patent, then that company may need to obtain a license to use that technology.

ETSI has a policy called its Intellectual Property Rights Policy, which is sometimes shortened to the "IPR Policy."  ETSI's IPR Policy requires the owners of standard essential patents to [be prepared to][13] negotiate in good faith towards a  license on fair, reasonable, and non-discriminatory terms and conditions.  Fair, reasonable, and non-discriminatory is often reduced to

---

[13] G+: G+ has removed any reference to "willing to" and as a matter of compromise proposes that the parties implement the wording of the ETSI IPR Policy.  The ETSI IPR policy states that an SEP patent holder must be "*prepared to* grant irrevocable licenses on fair, reasonable and non-discriminatory." ETSI IPR Policy, Clause 6.1. *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 6:18-CV-00243-JRG, 2019 WL 126980, at *3 (E.D. Tex. Jan. 7, 2019) ("To determine [what] the FRAND commitment requires [], *French contract law requires the Court to first look at the express language of the contract*. Clause 6.1 of the ETSI IPR policy provides: []  When an ESSENTIAL IPR relating to a particular STANDARD or TECHNICAL SPECIFICATION is brought to the attention of ETSI, the Director-General of ETSI shall immediately request the owner to give within three months an irrevocable undertaking in writing that it is *prepared to* grant irrevocable licenses on fair, reasonable and non-discriminatory ("FRAND") terms[.]").

Samsung: G+'s instruction is a misrepresentation of what is required  under this Court's prior holdings and under French law governing the G+ declarations.  G+'s cited case, *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, supports Samsung's instruction.  It states: "Ericsson has made a commitment to the European Telecommunications Standards Institute ("ETSI") to license its SEPs on terms that are fair, reasonable, and non-discriminatory ("FRAND") to companies that practice the standards."  *HTC Corp.*, 2019 WL 39548 at *1.  It does not have any language about being "prepared to" negotiate in good faith as G+ alleges.  Samsung's instruction is more accurate as evidenced by G+'s own cited authority.  Further, the ETSI IPR Policy states an ETSI declaration means the declarant: "is prepared *to grant* irrevocable licenses on fair, reasonable, and non-discriminatory ("FRAND") terms and conditions[.]"  ETSI IPR Policy at Clause 6.1.  The policy itself says nothing about an owner being "prepared to" *negotiate* in good faith.  Further, *Huawei Techs. Co. v. T-Mobile US, Inc.* demonstrates Samsung's instruction is more accurate than G+'s because the SEP owner is obligated "to offer licenses on FRAND terms."  No. 2:16-cv-00052-JRG-RSP, 2017 WL 39548 (E.D. Tex. Aug. 29, 2017), report and recommendation adopted, No. 216CV00052JRGRSP, 2017 WL 3927177 (E.D. Tex. Sept. 6, 2017).  Indeed, the obligation to negotiate in good faith arises under French law, and  G+'s own French expert, Professor Borghetti, states there is a duty to negotiate in good faith and not merely that the SEP owner is "willing to" or "prepared to" negotiate in good faith.  *See* Borghetti Op. Rpt. at 35 ("Given the general duty to negotiate in good faith that exists in French law, a formal undertaking to negotiate creates an obligation to negotiate in good faith.  The obligation undertaken by a patent owner through an ETSI FRAND Licensing Declaration to be prepared to negotiate toward licenses on FRAND terms with potential licensees is thus necessarily an obligation to negotiate in good faith."); SAM-GC02913083 ('443 5G Declaration); SAM-GC02913102 ('130 5G Declaration); SAM-GC02913115 ('776, '881 5G Declarations); SAM-GC02913138 ('776 LTE Declaration).  The signatory of an ETSI IPR declaration declares that it is "(1) *prepared to grant* irrevocable licenses under this/these IPR(s) on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy; and (2) will comply with Clause 6.1 bis of the ETSI IPR Policy."  *See, e.g.,* SAM-GC02913083 (emphasis added).

an abbreviation, "FRAND."    And you will hear this phrase, "fair, reasonable, and non-discriminatory terms and conditions" or "FRAND" throughout trial.

[ETSI's IPR Policy requires that all disagreements between parties about FRAND rates be handled in the court of law.][14]

Any company can submit a declaration to ETSI saying its patent is standard essential, but that does not mean the patent is actually essential to the standard.    It just means that the company is promising [it is prepared][15] to negotiate in good faith towards a license on FRAND terms.

If a company declares its patents essential to ETSI, it makes a commitment to [be prepared to[16]] negotiate in good faith towards a license on fair, reasonable, and non-discriminatory, or

---

[14] G+: ETSI IPR Policy at Clause 4.3. It is important for the jury to understand that where a dispute in negotiations arises regarding FRAND terms, ETSI does not prohibit filing an infringement suit as G+ has, but rather expressly requires that the dispute be resolved in Court.  G+ removed the final part of the clause ("in the country where the dispute arises") based on Samsung's objection that this is somehow confusing or related to jurisdictional issues not before the jury.

Samsung: G+ cites no authority for this instruction.  It was not provided in the *TQ Delta* preliminary instructions, which these instructions are based on, and is unwarranted.  *TQ Delta, LLC v. CommScope Holding Co.*, No. 2:21-cv-000310-JRG, Preliminary Jury Instructions, Dkt. No. 526, Vol. 1 Tr. 115:16-117:22 (E.D. Tex. Mar. 17, 2023).  Further, it is irrelevant and confusing.  There is no reason for the Court to inform the jury of only this one aspect of ETSI's IPR Policy.

[15] G+: G+ has removed any reference to "willing to" or "bad faith" and as a matter of compromise proposes that the parties implement the wording of the ETSI IPR Policy. The ETSI IPR policy states that an SEP patent holder must be "***prepared to*** grant irrevocable licenses on fair, reasonable and non-discriminatory." ETSI IPR Policy, Clause 6.1. *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 6:18-CV-00243-JRG, 2019 WL 126980, at *3 (E.D. Tex. Jan. 7, 2019) ("To determine [what] the FRAND commitment requires [], ***French contract law requires the Court to first look at the express language of the contract***. Clause 6.1 of the ETSI IPR policy provides: []  When an ESSENTIAL IPR relating to a particular STANDARD or TECHNICAL SPECIFICATION is brought to the attention of ETSI, the Director-General of ETSI shall immediately request the owner to give within three months an irrevocable undertaking in writing that it is ***prepared to*** grant irrevocable licenses on fair, reasonable and non-discriminatory ("FRAND") terms[.]").

Samsung: Samsung objects to the "it is prepared" language because it is a misrepresentation of what is required  under this Court's prior holdings and under French law governing the G+ declarations.  Samsung incorporates its objections to this language by reference.  *See* n.13, *supra*.

[16] G+: G+ has removed any reference to "willing to" and as a matter of compromise proposes that the parties implement the wording of the ETSI IPR Policy, Clause 6.1. *See, also, HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 6:18-CV-00243-JRG, 2019 WL 126980, at *3 (E.D. Tex. Jan. 7, 2019).

FRAND, terms and conditions.  The declaration to ETSI forms a contract between the company and the respective standard setting organization.

[If the owner of a standard essential patent negotiates in good faith or makes an offer to license the standard essential patents under FRAND terms, this satisfies the SEP owners FRAND commitments.[17] If the implementer of the standard breaches its obligation to negotiate in good faith, then the SEP holder has the right to discharge its obligation to license the standard essential patents under FRAND terms.][18]

---

Samsung: Samsung objects to the "be prepared to" language because it is a misrepresentation of what is required  under this Court's prior holdings and under French law governing the G+ declarations.  Samsung incorporates its objections to this language by reference.  *See* n.13, n.15, *supra*.

[17] G+: *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 407 F. Supp. 3d 631, 636-37 (E.D. Tex. 2019), aff'd, 12 F.4th 476(5th Cir. 2021) ("[A]s a matter of French law, to satisfy the FRAND obligation, a SEP-owner must either (1) offer a FRAND license, or (2) negotiate in good faith towards a FRAND license.").

Samsung:  Under French law, there is ***always*** a duty to negotiate in good faith.  *See* n.18, *supra*. The French law experts in this case for G+ and Samsung both consistently take this position.  *See id.*  Therefore, this instruction is improper and prejudicial because it suggests that G+'s duty to negotiate in good faith discharges if an offer is made on FRAND terms.  This instruction is thus misleading with respect to Samsung's breach of contract claim against G+, as evidenced by G+'s own expert and the extensive citations in the case to French civil code.  *See id.*

[18] G+: Samsung's desire to instruct the jury on only issues related to its claims, and leave out the legal standard with regards to G+'s claims, must be rejected. If the jury is to be instructed regarding standard essential patents, ETSI, FRAND, and the duty to negotiate in good faith under French law before the presentation of evidence begins, it must be provided with context for evidence both G+ and Samsung will present at trial. There was no claim of breach of good faith by the implementer in *TQ Delta*, so the fact that this instruction was not provided in that case is irrelevant. G+'s instruction says nothing about revoking FRAND obligations. G+'s French Law expert explained "the duty of the implementer to negotiate in good faith with the patent owner" in detail.  *See, e.g.*, Borghetti Opening Report at ¶¶ 36-39 (reciprocal duties of good faith), 40-59 (discharge FRAND obligations based on breach of duty of good faith). If the jury is going to be instructed in detail about FRAND commitments in initial instructions as Samsung proposes, the jury should be told that these obligations can cease if an implementer fails to negotiate in good faith.  The jury will hear evidence about G+'s breach claim at trial and should have context for why these facts are relevant.  *See, e.g., Realtek Semiconductor Corp. v. LSI Corp.*, 946 F. Supp. 2d 998, 1007 (N.D. Cal. 2013) (supporting finding of discharge of FRAND rights holding that "an injunction may be warranted where an accused infringer of a standard-essential patent outright *refuses* to accept a RAND license"); *see, also, e.g.*, Sidak, Grogory, *The FRAND Contract*, The Criterion Journal on Innovation, Vol 3 at 10 (Jun. 15, 2018) ("If the SEP holder has made a legitimately FRAND offer to that particular implementer, then the SEP holder has fully discharged its duty to that implementer *arising from the SEP holder's FRAND contract with the SSO*. In particular, if the implementer has rejected a legitimately FRAND offer, then the SEP holder has no duty to continue negotiating license terms with

So, for example, if Company A declares a patent standard essential to ETSI, then that declaration forms a contract between Company A and ETSI, the standard setting organization, which includes a promise that Company A is prepared to grant licenses on fair, reasonable, and non-discriminatory terms.

Now, if Company B, a second company, implements a standard covered by ETSI, then Company B is considered a third-party beneficiary to the contract between Company A and ETSI, the standard setting organization. This means Company B can enforce the terms of the contract between the standard essential patent owner and the standard setting organization, including the

---

that implementer; it necessarily follows that the SEP holder has no duty to make additional offers *on FRAND terms*.").

Samsung: G+ cites no authority for this instruction. It was not provided in the *TQ Delta* preliminary instructions, on which these instructions are based, and is unwarranted. *TQ Delta, LLC v. CommScope Holding Co.*, No. 2:21-cv-000310-JRG, Preliminary Jury Instructions, Dkt. No. 526, Vol. 1 Tr. 115:16-117:22 (E.D. Tex. Mar. 17, 2023). Further, this language is inappropriate and unnecessary in the preliminary instructions. The final jury instructions already address the good faith requirements of the parties.

G+'s instruction is factually and legally incorrect because the duty to license on FRAND terms is "irrevocable." ETSI IPR Policy at Clause 6.1. *See also* SAM-GC02913083 ('443 5G Declaration); SAM-GC02913102 ('130 5G Declaration); SAM-GC02913115 ('776, '881 5G Declarations); SAM-GC02913138 ('776 LTE Declaration). Samsung's French law expert explained that, under French law, the FRAND obligation does *not* terminate. Molfessis Reb. Rpt. at ¶ 25 ("To consider that a SEP holder can discharge themselves from their essential obligation, which they have willingly undertaken, fundamentally contradicts the core principles of ETSI as a standards organization, undermines the very purpose behind the establishment of the ETSI IPR Policy, and overlooks the logic and structure of the ETSI IPR Declarations (**A**). Since the commitment contained in the IPR Declaration is irrevocable, SEP holders are bound to seek an agreement in good faith on FRAND terms with all standard implementers and cannot ultimately reverse their decision and choose not to license (**B**)."). Thus, it would be legally erroneous to instruct the jury the SEP holder's obligation to operate under FRAND is "terminated."

G+ attempts to suggest that G+'s duty to negotiate in good faith can "discharge" is unfounded and prejudicial. Rather, G+'s own French law expert (both parties agree French law applies when analyzing the breach of ETSI obligation claims) articulates that the legal duty is an obligation to negotiate in "good faith." Borghetti Op. Rpt. at ¶¶ 36-41 ("Under French law, the licensee must also negotiate in good faith towards a license on FRAND terms, and the licensee can impede that conclusion through its passivity or bad faith dealing"). ***This matches French law.*** *See* French new Civil Code, Article 1104 (providing "contracts must be negotiated, entered into and performed in good faith") (translated); French new Civil Code, Article 1112 (providing negotiations "must necessarily meet the requirements of good faith"); French old Civil Code, Article 1134 (providing contracts must be "performed in good faith") (translated).

right to obtain a license from the standard essential patent owner on fair, reasonable, and non-discriminatory terms.

[However, if Company A negotiates towards a license in good faith or makes an offer to license the standard essential patents under FRAND terms, and Company B breaches its obligation to negotiate in good faith, then company A has satisfied its duties under FRAND and no longer has any obligations under FRAND to Company B.][19]

Now, in this case [the plaintiff G+ contends it was prepared to grant a license under FRAND terms and negotiated in good faith towards a license with Samsung, but that Samsung breached its duty to negotiate in good faith, and therefore G+ no longer has any obligations to license the asserted patents to Samsung under FRAND terms.][20] Samsung contends that G+ has breached its obligation to [either] offer the asserted patents for license on FRAND terms and conditions [or] / [and breached its obligation to] negotiate in good faith towards that FRAND

---

[19] G+: G+ has removed any reference to "willing to" or "bad faith" and as a matter of compromise proposes that the parties implement the wording of the ETSI IPR Policy, Clause 6.1. *See, also, HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 6:18-CV-00243-JRG, 2019 WL 126980, at *3 (E.D. Tex. Jan. 7, 2019).

Samsung: Samsung incorporates its objections to the "no longer has any obligations under FRAND" language, "as provided above by reference. *See* n.13, n.17, *supra*.

[20] G+: G+ has removed any reference to "willing to" or "bad faith" and as a matter of compromise proposes that the parties implement the wording of the ETSI IPR Policy, Clause 6.1. *See, also, HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 6:18-CV-00243-JRG, 2019 WL 126980, at *3 (E.D. Tex. Jan. 7, 2019).

Samsung: Samsung objects to informing the jury about G+'s contention about Samsung's conduct in the FRAND negotiation before informing the jury that G+ has a FRAND obligation that Samsung alleges was breached. This context is necessary to understand G+'s contention as to Samsung's conduct. Samsung's instruction provides the appropriate instruction about G+'s contention. Further, GComm's pleaded breach of contract claims arose only *after* Samsung pleaded breach of contract. *Compare* Dkt. No. 18 (Samsung's breach of FRAND contract counterclaim filed June 13, 2022), *with* Dkt. No. 49 (GComm's First. Am. Compl. adding breach of contract claims filed Nov. 18, 2022). Additionally, Samsung incorporates its objections any instruction suggesting that G+ no longer has an obligation to negotiate in good faith or was "prepared to negotiate" as provided above by reference. *See* n.13, n.17, and n.18 , *supra*. Further, G+ cites no authority for this instruction.

license. [G+ contends that Samsung breached its duty to negotiate a FRAND license in good faith.][21] I'll give you further instructions on FRAND terms and conditions at the conclusion of the trial.

## THE POSITIONS OF THE PARTIES

Now, to help you follow the evidence in this case, I'll give you a brief summary of the parties in this case and their positions. As I'm sure you all know, the party that brings a lawsuit is called the Plaintiff. In this case, the Plaintiff is G+ Communications, LLC, and you'll hear them referred to throughout trial simply as either Plaintiff, G+ [or GComm][22]. [You may also hear reference to a company called ZTE Corporation, or ZTE. ZTE was the owner of the asserted patents at the time Samsung is first accused of infringing these patents. ZTE is not a party to this litigation.] / [As I mentioned, patents are property and can be bought and sold. In this case, the plaintiff, G+, purchased all the asserted patents from a company called ZTE Corporation, which may be referred to as "ZTE."][23]

---

[21] Samsung: Authority: French new Civil Code, Article 1104 (providing "contracts must be negotiated, entered into and performed in good faith") (translated); French new Civil Code, Article 1112 (providing negotiations "must necessarily meet the requirements of good faith"); French old Civil Code, Article 1134 (providing contracts must be "performed in good faith") (translated). Samsung: Both parties agree French law applies to evaluate G+'s negotiation breach claim. French law codifies the duty as requiring "good faith." And both parties' French legal experts articulate the negotiation duty, under French law, as requiring both parties to a negotiation to negotiate in "good faith." *See* Molfessis Op. Rpt. at ¶¶ 50-58; Borghetti Op. Rpt. at ¶¶ 36-43 (G+'s expert explaining, *e.g.*, "The *code civil* does not provide a definition of good faith or its opposite, bad faith. It is generally accepted, however, that good faith, in the context of the negotiation or performance of a contract, consists in essence in a duty of loyalty and sincerity. French courts' decisions give examples of how a party can breach the duty to act in good faith, and thus act in bad faith, especially in the context of contractual negotiations."). Samsung's proposed instruction is thus legally correct, and G+'s attempts to interject a "bad faith" requirement to prejudice the jury is improper.

[22] G+: Plaintiff G+ is referred to as G+. A Court instruction is not required to explain that GComm could refer to G+ Communications.

Samsung: The jury may hear testimony and/or see exhibits referring to the Plaintiff as "GComm." It is appropriate to tell the jurors at the outset of the case that G+ and GComm both mean the plaintiff.

[23] G+: Samsung's language is confusing. The opening sentence states that the jury will now hear a "brief summary of *the parties in this case* and their positions." ZTE is not a party in this case. Samsung cites no support for its instruction. There is also no reason to repeat that patents can be bought and sold. The jury

As you know, the party against whom a lawsuit is brought is called the Defendant.  In this case, the Defendants are Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. These parties are either referred to collectively as Samsung or as the Defendants.

Now, as I told you during jury selection, this is a case of alleged patent infringement.  And, as I mentioned, there are four separate United States patents that have been asserted by G+ in this case against Samsung.

The first asserted patent in this case is United States Patent No. 8,761,776.  And patents, you should know, are commonly referred to by their last three digits.  So, in this case, Patent No. 8,761,776 will be referred to as the '776 patent.

The other three asserted patents are as follows: U.S. Patent No. 10,736,130, which will be referred to as the '130 patent, U.S. Patent No. 10,594,443, which will be referred to as the '443 patent, and U.S. Patent No. 9,184,881, which will be referred to as the '881 patent.

Now, these patents can be referred to and will be referred to at various times of trial collectively and together as the Patents-in-Suit.  They are sometimes also called the Asserted Patents.

Now, the Plaintiff in this case, G+, contends that the Defendants, Samsung, are and have [willfully][24] infringed certain claims of the four patents-in-suit by importing, making, or selling

---

will not hear about ZTE because G+ bought the patents from ZTE; it will hear about ZTE because when Samsung began infringing ZTE was the owner of the patents and therefore would have been present at the hypothetical negotiation.  Who the patents were bought from is irrelevant (*i.e.* if there was an intermediary purchase between the time of the hypothetical negotiation and the plaintiff, that would not be mentioned to the jury). If any instruction is provided about ZTE here (which G+ does not believe is necessary), G+'s instruction should be provided.

   Samsung: This instruction explains why the jury will hear about ZTE in the case.

[24] G+: G+'s contention that Samsung infringes does not require a finding of willfulness. This is confusing to group together as proposed by Samsung.  The jury should be made aware of each of G+'s individual contentions.

   Samsung: This instruction is simpler and accurate.

17

products that include G+'s patented technology.  G+ further contends that Samsung has and
continues to contribute to the infringement of others.  G+ also contends that it is entitled to money
damages as a result of such infringement.  [G+ also contends that Samsung's infringement is
willful.]²⁵

Now, the Defendants, Samsung, deny that they infringe any of the claims of G+'s asserted
patents, and Samsung denies that any infringement has been willful.  Samsung also contends that
G+ is not entitled to any money damages.  Samsung also contends that the asserted claims of the
patents-in-suit are invalid [because they were not new, they were obvious, and/or the patentee,
G+'s predecessor-in-interest ZTE, did not follow the rules requiring the patent's written
description to fully describe and enable the inventions set forth in the asserted claims.]²⁶

[Samsung contends G+ is obligated to license the asserted patents to Samsung on FRAND
terms.  G+ contends that G+ negotiated in good faith with Samsung and that G+ made one or more

---

²⁵ G+: willfulness is an independent contention.  This is important context for the jury for the evidence
it will hear, and should not be reduced to a single word in a separate contention.

Samsung:  G+ provides no authority for this addition and it is duplicative and prejudicial against Samsung
because this paragraph already states that G+ contends Samsung willfully infringes.

²⁶ G+: Samsung's proposed language is prejudicial and has no support.  Samsung's suggestion that ZTE
"did not follow the rules" is prejudicial and confusing as ZTE is not a party to this case and a finding of no
written description support does not mean the patent applicant "did not follow the rules."  The final jury
instructions in the *Solas* case cited by Samsung do not include this instruction – the do not refer to any party
not "following the rules" and never mention written description at all.

Further, there is no reason to elaborate here on contentions; it is redundant of later instruction on each
issue. The infringement instruction above does not delve into literal, DOE, and indirect infringement.

Samsung's proposal incorrectly instructs the jury that anticipation, obviousness, and written description
are at issue as to all asserted claims.  That is not the case. For example, Samsung has no anticipation defense
as to any claims of the '130 patent.

Samsung: Authority: *Solas OLED Ltd. v. Samsung Display Co., Ltd.*, 2:19-cv-00152-JRG, Dkt. 354 (Final
Jury Instructions) (E.D. Tex. Mar. 8, 2021).  G+ fails to articulate any impropriety with this instruction,
which is a recitation of Samsung's contentions.  The instruction plainly says "and/or," which captures that
all invalidity grounds do not apply to all claims.  Referring to the written description standard as a "rule" is
not improper, but rather a valid plain language description of the statutory requirements.  Because ZTE
owned the patents when they issued, the failure to comply with the written description occurred while ZTE
was the patentee.

offers to Samsung to license the standard essential patents on FRAND terms, and that each of these actions independently satisfied G+'s FRAND commitments.[27] G+ further contends that Samsung breached its obligation to negotiate in good faith, and in response to Samsung's breach G+ discharged its obligation to license the asserted patents to Samsung under FRAND terms.][28]

---

[27] G+: *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 407 F. Supp. 3d 631, 636-37 (E.D. Tex. 2019), aff'd, 12 F.4th 476(5th Cir. 2021) ("[A]s a matter of French law, to satisfy the FRAND obligation, a SEP-owner must either (1) offer a FRAND license, or (2) negotiate in good faith towards a FRAND license.").

[28] G+: There was no claim of breach of good faith by the implementer in *TQ Delta*, so the fact that this instruction was not provided in that case is irrelevant. G+'s instruction says nothing about revoking FRAND obligations. G+'s French Law expert explained "the duty of the implementer to negotiate in good faith with the patent owner" in detail. *See, e.g.,* Borghetti Opening Report at ¶¶ 36-39 (reciprocal duties of good faith), 40-59 (discharge FRAND obligations based on breach of duty of good faith). The jury should be instructed before the start of evidence of G+'s contentions that G+'s FRAND obligations ceased because Samsung failed to negotiate in good faith. *See, e.g., Realtek Semiconductor Corp. v. LSI Corp.,* 946 F. Supp. 2d 998, 1007 (N.D. Cal. 2013) (supporting finding of discharge of FRAND rights holding that "an injunction may be warranted where an accused infringer of a standard-essential patent outright *refuses* to accept a RAND license"); *see, also, e.g.,* Sidak, Grogory, *The FRAND Contract*, The Criterion Journal on Innovation, Vol 3 at 10 (Jun. 15, 2018) ("If the SEP holder has made a legitimately FRAND offer to that particular implementer, then the SEP holder has fully discharged its duty to that implementer *arising from the SEP holder's FRAND contract with the SSO*. In particular, if the implementer has rejected a legitimately FRAND offer, then the SEP holder has no duty to continue negotiating license terms with that implementer; it necessarily follows that the SEP holder has no duty to make additional offers *on FRAND terms*.").

Samsung: Samsung objects to this instruction at least for the reasons explained above regarding G+'s duty to negotiate in good faith continuing to apply. *See* n.13, 17-18. Samsung's instruction below is more accurate because it actually reflects what Samsung contends, *i.e.*, that G+ **breached its obligations**. G+'s instruction is incorrect because it simply says Samsung contends G+ is obligated. That is not Samsung's contention. Samsung further objects to this instruction as a one-sided portrayal of the issues the jury will hear, focusing almost entirely on aspects that are favorable to G+ and failing to reflect Samsung's contentions about G+'s unreasonably delay and unreasonable refusal to sign an NDA, precluding negotiations. Samsung also objects to not being given proper time to respond to G+'s last-minute instruction changes and new caselaw citations.

There is no language in G+'s (ambiguous) citation that supports this jury instruction. It does not use the terms "bad faith" or "held out," nor does it instruct the jury "you need not consider the consequences of the FRAND commitment." In fact, it instructs the jury that it must evaluate a FRAND rate (thus showing G+'s instruction that the jury "need not consider the consequences of the FRAND commitment" is improper in a SEP case requiring FRAND terms). *See Optis Wireless Tech., LLC, et al., v. Huawei Techs. Co. Ltd., et al.,* No. 2:17-cv-123-JRGRSP, Dkt. 310 at 58:8-16 (E.D. Tex. Aug. 24, 2018). Samsung's instruction accurately states G+'s contention because it says "G+ also contends that Samsung has breached a duty to negotiate a FRAND license in good faith." G+'s version is inaccurate and unduly prejudicial to Samsung. Samsung incorporates its objections to the "bad faith or holds out" language and to any instruction suggesting that G+ no longer has an obligation under FRAND as provided in the "Introduction to Standard Essential Patent" section above by reference. Further, G+ cites no authority for this instruction. It was not

[The Defendants, Samsung, also argue that the Plaintiff, G+, has breached its obligations to offer the Asserted Patents on fair, reasonable, and non-discriminatory terms and conditions, or FRAND, F-R-A-N-D, terms and conditions.

G+ denies that it has breached its obligations to offer the Asserted Patents on FRAND terms and conditions.  G+ also contends that Samsung has breached a duty to negotiate a FRAND license in good faith.  As I mentioned earlier, I will give you further instructions on FRAND terms and conditions at the conclusion of this trial.[29]][30]

Now, I know there are new words, and I know there are a lot of new concepts that have been thrown at you today, ladies and gentlemen.  I am going to define a lot of these words and concepts for you as we go through my instructions.  The attorneys are going to discuss many of these in their opening statements.  The witnesses are going to help you through their testimony to understand these terms and concepts.

## OVERVIEW OF APPLICABLE LAW

Now, my job in this case is to tell you what the law is, to handle matters and rulings on evidence and procedure, and to oversee the conduct of the trial as efficiently as possible, and to maintain the proper decorum of this courtroom.

---

provided in the *TQ Delta* preliminary instructions, which these instructions are based on, and is unwarranted at least because this more detailed discussion is more appropriate for final instructions.  *TQ Delta, LLC v. CommScope Holding Co.*, No. 2:21-cv-000310-JRG, Preliminary Jury Instructions, Dkt. No. 526, Vol. 1 Tr. 115:16-117:22 (E.D. Tex. Mar. 17, 2023).

[29] Authority: *TQ Delta, LLC v. CommScope Holding Co.*, No. 2:21-cv-000310-JRG, Preliminary Jury Instructions, Dkt. No. 526, Tr. 117:23-118:4 (E.D. Tex. Mar. 17, 2023).  Samsung: These instructions are nearly identical to those given by the Court in *TQ Delta*, except as modified to reflect G+'s contention.  G+'s proposed "alternate" instruction fails to reflect Samsung's breach of contract claim and, therefore, is legally deficient.

[30] G+: G+ objects to these instructions in their entirety.  *See,* MSJ. If Samsung is allowed to pursue its claim for breach of FRAND, G+ includes alternate instructions.

In determining the law, it is specifically my job to determine the meaning of the claim language from the asserted claims of the patents-in-suit that needs interpretation.  I have already determined the meanings of the claims of the patents-in-suit, and you must accept the meanings or constructions that I give you and use those meanings when you decide whether any particular claim has or has not been infringed and whether or not any particular claim is invalid.  And you are going to be given a document, ladies and gentlemen, in a few moments that will reflect these meanings or constructions that I have determined.

Now, for any of the claim language or claim terms that I have not provided you with a specific definition or construction, you should apply the plain and ordinary meaning.  But if I have provided you with a definition, sometimes called a construction, you are to apply my definition to those terms throughout the case.

However, my interpretation of the language of the claims should not be taken as an indication by you that I have a personal opinion or any opinion at all regarding the issues of infringement and validity.  Those issues, ladies and gentlemen, are yours as the jury to decide, and they are yours to decide alone.

In deciding the issues in this case, you will be asked to consider specific legal standards.  I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

The first issue you will be asked to decide is whether G+ has shown, by a preponderance of evidence, that Samsung has infringed any asserted claims of the asserted patents.  Infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but not infringement as to another.

There are different ways that a patent can be infringed, and I'll explain the requirements for each of these types of infringement to you in detail at the conclusion of the case, but, in general, Samsung may infringe the asserted patents by making, using, selling, or offering for sale in the United States, or by importing into the United States, a product meeting all the requirements of an asserted apparatus claim or by using a method meeting all the requirements of an asserted method claim.  Samsung may also indirectly infringe the asserted patents by contributing to infringement by another person or entity, or by inducing another person or entity to infringe.  I will provide you with more detailed instructions on the requirements for each type of infringement at the conclusion of the case.

The second issue you will be asked to decide is whether the claims of the asserted patents are invalid.

[From the issuance of a patent, it is presumed that the claimed invention is "novel" (not anticipated), "useful," "not obvious," and satisfies the other legal requirements for a valid U.S. patent.][31]

---

[31] G+: This sentence explains what the presumption of validity is, which is an important consideration for the jury when assessing validity.  The following paragraph is the only agreed preliminary instruction mentioning the presumption of validity, and it does not explain what this presumption is; rather, it explains how it can be overcome.  This language is from *SynQor, Inc. v. Vicor Corporation*, 2-14-cv-00287, Dkt. 737 (EDTX 10/26/2022).

Samsung: This instruction is redundant to what follows and unnecessarily lengthens the preliminary instructions.

Samsung: These extra instructions are one-sided and unnecessary.  This paragraph is unnecessary in the preliminary instructions, when the jury has not yet been informed about burdens and presumptions and makes the preliminary instructions longer than necessary.  G+'s citation relies on final jury instructions, not preliminary instructions.  In addition, the preliminary instruction on infringement does not discuss the burden of proof and referring to the burden for only invalidity is unduly prejudicial to Samsung.  Repeating the "presumption" concept more than once gives it improper emphasis and is prejudicial to Samsung.  The agreed-upon portion of this instruction (in the next paragraph) already states that a patent is presumed to be valid.  Samsung also incorporates by reference its objections to similar language G+ proposes in the Final Instructions.  *See infra* Validity ("This presumption of validity extends to all issued United States patents. In order to overcome this presumption, Samsung must establish by clear and convincing evidence that the

Invalidity is a defense to infringement.  Therefore, even though the PTO has allowed the asserted claims and even though a United States patent as issued by the PTO is presumed to be valid, you, the jury, must decide whether those claims are invalid after hearing all the evidence presented during the course of the trial.[32]

[A patent may be invalid for a number of reasons, including because it claims subject matter that is not new or is obvious.]  For a claim to be invalid because it is [anticipated]/[not new], Samsung must show, by clear and convincing evidence, that all of the elements of a claim are present [as arranged in the claims, in a single device, method, printed publication, or patent that existed before the effective filing date of the claimed invention][33] / [in a single device or method, or sufficiently described in a single previous printed publication or patent].  We call these "prior art." [If a claim is not new, it is said to be anticipated.] [You'll need to consider a number of questions in deciding whether the invention claimed in the asserted patents is anticipated, and I'll provide you with more detailed instructions on these issues at the conclusion of the trial.]

[For a patent claim to be invalid because it is obvious, the Defendants must show by clear and convincing evidence that the claim] / [Another way that a claim may be invalid is that it may have been obvious.  Even though every element of a claim is not shown or sufficiently described in a single piece of "prior art," the claim may still be invalid if it] would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time.  You will need

patent owner's patent or any claim in the patent is not valid.").

[32] Samsung: <u>Authority</u>: *TQ Delta, LLC v. CommScope Holding Co.*, No. 2:21-cv-000310-JRG, Preliminary Jury Instructions, Dkt. No. 526, Tr. 107:12-139:16 (E.D. Tex. Mar. 17, 2023); *Optis Wireless Tech., LLC, et al. v. Apple Inc.*, 2:19-cv-00066-JRG, Trial Tr. at 174-205 (Preliminary Jury Instructions) (E.D. Tex. Aug. 3, 2020).

[33] G+: Samsung's instruction is legally incorrect because it omits the requirement that the prior art contain all elements "as arranged in the claims." *Brown v. 3M*, 265 F.3d 1349, 1351, 60 U.S.P.Q.2d 1375 (Fed. Cir. 2001) ("To anticipate, every element and limitation of the claimed invention must be found in a single prior art reference, arranged as in the claim.").

to consider a number of questions in deciding whether the inventions claimed in the asserted patents are obvious.  I will provide you detailed instructions on these questions at the conclusion of the case.

A patent may also be invalid if its description in the specification does not meet [certain requirements.  To be valid, the disclosure of a patent must meet][34] the "written description" requirement. [For a patent claim to be invalid for a lack of an adequate written description, the Defendants must show by clear and convincing evidence that the specification does not describe the claimed invention with sufficient detail so that one skilled in the art can reasonably conclude that the inventor actually had possession of the invention that they're claiming.] / [In order to meet this written description requirement, the description of the invention in the specification portion of the patent must be detailed enough to demonstrate that the applicant actually possessed the invention as broadly as claimed in the claims of the issued patent.] The disclosure of a patent must also meet the "enablement" requirement.  To meet this requirement, the description in the patent has to be sufficiently full and clear to have allowed persons of ordinary skill in the field of technology of the patent to make and use the invention without undue experimentation, at the time the patent application was originally filed.[35]

If you decide that any claim has been infringed and is not invalid, then you'll need to decide whether Samsung's infringement has been willful, and to decide the amount of money damages that are to be awarded to the G+ as compensation for that infringement.

---

[34] G+: Samsung improperly frames the question as the requirement "to be valid." This is prejudicial. A patent is presumed valid. Samsung bears the burden to establish invalidity.

[35] Samsung: Authority: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction A.4. Samsung:  Samsung's proposed instructions reflect the FCBA model verbatim. Much of this language G+ itself first proposed.  It is unclear why a shift to different language for these high level instructions is warranted.  Samsung's proposed language is easier to understand.

[A damage award in a patent case, ladies and gentlemen, must be adequate to compensate the patent holder for the infringement, and in no event may a damage award be less than what the patent holder would have received if it had been paid a reasonable royalty for the use of its patent.][36]

I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

[The next issue that you are going to be asked to decide is [whether Samsung breached its obligation to negotiate in good faith during the parties pre-suit negotiations. If you find that Samsung breached its obligation to negotiate in good faith, you must determine whether G+ discharged its obligation to license the asserted patents to Samsung under FRAND terms.

You are next going to be asked to decide ][37] whether G+ has breached its contractual obligations to ETSI by failing to offer Samsung a license to the asserted patents on FRAND terms

---

[36] G+: Samsung proposes lengthy preliminary instructions on numerous issues. A brief statement on the measure of damages will prepare the jury to understand the evidence it is about to hear.

Samsung: G+ cites no authority and this instruction is unnecessary based on the following statement that detailed instructions will be given at the conclusion of the case.

[37] G+: The jury should be instructed to consider whether Samsung breached its FRAND obligations to negotiate in good faith. The jury must be instructed on G+'s right to discharge its FRAND obligations if Samsung is found to have breached its duties. G+ objects to informing the jury it must consider FRAND as part of damages in this case as explained in the damages instructions. Nonetheless, if the jury is instructed it must consider FRAND, it is even more important that the jury understand it can consider FRAND and determine G+ has no obligations if Samsung breached and G+ discharged its FRAND commitments. This is consistent with French law, as explained by G+'s French Law expert. *See, e.g.,* Borghetti Opening Report at ¶¶ 36-39 (reciprocal duties of good faith), 40-59 (discharge FRAND obligations based on breach of duty of good faith); *Realtek Semiconductor Corp. v. LSI Corp.,* 946 F. Supp. 2d 998, 1007 (N.D. Cal. 2013) (supporting finding of discharge of FRAND rights holding that "an injunction may be warranted where an accused infringer of a standard-essential patent outright *refuses* to accept a RAND license"); *see, also, e.g.,* Sidak, Grogory, *The FRAND Contract,* The Criterion Journal on Innovation, Vol 3 at 10 (Jun. 15, 2018) ("If the SEP holder has made a legitimately FRAND offer to that particular implementer, then the SEP holder has fully discharged its duty to that implementer *arising from the SEP holder's FRAND contract with the SSO.* In particular, if the implementer has rejected a legitimately FRAND offer, then the SEP holder has no duty to continue negotiating license terms with that implementer; it necessarily follows that the SEP holder has no duty to make additional offers *on FRAND terms.*").

25

and to negotiate a license in good faith. If you decide that G+ has breached a contractual obligation, then you will need to decide what amount of money should be awarded to Samsung as compensation for the breach.

In deciding whether or not a party has breached a contractual obligation, there are four questions that you must decide at the end of the case. The first question is whether the party had any contractual obligations. The second is whether the party violated any of the contractual obligations. The third is if the party has a defense excusing that violation. And, fourth, if any of the obligations were violated and there are no defenses, what are the amount of damages, if any, for that breach of contract.[38]][39]

[You are also going to be asked to decide whether Samsung has breached a duty to negotiate a FRAND license with G+ in good faith.][40]

## STANDARD OF PROOF

---

Samsung: This instruction is legally erroneous and would be improper to provide to the jury. *See* n.17, n. 18 *supra* (explaining why this instruction is legally incorrect). Samsung also objects to informing the jury about G+'s contention about Samsung's conduct in the FRAND negotiation before informing the jury that G+ has a FRAND obligation that Samsung alleges was breached. This context is necessary to understand G+'s contention as to Samsung's conduct. Samsung's instruction provides the appropriate instruction about G+'s contention. Further, GComm's pleaded breach of contract claims arose only *after* Samsung pleaded breach of contract. *Compare* Dkt. No. 18 (Samsung's breach of FRAND contract counterclaim filed June 13, 2022), *with* Dkt. No. 49 (GComm's First. Am. Compl. adding breach of contract claims filed Nov. 18, 2022).

[38] Samsung: <u>Authority</u>: *TQ Delta, LLC v. CommScope Holding Co.*, No. 2:21-cv-000310-JRG, Preliminary Jury Instructions, Dkt. No. 526, Tr. 107:12-139:16 (E.D. Tex. Mar. 17, 2023). Samsung: This entire ETSI instruction is adopted from *TQ Delta* and is proper based on the issues the jury must consider in this case. G+'s proposed instructions are entirely one-sided. It suggests *only* instructing the jury regarding G+'s alleged breach of FRAND claim and not Samsung's claim against G+ for breach of FRAND. This one-sided gamesmanship should be rejected. Samsung's neutral instruction here which addresses both parties' causes of action should be adopted.

[39] G+: Subject to ruling on MSJ.

[40] G+: G+'s instruction explains G+'s claim in this case; Samsung's instruction fails to explain that if Samsung breached, G+ had the right to discharge its FRAND obligations.

There are two standards of proof that you will apply in this case: "preponderance of the evidence" and "clear and convincing evidence." [Preponderance of the evidence means evidence that persuades you that a claim is more likely true than not true. Samsung has the burden of proving invalidity by clear and convincing evidence. Clear and convincing evidence means evidence that produces in your mind a firm belief or conviction as to the matter at issue. When a party has the burden of proving any claim or defense by clear and convincing evidence, it means the evidence must have persuaded you that the claim or defense is highly probable.][41] / [On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence. A preponderance of the evidence means that the fact that is to be proven is more likely true than not, that is, that the evidence in favor of that fact being true is sufficient to tip the scale, even if [they tip ever so][42] slightly, in its favor. On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, that is, that you have been left with [an abiding conviction that the truth of the party's factual contentions are highly probable][43] / [a clear conviction that the fact has been proven.] These standards are different from what you may have heard about in criminal proceedings where a fact

---

[41] G+: Adapted from *Personalized Media Communications, LLC v. Apple, Inc,* 2:15-cv-01366-JRG-RSP, Dkt. 252.

Samsung: More issues than infringement will be decided based on the preponderance of the evidence standard. Samsung's alternate instruction matches the FCBA model verbatim and is more expansive to cover: (i) all of the issues the jury will hear and (ii) provide explanations for the different standards.

[42] G+: *Netlist, Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-00463-JRG, Preliminary Jury Instructions (January 4, 2023).

[43] G+: *Netlist, Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-00463-JRG, Preliminary Jury Instructions (January 4, 2023).

must be proven beyond a reasonable doubt.[44]  Clear and convincing evidence is a lower standard than beyond a reasonable doubt, but it is higher than a preponderance of the evidence.[45]]

[Let me go back to the same example. The parties start out equal. The scales of justice start out equal. The Plaintiff puts on all their evidence which goes on one side of those scales, the Defendant puts on all their evidence that goes on the other side of those scales, and when all the evidence is in, if the party has the burden of proof on any issue by clear and convincing evidence, then those scales must tip in that party's favor and they must definitely tip. It's not adequate that they tip ever so slightly. But if they definitely tip in favor of that party, then that party has met this second burden of proof, the clear and convincing evidence standard.][46]

[Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard. However, the clear and convincing standard is not so high as the standard used in criminal law, which is evidence beyond a reasonable doubt. If the proof establishes in your mind a firm belief or conviction that something is true, then the standard has been met. In determining whether any fact has been proved, you may, unless otherwise instructed, consider the stipulations,

---

[44] Samsung: Authority: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction A.5.  Samsung: This proposed language matches the FCBA model verbatim.  In addition, on some issues (e.g., breach of contract), Samsung has a preponderance of evidence burden and G+'s instruction improperly and prejudicially implies that Samsung always has a higher burden.

[45] G+: Samsung relies on the final jury instructions; the preliminary instructions from the Netlist case are more appropriate for the preliminary instructions in this case, because the jury is being introduced to the burdens of proof for the first time.  To the extent Samsung's proposal is adopted over G+'s proposal, the conditional proposals from G+ should be included.

Samsung: Authority: *Netlist, Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-00463-JRG, Final Jury Instructions, Dkt. No. 478 at 1296:2-10 (E.D. Tex. Apr. 21, 2023); *Solas OLED Ltd. v. Samsung Display Co., Ltd.*, 2:19-cv-000152-JRG, Final Jury Instructions, Dkt. 354 (E.D. Tex. Mar. 8, 2021).

[46] G+: *Netlist, Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-00463-JRG, Preliminary Jury Instructions (January 4, 2023).

Samsung: This paragraph is unnecessary.  Samsung's proposed instruction is accurate and complete and it is confusing to reword the standard in this way.

the testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have produced them.][47]

## CREDIBILITY OF WITNESSES

Now, over the course of the trial, you are going to be hearing from a number of different witnesses, and I want you to keep an open mind while you are listening to the evidence and not decide any of the facts until you have heard all of the evidence.

And this is important, ladies and gentlemen. While the witnesses are testifying, remember, you, the jury, will have to decide the degree of credibility and believability to allocate to each of the witnesses and the evidence that they give.

So, while the witnesses are testifying, you should be asking yourselves things like this:

Does the witness impress you as being truthful?

Did he or she have a reason not to tell the truth?

Does he or she have any personal interest in the outcome of the case?

Does the witness seem to have a good memory?

Did he or she have the opportunity and ability to observe accurately the things that they testified about?

Did the witness appear to understand the questions clearly and answer them directly? And, of course, does the witness' testimony differ from the testimony of other witnesses? And if it does, how does it differ?

---

[47] G+: Adapted from *Personalized Media Communications, LLC v. Apple, Inc,* 2:15-cv-01366-JRG-RSP, Dkt. 252.

Samsung: This paragraph is unnecessary. Samsung's proposed instruction is accurate and complete and it is confusing and to reword the standard in this way.

Samsung: Authority: Adapted from Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction A.5. Samsung's proposal is superior because it is simpler for these preliminary instructions.

These are some of the kinds of things that you should be thinking about while you are listening to each witness during the trial of this case and while each and every witness testifies from the witness stand.

## EXPERT WITNESSES

Also, ladies and gentlemen, I want to talk to you briefly about expert witnesses. When knowledge of a technical subject may be helpful to you, the jury, a person who has special training and experience in that particular field—we call him or her an expert witness—is permitted to testify to you about his or her opinions on those technical matters.

However, you are not required to accept an expert witness' or any other witness' opinions. It is up to you to decide who to believe and who not to believe and whether an expert witness or any witness, for that matter, is correct or incorrect about what he or she tells you.

Now, I anticipate that there will be expert witnesses testifying in support of both sides in this case. But when an expert witness is called to testify, it will be up to you to listen to his or her qualifications, and when he or she gives an opinion and explain the basis for it, you will have to evaluate what he or she say, whether you believe it, and to what degree, if any, that you want to give it weight.

As I said, judging and evaluating the credibility and believability of each and every witness is an important part of your job as jurors.

## DEPOSITION TESTIMONY

Now, during the course of the trial, it is possible that there will be testimony from one or more witnesses that is going to be presented to you through what is called a deposition. In trials like this, it is difficult and sometimes almost impossible to get every witness physically present in court to testify at the same time. Therefore, before the trial begins, the lawyers for both sides take the depositions of the witnesses. In a deposition, the witness is present and sworn and placed under

oath—just as if he or she were personally in court—a court reporter is present, and the lawyers for both Plaintiff and Defendants are present.

The witness is asked questions and gives answers to those questions under oath.  And those answers to the questions, along with the questions themselves, are taken down and transcribed and recorded.

Often in these depositions, in addition to taking down the written version of the questions and answers, the actual deposition is recorded by video so that you can see the witness, hear the question asked, and hear the answer given.

These depositions generally, ladies and gentlemen, go on for several hours at a time.  If a witness is going to be presented at trial through a deposition and he or she cannot appear in person, then portions of that deposition will be selected by the parties to be played to the jury as that witness' testimony.

And you will not have to listen to a seven-hour deposition.  You may hear a few minutes or some portion of it that has been selected by the plaintiff and defendant to be presented to you from that witness.

So, when you see deposition testimony that will be played for you, if it looks like there are places where it is spliced together or joined together, that is so the part that is not important for you to hear is cut out, and you don't have to listen to seven hours straight to get 20 or 30 minutes' worth of important testimony before you.

So, if you see areas in the deposition that look like they are spliced or there is a transition, that is because there was a splice or a transition.  But that is to save you a lot of time and effort. The important part, the part that the plaintiff and the defendant believe that you should hear as evidence in this case, will be played to you as deposition testimony.

31

And I want to remind you, ladies and gentlemen, that deposition testimony is entitled to the same consideration and is to be evaluated by you, the jury, in the same way as if the witness had appeared in Court and testified live in open court.

Also, ladies and gentlemen, during the course of the trial you are going to be presented with various documents which the Court has admitted into evidence as exhibits. Some of these documents are going to have portions of them that have been redacted. Said another way, there are going to be portions that have been blacked out. Those happen because the Court determined in advance of the trial that those portions you cannot see are not relevant or not important and that you do not need to see them. When you are presented with a document that may have portions of it redacted, do not focus on what is redacted. Do not try to guess what's been blacked out. Focus on what's there and visible and that you can read and understand. In other words, focus on the unredacted portions of the document and do not try to guess what has been blacked out per the Court's earlier instruction.

### RULING ON OBJECTIONS

Now, during the course of the trial, it is possible that the lawyers will periodically make certain objections, and when they do, I will give rulings on those objections. It is the duty of an attorney to object on each side of the case if the other side purports to offer testimony or other evidence that the objecting attorney believes is not proper under the rules of the Court or the orders of the Court.

Now, upon allowing the testimony or other evidence to be introduced over an objection of an attorney, the Court does not, unless expressly stated, indicate an opinion about the weight or effect of that testimony. As I have said before, you are the sole judges of the credibility and believability of all the witnesses and the weight and effect, if any, to give to the testimony that is presented through the course of this trial.

Prior to this trial today, both sides have worked with the Court very diligently to go through the exhibits that will be presented in this trial.  And any exhibits proposed by either party that the other side has objected to, the Court has considered those objections in earlier pre-trial hearings before you were selected and seated.

And I have heard all the arguments, I have seen all the documents, and I have already decided what is admissible.  And in those cases, the objections have been overruled and the document has been considered to be an exhibit.  Or in those cases where I think the document is not admissible under the Rules of Evidence, then I have sustained the objection, and the document is not a part of this case, and you will never see it.

That means, ladies and gentlemen, that from that list of pre-admitted exhibits that the Court has already acted on and approved as to its admissibility, you do not have to sit through all those arguments, and you do not have to hear the back-and-forth between the lawyers about whether it is or is not admissible under the Rules of Evidence.  I have already done that.  And with their effort and my effort together, we have saved you hours and hours of time listening to all of that.

We are now in a position where all those documents have been dealt with, and either side can show you any item from the list of exhibits that I have already approved and simply show it to you and use it over the course of the trial without a formal offer, without a predicate, without an argument, without a dispute.

However, it is still possible that objections may arise during the course of trial, and in that case, I will rule on them.  If I should sustain an objection to a question addressed to a witness, then you must disregard the question entirely, and you can draw no inference from its wording or speculate about what the witness would have said if I had allowed him or her to answer the question.

33

On the other hand, ladies and gentlemen, if I overrule an objection to a question addressed to a witness, then the witness will answer the question, and you should consider the answer and the question just as if no objection had been made.

## COMMENTS ON THE EVIDENCE

Now, you should know that the law of the United States permits a United States District Judge to comment to the jury regarding the evidence in the case, but such comments from the Judge on the evidence are only an expression of the Judge's opinion. And the jury can disregard those comments in their entirety as I have said before, you, the jury, are the sole judges of the facts. You are the sole judges of the credibility and believability of the witnesses and how much weight, if any, to give to all of the testimony that's presented to you over the course of the trial.

So, even though the law of the United States permits me to offer comments on the evidence, as I told you during jury selection, I am going to work very hard not to do that and not to indicate to you what I think about any of the evidence presented over the course of the trial. Evaluating and considering the evidence and from determining what the facts are in this case is your job, ladies and gentlemen. It is not my job.

## THE WRITTEN TRANSCRIPT

Now, the court reporter in front of me is taking down everything that is said in the courtroom. And the transcription of everything that is said over the course of the trial is being prepared in case there is an appeal of this case or for other purposes, but I want you to understand it is not being prepared so that you will have it to use as a resource during your deliberations after you have heard all the evidence. You are not going to have a written version of all this testimony. You are going to have to rely on your memories of the evidence over the course of the trial.

## JUROR NOTEBOOKS

Now, in a moment, each member of the jury is going to be given a juror notebook.  And in the back of those notebooks, you will find legal pads, and you will find a pen in the front pocket where you can make notes as the witnesses testify over the course of the trial.

It is up to each member of the jury to decide whether you want to make notes, and if you do, how detailed you want those notes to be.  But, remember, any notes taken by any member of the jury are for that juror's personal use only.  You still have to rely on your memory of the evidence.  And that is why you need to pay close attention, as I am sure you will, to the testimony of each and every witness.

You should not abandon your own recollection because some other juror's notes indicate something differently.  The notes that you take are to refresh your recollection, and that's the only reason you should be taking them.

I am going to ask our Court Security Officer at this time to pass out these juror notebooks to the members of the jury.

Thank you.

Ladies and gentlemen, in these notebooks, you will see that you each have a copy of each of the four patents-in-suit.  You are also going to find a section for the witnesses that may testify in this case.  And for each witness that may testify, there should be a separate tabbed page for that witness and his or her picture superimposed at the top of the page and his or her name there as well, identifying the witness.  The remainder of those pages have ruled lines for note taking if you choose to do so.

You will also find a chart in there that provides you with the Court's construction or definitions of certain parts of the language from the asserted claims.  Those are the definitions or

35

constructions that I told you I have already reached, and you must apply my constructions or definitions to that claim language in deciding the issues that you are required to decide.

You should find a chart with on one side the language from the claims that needed to be construed or interpreted by the Court, and directly across from it the actual construction or definition that the Court has already reached and given to you. You must use my definitions or constructions as you discharge your duty as jurors.

And, again, you should find a new three-hole punched legal pad in the back for additional note taking.

Now, ladies and gentlemen, these notebooks should be in your possession throughout the trial. They are not to be left around loosely. They should either be with you in the jury box where you are now, or they should be on the table in the jury room. At the end of each day, I am going to ask you to leave them on the table in the jury room as you exit the courthouse and go to your respective homes. They will be there in the morning when you come back.

There may be one slight exception to this rule, and that is over the course of the trial, we may take a short recess or break where I will simply say, because I know you are not going to be out of the jury box very long, I may say, ladies and gentlemen, you can simply close and leave your notebooks in your chairs. And in that case, you can simply close them, put them where you are seated, and they will be there when you get back.

But unless I give you those kinds of instructions, they either need to be in your possession, or they need to be on the table in the jury room and not left out in the courtroom.

## OUTLINE OF TRIAL

Now, in a moment, we're going to get to the lawyer's opening statements. These opening statements, ladies and gentlemen, are designed to give you a roadmap of what each side expects that their evidence will show you. You should remember throughout the trial, ladies and

gentlemen, that what the lawyers tell you is not evidence.  It is what they believe the evidence will show.

The evidence in this case will be the admitted exhibits and the sworn testimony from the witnesses from the witness stand who testify to you subject to cross-examination.  And that includes any witness who presents testimony through a sworn deposition where you see and hear the testimony, but the person is not physically present the courtroom.  They have nonetheless been sworn and are under oath and are subject to cross-examination, and that deposition testimony, and the live testimony of the witnesses who appear and testify under oath in this courtroom and the exhibits that you are shown that the Court has admitted into evidence, those are the evidence in this case, nothing else, and certainly not what the lawyers tell you.

Now, what the lawyers tell you is their impression of what they believe the evidence is, and they have a duty to try and point out to you where they believe the evidence supports their side of the case.  But, remember, what they're telling you is not evidence itself.

Now, after the lawyers present their opening statements, the Plaintiff will go forward with its evidence and its case.  This is called the Plaintiff's case-in-chief, and the Plaintiff will call its witnesses and present its testimony.  After the witnesses have been called and testified, cross-examined, and released by the Court and all the Plaintiff's witnesses have been called, the Plaintiff will rest its case-in-chief.

And when the Plaintiff rests its case-in-chief, then we will transition to the Defendants' case-in-chief, and the Defendants will call their witnesses and present its testimony, and its witnesses will be cross-examined by the Plaintiff.  And when all the Defendants' testimony and witnesses have been presented, then the Defendants will rest their case-in-chief.

At that point, the rules allow for the Plaintiff to present what are called rebuttal witnesses to rebut what the Defendants have shown in its case-in-chief.  The Plaintiff is not required to present rebuttal witnesses.  We will not know until we get to that point if the Plaintiff chooses to.

But if the Plaintiff calls rebuttal witnesses, then those witnesses will testify in the same way and will be subject to cross-examination by the Defendants.  And when all the Plaintiff's rebuttal witnesses, if any, have testified, then at that point, ladies and gentlemen, you will have heard all the evidence in this case.

Once you have heard all of the evidence in this case, then I will present to you my final instructions on the law that you are to apply.  Those instructions from the Court to the jury are sometimes called the Court's charge to the jury.  Once I have given you my charge, my final instructions, then the lawyers for both sides will present their closing arguments to you.

And once the closing arguments have been completed by both sides, then I will instruct you to retire to the jury room.  Only when all the evidence is complete and you retire to the jury room to deliberate and reach your verdict, only then is it proper for you to discuss the case among yourselves.

I will send with you the verdict form that contains the questions in it that you are to answer. At that time, but not before, you will be obligated to talk to each other about the evidence as a part of addressing those questions and doing your best to come to a unanimous answer to each of those questions in the verdict form.

## CONDUCT OF JURY[48]

Now, throughout this trial and until I release you as jurors, you are not to communicate with anybody about this case in any way, and you are not to communicate with the eight of

---

[48] Samsung: Fifth Circuit Manual of Model Civil Jury Instructions (Oct. 2016) at § 1.2 (modified).

yourselves about this case in any way until I direct you to retire to the jury room and deliberate on your verdict. And then when that happens, you become obligated to discuss among the eight of you the evidence that you've heard over the course of the trial in an effort to come to a unanimous agreement about how to answer the questions that are going to be submitted to you in the verdict form. Over the course of this trial the lawyers in this case, the witnesses, and anybody associated with either side, is not going to visit with you, not going to speak, not going to be friendly, not going to interact with you. And that's because they are following my instructions. Do not take it for rudeness, do not take it for anything negative; they are simply doing what I have instructed them to do.

Now, with these instructions, ladies and gentlemen, we will proceed to hear opening statements from the parties.  We will begin with the G+'s opening statement.

## INSTRUCTIONS AT CLOSE OF EVIDENCE

## INTRODUCTION[49]

Ladies and Gentlemen:

You have now heard the evidence in this case, and I will now instruct you on the law that you must apply.

Each of you is going to have your own printed copies of these final jury instructions that I'm giving you now, so there's really no need for you to take notes unless you just particularly want to.

Ladies and Gentlemen, as I have said previously, you, the jury, are the sole judges of the facts in this case. Do not consider any statement that I have made in the course of the trial or make during these instructions as an indication to you that I have any opinion about the facts in this case.

You are about to hear closing arguments from the attorneys. Statements and arguments of the attorneys are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You will take this verdict form with you to the jury room, and when you have reached a unanimous decision or agreement as to the verdict, you will have your foreperson fill in the blanks in the verdict form, date it, and sign it.

Answer each question in the verdict form from the facts as you find them to be. Do not decide who you think should win the case and then answer the questions to reach that result. Again, your answers and your verdict must be unanimous.

---

[49] Authority: Adapted from Trial Tr., *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-cv-01528-JRG (E.D. Tex. Mar. 23, 2017), ECF No. 166; *TQ Delta, LLC v. CommScope Holding Co.*, No. 2:21-cv-000310-JRG, Final Jury Instructions, Dkt. No. 534, Tr. 21:14-73:13 (E.D. Tex. Mar. 24, 2023).

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all the witnesses, regardless of who may have called them, and you may consider the effect of all the exhibits received and admitted into evidence, regardless of who may have produced or presented them.  Some of the testimony you heard was translated from another language.  In consideration of a witness's testimony, it is not relevant whether his or her testimony was in English or translated from another language into English.[50]  You, the jurors, are the sole judges of the credibility of each and every witness and the weight and effect to be given to the evidence in this case.

Now, in deciding the facts in this case, you may have to decide which testimony to believe and which testimony to not believe. You alone are to determine the questions of credibility or truthfulness of the witnesses, and in weighing the testimony of the witnesses, you may consider the witness's manner and demeanor as reflected on the witness stand.[51],[52]

You may consider any feelings or interest a witness may have in the case and any bias or prejudice about the case that the witness may have, and you may consider the consistency or inconsistency of his or her testimony considered in the light of the circumstances.

Has the witness been contradicted by other evidence?  Has he or she made statements at other times in other places contrary to what he or she said on the witness stand?  You must give the testimony of each witness the amount of credibility and weight that you think it deserves.  You

---

[50] Authority: *Acorn Semi, LLC v. Samsung Electronics Co., Ltd.  et al.*, No. 2:19-cv-000347-JRG (May 19, 2021) (Final Jury Instructions).

[51] G+: repetitive of instruction immediately above that jurors "are the sole judges of the credibility." Samsung also seeks to include this same language in the "COMMENTS ON THE EVIDENCE" section.

[52] Samsung:  We cannot discern G+'s position.  This instruction reflects Netlist-Samsung verbatim and the *TQ Delta* final instructions, and so Samsung does not believe that any changes are necessary.

must keep in mind, however, ladies and gentlemen, that a simple mistake does not mean that a witness is not telling the truth.

You must consider whether any misstatement was an intentional falsehood or a simple lapse of memory and what significance could be attached to that testimony.

Now, unless I instruct you otherwise, you may properly determine that the testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all of the evidence you believe that single witness.

As I have told you previously, the attorneys in this case are acting as advocates for their competing parties and their competing claims, and they have a duty to object when they believe evidence is offered that should not be admitted under the rules of the Court.

In that case, when the Court has sustained an objection to a question addressed to a witness, you are to disregard the question entirely, and you may not draw any inferences from its wording or speculate about what the witness would have said if I had permitted them to answer the question. If, on the other hand, the objection was overruled, then you are to treat the answer to the question and the question itself just as if no objection had been made; that is, like any other question and answer.

At times during the trial, it was necessary for the Court to talk to the lawyers here at the bench or outside of your hearing when you were in the jury room. This happens because during a trial, there are things that sometimes come up that do not involve the jury. You should not speculate about what was said during such discussions that took place outside of your presence.

Certain testimony in the case has been presented to you through depositions. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. If a witness cannot be present to testify in person, then the witness's testimony may be presented under oath in

the form of a deposition.  Before the trial, the attorneys representing the parties in this case questioned these deposition witnesses under oath.  At that time, a court reporter was present and recorded their sworn testimony.  Deposition testimony is entitled to the same consideration by you, the jury, as testimony given by a witness in person from the witness stand in open court. Accordingly, you should judge the credibility and importance of the deposition testimony to the best of your ability, just as if the witness had testified before you from the witness stand.

While you should consider only the evidence in this case, you should understand that you are permitted to draw such reasonable inferences from the testimony and the exhibits as you feel are justified in the light of common experience.

In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and the evidence in this case.  However, you should not base your decisions on any evidence not presented by the parties in open court during the trial of this case, including your own personal experiences with any particular products that are at issue in this case.

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case.  One is direct evidence, such as the testimony of an eyewitness.  The other is indirect or circumstantial evidence; that is, the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that you, the jury, find the facts based on the evidence presented, both direct and circumstantial.

The Parties have stipulated or agreed to some facts in the case.  When the lawyers for both sides stipulate as to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence and regard the fact as proven.

The attorneys have used slides and other visual aids, sometimes referred to as "demonstrative exhibits," while presenting or examining a witness. Demonstrative exhibits are a party's picture or model to describe something involved in this trial. If your recollection of the evidence differs from the demonstrative exhibit, rely on your recollection. The demonstrative is not evidence, but the witness's testimony during which they use the demonstrative is evidence.

When knowledge of a technical subject may be helpful to the jury, a person who has special training and experience in that technical field, called an expert witness, is permitted to state his or her opinion on those technical matters to the jury. However, you are not required to accept that opinion. As with any other witness, it is solely up to you to decide who you believe and who you don't believe and whether or not you want to rely on their testimony.

Any patent holder has the right to file a suit in a United States District Court, and the right to a trial by jury, if it believes its patent rights are being infringed. However, you should make no inference from the fact that a suit was filed or brought to trial. You are to consider this suit as a dispute between two parties of equal worth and standing in the community, and render your verdict based solely on the evidence presented in the trial.[53]

In any legal action, facts must be proven by a required amount of evidence known as the burden of proof. The burden of proof in this case is on the Plaintiff, G+, for some issues, and it is on the Defendants, Samsung, for other issues. There are two burdens of proof that you will apply in this case. One is the preponderance of the evidence, and the other is clear and convincing evidence.

---

[53] Authority: Section 3.6, Fifth Circuit Pattern Jury Instructions (Civil Cases) (rev. 6/2020) ("person" replaced with "plaintiff").

G+ has the burden of proving patent infringement by a preponderance of the evidence. G+ also has the burden of proving willful patent infringement by a preponderance of the evidence. G+ also has the burden of proving damages for any patent infringement by a preponderance of the evidence. G+ also has the burden of proving that Samsung failed to comply with a duty to negotiate a license on FRAND terms in good faith during the parties pre-suit negotiations by a preponderance of the evidence.

A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

The Defendants in this case, Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc., who you have heard referred to throughout this case collectively as [Samsung, have the burden of proving by a preponderance of the evidence that G+ breached its contract with ETSI to [negotiate in good faith or make a licensing offer ] / [grant licenses] to its declared essential patents on fair, reasonable, and non-discriminatory, as you heard it called FRAND, terms and conditions and to negotiate in good faith towards that license.[54] [If you find that Samsung breached its obligation to negotiate in good faith during the parties pre-suit negotiations, then G+ had the right to discharge its obligation to license the asserted patents to Samsung under FRAND terms.][55]

---

[54] Authority: *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 407 F. Supp. 3d 631, 636 (E.D. Tex. 2019), *aff'd*, 12 F.4th 476 (5th Cir. 2021). Samsung: Samsung's instruction is a more accurate reflection of the legal standard for a FRAND breach. G+ provides no authority in support of its proposed instruction. The "negotiate in good faith or make a licensing offer" is incorrect for the reasons explained above and because it does not even say a "FRAND" offer. *See* n.17, n. 18, *supra*.

[55] G+: G+ incorporates its objections above regarding its right to discharge any FRAND obligations if Samsung breached its duty to act in good fatih.

Samsung: Samsung incorporates its objections to this instruction by reference because G+'s obligation to negotiate in good faith does not discharge under French law. *See* n.17, n. 18, *supra* (explaining why G+'s FRAND obligations are not discharged). Further, the jury would still have to consider whether G+ breached its duty to negotiate in good faith even if it found Samsung breached its duty. Both claims must be evaluated.

Samsung has the burden of proving patent invalidity by clear and convincing evidence. Clear and convincing evidence means evidence that produces in your mind an abiding conviction that the truth of the party's factual contentions are highly probable. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard. If the proof establishes in your mind an abiding conviction in the truth of the matter, then the clear and convincing evidence standard has been met.[56]

[These standards are different from what you may have learned about in criminal proceedings where a fact is proven beyond a reasonable doubt. On a scale of the various standards of proof, as you move from the preponderance of the evidence, where the proof need only be sufficient to tip the scales in favor of the party proving the fact, to at the other end beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between those two standards.][57] / [Now, these two burdens of proof are not to be confused with the burden of proof known as beyond a reasonable doubt, which is the burden of proof applied in a criminal case, not in a civil case such as this. Clear and convincing evidence is a lower standard than beyond a reasonable doubt, but it is higher than a preponderance of the evidence.[58]]

---

[56] Samsung: Authority: Trial Tr., *KAIST IP US LLC, v. Samsung Elecs. Co.*, No. 2:16-cv-1314-JRG-RSP (E.D. Tex. June 15, 2018). ECF No 498.

[57] Samsung: G+'s proposed instruction is inaccurate and confusing in its suggestion of a sliding "scale." Samsung's proposed instruction provides greater clarity and accuracy.

[58] Authority: *Netlist, Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-00463-JRG, Final Jury Instructions, Dkt. No. 478 at 1296:2-10 (E.D. Tex. Apr. 21, 2023); *Solas OLED Ltd. v. Samsung Display Co., Ltd.*, 2:19-cv-000152-JRG, Final Jury Instructions, Dkt. 354 (E.D. Tex. Mar. 8, 2021).

In determining whether any fact has been proved by a preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all the witnesses, regardless of who called them, and all the exhibits received into evidence during the trial, regardless of who may have produced them.

## CONTENTIONS OF THE PARTIES[59]

As I did at the beginning of the case, I'll give you a summary of each side's contentions, and then I'll provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I told you previously, this case concerns four United States Patents asserted by G+. G+'s patents are U.S. Patent Nos. 8,761,776; 10,736,130; 10,594,443; and 9,184,881, which you have consistently heard referred to throughout the trial as the '776, '130, '443, and '881 patents. I will refer to them as the patents-in-suit. I may also refer to them as the asserted patents.

G+ seeks money damages from Samsung for allegedly infringing the patents-in-suit, by making, using, importing, selling, and/or offering to sell in the United States the smartphones and tablets that operate over the "5G" cellular standard. Sometimes in these instructions I will refer to these as the Samsung accused products. G+ contends that the accused products infringe the following claims:

Claims 1-3 of the '776 Patent;

Claims 1-5, 7-9, 14, and 20 of the '130 Patent;

Claims 1-2, 6, 8-11, 15, and 17-18 of the '443 Patent; and

---

[59] G+: Trial Tr., *Whirlpool Corp. v. TST Water LLC,* No. 2:15-cv-01528-JRG (E.D. Tex. Mar. 23, 2017). ECF No. 166.; Trial Tr., *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:12-cv-100-JRG (E.D. Tex. Mar. 16, 2015), ECF No. 428.

Samsung: <u>Authority</u>: *TQ Delta, LLC v. CommScope Holding Co.*, No. 2:21-cv-000310-JRG, Final Jury Instructions, Dkt. No. 534, Tr. 21:14-73:13 (E.D. Tex. Mar. 24, 2023).

Claims 1, 3-10, and 12-14 of the '881 Patent.

These claims are sometimes referred to as the asserted claims.  G+ alleges that the accused products infringe the asserted claims either literally or through the Doctrine of Equivalents.  G+ also alleges that Samsung's infringement is and has been willful.  G+ seeks [a reasonable royalty in the form of a one-time lump sum for all past and future infringement of its patents[60]][61] / [money damages][62].

Samsung denies that the accused products infringe the asserted claims of the '776, '130, '443, and '881 patents.

Samsung further denies G+'s allegation that it willfully infringed.  Samsung denies it owes G+ any damages in this case.

Samsung further contends that the asserted claims of the '776, '130,  '443, and '881 patents are invalid [as being obvious, anticipated, and for lacking written description][63],[64] / [because they are anticipated, obvious, and/or ZTE did not follow the rules requiring the patent's written description to fully describe and enable the inventions set forth in the asserted claims.[65]][66]

---

[60] G+: G+ seeks lump sum damages award. These are G+'s contentions.

[61] Samsung: G+'s proposed instruction is unfairly prejudicial because it suggests that a lump sum may be awarded for only past and future infringement.  The detailed damage language in the instructions below addresses the lump sum aspect.  This summary of contention instruction should state only that G+ seeks "money damages" which is accurate, unbiased, and aligns with the FCBA model instruction.

[62] Authority: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction B.1.

[63] G+: see, Netlist v. Samsung, 2:21-CV-463-JRG, final jury instructions.

[64] Samsung: G+ fails to articulate any impropriety with this instruction, which is a recitation of Samsung's contentions.  Referring to the written description and enablement standards as "rules" is not improper, but rather a valid plain language description of the statutory requirements.  Also, G+ does not include Samsung's contention regarding enablement.

[65] Authority: *Solas OLED Ltd. v. Samsung Display Co., Ltd.*, 2:19-cv-00152-JRG, Dkt. 354 (Final Jury Instructions) (E.D. Tex. Mar. 8, 2021).  Samsung: G+ fails to articulate any impropriety with this instruction, which is a recitation of Samsung's contentions, which include anticipation.  Referring to the written description and enablement standards as "rules" is not improper, but rather a valid plain language description of the statutory requirements.

[66] G+: There is no reason to elaborate here on contentions; it is redundant of later instruction on each

[Invalidity is a defense to infringement.[67]][68] Invalidity and infringement, however, are separate and distinct issues.  Your job is to decide whether Samsung has infringed any of the asserted claims and [whether those claims are invalid. If you decide that any claim has been infringed and is not invalid, you will then need to decide[69]][70] whether Samsung's infringement has been willful and the amount of money damages, if any, to be awarded to G+ [to compensate it for that infringement.  If you decide that there was any infringement of the asserted patents and that such infringement was willful, your decision as to willfulness should not affect any damages that you might award.  I will take willfulness into account later.[71]][72]

The parties agree that the Patents-in-Suit were declared by the patents' prior owner, ZTE, as essential to the 5G standard.  The parties disagree about whether G+ has any obligations to Samsung as a result of ZTE's declaration of the patents as essential.

G+ contends that Samsung failed to comply with a duty to negotiate a license on FRAND terms in good faith during the parties' pre-suit negotiations.

---

issue. Samsung's suggestion that ZTE "did not follow the rules" is prejudicial and confusing as ZTE is not a party to this case and a finding of no written description support does not mean the patent applicant "did not follow the rules."

[67] Authority:  *Solas OLED Ltd. v. Samsung Display Co., Ltd.*, 2:19-cv-00152-JRG, Dkt. 354 (Final Jury Instructions) (E.D. Tex. Mar. 8, 2021).  Samsung: this instruction provides important context so that the jury understand a patent claim cannot be infringed if it is invalid.

[68] G+: This is unnecessary and confusing as part of the contentions. *See,* Netlist v. Samsung, 2:21-CV-463-JRG, final jury instructions.

[69] Samsung: without this language, the instruction does not reflect the juror's job to consider invalidity, and as such, does not reflect the *Netlist v. Samsung* instructions that G+ references.

[70] G+: This is unnecessary and confusing as part of the contentions. *See,* Netlist v. Samsung, 2:21-CV-463-JRG, final jury instructions.

[71] Authority: *Acorn*, No. 2:19-cv-000347-JRG (May 19, 2021) (Final Jury Instructions).

[72] G+: This is unnecessary and confusing as part of the contentions. It is also redundant. The instructions under damages and willfulness repeat this statement.

[Samsung contends it did not breach its obligation to negotiate in good faith.  Samsung further contends that G+ has not discharged its duty to negotiate a license on FRAND terms, that G+ has breached that duty, and that Samsung is entitled to damages for that breach.][73] Samsung further contends that G+ breached those commitments by failing to offer to Samsung a license to G+'s declared essential patents on fair, reasonable, and non-discriminatory terms.  These terms and conditions are sometimes referred to as FRAND, F-R-A-N-D.  Samsung further contends G+ breached its obligation to negotiate a license on FRAND terms in good faith during the parties' pre-suit negotiations.[74]]

Samsung contends that it is entitled to damages as a result of G+'s breach of contract.

Samsung also denies that it failed to comply with a duty to negotiate a license on FRAND terms in good faith during the parties pre-suit negotiations.

If you decide that G+ breached its contract with ETSI, you will need to decide the amount of money damages to be awarded to Samsung as compensation for that breach.[75]][76]

## PATENT CLAIMS[77]

Before you can decide many of the issues in this case, you will need to understand the role of the patent claims.

---

[73] Samsung: this instruction misrepresents Samsung's contention and improperly shifts the burden for Samsung to "contend it did not act in bad faith" as opposed to G+ proving that Samsung failed to act in good faith.  G+ cites no authority that Samsung bears such a burden or that the legal standard should be recited in terms of who acted in "bad" faith.

[74] Authority: *TQ Delta, LLC v. CommScope Holding Co*., No. 2:21-cv-000310-JRG, Final Jury Instructions, Dkt. No. 534, Vol. 1 Tr. 21:14-73:13 (E.D. Tex. Mar. 30, 2023).

[75] Authority: *TQ Delta, LLC v. CommScope Holding Co*., No. 2:21-cv-000310-JRG, Final Jury Instructions, Dkt. No. 534, Vol. 1 Tr. 21:14-73:13 (E.D. Tex. Mar. 30, 2023).

[76] G+: G+ objects to these instructions in their entirety.  *See,* MSJ. If Samsung is allowed to pursue its claim for breach of FRAND, G+ includes alternate instructions.

[77] Authority: Trial Tr., *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-cv-01528-JRG (E.D. Tex. Mar. 23, 2017), ECF No. 166; Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 2.1.

The claims of a patent are numbered sentences at the end of the patent. The claims define G+'s rights under the law. The claims are important, because it is the words of the claims themselves that define what the patent covers. The figures and the text in the rest of the patent provide a description or examples of the invention, and they provide a context for the claims; but it is the claims that define the breadth of the patent's coverage.

Each claim is effectively treated as if it were its own separate patent, and each claim may cover more or may cover less than any other claim. Therefore, what a patent covers collectively or as a whole depends on what each of its claims cover.

## CLAIM CONSTRUCTION

You first need to understand what each claim covers in order to decide whether or not there is infringement of that claim and to decide whether or not the claim is invalid. And the first step is to understand the meaning of the words used in the patent claim. The law says that it is my role to define the terms of the claims, but it is your role to apply my definitions to the issues that you're asked to decide in this case.

Accordingly, as I explained at the beginning of the case, I have determined the meaning of certain claim language. I have provided the definitions of those claim terms in your jury notebooks. [I incorporate those definitions by reference into my jury instructions.] You must accept my definitions of these words in the claims as being correct, and it is your job to take these definitions that I have supplied and apply them to the issues that you are asked to decide, including the issues of infringement and invalidity.

51

[Now, ladies and gentlemen, you should disregard any evidence presented at the trial that contradicts or is inconsistent with the constructions and the definitions that I have given you.  And, again, these are in your juror notebooks.[78]][79]

For claim limitations where I have not construed, that is defined or interpreted, any particular term, you are to use the plain and ordinary meaning of that term as understood by one of ordinary skill in the art, which is to say, in the field of technology of the patent at the time of the alleged invention [in light of the specification.[80] [It is improper to import limitations into the claims based on the specification.]][81]  The meanings of the words of the patent claims must be the same when deciding both the issues of infringement and validity.

---

[78] Authority: *Netlist, Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-00463-JRG, Final Jury Instructions, Dkt. No. 478 at 1301:1-4 (E.D. Tex. Apr. 21, 2023); *Acorn*, No. 2:19-cv-000347-JRG (May 19, 2021) (Final Jury Instructions).  Samsung: This instruction was given verbatim in *Netlist v. Samsung*.  G+ attempts to avoid a complete instruction to the jury regarding its duties as jurors.  Further, this instruction reflects the well-established principle that the parties must apply the Court's constructions.  G+ argument is an improper attempt to permit the jury to consider and weigh evidence that is contrary to the Court's construction as equal to evidence that follows the Court's constructions.

[79] G+: The paragraph above states that claim constructions are in the juror notebook, there is no reason to repeat this. This instruction is vague and confusing.  It is unclear why the jury should "disregard" any evidence unless it is specifically instructed to do so by the Court during trial, for example, if an objection and request to strike testimony is granted. Otherwise, there is no reason the jury should "disregard" evidence; the jury should consider the evidence and determine whether it supports a finding that the accused products or prior art reads on the claims. It is unclear what it even means for evidence to "contradict" the claim construction. This is also confusing because neither party is permitted to argue claim construction to the jury, and this instruction suggests the jury will hear evidence regarding the constructions.

  Samsung: Authority: Adapted from *TQ Delta, LLC v. CommScope Holding Co*., No. 2:21-cv-000310-JRG, Final Jury Instructions, Dkt. No. 534, Vol. 1 Tr. 21:14-73:13 (E.D. Tex. Mar. 30, 2023).

[80] Authority:  *Phillips v. AWH Corp*., 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."); *id.* at 1321 ("[T]he 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." (emphasis omitted)). .  Samsung: G+'s addition that it is improper to import limitations into the claims is a claim construction principle, not an instruction as to the plain and ordinary meaning, and therefore is appropriate.

[81] G+: The claims define the invention, not the specification. This instruction is unnecessary and confusing. If given, the jury should be instructed that it is improper to import limitations from the specification into the claims.

[You have been provided with copies of each of the four asserted patents, and these are inside your juror notebooks, and you may use them and refer to them during your deliberations.[82]][83]

## PATENT CLAIMS AND LIMITATIONS

I will now explain how a claim defines what it covers.  A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or method satisfies each of these requirements in that sentence, then it is covered by and infringes the claim. There can be several claims in a patent.  A claim may be narrower or broader than another claim by setting forth more or fewer requirements.  The coverage of a patent is assessed on a claim-by claim basis.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."

When a product meets all the requirements of a claim, where it meets all of its limitations or all of its elements, the claim is said to "cover" that product; and that product is said to "fall" within the scope of that claim.  In other words, a claim covers a product where each of the claim elements or limitations is present in that product.

If a product is missing even one limitation or element of a claim, the product is not covered by that claim unless an equivalent of the limitation is present.  If the product is not covered by the claim, the product does not infringe the claim.

---

[82] Authority: *Netlist, Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-00463-JRG, Final Jury Instructions, Dkt. No. 478 at 1301:13-16 (E.D. Tex. Apr. 21, 2023); *Acorn*, No. 2:19-cv-000347-JRG (May 19, 2021) (Final Jury Instructions).  Samsung: This instruction is verbatim from *Netlist v. Samsung* and provides a helpful final statement for this section.  There is no other final juror instruction that explains that the notebooks include the patents.

[83] G+: This instruction is unnecessary. The jury will have been told about the patents in the juror notebooks throughout trial, and have been reminded about the notebooks generally multiple times in these instructions.

Samsung: Authority: Adapted from *TQ Delta, LLC v. CommScope Holding Co.*, No. 2:21-cv-000310-JRG, Final Jury Instructions, Dkt. No. 534, Vol. 1 Tr. 21:14-73:13 (E.D. Tex. Mar. 30, 2023).

This case involves two types of patent claims: independent claims and dependent claims. An independent claim does not refer to any other claim in the patent.  An independent claim sets forth all the requirements that must be met in order to be covered by the claim. Thus, it is not necessary to look to any other claim to determine what an independent claim covers.

By contrast, a dependent claim does not by itself recite all the requirements of the claim but refers to another claim or claims for some of its requirements. In this way, the dependent claim depends on another claim.

A dependent claim incorporates all the requirements of the claim or claims to which it refers or depends, as well as the additional requirements set forth in the dependent claim itself.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim to which it refers or from which it depends.  A product that meets all the requirements of both the dependent claim and the claim or claims to which it refers is covered by that dependent claim.

Taking the '776 patent as an example, claim 2 of the '776 patent is an independent claim. Claim 3 of the '776 patent is a dependent claim that refers back to independent claim 2.  Therefore, dependent claim 3 includes all the requirements of claim 2 as well as all of the requirements of claim 3.

## COMPRISING

The claims of the patents-in-suit use the word "comprising."  Comprising means including or containing. [A claim that includes the word "comprising" is not limited to the methods or devices having only the elements recited in the claim but also covers methods or devices that add

additional elements.[84]][85]  [When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements..[86]][87]

For example, if you take a claim that covers the invention of a table, if the claim recites a table comprising a tabletop, four legs and glue that holds the legs and the tabletop together, the claim will cover any table that contains those structures, even if the table also contains other structures, such as leaves to go in the tabletop or wheels to go on the ends of the legs.  That is a simple example using the word "comprising" and what it means.  But, in other words, it can have other features, in addition to those that are covered by the patent.[88]

[On the other hand, using the same simple example, if a claim recites a table comprising a tabletop, four legs, and glue, it will not cover a table that has only three legs, even if it still has a

---

[84] G+: Trial Tr., *KAIST IP US LLC, v. Samsung Elecs. Co.*, No. 2:16-cv-1314-JRG-RSP, (E.D. Tex. June 15, 2018).

[85] Samsung: Samsung's instruction is more accurate, reflects the *Netlist v. Samsung* case, and more closely comports to the FCBA model instructions.

[86] Authority: *Netlist, Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-00463-JRG, Final Jury Instructions, Dkt. No. 478 at 1303:3-10 (E.D. Tex. Apr. 21, 2023); Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 2.1 Patent Claims.

[87] G+: Samsung's proposal fails to articulate that a device with additional features or method that includes additional steps beyond those described in the claims still infringes if all elements are satisfied. Trial Tr., *KAIST IP US LLC, v. Samsung Elecs. Co.*, No. 2:16-cv-1314-JRG-RSP, (E.D. Tex. June 15, 2018).

Samsung: Authority:  *Intellectual Ventures v. Great West Casualty Co.*, 6:18-cv-299-JRG, Dkt. No. 110.

[88] G+: Authority: Trial Tr., *KAIST IP US LLC, v. Samsung Elecs. Co.*, No. 2:16-cv-1314-JRG-RSP, (E.D. Tex. June 15, 2018).

tabletop and glue.  In other words, if a single feature recited in the claim is missing, a product is not covered by that claim.[89]][90]

## INFRINGEMENT

I will now instruct you on infringement in more detail.  If a person makes, uses, sells, or offers for sale within the United States or imports into the United States what is covered by a patent claim without the patent owner's permission, that person is said to infringe the patent.   [Once a patent is issued, the owner of a patent has the right to stop others from infringing the patented invention throughout the United States for the life of the patent.][91] [For any claim of infringement, an accused infringer's ownership of its own patent is not a defense to infringement.][92]

---

[89] *Optis Wireless Tech., LLC, et al. v. Apple Inc.*, 2:19-cv-0066-JRG, Trial Tr. at 178 (Preliminary Jury Instructions) (E.D. Tex. Aug. 3, 2020).  Samsung: G+ provides no reason to omit this instruction and it is important for the jury to understand the effect of a missing limitation.  This instruction does not ignore the doctrine of equivalents, which is explained in a separate instruction.  G+'s unsupported assertion that the instruction is "contrary to law" is baseless, incorrect, and should be disregarded.  This instruction is squarely relevant to "comprising" in a preamble.

[90] G+: G+ objects to this further example as contrary to law and misleading because it ignores the doctrine of equivalents, which is at issue in this case, i.e., situations where a claim may be infringed even if an element is not literally present.  The rules of literal and DOE infringement are discussed at length below, and this inaccurate short statement on infringement is improper and unnecessary.  Samsung's proposal has nothing to do with the term comprising.

[91] G+: This instruction is important to explaining to the jury the patent holders right to stop others from infringing, throughout the United States, for the life of a patent.  These issues are not addressed anywhere else in the .

Samsung: Because G+ does not (and cannot due to its FRAND obligations) seek an injunction, it is prejudicial and confusing to refer to any right bya patent owner "to stop others from infringing the patented invention."

[92] G+: This instruction is from *Mass Engineered Designs, Inc. v. Ergotron, Inc.,* Case No. 06-cv-272-LED, Final Jury Instructions, Dkt. 658 (E.D. Tex. Nov. 19, 2008). Far from being "unnecessary" as Samsung contents, this instruction is necessary to inform the jury that Samsung's discussion of its own patents are irrelevant to the issue of infringement. Samsung complains about where the instruction is placed. This section is not a "basic introduction" to infringement, it is the substantive explanation of the law on infringement. There is no section of the instructions dedicated to defenses to infringement, where Samsung seems to imply this instruction should be given. Placing this instructions after instruction on literal and DOE would be confusing as it would not be clear this instruction applies to all forms of infringement. This is the appropriate place to give the instruction.

Samsung: This sentence is unnecessary in this paragraph which is an introduction to infringement law.

To determine whether there is infringement, you must compare the asserted patent claims, as I have defined each of them, to the accused products. You should not compare the accused products with any specific example set out in the patent or with the prior art in reaching your decision on infringement. [In deciding infringement, the only correct comparison is between the accused products and the limitations of the asserted claims as the Court has construed any claim language.][93] [If an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product.][94] [Infringement can be proven based on an accused product's use of an industry standard if the asserted claim is standard essential.][95] [A patent claim is standard essential if the claim elements read onto mandatory portions of a standard that standard-compliant devices must incorporate.][96]

---

The jury has not yet heard about defenses.

[93] G+: G+ objects to the inclusion of this instruction without the following instructions. Samsung's language is incomplete and prejudicial for an SEP case. The Federal Circuit has repeatedly stated that if the products implement a standard, comparing the claims to the standard is permissible, because it is *the same as* comparing the claims to the accused product. *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327–28 (Fed. Cir. 2010) ("if an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product"); *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1377 (Fed. Cir. 2022) ("Infringement can be proven based on an accused product's use of an industry standard if the asserted claim is standard essential" because "If an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product").

[94] G+: This instruction is quoted from Federal Circuit binding precedent and this approach has been affirmed by this Court. *See, e.g., Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327–28 (Fed. Cir. 2010); *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1377 (Fed. Cir. 2022); *Optis Wireless Tech., LLC v. Huawei Techs. Co.*, No. 217CV00123JRGRSP, 2018 WL 3375192, at *1 (E.D. Tex. July 11, 2018) ("***There are different ways of showing infringement of a standard essential patent***. One could indirectly prove infringement by ***showing that (1) the standard necessarily meets the elements of the claim, (2) the accused product complies with the standard, and therefore (3) the accused product meets the claim***. This indirect evidence approach may not require significant analysis of the accused product. However, it relies upon a necessary inference tying the product to the standard and the standard to the claim.").

Samsung: This instruction is entirely inappropriate. It is black letter patent law that the claims must be compared to the accused products. Samsung proposes a more accurate instruction relating to standards elsewhere in this section.

[95] G+: *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1377 (Fed. Cir. 2022).

[96] G+: *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings* Ltd., 967 F.3d 1380, 1385 (Fed. Cir.

[If elements of an asserted patent claim are steps of a process, such claim is a method claim, and can only be infringed if those steps are actually performed by the accused products.[97]

Infringement occurs where all steps of an asserted method claim are performed by or attributable to a single entity.  If one or more entities, besides Samsung, are involved in practicing the steps of an accused method claim, Samsung is not responsible for infringement of such claim, unless Samsung directs or control those entities' performance, or Samsung and those entities form a joint enterprise.[98]]

You must reach your decision as to each assertion of infringement based on my instructions about the meaning and the scope of the claims, the legal requirements for infringement, and the evidence presented to you by both of the parties.

[In this case, G+ contends that [the accused products implement] certain [ETSI][99] / [3GPP] 5G standards[.  G+ further contends that the asserted patents are essential to those standards.  If you find that the asserted patents are essential to standards that are implemented in the accused products, then] [show that] the accused products infringe the Asserted Claims.][100]  [It is not sufficient for G+ to establish infringement by arguing that the product practices the standard, if an

_____

2020).

Samsung: Samsung objects to this instruction as prejudicial and because it is an incorrect statement of law.  *See* n. 12, *supra*.

[97] *Ormco Corp. v. Align Tech., Inc.,* 463 F.3d 1299, 1311 (Fed. Cir. 2006).

[98] *Akamai Techs., Inc. v. Limelight Networks, Inc.,* 797 F.3d 1020, 1022 (Fed. Cir. 2015).

[99] G+: Samsung proposes a lengthy preliminary jury instruction about ETSI which never mentions 3GPP.  It is confusing to switch to 3GPP here.

[100] G+: Samsung's proposed language is incomplete and inaccurate.  This instruction should be omitted.  G+'s proposed language reduces but does not eliminate prejudice from this confusing and inaccurate instruction.  Samsung misrepresents G+'s infringement contentions by suggesting G+ relies on standards alone to prove infringement.  As G+ expert ▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬

industry standard does not provide the level of specificity required to establish that practicing that standard would always result in infringement, or if the relevant section of a technical standard is optional.][101]    [Only in the situation where a patent covers every possible implementation of a standard [or G+ establishes that Samsung implements an optional section of the standard]] will it be enough to prove infringement by showing standard compliance.][102]    [Otherwise, G+ must [also]

---

[101] G+: Samsung's instruction is one-sided, prejudicial, redundant, and incorrect as a matter of law. For example, the *Fujitsu* case expressly states that a patentee "may rely on an industry standard in analyzing infringement" and that where "the reach of the claims includes any device that practices a standard, then this can be sufficient for a finding of infringement." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327–28 (Fed. Cir. 2010). As the Federal Circuit explained, "if an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product." *Id.* ("Public policy weighs in favor of this approach. If a court determines that all implementations of a standard infringe the claims of a patent, then it would be a waste of judicial resources to separately analyze every accused product that undisputedly practices the standard. This is not prejudicial "). As the Federal Circuit explained, Samsung "is free to either prove that the claims do not cover all implementations of the standard or to prove that it does not practice the standard." *Id.*

G+'s proposed instructions already provide that infringement can only be proven based on a standard by pointing to ***mandatory*** sections of the standard. Instructions about specificity of the standard are confusing and redundant of this point. G+'s language is directly quoted from *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327–28 (Fed. Cir. 2010).

Samsung: <u>Authority</u>: *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010); *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, 967 F.3d 1380, 1385 (Fed. Cir. 2020); *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1377 (Fed. Cir. 2022). Samsung: These instructions on standard essentiality are necessitated by G+'s repeated reliance on 3GPP 5G standards throughout its infringement presentation at trial. The Federal Circuit in *Fujitsu, Godo Kaisha*, and *INVT* has clearly articulated the requirements for relying on a technical standard to prove infringement, and these requirements must be provided to the jury to ensure a proper application of the governing law. That is why Samsung's proposed instruction language comes directly from *Fujitsu*, in which the Federal Circuit set forth the law governing the use of technical standards to prove infringement.

[102] G+: Samsung's proposed language is incomplete and inaccurate. This instruction should be omitted. G+'s proposed language reduces but does not eliminate prejudice from this confusing and inaccurate instruction. As a matter of Federal Circuit binding precedent, contrary to Samsung's proposed instruction, G+ can show that Samsung infringes by showing that (1) Samsung implements a portion of a standard (whether or not it is mandatory or optional) and (2) that implementing that portion of the standard practices the claims. *See, e.g., Fujitsu Ltd. v. Netgear Inc.,* 620 F.3d 1321, 1327–28 (Fed. Cir. 2010) ("Or, as with the ′952 patent, ***the relevant section of the standard is optional***, and standards compliance ***alone*** would not establish that the accused infringer chooses to implement the optional section. In these instances, it is not sufficient for the patent owner to establish infringement by arguing that the product admittedly practices the standard, therefore it infringes. In these cases, the patent owner must compare the claims to the accused products ***or, if appropriate, prove that the accused products implement any relevant optional sections of the standard***").

compare its claims to the accused products [and can't rely solely on a comparison]/[rather than] to the technical standard to prove infringement.][103]

I will now instruct you on the specific rules that you must follow to determine whether G+ has proven that Samsung has infringed one or more of the patent claims involved in this case [by a preponderance of the evidence][104]. [There are two possible ways that a claim may be directly infringed. The two types of infringement are called literal infringement and infringement under the doctrine of equivalents. G+ contends that Samsung directly infringes the asserted patents both literally and under the doctrine of equivalents. I'll explain the requirements of each of these types of infringement to you. In order to infringe a patent claim, the accused device must include each and every element of the claim either literally or under the doctrine of equivalents].[105] [This case implicates different types of alleged infringement. I'll explain the requirements of each of these types of infringement to you.][106]

---

[103] G+: Samsung's proposed language is incomplete and inaccurate. This instruction should be omitted. G+'s proposed language reduces but does not eliminate prejudice from this confusing and inaccurate instruction. "Rather than" suggests G+ cannot rely on the standard in any manner except for mandatory portions. This is wrong. Samsung's documents show that Samsung implements parts of the ETSI standards which Samsung's experts contend are optional and G+'s experts contend are mandatory. These sections of the standard are relevant regardless of whether the jury concludes they are optional or mandatory because they are implemented in Samsung's products.

[104] G+: This is redundant. G+'s burden of preponderance of the evidence is mentioned multiple other times in the infringement section.

Samsung: Authority: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 3.1 Infringement Generally.

[105] G+: This is the only instruction explaining that literal and DOE are two separate ways to infringe. The next two instructions (for literal and DOE) are lengthy and it is helpful to instruct the jury it is about to hear about two different types of infringement. It makes more sense to do this before the start of the literal infringement instruction (as G+ proposes) than after (as Samsung proposes).

Samsung: G+'s language has been a moving target. Samsung's language is more precise and simpler additional instructions that follow explain literal infringement and infringement under the doctrine of equivalents.

[106] G+: It is unnecessary and confusing to mention indirect infringement here before addressing literal and DOE.

Samsung: G+'s language has been a moving target. Samsung's language is more precise and simpler and

## DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT"[107]

[There are two types of "direct infringement": (1) "literal infringement" and (2) "infringement under the doctrine of equivalents."][108] In order to prove [that Samsung's accused products literally infringe][109]/[direct infringement by literal infringement], G+ must prove by [a] preponderance of the evidence, i.e., that it is more likely than not, that Samsung made, used, sold, offered for sale within, or imported into the United States a product that meets all of the requirements of a claim[ and did so without the permission of G+ during the time an asserted patent was in force][110]. [You must compare the product [or the standard] with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.][111]

A claim element is literally present if it exists in the accused product as it is described in the claim language either as I have explained it to you or if I did not explain it according to its ordinary meaning as understood by one of ordinary skill in the art. [In making your determination,

---

the instructions that follow set forth the different types of alleged infringement in this case.

[107] Samsung: <u>Authority</u>: G+:*Whirlpool*, Case No. 2:15-cv-01528-JRG, Dkt. 166 (E.D. Tex. Mar. 23, 2017); Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 3.1a Direct Infringement By "Literal Infringement."

[108] G+: It makes more sense to introduce literal and DOE before the literal infringement instruction, as G+ proposes, and not within the literal infringement instruction.

[109] G+: G+'s instruction is clearer.  Samsung: Samsung's instruction is clearer, especially given the preceding sentence.

[110] G+: this language is prejudicial because G+ never gave permission.  No mention of "without permission" should be included if G+'s MSJ on Samsung's license defense is granted.  This instruction is confusing because it is the first time the language "in force" is used and there is no explanation what it means. This is the first instruction on literal infringement and it should be clear and easy to understand.

[111] G+: as explained above, it is incorrect to say in an SEP case that G+ must compare the claims to the product. This instruction is redundant.  If allowed, G+'s conditional added language should be included.

Samsung: <u>Authority</u>: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 3.1a Direct Infringement By "Literal Infringement."  Samsung: This language is taken directly from the FCBA model and directly addresses literal infringement, without injecting unnecessary issues. Samsung objects to informing the jury that it can compare the claims to the "standard" for the reasons given above.  Samsung proposes an instruction to address that issue and it is prejudicial and legally correct to refer to any comparison with the "standard" without the rest of the instruction.

you must consider each claim separately.  Not all of the claims of a patent must be infringed for infringement to exist.  The Plaintiff need only establish by a preponderance of the evidence that one claim is infringed.  If you find that each and every element of a patented claim is found in the accused product then the claim is infringed, even if the accused product may include additional features or functions not found in the claims.][112]

[You must determine, separately for each asserted claim, whether or not there is infringement.[113]  [An accused product infringes a claim if it satisfies the claim elements, even though it may be capable of non-infringing modes of operation.][114]  [If any element recited in a claim is not found in an accused product, then you must find that particular product does not [literally] infringe that claim[ but may still infringe under the doctrine of equivalents, as I will explain to you in a moment].][115]  So long as an accused product has each and every one of the claim

---

[112] G+: This instruction is appropriate and accurately describes G+'s burden.  Further, it instructs the jury to consider each claim separately and does not conflate claims with patents. *See, KAIST IP US LLC, v. Samsung Elecs. Co, et al.,* No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018).

Samsung: These four sentences should not be included and are prejudicial because they are argumentative, unnecessary, and repetitive.  The "even if the accused product…" language is repeated in the very next paragraph.  Moreover, G+ does not cite support for these instructions.

[113] G+: This statement is incorrect. The jury can end its infringement inquiry for a patent if it determines any one valid claim is infringed. It need not consider every claim.

Samsung: <u>Authority</u>: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 3.1a Direct Infringement By "Literal Infringement."  Samsung: This language is taken directly from the FCBA model and simplifies the wording to aid juror comprehension.

[114] *See,* Netlist v. Samsung, 2:21-CV-463-JRG, final jury instructions. There is nothing ambiguous about this.  The last sentence does not convey the same concept: this instruction relates to how a device or method is used (in a non-infringing manner), while the final paragraph relates to whether the device or method includes additional structure or steps beyond the infringing structure or steps. Both are accurate and important.

Samsung: This sentence should not be included because it is vague due to the usage of the term "non-infringing mode."  This sentence is also unnecessary and repetitive because the last sentence of this paragraph agreed-upon by the parties conveys the same concept.

[115] G+: this instruction excludes DOE, and is redundant of the previous and the very next instructions regarding each and every claim element. If given, it should be made clear that the statement applies to literal infringement only, not DOE.

Samsung: <u>Authority</u>: *Netlist, Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-00463-JRG, Final Jury Instructions,

limitations, infringement in that claim is shown even if the product contains additional features or elements not required by the claim.[116]

[Now, you must decide separately and for each asserted claim whether or not there is infringement.  However, if you find that an independent claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers or depends directly or indirectly from that independent claim.

On the other hand, if you find that an independent claim has been infringed, you must still decide separately whether the product meets the additional requirements of any claim that depends from or refers to that independent claim, thus whether those dependent claims have also been infringed.  As I have said, a dependent claim includes all the requirements of any of the claims to which it refers or depends, plus the additional requirements set forth in the dependent claim itself.][117]

A patent can be directly infringed even if the alleged infringer did not have knowledge of the patent and without the infringer knowing that what it was doing is infringement of the claim.[118]

---

Dkt. No. 478 at 1307:21-1308:3 (E.D. Tex. Apr. 21, 2023); *Acorn*, No. 2:19-cv-000347-JRG (May 19, 2021) (Final Jury Instructions).  Samsung: This instruction should be included because it provides a more complete, black letter law instruction to the jury on determining infringement. G+ provides no reason to omit this instruction.  The doctrine of equivalents is discussed and clarified elsewhere in the instructions, and so G+ explains no prejudice or other reason to exclude this instruction.  This instruction was given in *Netlist v. Samsung*.

[116] *See,* Netlist v. Samsung, 2:21-CV-463-JRG, final jury instructions.

[117] G+: These instructions are repetitive and unnecessary. The words "each and every" appear three times in the preceding paragraph. The section on independent and dependent claims already explains how these claims work. And it is not accurate to say that the jury must separately decide infringement for each and every claim. The agreed question on the verdict form includes a single question about whether any claim was infringed.

Samsung: Authority: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 3.1a Direct Infringement By "Literal Infringement."  Samsung: these paragraphs are necessary to explain how infringement regarding independent and dependent claims must be analyzed.  Regardless of the form of the verdict form, the jury legally must assess infringement on a claim-by-claim basis.

[118] G+: *Whirlpool*, Case No. 2:15-cv-01528-JRG, Dkt. 166 (E.D. Tex. Mar. 23, 2017).

[A patent may also be directly infringed, even though the accused infringer believes in good faith that what it is doing is not infringement of the patent.][119]

## DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

If you find that the accused product does not literally infringe a claim of the asserted patents, then you may still find infringement if you find each element is met under the doctrine of equivalents.  Under the doctrine of equivalents, if a person makes, uses, sells, offers to sell within or imports into the United States a product that does not meet all of the requirements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product satisfies that claim under the doctrine of equivalents.

Under the doctrine of equivalents, a product infringes a claim if the accused product contains elements [corresponding to each and every requirement of the claim that is equivalent to, even though not met by, the product][120] / [that literally meet or are equivalent to each and

---

[119] G+: This sentence is accurate and correctly informs the jury that there is no scienter required for infringement.  There is nothing argumentative about this instruction, it simply reflects that a good faith belief in non-infringement is not a defense to infringement. This is different than the previous sentence; it could be true that lack of knowledge of a patent or infringement is not a defense, but that a good faith belief is a defense, similar to the standard for willful infringement (where knowledge is not required and willful blindness can be sufficient, and a good faith belief is a defense).  This instruction is routinely provided by this Court. *See, e.g., KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018); *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019).

Samsung: This sentence should not be included and is prejudicial because it is argumentative, unnecessary, and repetitive of the previous sentence.  G+'s stated reason for including this instruction does not cure any of those issues.  The scienter issue is addressed in the previous sentence.

[120] G+: Samsung's proposed wording is confusing. The previous sentence explains that DOE arises where "a product that does not meet ***all of the requirements of a claim*** and thus does not literally infringe that claim," the next sentence begins by stating that for DOE to apply the product must "contains ***elements***…" – there is no need to return back to literal infringement here. G+'s instruction makes logical sense: the product must contain elements that are equivalent for each element that is not literally infringed. *See, Netlist v. Samsung*, 2:21-CV-463-JRG, final jury instructions.

Samsung: Samsung's proposed language verbatim tracks the FCBA model instructions and should be implemented because it is legally correct.  *I.e.*, the product infringes a patent claim by DOE if some elements infringe literally and others infringe under DOE.

64

every requirement of the claim][121].  You may find that an element is equivalent to a requirement of a claim that is not met literally if [G+ provided particularized testimony and linking argument that[122]] a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the action or structure: (1) performs substantially the same function, (2) [works][123] in substantially the same way, (3) to achieve substantially the same result as the requirement of the claim.   [The particularized testimony and linking argument as to the insubstantiality of the differences between the claimed invention and the accused device, or with respect to the function, way, result, must be on a claim limitation-by-limitation basis to support a finding of infringement under the doctrine of equivalents.[124]   Generalized testimony as to the overall similarity between the claims and the accused products is not sufficient to support a finding infringement under the doctrine of equivalents.[125]   In order to prove infringement by "equivalents," G+ must prove the equivalency

---

[121] G+: this language is about the elements *not literally infringed* – it is confusing to reference that DOE would apply if those elements are literally infringed.

Samsung: Authority: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 3.1c. Samsung: Samsung's proposed language verbatim tracks the FCBA model instructions and should be implemented because it is legally correct.  *I.e.*, the product infringes a patent claim by DOE if some elements infringe literally and others infringe under DOE.

[122] Authority:  *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed.Cir.1996).

[123] G+: Samsung's addition of the word "works" is improper and contrary to the legal standard. The Federal Circuit test is simply that the product "perform substantially the same function in substantially the same way with substantially the same results." *Ring & Pinion Serv. Inc. v. ARB Corp.*, 743 F.3d 831, 835 (Fed. Cir. 2014) (omitting word "works"); *Netlist v. Samsung*, 2:21-CV-463-JRG, final jury instructions.

Samsung Authority: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 3.1c. The instruction was taken verbatim from the Federal Circuit Bar Association Model Instructions.  G+ fails to explain how this instruction is "improper and contrary to the legal standard."  It plainly is not.  G+ provides no legitimate reason to omit this language.  G+ does not explain how the *Ring & Pinion* case supports or requires removing this language.

[124] Samsung: This instruction explains the requisite evidence to support a finding of infringement under the doctrine of equivalents.  *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed.Cir.1996).

[125] Authority:  *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567

of the structure of or action to the claim element by a preponderance of the evidence.  Thus, each element of a claim must be met by the accused product or method either literally or under the doctrine of equivalents for you to find infringement.][126]

[Known interchangeability of the claim element and the proposed equivalent is a factor that can support a finding of infringement under the doctrine of equivalents.  In order for the structure to be considered interchangeable, the claim element must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent. Interchangeability at the present time is not sufficient. [To be clear, there is no requirement that the patent owner knew of any claim element, or knew of the patent, or knew it was infringing, to find infringement under the doctrine of equivalents.]][127] [Under the doctrine of equivalents, the

---

(Fed.Cir.1996).

[126] G+: Samsung's additional proposed language is duplicative, confusing, and prejudicial.  The first sentence of this paragraph, and the final sentence of this section includes this same information.  The instruction already states G+ must prove infringement, and what it must prove regarding equivalency. G+'s proposal matches the final jury instructions in *Netlist v. Samsung*, 2:21-CV-463-JRG.

Samsung is wrong to suggest that because its proposed instruction is from the FCBA, it should be included. The instructions in this case include a broad range of instructions not from the FCBA, so not every FCBA instruction either party selects is necessarily appropriate, including where it is duplicative of other instructions.

Samsung: <u>Authority</u>: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 3.1c.  Samsung: G+ articulates no reason for excluding an instruction taken verbatim from the FCBA model instruction on the doctrine of equivalents.

[127] G+: This additional instruction on "interchangeability" is unnecessary and confusing. The jury is already being instructed on the function/way/result test. The instruction includes requirements specific to interchangeability that are not at issue in this case about whether the claim element was known at the time of infringement. This is highly prejudicial as DOE does not require any such knowledge. G+'s conditional added language mitigates but does not eliminate the prejudice.

Samsung:  <u>Authority</u>: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 3.1c. Samsung's proposal is a more complete instruction on the doctrine of equivalents and is taken verbatim from the FCBA model instruction.  G+ provides no reason to exclude this instruction, which is not confusing.  It is also prejudicial to repeat and thereby overemphasize an instruction on scienter which is already present in the instructions.

proper time for evaluating equivalency is at the time of infringement, not at the time the patent
was filed or issued.][128]

[Now, in order to prove direct infringement under the doctrine of equivalents, the Plaintiff,
G+, must prove by a preponderance of the evidence that for each claim element or limitation not
literally present in the accused product, the equivalent of that claim or limitation is present in that
accused product.][129]

## MEANS-PLUS-FUNCTION CLAIMS

The "first reselection module" and "second reselection module" terms in asserted claim 2
of the '776 patent are so-called means-plus-function claim limitations.

Means plus function claims have a special meaning in patent law.  It does not cover all the
structures that could perform the function set forth in the claim.  Instead, it covers a structure or
set of structures that performs that function and that is either identical or equivalent to the structures
described in the patent for performing the function.

To demonstrate that these limitations are literally met, G+ must prove by a preponderance
of evidence (that is, it is more likely than not) that Samsung's products contain a structure that (1)
performs the recited function; and (2) is identical or equivalent to the structure that is disclosed in
the patent specification and drawings for performing the recited function.  I have set forth in my
claim construction order both the recited function that is to be performed by the structure, and the

---

[128] G+: This instruction accurately informs the jury the appropriate time at which to assess *Warner-
Jenkins Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 37 (1997); *Siemens Medical Sol. USA, Inc. v.
Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1282 (Fed. Cir. 2011).

Samsung: This instruction is unnecessary.

[129] G+: G+ conditionally agrees to this language if and only if Samsung's instruction which immediately
precedes on "known interchangeability" is given; in that instance, the instruction on DOE would end in a
confusing manner without it.  However, G+ if the language on interchangeability is not given, this language
is redundant and should be removed.

structure that is disclosed in the patent specification that performs the recited function.  Those constructions are included under Tab __ of your Juror Notebook.

Whether the structure of the accused product is equivalent to a structure disclosed in the patent specification and drawings is decided from the perspective of a person of ordinary skill in the art.  The structure in the accused product and that disclosed in the patent are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial.  One way to show this is to demonstrate that the structure in the accused product performs the identical function in substantially the same way to achieve substantially the same result as would be achieved by the element that is disclosed in the patent specification.

In deciding whether the differences would be insubstantial you may consider whether people of ordinary skill in the art would have known that the accused structure and the structure identified in my claim construction were interchangeable at the time the patent issued.

[Further, in determining structural equivalency, the range of permissible equivalents depends upon the extent and nature of the invention.[130]  More particularly, when in the claimed "reselection module" limitation the disclosed physical structure is of little or no importance to the claimed invention, there may be a broader range of equivalent structures than if the physical characteristics of the structure are critical in performing the claimed function in the context of the claimed invention.  That the structure in the accused products may perform additional functions not disclosed in the patent specification does not mean the structure is not identical or equivalent to the structure that I identified in my claim construction order.  For example, if the disclosed structure in the patent is a summation algorithm while the structure in the accused products for performing the recited function has, in addition to summation functions, also logical functions

---

[130] *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1304 (Fed. Cir. 2011).

and multiplication functions, the accused structure may nevertheless still satisfy the requirement that it is a summation algorithm or equivalent. This is the case even if the accused structure purports to have a different objective from or achieves better performance than that is disclosed in the patent specification. It bears noting that even when two structures would not have been considered equivalent structures in other contexts, e.g., if performing functions other than the claimed function, they may nevertheless be equivalent for the means-plus-function term when performing the same function.][131]

## [INDIRECT INFRINGEMENT[132]

In addition to direct infringement, a party can be liable for infringement if it actively induces the direct infringement of a patent claim by another, or if it contributes to the direct infringement of a patent claim by another. To show inducement, the Plaintiff must prove by a preponderance of the evidence that someone has directly infringed a patent claim. If you find that someone has directly infringed the asserted claims, it is not necessary to show that Samsung itself has directly infringed if the Plaintiff prove by a preponderance of the evidence that Samsung actively and knowingly aided and abetted[133] that direct infringement. The Plaintiff must show that

---

[131] G+: Samsung is wrong that G+ has not asserted equivalence of the means plus function limitations. Further, the previous section does not cover the material in this paragraph (that equivalents depends on importance of the disclosed structure; that performing additional functions does not remove equivalence; or that structures not equivalent in other contexts can still be equivalent in this context). This instruction was given in *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1304-05 (Fed. Cir. 2011).

Samsung: This entire paragraph is unnecessary and superfluous. It is covered by the instructions above. Furthermore, this paragraph is not relevant to this case, because G+ has not asserted "structural equivalency" of those means-plus-function limitations over elements of the accused products. The jury instructions already include the Court's claim construction and giving specific, technical examples about how the jury might apply the general instruction about means-plus-function claiming improperly risks invading the jury's fact-finding province.

[132] G+: Based on *Golden Hour Data Systems, Inc. v. emsCharts, et al.*, No. 2:06-cv-381 (E.D. Tex. Nov. 25, 2008).

[133] Samsung: This language is misleading. The Supreme Court has held "analogiz[ing] § 271(b) to the federal aiding and abetting statute, 18 U.S.C. § 2, . . does not hold up . . . [because] it['s] unlikely that

Samsung actually intended to cause the acts that constitute direct infringement and that Samsung knew or should have known[134] that its actions would induce actual infringement.

Now, if you find that someone has directly infringed the asserted claims and you find that Samsung knew or should have known[135] that its actions would induce direct infringement, you may find that Samsung induced another to infringe the asserted patents if it provided instructions and directions to perform the infringing act.

To show contributory infringement, the Plaintiff must prove by a preponderance of the evidence that:[136]

1. Samsung sold, offered to sell, or imported within the United States a component or group of components of a product, during the time the asserted patents were in force;

---

Congress had this particular doctrine in mind when it enacted the Patent Act of 1952, given the doctrine's inconsistency with the Act's cornerstone principle that patentees have a right only to the set of elements claimed in their patents and nothing further." *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915 (2014).

[134] Samsung: G+ misstates the standard as "should have known" is not the test. "[I]ndirect infringement requires knowledge of the underlying direct infringement" and "may be satisfied under the doctrine of willful blindness." *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1364 (Fed. Cir. 2016) (citing *Global-Tech Appliance, Inc. v. SEB S.A.*, 563 U.S. 754, 769-60 (2011). Willful blindness is a higher *mens rea* standard than the "should have known" negligence standard. *See Global-Tech*, 563 U.S. at 770 "[A] reckless defendant is one who merely knows of a substantial and unjustified risk of [a] wrongdoing, and a negligent defendant is one who should have known of a similar risk but, in fact, did not see." (internal citations omitted)).

[135] Samsung: G+ misstates the standard as "should have known" is not the test. "[I]ndirect infringement requires knowledge of the underlying direct infringement" and "may be satisfied under the doctrine of willful blindness." *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1364 (Fed. Cir. 2016) (citing *Global-Tech Appliance, Inc. v. SEB S.A.*, 563 U.S. 754, 769-60 (2011). Willful blindness is a higher *mens rea* standard than the "should have known" negligence standard. *See Global-Tech*, 563 U.S. at 770 "[A] reckless defendant is one who merely knows of a substantial and unjustified risk of [a] wrongdoing, and a negligent defendant is one who should have known of a similar risk but, in fact, did not see." (internal citations omitted)).

[136] G+: *Pabst Licensing GMBH & Co. KG, v. Samsung Elecs. Co., Ltd., et al.*, No. 6:18-cv-388-RWS Dkt. 291 (E.D. Tex. Nov. 6, 2018).

2. the component or group of components of a product had no substantial, non-infringing use;

3. the component or group of components of a product constituted a material part of the invention;

4. Samsung (a) was aware of the patent and knew that the products were covered by a claim of the patent; or else (b) was willfully blind to the infringement of the patent. Willful blindness requires that Samsung subjectively believed there was a high probability that the encouraged acts constituted infringement of the patent and Samsung took deliberate actions to avoid learning of the infringement; and

5. the use of that product directly infringed the claim.][137]

**[INDIRECT INFRINGEMENT – ACTIVE INDUCEMENT[138]**

G+ alleges that Samsung is liable for infringement by actively inducing end users to directly infringe the Asserted Patents literally or under the doctrine of equivalents.  As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

Samsung is liable for active inducement of a claim only if G+ proves by a preponderance of the evidence:

that the acts actually carried out by end users of Samsung accused products directly infringe that claim;

---

[137] Samsung:  Samsung's proposed approach, *i.e.*, to separate inducement and contributory infringement and follow the FCBA model instructions, is more appropriate because it is clearer and less likely to cause juror confusion.  G+'s less complete instructions are missing some aspects of the legal requirements.

[138] Samsung: Authority: Based on Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 3.2.

that Samsung took action during the time the asserted patents were in force that was intended to cause and led to the infringing acts by end users of the Samsung accused products; and

that Samsung was aware of the asserted patents and knew that the acts, if taken, would constitute infringement of that patent.

If you find that Samsung was aware of the asserted patents, but believed that the acts it encouraged did not infringe that patent, Samsung cannot be held liable for inducement.

In order to establish active inducement of infringement, it is not sufficient that the end users of the Samsung accused products themselves directly infringe the claim. Nor is it sufficient that Samsung was aware of the acts by its end users that allegedly constitute the direct infringement. Rather, in order to find active inducement of infringement, you must find either that Samsung specifically intended its end users to infringe the asserted patent or that Samsung believed there was a high probability that its end users would infringe the asserted patents, but deliberately avoided learning the infringing nature of its end user's acts. The mere fact, if true, that Samsung knew or should have known that there was a substantial risk that its end user's acts would infringe the asserted patents would not be sufficient to support a finding of active inducement of infringement.[139]

## INDIRECT INFRINGEMENT – CONTRIBUTORY INFRINGEMENT[140]

G+ argues that Samsung is liable for contributory infringement by contributing to the direct infringement of the asserted patents by its end users of the accused Samsung products. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

---

[139] Samsung: Authority: *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1364 (Fed. Cir. 2016).

[140] Samsung: Authority: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 3.3.

Samsung is liable for contributory infringement of a claim if G+ proves by a preponderance of the evidence:

(1) Samsung sells, offers to sell, or imports within the United States a component of a product, material, or apparatus for use in a process, during the time the asserted patents are in force;

(2) the component, material, or apparatus is not a staple article or commodity of commerce suitable for substantial noninfringing use;

(3) the component, material, or apparatus constitutes a material part of the invention;

(4) Samsung is aware of the asserted patents and knows that the component, material, or apparatus is especially made or adapted for use as an infringement of the patent claims; and

(5) the end users of the accused Samsung products uses the component, material, or apparatus to directly infringe a claim.]

## WILLFULNESS[141]

In this case, G+ contends that Samsung willfully infringed its patents.  If you decided that Samsung has infringed [a valid claim of the asserted patents][142], you must go on and separately address the additional issue of whether or not that infringement was willful.

---

[141] G+: *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019).

[142] G+: Samsung cites no authority for its instruction, or for the idea that the jury may not address willfulness for a claim it finds invalid.  For example, a finding of invalidity could be overturned on JMOL or appeal, and a willfulness finding could stand independently.  Validity has no bearing on the willfulness inquiry (or the infringement inquire) and it is confusing and unnecessary to mention it here. *See,* Netlist v. Samsung, 2:21-CV-463-JRG, final jury instructions.

Samsung: This full statement is necessary to avoid confusing the jury about whether they are to address willfulness if they find a claim: (i) infringed; and (ii) invalid.  G+'s removal of this phrase improperly suggests that the jury is still to address willfulness in this situation.

[The Plaintiff G+ has the burden of proving willful infringement by a preponderance of the
evidence.][143] / [Willfulness requires you to determine whether G+ proved that it is more likely than
not that Samsung knew of G+'s patents and that the infringement by Samsung was deliberate or
intentional.][144]

---

[143] G+: The jury is instructed throughout on the preponderance of evidence standard; this is the only place
Samsung seeks to omit that language. It would be improper to do so. *United Services Automobile
Association v. Apple Bank, N.A.*, No. 2:18-cv-00366-JRG, (E.D. Tex. Jan. 9, 2020); Netlist v. Samsung,
2:21-CV-463-JRG, final jury instructions.

Samsung: Samsung's instruction provides more readily understandable wording; *i.e.*, "more likely than
not" as opposed to "preponderance of the evidence."

[144] G+: Samsung's instruction inappropriately suggests that willful blindness cannot form the basis for
willful infringement. The Federal Circuit held that willfulness "requires a jury to find ***no more than***
deliberate or intentional infringement." In other words, deliberate or intentional infringement is the highest
threshold that needs to be met. Willful blindness is another way for a jury to find willful infringement.
*WCM Industries, Inc. v. IPS Corp.*, 721 F. App'x 959, 970 (Fed. Cir. 2018); *see also Arctic Cat Inc. v.
Bombardier Recreational Prod. Inc.,* 876 F.3d 1350, 1371 (Fed. Cir. 2017) ("Halo emphasized that
subjective willfulness alone—i.e., proof that the defendant acted despite a risk of infringement that was
'either known or so obvious that it should have been known to the accused infringer,'—can support an
award of enhanced damages.").

In *WCM Industries,* the Federal Circuit expressly rejected the idea that there is a "per se rule" that "a
party cannot be found to have 'willfully' infringed a patent of which the party had no knowledge" and
upheld a finding of willful infringement in light of evidence that "the risk of infringement was known to
IPS ***or so obvious that it should have been known***." *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959,
970-71 (Fed. Cir. 2018) ("We find IPS's arguments unpersuasive. First, this court has already held that *State
Industries* does not establish a per se rule, as IPS contends, but rather, 'is in harmony with our prior and
subsequent case law, which looks to the 'totality of the circumstances presented in the case.'").

Further, the Federal Circuit has expressly held that its decision in *Halo* "was not [] inten[ded] to created
a heightened requirement for willful infringement." *SRI Int'l, Inc. v. Cisco Sys*., 14 F.4th 1323, 1330 (Fed.
Cir. 2021); *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017)
("Halo emphasized that subjective willfulness alone—i.e., proof that the defendant acted despite a risk of
infringement that was 'either known or so obvious that it should have been known to the accused
infringer,'—can support an award of enhanced damages.").

Further, the Federal Circuit has affirmed that substantial evidence that an infringer "recklessly
disregarded [] patent rights" is sufficient to support a finding of willful infringement. *See, e.g., Ironburg
Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1296 (Fed. Cir. 2023) ("All of this provided the jury with
substantial evidence to support a finding that Valve ***"recklessly" disregarded Ironburg's patent rights and,
therefore, willfully infringed***. Thus, we affirm the district court's denial of  Valve's motion and its entry of
judgment of willful infringement."). This instruction was provided in *United Services Automobile
Association v. Apple Bank, N.A.*, No. 2:18-cv-00366-JRG, (E.D. Tex. Jan. 9, 2020).

Samsung: <u>Authority</u>: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020),
Instruction 3.10; *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021). Samsung:
This instruction appropriately ties the standard of proof to the elements G+ has to establish and therefore is

You may not determine that the infringement was willful just because Samsung knew of the Asserted Patents and infringed them. [Instead, you must find that Samsung deliberately infringed the asserted patent.[145]] [You may find that Samsung willfully infringed if you find that Samsung deliberately or intentionally infringed the asserted patents or acted in reckless disregard of or with indifference to the rights of G+.[146] A defendant is indifferent to the rights of another

more helpful to the jury. G+ cites *WCM* and *Arctic Cat* for the notion that willful blindness "is another way for a jury to find willful infringement," but neither of those cases make any such holding or even mention "willful blindness." G+ identifies no Federal Circuit case holding that willful blindness, or the lesser *mens rea* standard of reckless indifference, is sufficient to prove willful infringement, and its argument should be rejected. The Federal Circuit and Supreme Court have not squarely addressed whether willful blindness can be used to satisfy the knowledge requirement for willfulness, and Samsung respectfully asserts that it does not. Furthermore, in the context of inducement, the Supreme Court in *Global-Tech Appliances, Inc. v. SEB S.A.*, held that "willful blindness" substitutes for only the knowledge requirement. 563 U.S. 754, 766 (2011) (affirming "because the evidence in this case was plainly sufficient to support a finding of Pentalpha's knowledge under the doctrine of willful blindness"). It did not hold that willful blindness can substitute for "deliberate or intentional infringement." Deliberate or intentional infringement must take into consideration a defendant's state of mind, including any good faith belief of invalidity, license, and/or other defenses. At the very least, decisions from this District have held that the behavior G+ alleges of Samsung here does not qualify as willful blindness sufficient to prove willfulness. *See, e.g.*, *Nonend Inventions, N.V. v. Apple. Inc.*, No. 2:15-CV-466, 2016 WL 1253740, at *3 (E.D. Tex. Mar. 11, 2016) ("[T]he Court finds Motorola's policy of asking its employees to ignore patents and patent applications does not per-se constitute 'willful blindness[,]' [and] [t]he Court finds that more must be alleged to show a policy of ignoring patents caused an alleged infringer's actions to 'surpass recklessness and negligence' and rise to the level of "willful blindness."), *report and recommendation adopted*, 2016 WL 1244973 (E.D. Tex. 2016).

[145] G+: This instruction is legally erroneous. *See* prior objection, including Federal Circuit precedent holding that willful blindness and reckless indifference to rights of another can support a finding of willful infringement.

Samsung: <u>Authority</u>: *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021) ("The evidence adduced at trial merely demonstrates Baxalta's knowledge of the '520 patent and Baxalta's direct infringement of the asserted claims. Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness. Rather, **willfulness requires deliberate or intentional infringement**." (emphasis added)); *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020); Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 3.10 Willful Infringement. Samsung: This instruction provides context after the sentence that precedes it. Willful infringement requires deliberate or intentional infringement. Knowledge, by itself, is not enough. This instruction is more accurate than G+'s misstatements of law, as addressed further below.

[146] G+: The record supports a finding that Samsung willfully blinded itself to G+'s patents and Samsung's infringement in this case. For example, G+ provided claim charts prior to filing suit, and Samsung's engineers still never reviewed the asserted patents or evaluated whether Samsung infringes. Furhter, Samsung's engineers testified that Samsung does not instruct its engineers that members of ETSI disclose

==when it proceeds in disregard of a high or excessive danger of infringement that was known to it==

==or was apparent to a reasonable person in its position.==[147]]  Your determination of willfulness

---

patents to ETSI, and that portions of the ETSI standard cover patents of others. *See, e.g.,* Kim Tr. at 184:2-11 ("Q. In your training regarding respecting the patent rights of others in your 21 years at Samsung, has anyone ever told you that the companies involved in developing the standard submit disclosures to 3GPP listing the patents they believe cover different aspects of the 3GPP standard? A. I have not received such list."). Samsung's failure to review the patents at issue in this case after receiving notice of infringement, and overall policy of deliberately shielding its engineers from the declared patents of others supports a finding of willful blindness. The Federal Circuit has repeatedly found that willfulness involves a totality of circumstances inquiry, and that there is no per se rule that an infringer must have knowledge of the patents or its infringement. *See* prior objection. This instruction was provided in *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00366-JRG, (E.D. Tex. Jan. 9, 2020).

Samsung: G+ does not allege willful blindness based on the facts of this case, and therefore this language is unnecessary. G+'s allegation that "reckless disregard of or with indifference to the rights of G+" satisfies the willfulness standard is legally incorrect. The Federal Circuit has explained that willful infringement requires deliberate or intentional infringement. *See, e.g., Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021) ("The evidence adduced at trial merely demonstrates Baxalta's knowledge of the '520 patent and Baxalta's direct infringement of the asserted claims. Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness. Rather, ***willfulness requires deliberate or intentional infringement***." (emphasis added)); *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020). The Federal Circuit and Supreme Court have not squarely addressed whether willful blindness can be used to satisfy the knowledge requirement for willfulness, and Samsung respectfully asserts that it does not. *See supra* n.144 for additional detail. G+'s instruction also does not properly define the willful blindness standard. For there to be willful blindness, "the defendant must subjectively believe that there is a high probability that a fact exists" and "the defendant must take deliberate actions to avoid learning of that fact." *Global-Tech*, 563 U.S. at 769. G+'s instruction, however, requires only indifference to infringement and does not require active efforts to avoid knowing about the infringing nature of the activities. *Id.* at 770 (finding that the Federal Circuit's "deliberate indifference" test inaccurately defines the willful blindness standard); *see also id.* at 769 (ensuring willful blindness has "an appropriately limited scope that surpasses recklessness and negligence"). G+'s instruction is also prejudicial because it improperly lowers the *mens rea* requirement to mere indifference—a standard fundamentally at odds with the "deliberate or intentional" infringement standard for willfulness. The willfulness standard is not a "should have known" negligence standard. *See In re Seagate Tech., LLC.*, 497 F.3d 1360, 1369-71 (Fed. Cir. 2007) (en banc) (overruling precedent imposing on a defendant an "affirmative duty of care" "to determine whether or not he is infringing" a known patent because it set "a lower threshold for willful infringement that is more akin to negligence"), *abrogated on other grounds by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 104-10 (2016).

[147] G+: As explained above, the record supports a finding of willful infringement due to willful blindness. This instruction is legally correct. *See* above; *Optis Wireless Tech. LLC, et al v. Apple Inc.*, 2:19-cv-066-JRG, Dkt. 520 (Aug. 10, 2020); *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016); *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371, 1386 (Fed. Cir. 2014); *Packet Intelligence LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1316 (Fed. Cir. 2020), cert. denied, 141 S. Ct. 2521 (2021) *Team Worldwide Corp. v. Acad., Ltd.*, 2021 WL 1897620, at *6 (E.D. Tex. May 3, 2021); *Wrinkl, Inc. v. Facebook, Inc.*, 2021 WL 4477022, at *2 (D. Del. Sept. 30, 2021).

should incorporate the totality of the circumstances based on all the evidence presented during the trial. [Willfulness can be established by circumstantial evidence.]148

[Knowledge of the existence of a patent or patent family can be relevant to the question of willful infringement.149 For example, if Samsung knew of the existence of a patent or

---

Samsung: G+ does not allege willful blindness based on the facts of this case, and so none of this language is necessary. G+'s allegation that "reckless disregard of or with indifference to the rights of G+" satisfies the willfulness standard is legally incorrect. The Federal Circuit has explained that willful infringement requires deliberate or intentional infringement. *See, e.g.*, *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021); *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020). The Federal Circuit and Supreme Court have not squarely addressed whether willful blindness can be used to satisfy the knowledge requirement for willfulness, and Samsung respectfully asserts that it does not. *See supra* n.144for additional detail. G+'s instruction also does not properly define the willful blindness standard. *See supra* n.146 for additional detail.

148 G+: *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 408 (Fed. Cir. 2018).

Samsung: G+'s citation is vague and does not cite to any particular docket number. It is thus unclear what support the cited case provides. Further, Samsung's proposed instructions here addresses the facts that may be considered and is taken directly from the FCBA model. Moreover, this instruction is redundant of instructions above that facts may be proven with either direct or circumstantial evidence. Restating that point here for the sole issue of willfulness improperly and unfairly suggests to the jury members that they should especially rely on circumstantial evidence on the issue of willfulness.

149 G+: Far from stating that "willfulness can be found based on knowledge alone" as Samsung contends, the statement says knowledge can be "relevant" to infringement. The Federal Circuit holds that knowledge of a patent pending or patent family may be considered as part of the totality of the circumstances in assessing willfulness. *See WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 970 & n.4 (Fed. Cir. 2018) (knowledge of a pending patent application on a technology can support a finding of willfulness); *SynQor, Inc. v. Artesyn Techs., Inc.*, 2011 WL 3624957, at *4 (E.D. Tex. Aug. 17, 2011), *aff'd,* 709 F.3d 1365 (Fed. Cir. 2013) (holding that a "jury could reasonably conclude that [defendant] . . . learned of the [continuation] patent once it issued" based on evidence that "continuation patents are common" and those in the industry "would have recognized that a continuation application could potentially be filed" on the parent patent.); *Fractus, S.A. v. Samsung Elecs. Co., Ltd.*, 876 F. Supp. 2d 802, 830 (E.D. Tex. June 28, 2012) (upholding jury finding of willfulness where jury was presented "with both direct and circumstantial evidence" including a presentation given to Samsung that disclosed the technology at issue and cited "the European counterpart patent to the [patent at issue] and the parent application number (U.S. 10/102,568) of the MLV patent family."); *Kewazinga Corp. v. Microsoft Corp.*, 558 F. Supp. 3d 90, 119 (S.D.N.Y. 2021) ("A reasonable jury could find that Microsoft had pre-suit knowledge of the '234 patent because it knew of the '226 and '325 patents, which are in the same patent family as the '234 patent, as well as other patent applications in the same family.").

Samsung: This statement is incomplete and incorrectly suggests willfulness can be found based on knowledge alone. The Federal Circuit has been clear that showing knowledge of a patent and infringement of that patent is ***not*** sufficient for willfulness. *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021) ("The evidence adduced at trial merely demonstrates Baxalta's knowledge of the '520 patent and Baxalta's direct infringement of the asserted claims. Knowledge of the asserted patent and

subjectively believed that there was a high probability that a patent existed and took deliberate

actions to avoid learning of the patent, you may take this into account when considering

willfulness.  You may also take into account whether Samsung had knowledge of a patent

family.][150] [Knowledge of patents in the same portfolio or family is insufficient to establish a

---

evidence of infringement is necessary, but not sufficient, for a finding of willfulness.").  The Federal Circuit and Supreme Court have not squarely addressed whether willful blindness can be used to satisfy the knowledge requirement for willfulness, and Samsung respectfully asserts that it does not.  The Federal Circuit and Supreme Court have not squarely addressed whether willful blindness can be used to satisfy the knowledge requirement for willfulness, and Samsung respectfully asserts that it does not.  *See supra* n.144 for additional detail.  At the very least, decisions from this District have held that the behavior G+ alleges of Samsung here does not qualify as willful blindness sufficient to prove willfulness.  *See, e.g.*, *Nonend Inventions, N.V. v. Apple. Inc.*, No. 2:15-CV-466, 2016 WL 1253740, at *3 (E.D. Tex. Mar. 11, 2016), *report and recommendation adopted*, 2016 WL 1244973 (E.D. Tex. 2016).  In addition, knowledge of patents in the same portfolio or family is insufficient to establish a willfulness claim.  *Optis Wireless Tech. LLC, et al v. Apple Inc.*, 2:19-cv-066-JRG, Dkt. 520 (Aug. 10, 2020); *WCM Industries, Inc. v. IPS Corp.*, 721 F. App'x 959, 970 (Fed. Cir. 2018); *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 609 (D. Mass. 2018); *Dentsply Sirona, Inc. v. Edge Endo, LLC*, 2019 WL 1517584, at *4 (D.N.M. April 8, 2019).

[150] G+: There is substantial evidence in this case of Samsung's willful blindness. The Federal Circuit holds that knowledge of a patent pending or patent family may be considered as part of the totality of the circumstances in assessing willfulness. *See above.*

Samsung: G+ does not allege willful blindness based on the facts of this case, and therefore this language is unnecessary.  The Federal Circuit has been clear that showing knowledge of a patent and infringement of that patent is *not* sufficient for willfulness.  *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021).  The Federal Circuit and Supreme Court have not squarely addressed whether willful blindness can be used to satisfy the knowledge requirement for willfulness, and Samsung respectfully asserts that it does not.  The Federal Circuit and Supreme Court have not squarely addressed whether willful blindness can be used to satisfy the knowledge requirement for willfulness, and Samsung respectfully asserts that it does not.  *See supra* n.144 for additional detail.  At the very least, decisions from this District have held that the behavior G+ alleges of Samsung here does not qualify as willful blindness sufficient to prove willfulness.  *See, e.g.*, *Nonend Inventions, N.V. v. Apple. Inc.*, No. 2:15-CV-466, 2016 WL 1253740, at *3 (E.D. Tex. Mar. 11, 2016) ("[T]he Court finds Motorola's policy of asking its employees to ignore patents and patent applications does not per-se constitute 'willful blindness[,]' [and] [t]he Court finds that more must be alleged to show a policy of ignoring patents caused an alleged infringer's actions to 'surpass recklessness and negligence' and rise to the level of "willful blindness."), *report and recommendation adopted*, 2016 WL 1244973 (E.D. Tex. 2016).  In addition, knowledge of patents in the same portfolio or family is insufficient to establish a willfulness claim.  *Optis Wireless Tech. LLC, et al v. Apple Inc.*, 2:19-cv-066-JRG, Dkt. 520 (Aug. 10, 2020); *WCM Industries, Inc. v. IPS Corp.*, 721 F. App'x 959, 970 (Fed. Cir. 2018); *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 609 (D. Mass. 2018); *Dentsply Sirona, Inc. v. Edge Endo, LLC*, 2019 WL 1517584, at *4 (D.N.M. April 8, 2019).

willfulness claim; G+ must show that Samsung knew of the specific asserted patents.][151]

[To determine whether Samsung acted willfully, consider all facts and assess Samsung's knowledge at the time of the challenged conduct.  Facts that may be considered include, but are not limited, to:

1.    Whether or not Samsung acted consistently with the standards of behavior for its industry;

2.    Whether or not Samsung intentionally copied a product of G+ that is covered by an asserted patent;

---

[151] G+: G+ objects to this instruction as contrary to Federal Circuit law.  None of the cases cited by Samsung support this instruction.  Rather, the Federal Circuit holds that knowledge of a patent pending or patent family may be considered as part of the totality of the circumstances in assessing willfulness.  *See WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 970 & n.4 (Fed. Cir. 2018) (knowledge of a pending patent application on a technology can support a finding of willfulness); *SynQor, Inc. v. Artesyn Techs., Inc.*, 2011 WL 3624957, at *4 (E.D. Tex. Aug. 17, 2011), *aff'd*, 709 F.3d 1365 (Fed. Cir. 2013) (holding that a "jury could reasonably conclude that [defendant] . . . learned of the [continuation] patent once it issued" based on evidence that "continuation patents are common" and those in the industry "would have recognized that a continuation application could potentially be filed" on the parent patent.); *Fractus, S.A. v. Samsung Elecs. Co., Ltd.*, 876 F. Supp. 2d 802, 830 (E.D. Tex. June 28, 2012) (upholding jury finding of willfulness where jury was presented "with both direct and circumstantial evidence" including a presentation given to Samsung that disclosed the technology at issue and cited "the European counterpart patent to the [patent at issue] and the parent application number (U.S. 10/102,568) of the MLV patent family."); *Kewazinga Corp. v. Microsoft Corp.*, 558 F. Supp. 3d 90, 119 (S.D.N.Y. 2021) ("A reasonable jury could find that Microsoft had pre-suit knowledge of the '234 patent because it knew of the '226 and '325 patents, which are in the same patent family as the '234 patent, as well as other patent applications in the same family.").

Samsung: Authority: *Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*, No. 2:17-cv-00662-JRG-RSP, 2019 WL 1987172, at *2 (E.D. Tex. April 12, 2019), adopted by 2019 WL 1979866 (E.D. Tex. May 2, 2019); *see also Dali Wireless, Inc. v. Corning Optical Commc'ns LLC*, No. 20-cv-06469-EMC, 2022 WL 16701926, *3-7 (N.D. Cal. 2022); *Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. 11-cv-06638 RS, 2012 WL 1831543, at *3 (N.D. Cal. May 18, 2012).  Samsung: G+ argues that this instruction is "contrary to [F]ederal Circuit law" but does not explain how.  It is not.  G+ cites no case where such knowledge was deemed sufficient by itself to establish willfulness.  G+'s argument that "knowledge of a patent pending or patent family may be considered as part of the totality of the circumstances" improperly suggests that such knowledge alone would be sufficient to prove willfulness and therefore such language would cause jury confusion and error.  The instruction does not preclude the jury from considering evidence; instead it properly instructs the jury on the standard for finding willfulness.  Further, none of G+'s cited cases are to the contrary, and they all involve additional circumstances of which G+ fails to explain the relevance here.

3.    Whether or not Samsung reasonably believed it did not infringe, it was licensed, or that the patent was invalid.

4.    Whether or not Samsung made a good-faith effort to avoid infringing the patent, for example, whether Samsung attempted to design around the patent; and

5.    Whether or not Samsung tried to cover up its infringement.][152]

Your determination of willfulness should incorporate the totality of the circumstances based on all the evidence presented during the trial.

---

[152] G+: The set of enumerated factors is confusing and prejudicial for this case at least because Samsung has presented no evidence as to these factors. Samsung seeks to shield evidence of its failure to take the steps described in the list with its MILs – including that its engineers failed to read the patents and seeking to limit the topics on which its corporate representative can testify. During discovery, Samsung did not disclose as a  defense to willfulness that it held a reasonable belief that it did not infringe or that the patents were invalid. Rather, its 30(b)(6) witness confirmed Samsung didn't read the patents even after receiving claim charts. Further, the Court has a MIL against referring to copying, so it would be prejudicial to suggest not copying is evidence against willfulness when patentees are barred from presenting such evidence or argument.  Moreover, it is highly confusing to suggest that acting "consistently with the standards" is evidence against willfulness in an SEP case.

Samsung: Authority: *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1327 (Fed. Cir. 2021); Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 3.10 Willful Infringement. Samsung: Samsung's version is taken from the FCBA model jury instructions and provides a clearer and more complete instruction than G+'s proposal.  Samsung's proposal sets out specific factual criteria for determining willfulness and therefore it would assist the jury.  In contrast, G+'s proposal does not provide useful factual criteria for determining willfulness and overlooks, for example, the relevance of Samsung's good faith belief of a valid defense.  G+'s statement that "Samsung has presented no evidence as to these factors" is false.  For example, Samsung has extensive evidence regarding "standards of behavior in the industry" based on negotiating conduct by each of ▮▮▮▮▮▮▮▮▮▮▮▮▮.  G+ improperly tries to keep that evidence as out as "irrelevant to the case,"  (*see* G+ MIL #3) but then at the same time tries to keep this instruction out as not being founded on any evidence.  This circular logic shows G+'s weakness.  For additional examples, Samsung has an abundance of evidence that it did not copy a product of G+, it reasonably believed it was licensed, and that it did not try to cover up its infringement.  The "consistently with standards" objection is entirely irrelevant; the language in this instruction is "acted consistently with the standards *of behavior for its industry*."  This plain language is clear and has nothing to do with standards or standard essential patents, as G+ seems to suggest.

[Samsung was not required to stop manufacturing the accused products upon learning of the asserted patents or upon G+ accusing Samsung of infringement if Samsung had a reasonable belief that it did not infringe, it was licensed, or that the asserted patents were invalid.][153]

If you decide that any infringement was willful, that decision should not affect any damages award that you give.[154]  I will take willfulness into account later.[155]

## VALIDITY

I will now instruct you on the rules that you must follow in deciding whether or not Samsung has proven by clear and convincing evidence that the asserted claims of the patents are

---

[153] G+: This instruction is inaccurate, incomplete, and prejudicial.  The jury may assess the fact that Samsung has continued its infringing conduct in assessing willfulness, this instruction improperly suggests to the jury that it should not consider in assessing willfulness Samsung's conduct after learning of G+'s infringement allegations.  Indeed, Samsung's proposal is inconsistent with its own authority cited for this instruction (the FCBA), which identifies infringer's ongoing conduct (i.e., whether it continues to infringe or designs around) as relevant to assessing willfulness.  Further, there is no evidence in this case of any alleged reasonable belief of non-infringement by Samsung, belief that it has or ever had a licenses, or belief that the asserted patents were invalid.  Samsung's 30(b)(6) witness on Samsung's alleged contentions relating to non-infringement admitted never reviewing and having no knowledge of any of Samsung's alleged non-infringement arguments.  *See,* G+ MILs.  Each Samsung fact witness confirmed they did not review the asserted patents until immediately before their deposition, if at all, including not reviewing the patents when G+ sent claim charts to Samsung.

Samsung: Authority: *Gustafson, Inc. v. Intersystems Indus. Prod., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990) (holding there is no "universal rule that to avoid willfulness one must cease manufacture of a product immediately upon learning of a patent, or upon receipt of a patentee's charge of infringement, or upon the filing of suit.  Exercising due care a party may continue to manufacture and may present what in good faith it believes to be a legitimate defense without risk of being found on that basis alone a willful infringer." (internal citation omitted)).  Samsung: Samsung's proposed construction provides a clearer and more complete instruction regarding willfulness and adds necessary context.  Further, G+ provides no reason why this instruction is somehow improper or incorrect.  The instruction does not seek to preclude the jury from assessing Samsung's conduct; just the opposite.  The instruction provides proper context, applicable to this case, for evaluating Samsung's conduct and therefore assists the jury in understanding the law.  G+'s assertion that the instruction is inconsistent with the FCBA model instructions is incorrect.

[154] Authority: Adapted from *TQ Delta, LLC v. CommScope Holding Co.*, No. 2:21-cv-000310-JRG, Final Jury Instructions, Dkt. No. 534, Vol. 1 Tr. 21:14-73:13 (E.D. Tex. Mar. 30, 2023).

[155] Authority *Acorn Semi, LLC v. Samsung Electronics Co., Ltd. et al.*, No. 2:19-cv-000347-JRG (Final Jury Instructions) (May 19, 2021).

invalid.  Patent invalidity is a defense to patent infringement.  Invalidity and infringement are separate and distinct issues that must be separately decided by you, the jury.

An issued patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office, which you have heard referred to throughout this trial as the PTO or the Patent Office, acted correctly in issuing the patent.  [This presumption of validity extends to all issued United States patents.  In order to overcome this presumption, Samsung must establish by clear and convincing evidence that a claim in the patent is not valid.][156]/[However, that presumption of validity can be overcome if clear and convincing evidence is presented in court that the patent is invalid. Therefore, you the jury, must determine whether Samsung has proved that G+'s claims are invalid.][157]

Like infringement, invalidity is determined on a claim-by-claim basis.  You must determine separately for each claim whether that claim is invalid.[158]  If one claim of a patent is invalid, this

---

[156] G+:  *KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018).  G+'s proposal is clearer and accurately reflects Samsung has the burden of proof by clear and convincing evidence.

Samsung: G+'s proposed instructions repetitively state the presumption of validity twice, giving it undue emphasis.  The second sentence is not as clear as Samsung's proposal because the language "the patent owner's patent or any claim in the patent is not valid" is confusing.  Samsung's language is easier to understand.

[157] G+: It is unnecessary to tell "you, the jury" it must decide validity once, let alone twice ("I will now instruct you on the rules that you must follow in deciding whether or not Samsung has proven by clear and convincing evidence that the asserted claims of the patents are invalid."), and yet a third time below ("You must determine separately for each claim whether that claim is invalid"). Such language is not used for any of the other claims in this case.  The passive voice of Samsung's proposed instruction is confusing and fails to attribute the burden of proof to Samsung.

Samsung: Authority: *Solas OLED Ltd. v. Samsung Display Co., Ltd.*, 2:19-cv-00152-JRG, Dkt. 354 (Final Jury Instructions) (E.D. Tex. Mar. 8, 2021).  Samsung: Samsung's proposed version provides more context, clarity, and completeness on the jury's task in determining invalidity.  These instructions flow more naturally from the first sentence and properly tell the jury what it must decide.  The passive voice is not confusing. There is no undue repetition as the first paragraph explains to the jury that invalidity and infringement are two separate issues it must decide.

[158] G+: Authority *KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018).

does not necessarily mean that any other claim is invalid.[159] You must apply the claim language consistently and in the same manner for issues of infringement and for issues of invalidity.  [For many patents, the examination process before the issuance of the patent by the Patent Office is the only time that the Patent Office considers the validity of the application before the patent is issued, and there is the possibility that mistakes were made.][160]

### [INVALIDITY—]PRIOR ART[161]

[At times, you will hear me make references to the prior art.]

A previous device, system, method, publication, or patent that predates the [priority date of the] claimed invention is generally called [prior art, and] / [a "prior art reference." Prior art]

---

[159] G+: *See,* Netlist v. Samsung, 2:21-CV-463-JRG, final jury instructions.

[160] G+: In this case, Samsung filed IPRs, so this statement is inaccurate. Whether it is true for "many patents" has no relevance here. G+ further objects to the "possibility that mistakes were made" as inaccurate, prejudicial and confusing. In particular, this language implies that if the USPTO makes any mistake, the claim is invalid.

Samsung: Authority: *Datatreasury Corp. v. Wells Fargo & Co.*, No. 2:06-CV-72 DF, 2010 WL 11468934, at *11 (E.D. Tex. Oct. 5, 2010) ("Defendants should be permitted to note, as does the Federal Judicial Center Video, that the PTO may make mistakes and that the jury has an independent role in assessing validity."). Samsung's proposed instructions provide greater context and clarity on the invalidity determination consistent with the Federal Judicial Center Video on the operation of the PTO. G+'s objections are baseless because the instruction does not overtly state that mistakes were made in this case. It is important for the jury to understand the notion (codified in the patent statute) that it was *possible* that PTO made mistakes and to understand the jury's role in determining invalidity. Further, contrary to G+'s argument, the instruction does nothing to "bolster or disparage" the PTO contrary to the Court's standing MIL No. 10, but rather sets forth in plain English the *possibility* of PTO error and the necessary, black-letter-law task of jurors to determine invalidity.

[161] Authority: *Optis Wireless Tech., LLC, et al. v. Apple Inc.*, 2:19-cv-00066-JRG, Trial Tr. 980 (Final Jury Instructions) (E.D. Tex. Aug. 10, 2020); Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 4.3a-3 Prior Art. Samsung: This section is necessary to give context and clarity to the subsequent instructions on obviousness. G+'s objections are baseless and should be rejected. The language regarding weighing certain specified art "more heavily" is verbatim to the FCBA model Instruction No. 4.3b-1, is well-established, and G+ fails to explain any impropriety other than applying a conclusory (and incorrect) label of "improper and prejudicial." Contrary to G+'s unexplained assertion, the instruction does accurately state the standard for prior art and comes from the FCBA model, the Court's final instructions in *Optis*, and 35 U.S.C. § 102. G+'s argument that the instruction somehow "violates the Court's standing MIL about the examination process" should be rejected because the instruction in no way "bolsters or disparages" the PTO or its examination process. G+ does not explain how it could.

may include items that were publicly known or that had been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.[162]   Prior art also includes the knowledge or use of an invention by a person of ordinary skill in the art in the United States at the time of invention.

[For the '776 patent, the priority date is September 19, 2008.

For the '130 patent, the priority date is March 31, 2016.

For the '443 patent, the priority date is July 31, 2015.

For the '881 patent, the priority date is April 25, 2008.][163] /

[The parties disagree on the priority date of the asserted patents.

The Plaintiff, G+, contends the '776 patent is entitled to a priority date of September 19, 2008, the '130 patent is entitled to a priority date of March 31, 2016, the '443 patent is entitled to a priority date of July 31, 2015, and the '881 patent is entitled to a priority date of April 25, 2008. These are the dates that the parent patent application for each asserted patent was filed.[164]

The Defendant, Samsung, contends that the asserted patents are not entitled to these priority dates.

The '776 patent was filed on April 14, 2009 and is entitled to a priority date of at least

---

[162] G+: *See,* Netlist v. Samsung, 2:21-CV-463-JRG, final jury instructions

[163] G+: it is undisputed that the asserted patents claim priority to foreign patent applications on these dates. Samsung never challenged that the written description of the specification of the foreign applications provides priority for the asserted claims.  The jury should be instructed on these priority dates.  *Droplets, Inc. v. E*TRADE Bank*, 887 F.3d 1309, 1315 (Fed. Cir. 2018) ("Determination of a patent's priority date is purely a question of law if the facts underlying that determination are undisputed.").  To the extent Samsung is permitted to challenge these priority dates, G+'s alternative instruction should be given. This is based on the final instruction from *USAA v. Wells Fargo*, 2:18-CV-366-JRG, final jury instruction (JANUARY 10, 2020).

[164] *Via Vadis, LLC v. Blizzard Ent., Inc.*, No. 1:14-CV-00810-LY, 2021 WL 6116794, at *3 (W.D. Tex. Dec. 26, 2021) ("When priority is based on subject matter disclosed in a foreign patent application whose filing date is properly claimed under 35 U.S.C. § 119(a), the foreign application has the same effect as if filed in the United States. *Frazer v. Schlegel*, 498 F.3d 1283, 1287 (Fed. Cir. 2007).").

April 14, 2009, the '130 patent was filed on March 24, 2017 and is entitled to a priority date of at least March 24, 2017, the '443 patent was filed on July 7, 2016 and is entitled to a priority date of at least July 7, 2016, and the '881 patent was filed on October 15, 2010 and is entitled to a priority date of at least October 15, 2010.

To determine whether Samsung has met its burden to show by clear and convincing evidence that the asserted patents are not entitled to the priority dates asserted by G+, you will need to determine whether the patent specification of each parent patent application satisfies the written description requirement for the asserted claims.

If Samsung does not meet this burden, the asserted patents are entitled to the priority date of the parent applications as asserted by G+.]

[Where Samsung is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity. [The presumption of validity is neither weakened nor destroyed where art more pertinent than that considered by the PTO is introduced.]][165]

---

[165] G+: G+ objects to this instruction as inaccurate, prejudicial, and confusing. In particular, the instruction's suggestion that the jury should assign greater weight to art not considered by the PTO is improper and prejudicial. It is for the jury to decide what weight to assign to the evidence. The Federal Circuit has made clear that "[t]he presumption of validity is neither weakened nor destroyed where art more pertinent than that considered by the PTO is introduced." *R.R. Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1517 (Fed. Cir. 1984). Further, the invitation of comparison between art in examination and the art in Court violates the Court's standing MIL about the examination process. Further, this instruction is not necessary. The following instructions on anticipation and obviousness already adequately instruct the jury on consideration of prior art. If Samsung's instruction is allowed, G+'s instruction should also be provided.

Samsung: <u>Authority:</u> Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 4.3.b-1, 4.3.c(ii).

In deciding validity, the only correct comparison is between the prior art and the limitations of the asserted claims.  It is improper to compare the prior art to the accused product.

**[PRIORITY DATE OF [ALLEGED] PRIOR ART PATENT DOCUMENT**[166]

If Samsung alleges that a prior art patent or patent application publication [("U.S. patent document")][167] is entitled to the priority date of an earlier-filed provisional application, Samsung must show, by clear and convincing evidence, both that [(1) at least one issued or pending claim

---

[166] G+: This instruction should only be given on this if leave is granted for Dr. Wicker's supplemental expert report, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Otherwise this is irrelevant to any issue at trial. If an instruction is given, G+'s instruction accurately reflects the law; Samsung omits requirements for prior art to obtain the filing date of a provisional. *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.* 800 F.3d 1375, 1381 (Fed. Cir. 2015) ("A reference patent is only entitled to claim the benefit of the filing date of its provisional application if the disclosure of the provisional application provides support for the claims in the reference patent in compliance with § 112, ¶ 1 … Nowhere, however, does Dynamic demonstrate support in the Raymond provisional application for *the claims of the Raymond patent.* That was Dynamic's burden. A provisional application's effectiveness as prior art depends on its written description support for the claims of the issued patent of which it was a provisional. Dynamic did not make that showing."); s*ee, KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018).

Samsung's proposal omits the requirement that at least one claim in the prior art reference have written description support in the provisional application.        Further, Samsung's title presumes the reference is prior art, when the instruction is about how to establish whether the reference is or is not prior art.

Samsung: G+'s version of this instruction is legally incorrect, and the Court should adopt the one Samsung proposes entitled "Priority Date of Prior Art Patent Document."  Regarding the title, the prior art at issue, which is a published patent application that claims priority to a provisional application, is more accurately characterized as a patent document not a patent reference and including "prior art" in the title properly orients the jury to the subject matter of the instruction without informing the jury that any document is prior art.  Indeed, under G+'s logic, the jury instructions should not include "Infringement" in any title..  Furthermore, this instruction pertains to a patent document asserted by Samsung as prior art over the '443 patent, which is an AIA patent subject to the AIA version of § 102, that in turn includes a specific provision on establishing earlier priority date not present in pre-AIA 35 U.S.C. § 102.  *See* 35 U.S.C. 102(d)(2).  G+'s version of instruction does not comport with § 102(d)(2), and is instead based on the Federal Circuit's decision in *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.,* 800 F.3d 1375 (Fed. Cir. 2015), which concerned a prior art patent document asserted over a pre-AIA patent, and was subject to the pre-AIA version of § 102. *See id.* at 1377 n.1 ("The relevant provision of § 102(e)(2) was reorganized into newly designated § 102(d)(2) when certain aspects of the Leahy–Smith America Invents Act ("AIA"), Pub. L. No. 112–29, took effect on March 16, 2013. Because the application for the patent at issue in this case was filed before that date, we refer to the pre-AIA version of § 102.").

[167] G+: there is no need to create a term here, if Samsung's instruction is allowed it is perfectly clear to the jury to state "patent document" as needed in the following instruction.

==is supported by written description of the priority application such that the relied on patent was entitled to the benefit of the alleged priority application; and (2) the disclosure relied on in the prior art patent or application is also disclosed in the alleged priority application.==][168] / [==(1) the [U.S.] patent document is entitled to claim a right of priority of the earlier-filed provisional application, by being filed not later than 12 months after the earlier-filed provisional application, by containing a specific reference to the earlier-filed provisional application, and by having a common inventor with the earlier-filed provisional application; and (2) the subject matter relied on in the [U.S.] patent document is described in the earlier-filed provisional application.==][169]]

## PERSON WITH ORDINARY SKILL IN THE ART[170]

Several times in my instructions, I will refer to a person of ordinary skill in the field of the invention. It is up to you to decide the level of ordinary skill in the field of the invention.

In deciding what the level of ordinary skill is, you should consider all of the evidence introduced at trial including [==but not limited to==][171]:

1.      the levels of education and experience of the inventors and other persons [==actively==[172]][173] working in the field;

---

[168] G+:

Samsung: *See* ==n.230==, *supra.*

[169] Authority: 35 U.S.C. § 102(d); 35 U.S.C. § 119(e).

[170] Trial Tr., *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-cv-01528-JRG (E.D. Tex. Mar. 23, 2017), ECF No. 166.

[171] Samsung: Modification made to match the language to FCBA model Instruction 4.3c(i) and for clarity.

[172] <u>Authority</u>: *Vandenberg v. Dairy Equip. Co., a Div. of DEC Int'l*, 740 F.2d 1560 (Fed. Cir. 1984) ("Reference to the educational background and experience of those ***actively*** involved in the art is proper in determining the level of skill[.]" (emphasis added)); Federal Circuit Bar Association Instruction 4.3c(i). Modification made to match the language to FCBA model Instruction 4.3c(i). <u>Samsung</u>: G+ is incorrect that the FCBA model instruction is "inaccurate." G+'s conclusory and baseless objection should be rejected. This Court has previously given final jury instructions that include "actively." *See SSL Servs., LLC v. Citrix Sys., Inc.*, No. 2:08-cv-00158-JRG, Dkt. No. 256 (E.D. Tex. June 18, 2012).

[173] G+: There is no requirement that a person of skill be limited to someone "actively" working in a field.

2.      the types of problems encountered in the field;

3.      prior art solutions to those problems;

4.      rapidity with which innovations are made; and

5.      the sophistication of the technology.

A person of ordinary skill in the art is a hypothetical person who is presumed to be aware of all of the relevant prior art at the time of the claimed invention.

## ANTICIPATION

In order for someone to be entitled to a patent, the invention must actually be "new."[174] Samsung contends in this case that the asserted claims of the '776, '443, and '881 patents are invalid because the claimed inventions are anticipated. If an invention is not new, we say that it was anticipated by the prior art. An invention that is anticipated by the prior art is not entitled to patent protection. Samsung bears the burden of proving anticipation by clear and convincing evidence. Samsung also bears the burden of proving that the art it asserts qualifies as prior art, including that it is entitled to the priority date that Samsung alleges.

In patent law, a previous system, publication, or patent that predates the claimed invention is generally called "prior art."[175] [To qualify as prior art, Samsung must establish by clear and convincing evidence that such previous system, publication, or patent was] [A system qualifies as prior art if it is in public use or on sale before the priority date of the asserted patent; a publication qualifies as prior art if it is] published or available to public before the priority date of the asserted

---

Samsung: Modification made to match the language to FCBA model Instruction 4.3c(i). This Court has previously given final jury instructions that include "actively." *See SSL Servs., LLC v. Citrix Sys., Inc. et al*, No. 2:08-cv-00158-JRG, Dkt. No. 256 (E.D. Tex. June 18, 2012).

[174] <u>Authority</u>: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 4.3.b-1.

[175] <u>Authority</u>: *Optis Wireless Tech. LLC v. Huawei Device (Shenzen) Co.*, Case No. Case 2:17-cv-00123-JRG Dkt. 284 (E.D. Tex. Aug. 24, 2018).

patent; and a patent qualifies as prior art if it is granted priority date of the asserted patent.[176]  In addition, a patent or a patent publication qualifies as prior art if its priority date[, *i.e.,* the date when the application for such patent or patent application was filed,][177] is before the priority date of the asserted patent.

Anticipation must be determined on a claim-by-claim basis.  Samsung must prove that all of the requirements of a claim are present in a single piece of prior art.  [You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.][178]

[To anticipate the invention, the prior art does not have to use the same words as the claim, but all requirements of the claim must have been disclosed and arranged as in the claim, united in the same way to perform the identical function.[179]

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider only what is expressly stated or present in the prior art and inherently present.  Something

---

[176] Samsung: <u>Authority</u>: 35 U.S.C. § 102.

[177] G+: this is redundant and confusing. There are instructions about priority date for the asserted patents and for prior art. This oversimplification ignores that priority date can be based on a provisional.

[178] G+: For verbatim instruction, *see, e.g., CREATIVE INTERNET ADVERTISING CORPORATION v. Yahoo! Inc et al,* 6-07-cv-00354, final jury instructions (EDTX, May. 15, 2009); *Clearvalue, Inc., et. al. v. Pearl River Polymers, Inc., et. al.,* 6-06-cv-00197, final jury instructions  (EDTX, Apr. 20, 2010); *see, also, Cohesive Techs., Inc. v. Waters Corp.,* 543 F.3d 1351, 1364 (Fed. Cir. 2008) ("Obviousness can be proven by combining  existing prior art references, while **anticipation requires all elements of a claim to be disclosed within a single reference**.").

[179] G+: *See, e.g., CREATIVE INTERNET ADVERTISING CORPORATION v. Yahoo! Inc et al,* 6-07-cv-00354, final jury instructions (EDTX, May. 15, 2009) (anticipation may be found "if you find that all of the limitations recited in the patented claim were found in a single piece of prior art, **united in the same way to perform the identical function**.")

Samsung: G+ does not provide any support for its "united in the same way" language.  The remainder of this instruction repeats what Samsung proposes in an instruction G+ rejects above but in language that improperly biases the jury towards G+.  The addition of "united in the same way" provides an extraneous requirement that is not found in the law on anticipation.  *See, e.g., Microsoft Corp. v. Biscotti, Inc.,* 878 F.3d 1052 (Fed. Cir. 2017) (in setting forth the legal standard for anticipation, stating: "[i]n order to anticipate the claimed invention, a prior art reference must 'disclose all elements of the claim within the four corners of the document,' and it must disclose those elements 'arranged as in the claim'" (internal quotations and citations omitted)).

is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art. Inherency may not be established by probabilities or possibilities. The mere fact that a certain thing may coincidentally result from a given set of circumstances is not sufficient. A party claiming anticipation by inherency must show that the elements of the claim are always present in the prior art or always result from the practice of the prior art.[180]

To prove anticipation, claim requirements must be disclosed expressly such that a person having ordinary skill in the art in the art, looking at that one reference, could make and use the claimed invention. It is insufficient for the reference to describe the desired subject matter if it cannot be produced without undue experimentation. Factors to be considered in determining whether a disclosure would require undue experimentation include: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance disclosed in the printed publication or patent; (3) the presence or absence of working examples in the printed publication or patent; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability of the art; and (8) the breadth of the claims.[181][182] / [To anticipate

---

[180] G+: For verbatim instruction, *see, e.g., Mars, Inc. v. TruRX LLC et al*, 6-13-cv-00526, final jury instructions (EDTX May. 06, 2016) ("Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art. Inherency may not be established by probabilities or possibilities. The mere fact that a thing may coincidentally result from a given set of circumstances is not sufficient. A party claiming anticipation by inherency must show that the elements of the claim are always present in the prior art or always result from the practice of the prior art").

[181] G+: For verbatim instruction, *see, e.g., VIRNETX INC. v. CISCO SYSTEMS, INC.*, EDTX-6-10-cv-00417-780, final jury instructions (March 13, 2013); *see also Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc*., 246 F.3d 1368, 1374, 58 U.S.P.Q.2d 1508 (Fed. Cir. 2001) ("To anticipate, the reference must also enable one of skill in the art to make  and use the claimed invention.").

[182] G+: G+ cites authority for each proposed instruction. There is no reference to computer processors in G+'s proposed instructions. Samsung's invalidity claim for lack of enablement of the asserted claims say nothing about anticipation.  The requirement that the prior art enable the invention is required under Federal Circuit precedent.

Samsung: G+ provides no legal authority for these instructions, nor any reason to deviate from the FCBA model.  G+'s proposal is unnecessarily long and duplicative (e.g., repeating "always present" and "elements as arranged in the claim"), which is prejudicial.  Reference the "art of computer processors" is improper.

the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim.[183]  The claim requirements may either be disclosed expressly or inherently such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.  Inherent disclosure means that the missing element is necessarily present or implied in the prior art.[184]]

If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.  Conversely, if an independent claim is anticipated, its dependent claims, which have more limitations, may not be anticipated.

## OBVIOUSNESS

The instructions already explain the requirements of persons of ordinary skill in the art and this instruction conflicts with that definition.  In addition, this instruction should not include details as to enablement which is addressed elsewhere.  G+ has not asserted that the prior art is not enabled and issued patents are presumed to be enabled.  To the extent the Court deems it necessary, at most, the instruction should say that prior art references must also be enabled, the definition of which the Court will give later and state that issued patents are presumed enabled.

[183] Samsung: Authority: *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008) ("the hallmark of anticipation is prior invention, the prior art reference—in order to anticipate under 35 U.S.C. § 102—must not only disclose all elements of the claim within the four corners of the document, but must also disclose those elements arranged as in the claim" (internal quotation omitted)); Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 4.3.b-1.  Samsung: This language verbatim follows the FCBA model.  G+ provides no explanations regarding why its instructions are necessary instead of the FCBA model language, which is accurate and easy to understand.  Also, G+ has this exact language in its proposal, with the addition of some unnecessary and improper language addressed below.

[184] G+: Samsung's instruction is incomplete and incorrect.  The only attempt to explain inherency is that a missing element can be "implied"; this is contrary to the law, as evidenced in G+'s proposed instructions.  Anticipation is a stringent standard, and the details of what is required are important.  Samsung's attempt to brush over the requirements for anticipation should be rejected.

Samsung: Authority: *Rexnord Indus., LLC v. Kappos*, 705 F.3d 1347 (Fed. Cir. 2013); Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 4.3.b-1, 4.2a.  Samsung: This language follows the FCBA model language.  G+ provides no explanations regarding why its instructions are necessary instead of the FCBA model language, which is accurate and easy to understand.  Explaining inherency is necessary because the jury must know that an element does not have to be verbatim disclosed in a prior art reference to invalidate a claim element.

Samsung contends in this case that the asserted claims of '776, '130, '443, and '881 patents are invalid as obvious. Even though an invention may not have been identically disclosed or identically described in a single prior art reference, the invention may have been obvious to a person of ordinary skill in the field of technology to which the claimed invention pertains at the effective filing date of the claimed invention. Samsung [has the burden of establishing obviousness by showing by clear and convincing evidence][185] / [may establish that a patent claim is invalid by proving, by clear and convincing evidence,][186] that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made [in the field of wireless communications].[187]

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness.[188] Most, if not all, inventions rely on the building blocks of prior art.[189] Now, in determining whether the patent is invalid because of obviousness, you must consider the scope and content of the prior art as a whole, the differences between the prior art and the claimed invention and the level of ordinary skill in the art. In determining the

---

[185] G+: *see,* Netlist v. Samsung, 2:21-CV-463-JRG, final jury instructions.

[186] Samsung: <u>Authority:</u> Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 4.3.c. Samsung: Samsung's proposed language tracks the FCBA model. G+'s version is less clear and over-emphasizes the burden, which the instructions have already said Samsung bears.

[187] Samsung: <u>Authority:</u> Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 4.3.c. Samsung: The field is relevant and makes the context clearer. G+'s own experts have discussed that these patents relate to wireless communications. *See* Dell Op. Rpt. at ¶¶ 270-73 (reflecting conversations with each of G+'s technical experts in the field, where each of the four patents is described relating the wireless communications); Akl Op. Rpt. at ¶ 39 ("Taking these factors into consideration, a POSITA would have had a bachelor's degree in electrical engineering, computer engineering, computer science, or a related field, and three to four years of experience in the design and development of *wireless communications systems*." (emphasis added)).

[188] Samsung: <u>Authority:</u> Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 4.3.c.

[189] Samsung: <u>Authority:</u> 35 U.S.C. § 103; Trial Tr., *Whirlpool Corp v. TST Water, LLC,* No. 2:15-cv-01528-JRG, Dkt. 166 (E.D. Tex. Mar. 23, 2017); ECF No. 166; Trial Tr., *KAIST IP US LLC, v. Samsung Elecs. Co,*, No. 2:16-cv-1314-JRG-RSP (E.D. Tex. June 15, 2018), ECF No. 498. Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 4.3.c.

level of ordinary skill in the art, you should consider the person of ordinary skill as one who is presumed to be aware of all pertinent prior art.

In considering whether a claimed invention is obvious, you should consider whether, as of the effective filing date of the asserted patent, there was a reason that would have prompted a person of ordinary skill in the field to combine the known elements in a way that the claimed invention does, taking into account facts such as:

1. whether the claimed invention was merely the predictable result of using prior art elements according to their known function;

2. whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3. whether the prior art teaches or suggests the desirability of combining elements in the claimed invention, such as where there is a motivation to combine;

4. whether the prior art teaches away from combining elements in the claimed invention;

5. whether it would have been obvious to try the combinations of elements in the claimed invention, such as where there is a design need or market pressure to solve a problem and there are a finite number of identified predictable solutions; and[190];

6. whether [the change resulted more from design incentives or other market forces][191] / [the combination was prompted by design incentives or other market forces].[192]

---

[190] G+: *see,* Netlist v. Samsung, 2:21-CV-463-JRG, final jury instructions.

[191] G+: *see,* Netlist v. Samsung, 2:21-CV-463-JRG, final jury instructions.

[192] Samsung: <u>Authority:</u> 35 U.S.C. § 103; Trial Tr., *Whirlpool Corp v. TST Water, LLC,* No. 2:15-cv-01528-JRG, Dkt. 166 (E.D. Tex. Mar. 23, 2017); ECF No. 166; Trial Tr., *KAIST IP US LLC, v. Samsung Elecs. Co,*, No. 2:16-cv-1314-JRG-RSP  (E.D. Tex. June 15, 2018), ECF No. 498. Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 4.3.c. <u>Samsung:</u> Samsung's proposal is a more complete, clear, and neutral recitation of the standard.  G+'s proposed word "change" improperly suggests to the jury that the patent's teachings are different or novel in comparison to those in the prior art.

To find that it rendered the invention obvious, you must find that a person of ordinary skill in the art would have had a reasonable expectation of success in combining the teachings of the prior art to result in the claimed invention.[193]

[In making these determinations, a person of ordinary skill uses simple common sense and can rely upon the inferences and creative steps that a person of ordinary skill in the art would employ.[194]  Prior art is not limited to the patents and published materials, but includes the general knowledge that would have been available at the time to one of ordinary skill in the field of the invention.[195] Also, Samsung does not need to show that one of ordinary skill would actually have combined the physical structures of two references.  One need only combine the teachings.][196] In determining whether the claimed invention was obvious, do not use hindsight[. Consider only what was known as of the priority date of the invention. In other words, you should not consider what a person of ordinary skill in the art would know now or what has been learned from the teachings of

---

[193] Samsung: <u>Authority:</u> *Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331, 1339 (Fed. Cir. 2021).

[194] Samsung: <u>Authority:</u> *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007).

[195] Samsung: <u>Authority:</u> *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1365 (Fed. Cir. 2006).

[196] G+: This instruction is confusing and unnecessary. It contradicts the requirement that the POSA must have a reasonable expectation of success. See, *Netlist v. Samsung*, 2:21-CV-463-JRG, final jury instructions.

Samsung: <u>Authority:</u> *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 420-21 (2007).  Samsung: This paragraph of instructions explains to the jury that a person of ordinary skill is not an automaton.  The instructions are important so that the jury applies the obviousness analysis in *KSR* correctly.  None of this language is confusing, and it certainly is not "unnecessary."  There is no contradiction here; the language is supported in Federal Circuit precedent.

the asserted patents.][197] / [In other words, you should only consider what a person of ordinary skill in the art would know at the time of the asserted patent's priority date.][198]

In making these assessments, you must also take into account any objective evidence, sometimes called secondary considerations, that may have existed at the time of the invention and afterwards that shed light on whether or not the claimed invention is obvious, such as:

1. whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

2. whether the invention satisfied a long-felt need [in the art];

3. whether others had tried and failed to make the claimed invention;

4. whether the invention achieved unexpected [and superior[199]] results:

5. whether others in the field praised the invention;

6. whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention; and

---

[197] G+: *see,* Netlist v. Samsung, 2:21-CV-463-JRG, final jury instructions.

Samsung: This sentence is unnecessary and  is misleading because it is an inaccurate description of hindsight.  Hindsight is not limited to what "has been learned from the teaching of the patent-in-suit," and so this sentence improperly and prejudicially suggests that the asserted patents have contributed novel teachings to the art.

[198] G+: G+ changed the language to priority date as a compromise in light of Samsung's objection. G+'s instruction about not considering knowledge in light of teaching of the patent should be included.

Samsung: Samsung's proposal is more appropriate.  The "time of invention" is debatable, less accurate, more ambiguous than the "time of the priority date" and G+'s instruction ignores G+'s burden to prove the time of invention.  Further, upon proof of earlier conception, the patentee can move up the priority date of the patent.  *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 276 F. Supp. 3d 629, 650 (E.D. Tex. 2017) ("the claimed invention would have been obvious to a person of skill in the art as of the priority date"), *aff'd* 739 Fed. App'x 643 (Fed. Cir. 2018).

[199] G+: Samsung's proposal is vague; superior to what?

Samsung: <u>Authority</u>: *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1346 (Fed. Cir. 2012)

7. whether others sought or obtained rights to the patent from the patent holder.

[In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.][200]

For commercial success [or any other secondary consideration] to be evidence non-obviousness, there must be a nexus between the patented features of the invention and the commercial success of the device.[201] [In support of obviousness, you may also consider whether others independently invented the claimed invention before or at about the same time as the named inventor thought of it.][202] [While these objective indicia must be taken into account, you must consider all of the evidence related to obviousness before you reach a decision.][203]

## WRITTEN DESCRIPTION

Samsung contends that asserted claims of the '130 and '881 patents are invalid because the specification of those patents allegedly does not contain an adequate written description of the invention. To succeed, Samsung must show by clear and convincing evidence that [the specification fails to meet the law's requirements for written description of the invention. To succeed on its claims of lack of adequate written description as to the '130 and the '881 Patents,

---

[200] Samsung: Authority: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 4.3c.

[201] Samsung: Authority: Fox Factory, Inc. v. SRAM, LLC, 944 F.3d 1366, 1373-74 (Fed. Cir. 2019); *Mass Engineered Designs, Inc. v. Ergotron, Inc.,* Case No. 06-cv-272-LED, Final Jury Instructions, Dkt. 658 (E.D. Tex. Nov. 19, 2008).

[202] G+: This proposal is prejudicial. Objective indicia cannot "support obviousness."

Samsung: Authority: Adapted from *TQ Delta, LLC v. CommScope Holding Co.*, No. 2:21-cv-000310-JRG, Final Jury Instructions, Dkt. No. 534, Vol. 1 Tr. 21:14-73:13 (E.D. Tex. Mar. 30, 2023).

[203] Samsung: G+'s proposed instruction is misleading and lacks context because it improperly suggests that a showing of secondary considerations by definition exceeds what is required to show non-obviousness. In fact, the statement is untrue as written because, in some instances, a showing of secondary considerations is indeed required for patentability.

Samsung must show by clear and convincing evidence that a person having ordinary skill in the field reading the patent specification as of the priority date of that patent would not have understood that the specification describes the full scope of the invention as it is claimed in the claims of the patent. A patent must contain a written description of the invention claimed in the patent.][204] / [a person having ordinary skill in the field reading the patent specification as of date of the invention would not have recognized that it describes the full scope of the invention as it is finally claimed.[205] If a patent claim lacks adequate written description, it is invalid.[206]

The written description requirement helps ensure that the patent applicant actually invented the claimed subject matter. To satisfy the written description requirement, the patent specification must describe each and every limitation of a patent claim. When determining whether the specification discloses the invention, the claim must be viewed as a whole.[207]

The written description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize, from reading the patent specification, that the inventor possessed the subject matter finally claimed in the patent. The written description requirement is satisfied if

---

[204] G+: *see,* Netlist v. Samsung, 2:21-CV-463-JRG, final jury instructions.

Samsung: Samsung's version is taken from the FCBA model jury instructions. G+'s version is circular and fails to recite the complete legal standard for written description.

[205] G+:

Samsung: <u>Authority:</u> Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 4.2a.

[206] G+: This instruction is redundant of the first sentence of this section.

Samsung: <u>Authority:</u> Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 4.2a.

[207] G+: It is not necessary to "describe" every limitation; as one example, it is unnecessary to describe aspects of the invention in the specification that were known in the art, as described in G+'s proposed instruction below.

Samsung: <u>Authority:</u> *United Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 2:18-cv-366-JRG (E.D. Tex. Jan. 10, 2020); AIPLA Model Instruction No. 9 (2018).

the specification shows that the inventor possessed his or her invention as of the effective filing date of the claimed invention.

Determining written description involves looking within the four corners of the specification to determine whether or not the inventor(s) had possession of the invention as claimed.[208]  A broad claim is invalid when the specification clearly indicates that the invention is of a much narrower scope.[209]  For example, if the specification clearly shows that the inventor did not actually possess a certain limitation that appears in a claim, then that claim is invalid.[210]  Likewise, if the specification clearly shows that the invention as disclosed by the inventor requires a feature that is not recited in a claim, then that claim is invalid.[211]  In making this determination, you may consider the language of the claims as well as the entirety of the specification, including the title of the patent, the patent's teachings, examples, and description of the problem to be solved and the solutions disclosed, and the prosecution history.][212]

The disclosure must be explicit or inherent.

---

[208] Samsung: Authority: *Rivera v. Int'l Trade Comm'n*, 857 F.3d 1315, 1322 (Fed. Cir. 2017).

[209] Samsung: Authority:  *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1323 (Fed. Cir. 2002).

[210] Samsung: Authority: *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1377-79 (Fed. Cir. 2009); *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1343-46 (Fed. Cir. 2005); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1480 (Fed. Cir. 1998).

[211] Samsung: Authority: *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1377-78 (Fed. Cir. 2009); *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1343-46 (Fed. Cir. 2005); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1480 (Fed. Cir. 1998).

[212] G+: These three paragraphs make the instructions more confusing and are redundant. Suggestion that the claims are written broadly but the invention is narrow is one-sided and unnecessary.  The final paragraph is self-contradictory, stating to look within the four corners of the patent to determine written description, but also to look at the prosecution history.

Samsung: The foregoing instructions provide clarity and completeness to the instructions on written description.  G+ fails to provide any reason to exclude these instructions or to explain why its proposed constructions are more correct.  Samsung's proposal is superior because it is clear, not duplicative, and well-founded in Federal Circuit authority.

[In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the effective filing date.][213] The specification must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently. A claimed element is disclosed inherently if a person having ordinary skill in the field as of the effective filing date would have understood that the element is necessarily present in what the specification discloses.  It is not sufficient that the specification discloses only enough to make the claimed invention obvious to the person having ordinary skill.[214]

The written description does not have to be in the exact words of the claim.  The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification.  Adequate written description does not require either examples or an actual reduction to practice of the claimed invention(s).

[It is unnecessary to spell out every detail of the invention in the specification, and specific examples are not required; only enough must be included in the specification to convince persons of ordinary skill in the art that the inventor possessed the full scope of the invention.[215]  It is unnecessary for the patent applicant to describe concepts relating to the invention that are already well known to persons of ordinary skill in the art.[216] The patent specification need not disclose

---

[213] Samsung: Samsung's proposed instruction already has this concept and it does not have to be repeated: "The written description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize, from reading the patent specification, that the inventor possessed the subject matter finally claimed in the patent.  The written description requirement is satisfied if the specification shows that the inventor possessed his or her invention as of the effective filing date of the claimed invention."

[214] G+: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 4.2a.;

[215] G+:*United Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 2:18-cv-366-JRG (E.D. Tex. Jan. 10, 2020); AIPLA Model Instruction No. 9 (2018).

[216] G+:*United Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 2:18-cv-366-JRG (E.D. Tex. Jan. 10, 2020); *Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1156 (Fed. Cir. 2004).

every embodiment of the invention.  Description in the specification of as few as one example can be sufficient written description of a larger category of potential embodiments of the invention.][217]

[However, a mere wish or plan for obtaining the claimed invention(s) is not adequate written description.  Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.[218]]

[ENABLEMENT[219],[220]

[Samsung contends the asserted claims of the '130 and '881 patents are invalid because the patents do not disclose sufficient information to enable one skilled in the field of the invention, at the time the application was filed (or its effective filing date), to make and use the claimed invention. This requirement is known as the enablement requirement. Samsung must prove with clear and convincing evidence that the claim was not enabled.

---

[217] G+: This paragraph explains in plain language what is not required. It is particularly necessary in light of Samsung's instruction that the specification must "describe" every limitation of the claims. *United Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 2:18-cv-366-JRG (E.D. Tex. Jan. 10, 2020); *Allergan Sales, LLC v. Sandoz, Inc.*, 717 F. App'x. 991 (2017).

Samsung: This entire paragraph is repetitive of the previous paragraph (which says "Adequate written description does not require either examples or an actual reduction to practice of the claimed invention(s).") and over-emphasizes what does not need to be disclosed in the written description, including repeating that disclosure of examples and every embodiment is not required.  Such emphasis improperly biases the instruction towards G+'s position and is prejudicial to Samsung.

[218] Samsung: <u>Authority:</u> *Netlist, Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-00463-JRG, Final Jury Instructions, Dkt. No. 478 at 1319:15-19 (E.D. Tex. Apr. 21, 2023); Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 4.2a.  Samsung: This paragraph appears in the *Netlist v. Samsung* instructions and in the FCBA model instructions.  It is legally accurate, and G+ offers no reason it is improper.

[219] G+: Samsung has not raised an enablement defense in this litigation. This is evidenced by Samsung's failure to identify any claims in this instruction which it contends are not enabled. Samsung's experts simply state in conclusory fashion that certain claims are not enabled. This is insufficient, and this defense should not be presented to the jury. G+ proposes alternative language if the Court determines it should instruct the jury on this issue.

[220] Samsung: Samsung contends that all asserted claims of the '130 and '881 patents are not enabled.  *See* Min Opening Rep. ¶¶ 366-371; Wicker Opening Rep. ¶¶ 428-434.

In considering whether a patent claim satisfies the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention. Thus, a patent need not expressly state information that skilled persons would be likely to know or could obtain. Samsung bears the burden of establishing lack of enablement by showing with clear and convincing evidence that a person skilled in the art, upon reading the patent document, would not be able to make the invention work without undue experimentation. The fact that some experimentation may be required for a skilled person to make or use the claimed invention does not mean that a patent's written description fails to meet the enablement requirement. Factors you may consider in determining whether making the invention would require undue experimentation include:

1. the quantity of experimentation necessary;

2. the amount of direction or guidance disclosed in the patent;

3. the presence or absence of working examples in the patent;

4. the nature of the invention;

5. the state of the prior art;

6. the relative skill of those in the art;

7. the predictability of the art; and

8. the breadth of the claims.

No one or more of these factors is alone dispositive.][221] / [The patent law contains certain requirements for the part of the patent called the specification.  One of those requirements is called the enablement requirement.  Samsung contends that the asserted claims of the '130 and '881

---

[221] G+: Mirror Worlds, LLC v. Apple, Inc.; 6-08-cv-00088 (EDTX, Oct. 01, 2010); Fractus, S.A. v. Samsung Electronics Co., Ltd., et. al., 6-09-cv-00203 (EDTX, May. 23, 2011).

patents are invalid because the specification does not "enable" the full scope of the claimed invention. To succeed, Samsung must show by clear and convincing evidence that the patent specification of those asserted claims does not contain a sufficiently full and clear description to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention as of the effective filing date without undue experimentation. If a patent claim is not enabled, it is invalid.

The question of undue experimentation is a matter of degree, and what is required is that the amount of experimentation not be "unduly extensive." In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

1.    the time and cost of any necessary experimentation;

2.    how routine any necessary experimentation is in the field of the invention;

3.    whether the patent discloses specific working examples of the claimed invention;

4.    the amount of guidance presented in the patent;

5.    the nature and predictability of the field of the invention

6.    the level of ordinary skill in the field of the invention; and

7.    the nature and scope of the claimed invention.

No one or more of these factors is alone dispositive. Rather, you must make your decision about whether or not the degree of experimentation required is undue based upon all of the evidence presented to you. You should weigh these factors and determine whether or not, in the context of the invention and the state of the art at the time of the effective filing date, a person

102

having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.[222]]

## DAMAGES[223]

If you find that Samsung's products infringed any valid claim of the asserted patents, you must then consider what amount of damages to award to G+ [for that infringement].[224]   Now, I will instruct you about the measure of damages.   By instructing you on damages, I am not suggesting which party should win this case [on any issue][225].   [If you do not find that Samsung infringes a patent, you will not consider damages for that patent.][226]

---

[222] G+: G+'s instruction is clearer and simpler, and should be used.

Samsung: Authority: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 4.2b Enablement.  Samsung: The proposed language is directly from the FCBA model.  These enablement instructions are clear, concise, and legally accurate.  G+ identifies no reason, beyond a general objection that no enablement instructions should be provided, that these instructions are insufficient to be utilized here.

[223] G+: Authority: *United Services Automobile Association v. Apple Bank, N.A.,* No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019).

[224] G+: the next paragraph explains how damages are quantified. It is simpler to omit this redundant language from the opening sentence on damages.

Samsung: Authority: *TQ Delta, LLC v. CommScope Holding Co*., No. 2:21-cv-000310-JRG, Final Jury Instructions, Dkt. No. 534, Vol. 1 Tr. 21:14-73:13 (E.D. Tex. Mar. 30, 2023); 35 U.S.C. § 284.  This language is necessary to make clear that the only damages G+ may recover is for the infringing acts it has proved.

[225] Samsung: Removing this language misleadingly suggests the jury is to pick a "winner" of the case.  In fact, the jury must decide each issue, separately, that is before it and determine whether a party carried its burden or not.  The issue language more appropriately delineates what the jury will ultimately do here.

[226] G+:Samsung's proposal is prejudicial, biased, and repetitive. The instruction already states that damages are to be awarded only if infringement is found. There is no basis to instruct the jury on this two additional times, as Samsung proposes.

Samsung: Authority: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 5.1 Damages – Introduction; 35 U.S.C. § 284 ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement . . . ."); *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega systems, LLC*, 350 F.3d 1327, 1345-46 (Fed. Cir. 2003) (vacating damages award that was based on both infringed and non-infringed patents); *Acorn*, No. 2:19-cv-000347-JRG (May 19, 2021) (Final Jury Instructions).  Samsung: This instruction recites black-letter law and is necessary to instruct the jury on determining damages properly.  G+'s statement that this instruction is repetitive is incorrect – there is no other instruction that says if you find Samsung does not infringe, you will not consider damages for that patent.  Samsung's proposal also tracks

[The damages that you award in this case][227] / [If you award damages, they][228] must be adequate to compensate G+ for any infringement.  You should also not include any additional amount for the purposes of punishing Samsung or for setting an example.  G+ in this case has the burden to establish the amount of its damages by a preponderance of the evidence.

The patent laws specifically provide that damages for infringement may not be less than a reasonable royalty.  Plaintiff G+ must prove the amount of its damages with reasonable certainty but need not prove the amount of damages with mathematical precision.  [The determination of a damages award is not an exact science, and the amount need not be proven with unerring precision. You may approximate, if necessary, the amount to which the patent owner is entitled. Damages, however, may not be determined by a mere speculation or a guess. It may be proper to award damages in an amount if the evidence shows the extent of the damages as a matter of just and reasonable inference.][229]  / [You may not award damages that are speculative, damages that are

---

the FCBA model.

[227] G+: the damages instruction starts by stating that damages are for infringed and valid claims. This instruction ends "for any infringement." There is no need to add "If" to the beginning as Samsung has.

[228] Samsung: <u>Authority</u>: *Netlist, Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-00463-JRG, Final Jury Instructions, Dkt. No. 478 at 1320:14-16 (E.D. Tex. Apr. 21, 2023).  Samsung: G+'s proposal misleadingly suggests damages are to be awarded.  It is black-letter law that damages are conditional on a finding of infringement of a valid claim.

[229] G+: *Optis Wireless Tech., LLC, et al., v. Huawei Techs. Co. Ltd.*, et al., No. 2:17-cv-123-JRG-RSP, Dkt. 310 (E.D. Tex. Aug. 24, 2018).  The instruction expressly states that damages "may not be determined by a mere speculation."  It is important for the jury to understand that approximation is allowed so long as it is not based on speculation or guess.

Samsung: G+ provides no authority for this overly lengthy instruction, which repeats, and thus emphasizes, the concept in the previous sentence about not having to prove damages with mathematical precision, thus biasing the instruction towards G+ and prejudicing Samsung.  Further, this language impermissibly encourages the jury to approximate damages and rely on guesswork.  The Federal Circuit explicitly forbids this type of speculation.  *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009) (a patent holder is not entitled to damages that are remote or speculative); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).  Samsung's instruction is legally correct, succinct, and clear.

only possible, or damages that are based on guesswork.[230]  G+ seeks damages in the form of a reasonably royalty [in the form of a lump sum].[231]]

[A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time immediately prior to when the infringement first began.][232] /  [A reasonable royalty is defined as the money amount ZTE and Samsung would have agreed [to in a hypothetical negotiation ]/[upon as a fee for use of the invention] at the time just prior to when infringement began.  You must consider this date for each asserted patent.[233]]

Reasonable royalty awards can take the form of a lump sum payment.  A lump sum payment is equal to an amount that the alleged infringer would have paid at the time of a hypothetical negotiation for a license covering all sales of the licensed product[, both past and

---

[230] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 5.1.  Samsung: This language tracks verbatim with the FCBA model.  It properly instructs the jury they are not to speculate.

[231] G+: G+'s instruction is more accurate and should be provided.

Samsung: This sentence is needed to set up the shift to reasonable royalty instructions in the next paragraph.  It is neutral to both parties.  G+ identifies no rationale to object.

[232] Samsung: Samsung's version is more clear because it uses simpler language straight from the FCBA model (e.g., contrast "amount of royalty payment" with "money").  Further, Samsung's instruction is necessary because it identifies ZTE and Samsung as the parties to the hypothetical negotiation.  G+'s instruction is likely to confuse the jury that it should be evaluating a hypothetical negotiation between G+ and Samsung.  Both parties, and both party's damages experts, have repeatedly agreed that ZTE and Samsung are the parties to the hypothetical negotiation.  Samsung's instruction is based directly on the FCBA model and is more accurate and appropriate.

[233] Samsung: Authority: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 5.1.  Samsung: Samsung's version is more clear because it uses simpler language straight from the FCBA model (e.g., contrast "amount of royalty payment" with "money").  Further, Samsung's instruction is necessary because it identifies ZTE and Samsung as the parties to the hypothetical negotiation.  G+'s instruction is likely to confuse the jury that it should be evaluating a hypothetical negotiation between G+ and Samsung.  Both parties, and both party's damages experts, agree that ZTE and Samsung are the parties to the hypothetical negotiation.  Samsung's instruction is more accurate and appropriate.

future. When a lump sum is paid, the infringer pays a single price for a license covering both past and future infringement.][234]

Now, in considering this hypothetical negotiation, you should focus on what the expectations of [the patent holder and the alleged infringer]/[ZTE and Samsung][235] would have been had they entered into an agreement at that time and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the Asserted Claims were valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.  In the context of the hypothetical negotiation, it is not necessarily the case that each valid and infringed patent in the hypothetical negotiation contributes equally to the amount that Samsung would pay for that license, or that each patent covered by other licenses that were presented contributes equally to the amount that was paid for those licenses.

The law requires that any damages awarded to the Plaintiff corresponds to the value of the alleged inventions within the accused products, as distinct from other, unpatented features of the

---

[234] G+: LONE STAR TECHNOLOGICAL INNOVATIONS, LLC, v. ASUSTEK COMPUTER INC., 6:19-cv-00059-RWS (EDTX, Jun. 30, 2022).

Samsung: G+'s instruction is improper and is likely to cause confusion in this case.  Samsung's damages expert explains ██████████████████████████████████████████████.  The jury instruction must be neutrally worded, as the jury is certainly free to agree with Samsung's damages expert.  Finally, Samsung has a pending *Daubert* motion that would preclude G+'s damages expert from providing future damages because they would be legally improper, further showing this proposed instruction is inappropriate.  *See* Dkt. No. 206 at 10-15.

[235] Samsung: <u>ZTE and Samsung</u> must be identified as the parties to the hypothetical negotiation.  G+'s reason for objecting to this language is a blatant attempt to confuse the jury about whether the hypothetical negotiation is between G+ and Samsung or ZTE and Samsung.  Both parties, and both party's damages experts, agree that ZTE and Samsung are the parties to the hypothetical negotiation.

accused product, or other factors such as marketing or advertising, or [Samsung's][ZTE's][236] size or market position.  This is particularly true where the Accused Product has multiple features and multiple components not covered by the patent or where the Accused Product works in conjunction with other non-patented items. Therefore, the amount you find as damages must be based on the value attributable to the patented technology.[237]  [If the unpatented features contribute to an accused product, you must apportion that value to exclude any value attributable to unpatented features.  You must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.  G+ bears the burden to establish the amounts attributable to the patented features].[238]

---

[236] Samsung: <u>Authority</u>: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 5.12.  Samsung: FCBA Instruction 5.12 says the patent holder's size or market position.  ZTE is the patent holder in the hypothetical negotiation.

[237] Samsung: <u>Authority</u>: Adapted from *TQ Delta, LLC v. CommScope Holding Co.*, No. 2:21-cv-000310-JRG, Final Jury Instructions, Dkt. No. 534, Vol. 1 Tr. 21:14-73:13 (E.D. Tex. Mar. 30, 2023).

[238] G+: This instruction is repetitive of the other instructions in this section, biased,  and confusing. It immediately follows a sentence stating that damages must be based on value attributable to the patented technology, as distinct from unpatented features. *U.S. v. McCracken*, 488 F.2d 406, 414 (5th Cir. 1974) ("necessarily long and repetitive instructions increase the danger that the jury will perceive inconsistencies, become confused, and be unduly impeded in properly exercising its functions."); *Phillips v. Irvin*, 2007 WL 2570756 (S.D. Ala. Aug. 30, 2007) (rejecting party's requested jury instructions because the instructions "would reiterate and restate certain… factors, emphasizing the particular ones of interest to the plaintiff and excluding the others, thereby conveying an incorrect impression to the jury that certain factors were more important, as a matter of law, than the others."). Samsung's proposed instruction adds nothing new or helpful to the instructions.  Samsung's 30(b)(6) witness could not answer any questions about value attributed regarding unpatented features so Samsung should not be permitted to enter any such evidence at trial or receive an instruction to the jury in this manner.

Samsung: <u>Authority</u>: *TQ Delta, LLC v. CommScope Holding Co.*, No. 2:21-cv-000310-JRG, Final Jury Instructions, Dkt. No. 534, Vol. 1 Tr. 21:14-73:13 (E.D. Tex. Mar. 30, 2023); *Netlist, Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-00463-JRG, Final Jury Instructions, Dkt. No. 478 at 1322:13-21 (E.D. Tex. Apr. 21, 2023); *Acorn*, No. 2:19-cv-000347-JRG (May 19, 2021) (Final Jury Instructions).  <u>Samsung</u>: Federal Circuit precedent requires apportionment and this instruction appropriately explains the concept. Samsung's proposed language appears in three recent jury instructions provided in this Court.  These sentences provide important context to the jury for their damages assessment.  There is no basis for exclusion.

In determining a reasonable royalty, you should consider all facts known and available to the parties at the time the infringement began.  You may also consider:

1.  The royalties received by the patentee for the licensing of the patent(s) in suit, proving or tending to prove an established royalty.

2.  The rates paid by the licensee for the use of other patents comparable to the patent in suit. [239]

3.  The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4.  The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5.  The commercial relationship between the licensor and the licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promotor.

6.  The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7.  The duration of the patent and the term of the license.

---

[239] G+: G+ objects to this language as inaccurately stating the standard for comparability, which requires consideration not just of whether the license covers the claimed invention or comparable technology, but also *economic* comparability to the circumstances of the contracting parties. See *Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301 (Fed. Cir. 2009); *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360 (Fed. Cir. 2017).

Samsung: *Solas OLED Ltd. v. Samsung Display Co., Ltd.*, 2:19-cv-00152-JRG, Dkt. 354 (Final Jury Instructions) (E.D. Tex. Mar. 8, 2021).

8. The established profitability of the product made under the patent; its commercial success; and its current popularity.

9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor (such as the Plaintiff) and a licensee (such as Samsung) would have agreed upon at the time the infringement began if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit

and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

Now, no one of these factors is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may have heard these factors referred to during the trial as the *Georgia-Pacific* factors during testimony.

[The royalty rate must be based on the incremental value that the patented technology adds to the product, not any value added by the standardization of the technology.][240]

You may also consider any other factors which in your minds would have increased or decreased the royalty [the infringer]/ [Samsung] would have been willing to pay and that the patent owner[, ZTE,][241] would have been willing to accept, with both acting as normally prudent business people.

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood. If a license agreement is not sufficiently comparable, you may not rely on it in determining damages. Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a

---

[240] G+: this is redundant. It is discussed at length in the paragraphs immediately preceding the GP factors.

Samsung: <u>Authority</u>: *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1233 (Fed. Cir. 2014) ("These steps are necessary to ensure that the royalty award is based on the incremental value that the patented invention adds to the product, not any value added by the standardization of that technology") (emphasis in original). Samsung: It is especially important in a SEP case to inform the jury that a royalty award must not include value added by the standardization. Because the *Georgia Pacific* factors do not squarely address this point, G+'s objection that this is redundant is unfounded.

[241] Samsung: Samsung reiterates its point that it must be clear in these instructions who the parties are in the hypothetical negotiation—ZTE and Samsung.

license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.[242]

[A reasonable royalty is the minimum amount of compensation, but not the only form of compensation. You are permitted to consider all the benefits conferred to Samsung through its infringement of the asserted patents, including evidence of cost savings that Samsung achieved through the use of the asserted patents as well as evidence of additional profits and other benefits.[243] A reasonable royalty can exceed the profits expected by the patentee.][244]

Now, for purposes of determining a reasonable royalty, you may consider whether at the time of the hypothetical negotiation [Samsung had] [there were][245] acceptable, non-infringing

---

[242] *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009); *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360 (Fed. Cir. 2017).

[243] *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019).

[244] G+: *State Industries, Inc. v. Mor-Flo Industries, Inc*., 883 F.2d 1573, 1580, 12 U.S.P.Q.2d 1026 (Fed. Cir. 1989) ("The determination of a reasonable royalty … is based not on the infringer's profit margin, but on what a willing licensor and licensee would bargain for a hypothetical negotiations on the date infringement started. ***There is no rule that a royalty be no higher than the infringer's net profit margin***[.]").

Samsung: G+'s proposed instructions are unsupported, unnecessary, argumentative, and would mislead the jury about the scope of the case and the respective damages. G+'s counsel attempted to inject this same language into the *Netlist v. Samsung* case. The Court rejected this language. It should be rejected again here. Further, G+'s damages expert does not opine that there is any "evidence of cost savings that Samsung achieved through the use of the asserted patents." And G+ is certainly not requesting more in reasonable royalty than Samsung's profits, and so there is no value of this instruction. These instructions are prejudice Samsung by trying to generally encourage a higher damages amount.

[245] G+: Samsung must have access to the alternative. It cannot be something patented by another. This is highly relevant given that Samsung's experts seek to tell the jury that any patent of another is necessarily available to Samsung. Samsung is the infringer, and the inquiry is whether an alternative was available to Samsung. The citation by Samsung is not to the contrary; a product on the market could be an example of an alternative that is available to Samsung.

Samsung: Authority: *Netlist, Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-00463-JRG, Final Jury Instructions, Dkt. No. 478 at 1325:19-22 (E.D. Tex. Apr. 21, 2023). Samsung: This instruction should be neutrally worded to encapsulate that a non-infringing alternative has to be acceptable to the market, not necessarily a specific party. *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1381 (Fed. Cir. 2013) ("the analysis must consider the impact of such alternate technologies on the market as a whole"). There is no reason to list all of the people to whom the non-infringing alternative does or does not have to be

alternatives to taking a license.  To be an acceptable, non-infringing alternative, a product must have the advantages of the patented invention that were important to people who purchased an alleged infringer's product.[246]  [You should not assume that damages are limited to the cost of implementing a non-infringing alternative.][247]  [Samsung] / [The party that advances a non-infringing alternative][248] bears the burden to show by a preponderance of the evidence that this non-infringing alternative [was acceptable and][249] available at the time of the hypothetical

---

acceptable.

[246] Federal Circuit Bar Association (FCBA) Model Patent Jury Instructions (May 2020) at Instruction 5.2.

[247] G+: The Federal Circuit has directly stated that it "is wrong as a matter of law to claim that reasonable royalty damages are capped at the cost of implementing the cheapest available, acceptable, noninfringing alternative." *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1373 (Fed. Cir. 2008).

Samsung: G+'s proposed instruction is argumentative, confusing, and misleading to the jury because it incorrectly suggests that it would be improper to measure damages based in part on the cost of implementing a non-infringing alternative.  G+'s counsel attempted to inject this same language into the *Netlist v. Samsung* case.  The Court rejected this language.  It should be rejected again here.

[248] G+:  A non-infringing alternative must be acceptable to defeat a claim for lost profits.  But for determining a reasonable royalty, even where there is no acceptable and available non-infringing alternative, it is permissible to use the "next-best available alternative" to measure the benefits of the invention.  *Grain Processing Corp. v. Am. Maize-Products Co*., 185 F.3d 1341, 1351 (Fed. Cir. 1999) ('[O]nly by comparing the patented invention to its ***next-best available alternative***(s) … can the court discern the market value of the patent owner's exclusive right, and therefore his expected profit or reward….').  Otherwise, a patentee like G+ would be punished by the fact that its invention has no acceptable alternatives, because it would not be permitted to measure technical damages by comparing to anything at all.  The Federal Circuit made clear in Grain Processing that such a comparison is proper and necessary for measuring the benefits of the invention.

The next-best alternative used to isolate the benefits of the invention is not the same as an acceptable non-infringing alternative which an infringer may argue it could have sold in place of the infringing product to avoid infringement.  If Samsung seeks to admit evidence that such an acceptable alternative exists, the burden is on Samsung to prove it satisfies the requirement for a non-infringing alternative.

Samsung: Authority: *Netlist, Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-00463-JRG, Final Jury Instructions, Dkt. No. 478 at 1326:6-10 (E.D. Tex. Apr. 21, 2023); *DataTreasury Corp. v. Wells Fargo & Co.*, 2011 U.S. Dist. LEXIS 118443, at *47 (E.D. Tex. Aug. 2, 2011); *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1298 (Fed. Cir. 2007); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 2011 U.S. Dist. LEXIS 5422, *10 (E.D. Tex. Jan. 20, 2011); *see also Spex SPEX Techs. v. Apricorn, Inc.*, 2020 U.S. Dist. LEXIS 50221, *7 (C.D. Cal. Jan. 21, 2020).  Samsung: Without this language, the sentence would not make sense, and G+ does not propose any alternative language.  This instruction was provided in the *Netlist v. Samsung* instructions.  It is a necessary, proper instruction because it appropriately identifies that the party that advances a non-infringing burden bears the burden to show it was available.  G+'s cited *Astrazeneca* case is distinguishable and does not allocate the burden of proof in a case analogous to this case.

[249] G+: In the reasonable royalty context, there is no requirement that a party establish that an alternative

---

negotiation and during the damages period.[250] [An alternative need not be on the market to be available.  An alternative can be available where the accused infringer has the resources and desire to design around the patents.][251]  [Even where an alternative would not have been acceptable to Samsung, comparing the patented solution to the next-best available alternative can indicate the market value of the patent owner's exclusive right.][252]

---

is acceptable. *Salazar v. HTC Corp.*, No. 216CV01096JRGRSP, 2018 WL 2033709, at *3 (E.D. Tex. Mar. 28, 2018) ("acceptable non-infringing alternatives" don't play the same role in a reasonable-royalty determination. Rather, courts consider the next-best available alternative, which is not necessarily an "acceptable" alternative that precludes recovery of lost profits under Panduit").

Samsung: As is reflected in the undisputed part of the instruction, a non-infringing alternative must be both acceptable and available.  This language explains the burden of proof for all aspects of the non-infringement alternative.

[250] G+: Samsung's assertion that G+ has the burden to prove availability of non-infringing alternatives is incorrect. *Astrazeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1340-41 (Fed. Cir. 2015) makes clear that in a reasonable royalty case the infringer has burden to prove that it has non-infringing alternatives available to it. Further, Samsung's proposed instruction makes no sense. G+ is not arguing that there is an acceptable non-infringing alternatives. Rather, G+ is arguing that compared to the next best alternative Samsung could have implemented, the technical benefits of the patent can be derived.

[251] G+: If the Court instructs the jury that availability is required,  G+'s instruction is necessary to explain what it means for an alternative to be available.  There is nothing argumentative in these instructions, which are consistent with Federal Circuit precedent on what defines availability. *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1373 (Fed. Cir. 2008) ("There was, therefore, no available and acceptable noninfringing alternative to which Coinco could have switched at the time of the hypothetical negotiation; there was merely the possibility that it could have come up with one.")

Samsung: G+'s proposed instruction is argumentative, confusing, and misleading to the jury because it incorrectly suggests that it would be improper to measure damages based in part on the cost of implementing a non-infringing alternative.  Moreover, G+'s instructions are unnecessary and improper because the jury has already been instructed that a non-infringing alternative has to be acceptable to the market and that instruction is clear.  There is no reason to lengthen the instruction by stating all of the people to whom the non-infringing alternative does not have to be acceptable. *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1381 (Fed. Cir. 2013) ("the analysis must consider the impact of such alternate technologies on the market as a whole").

[252] G+: *Grain Processing Corp. v. Am. Maize-Products Co*., 185 F.3d 1341, 1351 (Fed. Cir. 1999) ('[O]nly by comparing the patented invention to its next-best available alternative(s) … can the court discern the market value of the patent owner's exclusive right, and therefore his expected profit or reward….').  A non-infringing alternative must be acceptable to defeat a claim for lost profits.  But for determining a reasonable royalty, even where there is no acceptable and available non-infringing alternative, it is permissible to use the "next-best available alternative" to measure the benefits of the invention.  Otherwise, a patentee like G+ would be punished by the fact that its invention has no acceptable alternatives, because it would not be permitted to measure technical damages by comparing to anything at all.  The Federal Circuit made clear in Grain Processing that such a comparison is proper and necessary for

[When dealing with patents that are standard essential, there are two special apportionment issues that arise.][253] [If you find that any of the asserted patents are essential to the 5G standards, then you must consider the following three factors in determining a royalty:][254]

---

measuring the benefits of the invention.

Samsung: G+ attempts to stretch *Grain Processing* beyond what it says. *Grain Processing* simply states that comparing the patented invention to the best available alternative can help discern market value. It does not state or suggest that "even where an alternative ***would not have been acceptable to Samsung***," such a comparison is still performed as part of a damages assessment. To the contrary, a non-infringing alternative must be an acceptable one, as is reflected in the undisputed portion of the instruction.

[253] G+: G+ contends there should be no FRAND issues from either party raised at trial. *See, e.g.,* Dkt. 228 (G+ Motion for Summary Judgment).

Samsung's breach of FRAND claims involve contract interpretation issues that should be decided by the Court. *See, e.g., Evolved Wireless, LLC v. Apple, Inc.*, No. CV 15-542-JFB-SRF, 2019 WL 831112, at *9 (D. Del. Feb. 21, 2019) ("In the Proposed Pretrial Order in the *Apple* case, Apple proposes that the claims involving … breach of the FRAND obligations should be tried to the Court. ... The Court agrees. All of those claims require construction of contracts and are matters for the Court to determine as a matter of law. Infringement and invalidity should be tried to the jury … Interpretation of the terms of the various ETSI Intellectual Rights Policies, standards, and specifications at issue in connection with the FRAND obligation are also matters of law for the Court to determine. … Any potential recovery of attorney fees as damages need not be addressed at this time.")

To the extent the Court determines FRAND issues are admissible at trial, G+ includes the following instructions related to these issues.

Samsung: Samsung's breach of contract claim should be presented to the jury in view of this Court's precedent. Specifically, this Court has allowed breach claims regarding good faith negotiations and FRAND obligations related to ETSI to be tried to a jury, which was affirmed by the Fifth Circuit. *See HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 407 F. Supp. 3d 631, 636-37 (E.D. Tex. 2019), aff'd, 12 F.4th 476 (5th Cir. 2021) ("After deliberating, the jury returned a verdict on February 15, 2019, finding that (1) HTC had not shown by a preponderance of the evidence that Ericsson breached its contractual obligation to offer HTC a license, on FRAND terms, to Ericsson's cellular SEPs; (2) that HTC had proven by a preponderance of the evidence that Ericsson had breached its duty of good faith in carrying out its contractual obligation to negotiate with HTC for a license to Ericsson's cellular SEPs; and (3) that Ericsson had proven by a preponderance of the evidence that HTC had breached its duty to negotiate with Ericsson in good faith for a license to Ericsson's cellular SEPs."). Moreover, for the reasons outlined in Samsung's response, G+'s Motion for Summary Judgment should be denied. *See* Dkt. No. 243

[254] G+: As explained in G+'s MTS the expert report of Mr. Meyer, whether a royalty is "FRAND" is not a criteria the jury must consider for determining a reasonable royalty. G+'s proposed instruction follows binding Federal Circuit precedent, which holds that: "When dealing with SEPs, there are ***two special apportionment issues that arise***. First, the patented feature must be apportioned from all of the unpatented features reflected in the standard. Second, the patentee's royalty must be premised on the value of the patented feature, not any value added by the standard's adoption of the patented technology. These steps are necessary to ensure that the royalty award is based on the incremental value that the patented *invention* adds to the product, not any value added by the standardization of that technology." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1232 (Fed. Cir. 2014).

114

First, the patented feature must be apportioned from all the unpatented features reflected in the standard.

Second, the patent owner's royalty must be premised on the value of the patented feature, not any value added by the standard's adoption of the patented technology.

[Third, a reasonable royalty must reflect that ZTE and its successor G+ committed to license the asserted patents on fair, reasonable and non-discriminatory ("FRAND") terms. [You may find that damages in this case are not limited to FRAND terms if you find that G+ satisfied its obligations by either negotiating in good faith or by making a FRAND offer, or that Samsung failed to negotiate in good faith and G+ discharged its obligations under FRAND.] Because of this FRAND commitment, I will refer at times in my instructions to "standard-essential" patents. By referring to standard-essential patents, the Court is not instructing you that the asserted patents are actually essential to any standard. Again, it is up to you, the jury, to decide whether or not G+ has proven that the patents are standard-essential and infringed.] [255] / [The Plaintiff has committed to

---

Samsung: G+'s motion for summary judgment relates to only dismissing Samsung's counter claim (that G+ breached its FRAND contract). Dkt. No. 228. The damages language here, and the requirement to license these patents on "FRAND" terms applies regardless of that motion's resolution. G+'s own damages expert says this. *See* Dell Op. Rpt. at ¶¶124, 133, 134, 224- 228, 232, 260, 308, 310, 326-372 ("Accordingly, based on my analysis of the various issues and evidence discussed above, including the relative bargaining position of the parties, as well as the economic framework and **considerations under FRAND encumbrances**, is my opinion that the parties would ultimately negotiate and agree to a lump sum royalty payment commensurate with the value and extent of use of the patents at issue by Samsung over the forecasted period of ▮▮▮▮▮▮▮▮▮▮▮."). The analysis the jurors must perform is still based on "FRAND" encumbered patents. G+'s own instructions also reflect that the patents are alleged to be standard essential, which incur the obligation to license on FRAND terms.

Samsung: Samsung disagrees. Also, the changed wording follows the FCBA instruction 5.11.

[255] G+: To the extent the Court determines FRAND issues are admissible at trial, G+ includes the instructions related to these issues. Samsung's language that the jury "must consider" that a reasonable royalty be FRAND is factually and legally incorrect: the jury can find that G+ satisfied or discharged its obligations, such that FRAND does not apply. And as explained in G+ MTS Meyer, that a reasonable royalty be "FRAND" is not one of the requirements for determining damages.

Samsung: <u>Authority</u>: *TQ Delta, LLC v. CommScope Holding Co*., No. 2:21-cv-000310-JRG, Final Jury Instructions, Dkt. No. 534, Vol. 6, Tr. 67:22-68:3 (E.D. Tex. Mar. 30, 2023); Federal Circuit Bar

the European Technology and Standards Institute to grant licenses on fair, reasonable, and non-discriminatory terms and conditions to implementers of the 5G standard.[256] ETSI has provided that IPR holders should be adequately and fairly rewarded for the use of their IPRs in the implementation of standards and technical specifications.[257] Specific licensing terms and negotiations are commercial matters between the companies and are not addressed within ETSI. The basic principle of ETSI remains FRAND with no specific preference for any licensing model.[258] Under ETSI policy, once a patent has been granted, in the absence of an agreement between the parties, this Court has the sole authority to resolve IPR disputes.[259] That being said, sophisticated parties routinely enter into license agreements that base the value of the patented inventions as a percentage of the commercial products' sales price, and thus there is nothing inherently wrong with using the market value of the entire product in calculating a reasonable royalty.[260]]

---

Association Model Patent Jury Instructions (May 2020), Instruction 5.1.  Samsung: Samsung's language is directly from the FCBA model regarding a reasonable royalty analysis for SEPs and the changed wording follows FCBA instruction 5.11.  G+'s objection makes no sense.  Its summary judgment motion ***does not seek*** to exclude discussion that the patents are standard essential or that G+/ZTE are obligated to license on FRAND terms.  G+'s own instructions here reflect FRAND language, and its damages expert discusses all through his report that his hypothetical negotiation analysis reflects the FRAND-encumbrances.  Samsung's proposed language here is from the FCBA model; G+ simply makes up new language based on various portions of the ETSI policy that it prefers.  The ETSI policy informs parties of their ETSI obligation.  By G+'s own admission (and proposed instructions) the ETSI policy does ***not*** inform anyone how to evaluate a FRAND royalty rate.  G+'s proposed instructions are entirely irrelevant to what the jury must decide and are prejudicial to Samsung.

[256] ETSI IPR Information Statement and Licensing Declaration.

[257] ETSI IPR Policy, Section 3.2.

[258] ETSI IPR Policy, ETSI Guide on IPRs, Background.

[259] ETSI IPR Policy, Section 4.3.

[260] *FTC v. Qualcomm Inc.*, 969 F.3d 974, 999 (9th Cir. 2020) (quoting " *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1349 (Fed. Cir. 2018)); *CSIRO v. Cisco Sys. Inc.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015) ("The rule Cisco advances—which would require all damages models to begin with the smallest salable patent-practicing unit—is untenable.")..

[ZTE submitted a written commitment to ETSI covering the asserted patents, [stating it was prepared to negotiate for a][261] / [agreeing to grant an irrevocable] license to the asserted patents on fair, reasonable, and non-discriminatory—or FRAND—terms and conditions. This obligation transferred to G+ when it acquired the patents. Therefore, [if you find that G+ has not discharged its FRAND obligations, then] a reasonable royalty in this case cannot exceed the amount permitted under G+'s FRAND obligations.][262]

[You may also consider any evidence of royalty stacking. "Royalty stacking" can arise when a standard implicates multiple patents, perhaps hundreds or thousands, which would cause a company that is forced to pay royalties for all such standard patents to pay royalties that "stack" on top of each other and may become excessive.][263]

In considering the evidence of a reasonable royalty, you are not required to accept one specific figure or another for the reasonable royalty. You are entitled to determine what you

---

[261] G+: ETSI IPR Policy, Clause 6.1. *See, also, HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 6:18-CV-00243-JRG, 2019 WL 126980, at *3 (E.D. Tex. Jan. 7, 2019).

[262] G+: This instruction is duplicative of G+'s prior proposed instruction and should be omitted. G+ incorporates its objections regarding *TQ Delta*. Samsung's instruction is incorrect; the jury is entitled to find that damages in this case are not limited by FRAND.

Samsung: <u>Authority</u>: *TQ Delta, LLC v. CommScope Holding Co*., No. 2:21-cv-000310-JRG, Final Jury Instructions, Dkt. No. 534, Vol. 6, Tr. 65:23-66:3 (E.D. Tex. Mar. 30, 2023); Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 5.1. Samsung: This language is from the FCBA model instruction and a similar instruction was give in *TQ Delta*. G+ argues Samsung acted in bad faith and held out but this has to be decided by a jury but that is only G+'s contention. G+ cannot remove jury instructions that are directly applicable if the jury does not agree with its arguments. Removal of this section is wholly improper.

[263] G+: There is no evidence of royalty stacking in this case or any alleged burden on Samsung (*See* G+ MTS Meyer), and the jury should not be instructed on royalty stacking absent evidence specific to the facts of this case.

Samsung: <u>Authority</u>: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 5.1. Samsung: This language is verbatim from the FCBA model instruction. G+ argues Samsung does not have evidence of royalty stacking, but Samsung's damages expert provides paragraphs of analysis supporting his royalty stacking opinions. *See* Dkt. No. 238 at 1-2 (citing ¶¶ 40-43, 137 of Mr. Meyer's opening report). G+'s disagreement with Samsung's expert is not a legitimate basis to avoid this proper instruction.

consider to be a reasonable royalty based upon your consideration of all of the evidence presented by the parties whether that evidence is of a specific figure or a range of figures.][264]

[**CONDUCT DURING NEGOTIATION**[265]

---

[264] Authority: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 5.1. Samsung: This language is verbatim from the FCBA model instruction and provides accurate guidance that the jury is not required to accept either G+'s or Samsung's figures in an unbiased manner. G+ identifies no reason that this language is unnecessary, irrelevant, or prejudicial.

[265] G+: G+ contends there should be no FRAND issues from either party raised at trial. *See, e.g.,* Dkt. 228 (G+ Motion for Summary Judgment).

Samsung's breach of FRAND claims involve contract interpretation issues that should be decided by the Court. *See, e.g., Evolved Wireless, LLC v. Apple, Inc.*, No. CV 15-542-JFB-SRF, 2019 WL 831112, at *9 (D. Del. Feb. 21, 2019) ("In the Proposed Pretrial Order in the *Apple* case, Apple proposes that the claims involving … breach of the FRAND obligations should be tried to the Court. ... The Court agrees. All of those claims require construction of contracts and are matters for the Court to determine as a matter of law. Infringement and invalidity should be tried to the jury … Interpretation of the terms of the various ETSI Intellectual Rights Policies, standards, and specifications at issue in connection with the FRAND obligation are also matters of law for the Court to determine. … Any potential recovery of attorney fees as damages need not be addressed at this time."). Damages for breach of FRAND is also not a jury question. *See, e.g., Evolved Wireless, LLC v. Apple, Inc.,* No. CV 15-542-JFB-SRF, 2019 WL 831112, at *7 (D. Del. Feb. 21, 2019) ("damages for a breach of FRAND obligations are equitable in nature (as analogous to equitable damages for bad faith), the determination is a matter for resolution by the Court.").

To the extent the Court determines FRAND issues are admissible at trial, G+ includes the following instructions related to these issues.

Samsung's suggestion that it presented the parties contract obligations together is belied by its proposal, which begins "Your job in this case is to decide whether or not G+ has breached its contractual obligations, and, if so, what money Samsung is owed." To the extent instructions are provided as to Samsung's breach of FRAND claims, G+'s proposed instructions should be presented. G+ is the plaintiff in this case and its claims regarding infringement and breach of contract are presented first. G+'s claim is directly related to the determination of damages in this case for infringement as it impacts whether or not G+ has any obligations under FRAND to Samsung, and it should be presented with G+'s claims for infringement and related damages. Samsung's breach of contract claim is unrelated to these issues, and there is no issue with presenting it apart from the questions of infringement and damages for said infringement.

Samsung: There is no basis for providing a Samsung negotiating conduct instruction separately from G+. The instructions regarding negotiating conduct by both parties should be provided together, as Samsung proposes. G+ attempts to bias the jury by impermissibly presenting its claim first and in isolation. It also uses language that does not accurately reflect the legal standard, e.g., "bad faith" rather than referring to a duty to negotiate in good faith. *See* n.22, supra (explaining the French authority for "good faith," as evidenced further by G+'s own French legal expert and that "hold out" is not an independent legal test). Samsung objects to this entire instruction and offers an alternative, entitled "Negotiation Conduct."

Moreover, Samsung's breach of contract claim should be presented to the jury in view of this Court's precedent. Specifically, this Court has allowed breach claims regarding good faith negotiations and FRAND obligations related to ETSI to be tried to a jury, which was affirmed by the Fifth Circuit. *See HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 407 F. Supp. 3d 631, 636-37 (E.D. Tex. 2019), aff'd, 12 F.4th 476 (5th Cir. 2021) ("After deliberating, the jury returned a verdict on February 15, 2019, finding that (1)

At the beginning of this trial, you were told that Plaintiff seeks a judgment that Samsung breached its obligation to negotiate in good faith, and in response to Samsung's breach G+ discharged its obligation to license the asserted patents to Samsung under FRAND terms. Plaintiff has the burden of providing that Samsung breached its obligation to negotiate in good faith and that G+ has discharged its obligation to license the asserted patents to Samsung under FRAND terms by a preponderance of evidence.[266]

You must decide whether Samsung breached its obligation to negotiate in good faith during pre-suit negotiations. Now, before you decide these issues, you'll need to understand the terms of the contract at issue in this case. A contract is a legally enforceable promise or set of promises. When two individuals or entities enter into a contract that is intended to benefit a third party, the third party has standing to enforce the terms of the contract in the event that it is breached.

The patents in suit have been declared to be essential to the cellular standards of the European Telecommunications Standards Institute. ZTE, Plaintiff's predecessors-in-interest with respect to the asserted patents, submitted written commitments to ETSI covering the asserted

---

HTC had not shown by a preponderance of the evidence that Ericsson breached its contractual obligation to offer HTC a license, on FRAND terms, to Ericsson's cellular SEPs; (2) that HTC had proven by a preponderance of the evidence that Ericsson had breached its duty of good faith in carrying out its contractual obligation to negotiate with HTC for a license to Ericsson's cellular SEPs; and (3) that Ericsson had proven by a preponderance of the evidence that HTC had breached its duty to negotiate with Ericsson in good faith for a license to Ericsson's cellular SEPs."). Moreover, for the reasons outlined in Samsung's response, G+'s Motion for Summary Judgment should be denied. *See* Dkt. No. 243

[266] Samsung: In addition to the general objection to this entire instruction, Samsung further objects to the "at least one act" of bad faith as used throughout this instruction as legally incorrect. G+'s own French legal expert stated that determining whether a party has acted in good faith is determined based on the totality of the circumstances. *See* Borghetti Op. Rpt. at ¶ 46 ("As is apparent from these examples [from French legal precedent], good faith refers not so much to a predetermined behavior as to the spirit in which the parties must act during the ***whole course of their relationship***. As some authors have aptly put it: 'Contractual good faith is not a temporary state of mind or a circumstantial attitude: it must be a way of life, a continuous behavior, guiding the actions of all contracting parties, from the beginning of their relationship until its completion' (emphasis added).); Borghetti Tr. at 106:7-10 (testifying that under French law, a court would "look at all the aspects of negotiations and the behavior of all parties" to assess breach of the duty to negotiate in good faith); *see also id.* at 100:5-101:2, 105:3-106:17 (more context showing the Professor explaining that the entire negotiation must be evaluated).

patents, in which they agreed to be prepared to grant irrevocable licenses on fair, reasonable, and non-discriminatory, or FRAND, terms and conditions.

Now, although Samsung is not a party to Plaintiff's contract with ETSI, Samsung may be understood as a third-party beneficiary to Plaintiff's FRAND commitment to ETSI. Under French law, which defines Samsung's contractual obligations under Plaintiff's FRAND commitment, Samsung was required to negotiate in good faith with Plaintiff to obtain the benefit of this FRAND commitment.

Under French law, which as I mentioned earlier defines the parties' obligations, you may consider various types of evidence to determine whether or not a party acted in good faith during negotiations. For example, unreasonably delaying negotiations, voluntarily maintaining the other party in prolonged uncertainty, continuing to negotiate when the party has no intention of voluntarily entering into a contract, and making affirmative misrepresentations during negotiations are examples of actions that support a finding that a party failed to negotiate in good faith.

If you find that Samsung breached its duty of good faith during pre-suit negotiations, then G+ had the right to discharge its obligation to license the asserted patents under FRAND terms.]²⁶⁷

[[Samsung contends it did not breach its obligation to negotiate in good faith. Samsung further contends that G+ has not discharged its duty to negotiate a license on FRAND terms.

---

²⁶⁷ G+: G+ does not believe either party should be raising issues related to breach of FRAND with the jury, as explained in G+'s motion for summary judgment on this issue. However, if Samsung is permitted to present such a claim, G+ pled and is entitled to present its breach claim. Samsung did not move for summary judgment of that claim, and has no basis for attempting to exclude an instruction to the jury on that basis. If G+'s motion for summary judgment is granted, all Samsung instructions related to breach should be removed from the instructions. *Optis Wireless Tech., LLC, et al., v. Huawei Techs. Co. Ltd.*, et al., No. 2:17-cv-123-JRG-RSP, Dkt. 310 (E.D. Tex. Aug. 24, 2018).

Samsung: Samsung reiterates its objection to this entire instruction. It is one-sided and improper for all of the reasons explained above.

Samsung is a third-party beneficiary to G+'s FRAND commitment to ETSI and Samsung can enforce that obligation. Samsung contends that G+ has breached its duty to be prepared to grant irrevocable licenses on FRAND terms. You must decide whether Samsung has proven by a preponderance of the evidence that G+ breached a contractual obligations and, if so, what money Samsung is owed. Whether or not a license offer is FRAND will depend on the totality of the particular facts and circumstances existing during the negotiations and leading up to the license. There is no fixed or required methodology for setting or calculating the terms of a FRAND license other than when all aspects have been considered, it is fair, reasonable, and non-discriminatory.

G+ denies that it breached any contractual obligations. G+ contends that it satisfied any obligations under FRAND by both negotiating in good faith and making FRAND licensing offers to Samsung. If you find that G+ either negotiated in good faith towards a FRAND license or that G+ made a FRAND offer to Samsung, then G+ satisfied its contractual obligations under FRAND. Either one is sufficient.]][268]

## [NEGOTIATION CONDUCT[269]

---

[268] G+: This instruction on Samsung's breach of FRAND claim is conditional and should only be given if the Court denies G+'s motion for summary judgment regarding Samsung's breach of FRAND claim. *See, e.g., HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 6:18-CV-00243-JRG, 2019 WL 126980, at *1.

[269] G+: G+ objects to this instruction in its entirety; G+'s instruction is more accurate and should be given. Samsung's breach claim fails as a matter of law, and should not be presented to the jury. Further, Samsung's instruction is legally incorrect as it fails to properly explain the ways in which G+ can satisfy its FRAND obligations. *HTC Corp. v. Telefonaktiebolaget LM Ericson*, 407 F. Supp. 3d 631, 636-37 (E.D. Tex. 2019), aff'd, 12 F.4th 476(5th Cir. 2021) ("[A]s a matter of French law, to satisfy the FRAND obligation, a SEP-owner must either (1) offer a FRAND license, or (2) negotiate in good faith towards a FRAND license."). For the reasons explained in G+'s objections above, the instructions in the *TQ Delta* case are not suitable in this case at least because there were no allegations in that case that the implementer breached its duty of good faith. Samsung's instruction omits that the jury may find G+ discharged its contractual obligation.

Samsung: Authority: *TQ Delta, LLC v.CommScope Holding Co.*, No. 2:21-cv-000310-JRG, Final Jury Instructions, Dkt. No. 534, Vol. 1 Tr. 21:14-73:13 (E.D. Tex. Mar. 30, 2023). Samsung: G+ has no authority for the allegation that "the jury need not consider Samsung's breach of FRAND claim" if the jury determined that Samsung breached its duty of good faith. These are independent causes of action. Both parties can be in breach, and the jury must be instructed and decide both causes of action together. G+'s one-sided approach to FRAND is entirely improper and unsupported under the law. *See also HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 6:18-CV-00243-JRG aff'd, 12 F.4th 476 (5th Cir. 2021).

[In this case, Samsung contends ] / [Your job in this case is to decide whether or not] G+ has breached [a][its] contractual obligations[.  You must decide whether Samsung has proven by a preponderance of the evidence that G+ breached a contractual obligations], and, if so, what money Samsung is owed.  [You must] / [Your job is] also to decide whether or not Samsung has breached its obligations[ and whether G+ discharged its contractual obligations to Samsung].  Now, before you can decide these issues, you'll need to understand the terms of the contract at issue in this case.

Samsung contends that G+ breached its contract with ETSI by G+ not offering licenses for patents declared essential on FRAND terms and conditions and by G+ not negotiating in good faith.  A contract is a legally enforceable promise or set of promises.  Here, the contract at issue is the obligation imposed on G+ because of ZTE's declarations to ETSI.  In the declarations, which cover the asserted patents, ZTE agreed to be prepared to grant irrevocable licenses on FRAND terms.  [If you find that G+ either negotiated in good faith towards a FRAND license or that G+ made a FRAND offer to Samsung, then G+ satisfied its contractual obligations under FRAND.  Either one is sufficient.][270] Whether or not a license offer is FRAND will depend on the totality of the particular facts and circumstances existing during the negotiations and leading up to the license.  There is no fixed or required methodology for setting or calculating the terms of a FRAND license other than when all aspects have been considered, it is fair, reasonable, and non-discriminatory.

---

[270] G+: Samsung's suggestion that "Samsung has a valid breach of contract action against G+ regardless of whether G+ made a FRAND offer" is contrary to the law. *See, e.g., HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 6:18-CV-00243-JRG, 2019 WL 126980, at *1.

Samsung: This instruction is unnecessary because it is already covered by the first sentence.  Also, the use of "or" is legally incorrect.  The duty to negotiate in good faith always applies under French law.  Both French professors have agreed to this point as explained above.  *See* n.22 and n.32.  Therefore, Samsung has a valid breach of contract action against G+ regardless of whether G+ made a FRAND offer, and so, this instruction is prejudicial and likely to confuse the jury.

When two individuals or entities enter into a contract that is intended to benefit a third party, the third party has standing to enforce the terms of the contract in the event that it is breached. So although Samsung is not a party to G+'s contract with ETSI, Samsung is a third-party beneficiary to G+'s FRAND commitment to ETSI and Samsung can enforce that obligation.

G+ denies that it breached any contractual obligations. [G+ contends that it satisfied any obligations under FRAND by both negotiating in good faith and making FRAND licensing offers to Samsung.] Samsung bears the burden on proving its breach of contract claim against G+ by a preponderance of the evidence.

G+ also contends that Samsung breached an obligation to negotiate a license to its standard essential patents in good faith.  Samsung, as a standards implementer, has a duty to negotiate a patent license to standard essential patents in good faith.  [If you find that Samsung breached its duty to negotiate in good faith, then G+ had the right to discharge its obligation to license the asserted patents under FRAND terms.]

Samsung denies that it breached any contractual obligations.  G+ bears the burden on proving its breach of contract claim against Defendants Samsung by a preponderance of the evidence.]

## DATE OF COMMENCEMENT OF PATENT DAMAGES[271]

In calculating patent damages, you must determine when the damages began.  [Damages commence on the date that Samsung has both infringed and G+ notified Samsung of the alleged infringement of the asserted patents.[272]]

---

[271] Samsung: Authority: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 5.10.

[272] G+: G+ has moved to strike Samsung's alleged notice under *Arctic Cat*, as explained in its motion to strike.  *See, e.g., Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 876 F.3d 1350, 1365 (Fed. Cir. 2017 ("an alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of

With regard to the '130 patent, [Plaintiff can recover damages for Samsung's infringement dating back to the issuance of the patent][the damages period begins] [273] on August 4, 2020.

With regard to the '443 patent, [Plaintiff can recover damages for Samsung's infringement dating back to the issuance of the patent][the damages period begins] [274] on March 17, 2020.

[[ With regard to the '776 and '881 patents, [Plaintiff can recover damages for Samsung's infringement dating back to the first date of sale of Samsung's Accused Products][the damages period begins] in April 2019.]][275]

---

production to articulate the products it believes are unmarked 'patented articles' subject to § 287."); *Arigna Tech. Ltd. v. Nissan Motor Co., Ltd.*, No. 222CV00126JRGRSP, 2022 WL 18046695, at *3 (E.D. Tex. Sept. 20, 2022) (FRCP 26 "requires 'immediate' supplementation if a party knows a disclosure is incomplete or incorrect"); *Solas Oled Ltd. v. Samsung Elecs. Co.*, No. 2:21-CV-105-JRG-RSP, 2022 WL 1912873, at *2 (E.D. Tex. May 30, 2022) (holding Samsung failed to satisfy its burden of production under *Arctic Cat* where allegedly unmarked products were not identified until the end of fact discovery).

Samsung: <u>Authority</u>: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 5.10; *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 950 F.3d 860, 864 (Fed. Cir. 2020) ("*Arctic Cat II*") ("Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device.") (quoting *Amsted Indus. Inc. v. Buckeye Steel Castings Co*., 24 F.3d 178, 187 (Fed. Cir. 1994)). This instruction is a simple way to state when the damages period begins.

[273] G+: G+'s instruction explains to the jury the reason for the different starting damages dates. These dates do not align with the grant dates of the patents. To alleviate any potential confusion, a simple statement explains why the dates for each patent are what they are.

Samsung: <u>Authority</u>: *Netlist, Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-00463-JRG, Final Jury Instructions, Dkt. No. 478 at 1320:7-16 (E.D. Tex. Apr. 21, 2023). Samsung: This instruction is a simple, clear, unbiased way to state when the damages period begins. It tracks what was done in *Netlist v. Samsung*. G+'s language is unnecessary, unsupported, and prejudicial because it tries to inject that Samsung infringes.

[274] Samsung: <u>Authority</u>: *Netlist, Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-00463-JRG, Final Jury Instructions, Dkt. No. 478 at 1320:7-16 (E.D. Tex. Apr. 21, 2023). Samsung: This instruction is a simple, clear, unbiased way to state when the damages period begins. It tracks what was done in *Netlist v. Samsung*. G+'s language is unnecessary, unsupported, and prejudicial because it tries to inject that Samsung infringes.

[275] G+: As explained in G+'s motion to strike Samsung's Arctic Cat letter, Samsung has waived this issue and G+'s instruction should be provided.

Samsung: ███████████████████████████████████████████████████████████████. Samsung contends G+ has shown no such marking. Therefore, the marking instruction below must be provided so that the jury can resolve the factual dispute between the parties about when the damages period begins. G+'s proposed instruction that Plaintiff can recover damages for Samsung's infringement dating to April 2019 is incorrect. To the extent this instruction is nonetheless provided, Samsung again reiterates that the more neutral "the damages period begins" language is more appropriate.

[[The parties dispute the date that the period of damages commence for the '776 and '881 patents.

If you find that a product has been sold or licensed, by a third party, that includes the claimed invention, you must determine whether that product has been "marked" with the patent number. "Marking" is placing either the word "patent" or the abbreviation "pat." with the patent's number on substantially all of the products that include the patented invention. The marking requirement may also be satisfied by including with the product an internet address to a posting that associates the patented articles with the number of the applicable patents.

G+ has the burden of establishing that it substantially complied with the marking requirement. This means G+ must show that substantially all of the products made, offered for sale, or sold under the '881 and '776 patents have been marked and that reasonable efforts were made to ensure that licensees who made, offered for sale, or sold products under the '881 and '776 patents marked the products.[276]

If G+, ZTE, and any licensees have not marked practicing products with the patent number, or if any licensees were not required to mark practicing products, you must determine the date that Samsung received actual notice of the '881 and '776 patents and of the specific product alleged to infringe. Actual notice means that G+ communicated to Samsung a specific charge of infringement of the '881 and '776 patents by a specific accused product or device. The filing of the complaint in this case qualified as actual notice, so the damages period begins no later than the

---

[276] G+: As explained in G+'s motion to strike Samsung's Arctic Cat letter, Samsung has waived this issue and this instruction should be omitted.

Samsung: <u>Authority</u>: Packet Intelligence LLC v. NetScout Sys., Inc., 965 F. 3d 1299, 1312 (Fed. Cir. 2020) ("Packet Intelligence has the burden of establishing that it substantially complied with the marking requirement. This means Packet Intelligence must show that it made reasonable efforts to ensure that its licensees who made, offered for sale, or sold products under the '789 patent marked the products."); *see also Arctic Cat Inc. v. Bombardier Rec. Prods.*, 950 F.3d 860, 864 (Fed. Cir. 2020) ("*Arctic Cat II*").

date the complaint was filed. However, G+ claims to have provided actual notice prior to filing of the complaint, on September 8, 2021, when it sent a letter to Samsung. G+ has the burden of establishing that it is more probable than not Samsung received notice of infringement on September 8, 2021.]][277]

[G+ does not need to establish that they gave Samsung actual notice of infringement.][278]

[If you find that products sold under the '881 and '776 patents have been properly marked with the patent number, then the marking and notice requirements do not affect the damages period.[279]]

Now, with those instructions, we're ready to hear closing arguments from the attorneys in this case.

## DELIBERATIONS

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect

---

[277] G+: As explained in G+'s motion to strike Samsung's Arctic Cat letter, Samsung has waived this issue and this instruction should be omitted.

Samsung: Authority: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 5.10. Samsung: This language is taken from the FCBA model instruction. G+ must comply with the marking requirement because these patents were licensed to a third party. Thus, G+ must establish at a minimum that it undertook reasonable efforts to ensure that licensees who made, offered for sale, or sold products under the '881 and '776 patents marked the products. Without such a showing, the damages period commences when actual notice was given to Samsung.

[278] G+: As explained in G+'s motion to strike Samsung's Arctic Cat letter, Samsung has waived this issue and this instruction should be omitted.

Samsung: This instruction is incorrect. G+ has to establish it gave Samsung actual notice of infringement for the '776 and '881 patents because a third party licensee did not mark products alleged to practice these patents. *See Packet Intelligence LLC.*, 965 F. 3d at 1312; *Arctic Cat II*, 950 F.3d at 864; Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 5.10.

[279] G+: As explained in G+'s motion to strike Samsung's Arctic Cat letter, Samsung has waived this issue and this instruction should be omitted.

Samsung: Authority: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 5.10. Samsung: This language is taken from the FCBA model instruction. If G+ establishes the marking and notice requirements were met, the damages period is not affected.

that you will carefully and partially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.  You have heard all of the evidence in this case.  You have now heard the argument of counsel.  The Court has now given you the charge in this case.  In just a few moments you're going to retire to the jury room, select one of your members to act as foreperson and begin performing the function for which you have been chosen and for which you have been impaneled in accordance with the oath that you took as jurors.

You will remember at the beginning of this trial the Court admonished you not to discuss this case with each other until it was submitted to you.

It is now time for you to begin your discussions, and you certainly may express an opinion from the evidence that you have heard and use any reasonable means to persuade other members of the jury to your convictions and to your honest opinion.  You are to reach a verdict which speaks the truth and which does justice to all parties without favor, bias or prejudice in any particular, either for or against any party to this lawsuit.

In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous, but do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinions of your fellow jurors or for the mere purpose of returning a verdict.

Answer the questions in the verdict form based on the facts as you find them to be, following the instructions that the Court has given you on the law. Do not decide who you think should win this case and then answer the questions accordingly.  Again, I remind you, your answers and your verdict in this case must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stages in life.

[A patent owner is entitled to protect its patent rights under the laws of the United States. This includes bringing a suit in a United States District Court for money damages for infringement.][280]

The law recognizes no distinction between types of parties. All corporations, all partnerships, all other organizations stand equal before the law, regardless of their size, regardless of who owns them, and they are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you'll each have a copy of these written jury instructions to take with you. If you desire, during your deliberations, to review any of the exhibits which the Court has admitted into evidence during the trial, you should advise me by written note delivered to the Court Security Officer. He will bring me your note, and then I will send you that exhibit or those exhibits.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise

---

[280] G+: There is nothing unfair about this instruction, it simply recites G+'s right to bring this suit. *Optis Wireless Technology, LLC et al v. Huawei Technologies Co., Ltd. et al.*, 2:17-cv-00123-JRG, Final Jury Instructions (E.D. Tex. Aug. 25, 2018).

Samsung: G+'s proposed instruction is argumentative, misleading to the jury, and unfairly suggests an outcome favorable to G+. G+ also has not identified any support.

directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you've taken over the course of the trial are aids to your memory only. If your memory should differ from your notes, then you should rely on your memory and not your notes.  The notes are not evidence.  Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time during your deliberations, you should give a written message or a question to the Court Security Officer who will bring it to me. I'll then respond as promptly as possible, either in writing or by having you brought back into the courtroom where I can address you orally.  I will always first disclose to the attorneys in the case your question and my response before I answer your question.

After you have reached your verdict and I have discharged you from your duty as jurors, you need to understand that you are not required to talk with anyone about your service in this case.  By the same token, after I have discharged you from your duty as jurors, you are completely free to discuss your service as jurors in this case with anyone that you choose to.  The choice is yours.

You should understand the practice in this Court is that after you are discharged, if you wish to talk about your service as jurors with any of the attorneys in the case, it's up to you to initiate a conversation with them. They are not permitted to initiate a conversation with you.

All right. I will now hand eight copies of these final jury instructions and one clean copy of the verdict form to the Court Security Officer to deliver to the jury in the jury room.

Ladies and Gentlemen of the Jury, you may now retire to the jury room to deliberate. We await your verdict.