IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| G+ COMMUNICATIONS, LLC, § <br> §<br>  *Plaintiff*, § <br> §<br> v. § <br> §<br> SAMSUNG ELECTRONICS CO. LTD., and § <br> SAMSUNG ELECTRONICS AMERICA, § <br> INC., § <br> §<br>  *Defendants*. § | CIVIL ACTION NO. 2:22-CV-00078-JRG |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Before the Court is Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.'s (collectively, "Samsung") "Motion Under Rule 44.1 for Determination of French Law" (the "Motion"). (Dkt. No. 545.) In the Motion, Samsung requests that the Court make determinations of French law in two respects. (*See id.* at 1.) Plaintiff G+ Communications, LLC ("G+") opposes the Motion. (*See* Dkt. No. 552.)

### II. BACKGROUND

The backdrop against which this particular dispute arises warrants review. Cellular networks and mobile devices implement standards that allow devices made by different manufacturers to connect with one another in a network environment. OSENGO, KRISTEN, PATENTS AND STANDARDS: PRACTICE, POLICY, AND ENFORCEMENT 1–2 (Michael L. Drapkin et al. eds., *Bloomberg Law* Book Division, 2018). These standards are promulgated by standards setting organizations ("SSOs") that include the European Telecommunications Standards Institute ("ETSI"), and the 3rd Generation Partnership Project ("3GPP"). (*Id.* at 2–41.)

Working together, ETSI and 3GPP develop and maintain the standard for 3GPP 5G mobile systems. (Dkt. No. 49 at ¶ 61.)

A patent embodying technology that is "essential" to implement a standard is called a standard essential patent ("SEP"). *See ETSI Rules of Procedure*, Annex 6, Clause 15. A patent is "essential" if it is not technically possible to practice the standard without infringing the patent. *Id.* SSOs have intellectual property rights ("IPR") policies that "define contractual terms for disclosure and licensing of patents that are essential for standard implementation." TAFFET, RICHART & HARRIS, PHIL, PATENTS AND STANDARDS: PRACTICE, POLICY, AND ENFORCEMENT at 4-2 (Michael L. Drapkin et al. eds., *Bloomberg Law* Book Division, 2018). The patents asserted in this lawsuit concern 5G technology and were declared essential to the 5G standard developed by ETSI. (*See* Dkt. No. 559-1 at 9, 45.)

### III.  LEGAL STANDARD

"Federal Rule of Civil Procedure 44.1 allows a party to move for a determination of foreign law." *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 6:18-CV-00243-JRG, 2019 WL 126980 at *1 (E.D. Tex. Jan. 7, 2019). In ruling on such a motion, "the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." FED. R. CIV. P. 44.1. The court's determination "must be treated as a ruling on a question of law" and not fact. *Id.*

### IV.  ANALYSIS

#### A.  Litigation Costs are Compensable Losses Under French Law

Samsung first requests that the Court make the following determination of French law:

> French law recognizes that a litigant is entitled to damages covering all its losses caused by the SEP holder's bad faith, including litigation costs for defending oneself against a suit brought by the other party in violation of its duty to act in good faith.

2

(Dkt. No. 545 at 1.)

For support, Samsung primarily relies on various statements made by G+'s French law expert, Professor Borghetti. First, Samsung notes that Professor Borghetti expressly stated that litigation costs are recoverable as damages under French law. (Dkt. No. 545 at 5; Dkt. No. 545-1 at ¶ 3 (Prof. Borghetti: "I submit this declaration to answer the following question: are litigation costs, such as expert's fees and/or attorney's fees, recoverable as damages for breach of contract under French law? The answer is yes."); Dkt. No. 545-1 at ¶ 8 (Prof. Borghetti: "the would-be licensee is [] entitled under French law to damages covering all its losses caused by the SEP holder's bad faith, except for the loss of the benefits which were expected from the license contract.").) Second, Samsung points to a statement from Professor Borghetti stating that litigation costs are considered part of "all" losses recoverable as a matter of French law. (Dkt. No. 545 at 5; Dkt. No. 544-1 at ¶ 9 (Prof. Borghetti: "these compensable losses include the costs incurred while negotiating with a partner acting in bad faith. They also include the costs of the defending oneself against a suit brought by the other party in violation of its duty to act in good faith.").) Finally, Samsung notes that its own expert, Professor Molfessis, agrees with Professor Borghetti on these points. (*See* Dkt. No. 545 at 6–7.)

In response, G+ argues that Samsung is simply seeking to confuse the jury into believing that G+'s suits were improper or violated ETSI rules. (Dkt. No. 552 at 3.) G+ further contends that Samsung's disclosures do not support its proposed instruction. (*Id.* at 4.) G+ also specifically complains that neither party's French law expert opines that G+'s filing of any suit violated the

3

duty of good faith under French law, much less that litigation costs are recoverable under French law for any issue in this case. (*Id.*)[1]

In the Court's view, G+ does not actually contest Samsung's proposed statement of French law but instead argues tangential points. G+ contends that "Samsung transparently seeks to confuse the jury," noting that the Court has already ruled that "Samsung shall not suggest or imply that the act of filing cases in international courts and/or the act of seeking an injunction is improper or violative of ETSI Rules." (Dkt. No. 552 at 3 (citing Dkt. No. 548 at 3).) However, the Court has also made clear it that

> the conduct and the decision to go and file the lawsuit is not something the jury can't take into account in determining within the totality of the circumstances whether on balance the Plaintiff has or has not breached its FRAND obligation or failed or not failed to act in good faith and fair dealing.

(*See* Dkt. No. 518 at 55:13–20.) In any event, G+'s arguments miss the mark because they have nothing to do with the actual determination of French law proposed by Samsung. G+ also argues that French law "permits any person with standing to sue for infringement, including an SEP holder." (Dkt. No. 552 at 3–4.) This too is irrelevant to the Motion before the Court. G+ next argues that "Samsung's proposed instruction is wholly unsupported by Samsung's disclosures." (*Id.* at 4.) This fails because Samsung largely relies on statements from G+'s own expert, Professor Molfessis. Ultimately and on the merits, Samsung's proposed statement of French law is essentially unrebutted by G+.

However, Samsung's proposal is one-sided as it does not consider the possibility of bad faith of a standard-implementer. As discussed more fully below, the duty of good faith is reciprocal. (*See, e.g.*, Dkt. No. 552-3 at ¶ 55 (Professor Molfessis: "under French law the parties to a contract

---

[1] Neither Samsung's reply nor G+'s sur-reply meaningfully contribute to the development of these arguments. (See Dkt. No. 556 at 1–3; Dkt. No. 558 at 1–2.) *See also* L.R. CV-7(f) ("The court need not wait for the reply or the sur-reply before ruling on the motion.").

arising out of a *stipulation pour autrui* [such as the contract here] both must behave in good faith.") Professor Borghetti discusses the breadth of French damages, including how "[t]he payment of litigation costs, such as experts' fees and/or attorneys' fees, is thus, as a matter of principle, a compensable loss under the general rules of civil liability." (Dkt. No. 545-1 at ¶¶ 6–13.) This duty is reciprocal, and damages for breach of the duty are broad no matter who breaches the duty—be it the SEP holder or the standard-implementer.

For the reasons and supporting sources noted herein, the Court makes the following determination of French law pursuant to FRCP 44.1:

> In a negotiation for a license to a patent where the patent has been contributed to an adopted standard (which patent is known as a standard essential patent), if either negotiating party (being either the patent holder or the implementer of the adopted standard) fails to negotiate in good faith and thereby prevents a license from being granted on fair reasonable and non-discriminatory terms, then the party who fails to act in good faith is liable to the other party for any reasonable damages which arise from such breach, including but not limited to attorney's fees and the cost of litigation.

### B.  The FRAND Obligation is Irrevocable But May Be Suspended

Second, Samsung requests that the Court make the following determination of French law:

> French law does not allow a SEP declarant to unilaterally discharge (and thus avoid) its irrevocable FRAND obligations, including its duty to negotiate in good faith and its obligation to license declared patents on FRAND terms.

(Dkt. No. 545 at 1.)

The thrust of Samsung's proposal is that the commitment of a patent to ETSI is irrevocable. (Dkt. No. 545 at 7.) As support, Samsung first relies on testimony from G+'s expert, Professor Borghetti, stating that a SEP holder's commitment to be prepared to grant licenses on FRAND terms cannot be revoked unilaterally.[2] (*Id.*) Second, Samsung notes that the written instrument

---

[2] Professor Borghetti testified as follows:

containing the FRAND commitment expressly states that the commitment is "irrevocable."[3] (*Id.*) Samsung argues that this language is clear and unambiguous and thus French law forbids interpreting it, as G+'s expert, Professor Borghetti, confirms. (*Id.* at 7–8.) Finally, Samsung argues that G+'s expert does not cite any court ruling that an ETSI declarant can discharge its irrevocable commitment. (*Id.* at 9.)

In response, G+ argues that the Samsung's proposal to instruct the jury that French law never allows a declarant to be relieved of FRAND obligations is the "exact opposite of French law." (Dkt. No. 552 at 5.) G+'s argument proceeds as follows. First, under French law, when there are reciprocal obligations, one side's failure to perform excuses the other's. (*Id. See also* Dkt. No. 552-1 at 49:3–7 (Samsung's expert, Professor Molfessis, testifying that "[w]hen in presence of reciprocal obligations a party doesn't perform its obligation, it's possible for the other party to ask for the termination of the contract ***or to suspend its own obligation***." (emphasis supplied)).) Second, Samsung and G+ each have reciprocal obligations to conduct negotiations for a license to a FRAND-encumbered patent in good faith.[4] (Dkt. No. 552 at 5.) G+ argues that failure by one

---

> Q. And so the owners of essential IPRs have to give an irrevocable commitment to be prepared to grant licenses on FRAND terms. Right?
> A. Yes, that's what they are asked to do, yes.
> Q. What does irrevocable mean?
> A. Well, irrevocable means it cannot be revoked, or if you prefer, it cannot be revoked unilaterally.

(Dkt. No. 545-6 at 62:17–63:1 (Prof. Borghetti Testimony).)

[3] Clause 6.1 of the declaration provides:

> When an ESSENTIAL IPR relating to a particular STANDARD or TECHNICAL SPECIFICATION is brought to the attention of ETSI, the Director-General of ETSI shall immediately request the owner to give within three months an irrevocable undertaking in writing that it is prepared to grant irrevocable licenses on fair, reasonable and non-discriminatory ("FRAND") terms and conditions.

(*See* Dkt. No. 545 at 7.)

[4] G+'s expert, Professor Borghetti, opined:

> In the specific context of ETSI, good faith does not only require that the parties abide by the spirit of the contract so to say passively, by not trying to circumvent it. Good faith also requires that the

party to negotiate in good faith suspends the obligation of the other to do the same. (*Id.* at 6 (citing Dkt. No. 552-2 at ¶ 49 (Prof. Borghetti)).) Finally, G+ notes that French law provides a mechanism for an SEP holder to permanently discharge its obligation.[5] Accordingly, G+ contends that the appropriate recitation of French law is:

> Under French law, the holder of a standard essential patent and the standard implementer both have an obligation to behave in good faith during negotiations. If either does not do so, obstructing the negotiations from proceeding, that suspends the other's obligations. If the obstruction continues, the other may discharge any remaining obligations to continue to negotiate in good faith.

(Dkt. No. 552 at 8.)

Samsung appears to argue in reply that suspension of an obligation is tantamount to revocation, which is forbidden. (*See* Dkt. No. 556 at 3–4.) Specifically, Samsung contends that "whether a declarant can 'suspend' its FRAND obligations as now argued by G[+] is beside the

---

> beneficiary of an ETSI FRAND Licensing Declaration, who intends to take advantage of it and to conclude a license on FRAND terms, cooperates with the patent owner to find an agreement.

(Dkt. No. 552-2 at ¶ 47.) Samsung's expert, Professor Molfessis opines:

> Prof. Borghetti asserts in his Initial Expert Report that while "strictly speaking, the duty of the implementer to negotiate in good faith with the patent owner is not an obligation imposed upon the implementer," it is "an inevitable consequence of the choice made by the implementer to take advantage of the Declaration." [] I do not challenge the opinion that under French law the parties to a contract arising out of a *stipulation pour autrui* both must behave in good faith all throughout the course of their contractual relationship.

(Dkt. No. 552-3 at ¶ 54.) G+ and Samsung are parties to a contract arising out of a *stipulation pour autrui*. (*See id.* at ¶ 21 ("I am also of the opinion that the ETSI IPR Declaration gives rise to a *stipulation pour autrui*.").)

[5] Professor Borghetti, G+'s expert, opines:

> [T]he patent owner cannot be forced to remain in a state of prolonged uncertainty due to the implementer's bad faith or passivity, and it must be allowed to discharge the FRAND obligation….The patent owner can do so by giving formal notice to the implementer that it has impeded the formation of the contract through its bad faith dealing, and that it should accept or permit performance. Article 1345-2 of the new code civil provides: "Where the obligation concerns some other subject-matter [*i.e.* where the obligation concerns neither the payment of a sum nor the delivery of a thing], the debtor is discharged if the obstruction has not come to an end within two months of the notice."

(Dkt. No. 552-2 at ¶¶ 50–51.)

7

point" because G+ cannot point to any specific authority that "a declarant can 'revoke' an irrevocable commitment." (*Id.*) Instead, Samsung urges that suspension is impermissible because a "patent holder is **bound** to license the SEPs on FRAND terms" under French law. (Dkt. No. 556 at 4 (emphasis in original) (citing Dkt. No. 552-3 at ¶¶ 35–53 (Prof. Molfessis, Samsung's Expert)).) Samsung also argues that Professor Molfessis's testimony concerning the reciprocity of obligations is inapplicable in this context because, as he explained, "[the] FRAND licensing process fundamentally differs from typical bilateral contract negotiations, as it primarily relies on the SEP holder to honor their commitment and effectively finalizes the license under FRAND terms." (*Id.* (citing Dkt. No. 552-3 at ¶ 37).)

In sur-reply, G+ urges that Samsung cites no law to support its argument that the "general bilateral contract principle" does not apply in the FRAND negotiation context. (Dkt. No. 558 at 2.) Otherwise, G+ largely re-asserts the same arguments made in its response. (*See* Dkt. No. 558 at 2–4.)

The Court is persuaded that the obligation to negotiate toward a FRAND license in good faith may be temporarily suspended.[6] First, G+ and Samsung are subject to reciprocal obligations of good faith during negotiations for a license to a FRAND-encumbered patent. The parties' experts agree on this point. (*See* Dkt. No. 552-2 at ¶¶ 35, 38 (Prof. Borghetti, G+'s Expert); Dkt. No. 552-3 at ¶¶ 21, 54 (Prof. Molfessis, Samsung's Expert).) Next, one party's failure to fulfil its obligation to negotiate in good faith suspends the other's. (Dkt. No. 552-2 at ¶ 49 (Professor Borghetti, G+'s expert: "In practice, bad faith on the part of the potential licensee therefore has the effect of suspending the patent owner's obligation to negotiate in good faith towards a license on

---

[6] To be clear, suspension of the duty to negotiate in good faith is tantamount to suspension of any duty to negotiate altogether. The Court is not aware of any authority, French or otherwise, requiring a party to continue to negotiate with a counterparty who has descended into bad faith in the negotiation process.

8

FRAND terms. One cannot negotiate alone, and if the potential licensee does not show good faith, the patent owner is in a situation where it is prevented from performing.").) Indeed, Samsung's own expert, Professor Molfessis, testified that "[w]hen in presence of reciprocal obligations a party doesn't perform its obligation, it's possible for the other party to ask for the termination of the contract *or to suspend its own obligation*." (Dkt. No. 552-1 at 49:3–7 (emphasis supplied).)

Samsung contends that this statement from its own expert should not be credited because it "relates to a general bilateral contract law principle and is not in the FRAND context where the declarant affirmatively agreed the FRAND obligation is 'irrevocable.'" (Dkt. No. 556 at 4.) There are two problems with this argument. First, as G+ points out, it is not supported by any citation to French law. (*See* Dkt. No. 558 at 3.) Rather, it is just a broad citation to nineteen paragraphs of a report signed by Professor Molfessis where he opines that holders of SEPs cannot avoid their commitment because it is "irrevocable" (*see* Dkt. No. 556 at 4 (citing Dkt. No. 552-3 at ¶¶ 35–53); Dkt. No. 552-3 at ¶¶ 35–53). This dovetails into the second problem with Samsung's argument.

Second, Samsung's argument depends on an untenable application of the word "irrevocable." The main thrust of many of Samsung's arguments on this point is that because an obligation is "irrevocable" under French law it cannot be suspended or discharged.[7] (*See* Dkt. No. 556 at 4.) The Court disagrees.

SEP holders maintain an obligation to license its SEPs on FRAND terms and to negotiate toward such licenses in good faith. These obligations are irrevocable in the sense that SEP holders cannot withdraw them or take them back. However, their irrevocable nature does not mean they

---

[7] Elsewhere, Samsung argues that the word "irrevocable" is "clear and unambiguous," so it is not subject to interpretation under French law. (*See* Dkt. No. 545 at 8 (citing Dkt. No. 545-2 at ¶ 17 (Article 1192 of the French *code civil*: "Clear and unambiguous terms are not subject to interpretation as doing so risks their distortion.")).) There is tension between this argument and Samsung's main argument. Samsung seeks to have the Court clearly declare the boundaries of the word "irrevocable" while simultaneously maintaining that French law forbids the Court from "interpret[ing]" the word. Yet, demarcating the boundaries of a word is an act of interpreting that word.

9


are static. Samsung does not cite any French authority showing that irrevocable commitments cannot be suspended.[8] Samsung's offerings in this regard do not persuade the Court.

It is both practical and logical that the obligations of a party acting in good faith be suspended when a counterparty to a negotiation for a FRAND license is acting in bad faith. If the counterparty is acting in bad faith, it is impossible for negotiations for a "fair" and "reasonable" and "non-discriminatory" contract to proceed.[9] (Dkt. No. 552-2 at ¶ 49.) To hold otherwise would strain logic and reason. However, when the counterparty ceases acting in bad faith, the barrier to consummation of the license on FRAND terms is removed and the negotiations can and must resume (in good faith). Further, holding that a party's duty to negotiate in good faith is suspended while the counterparty is acting in bad faith prevents the party acting in good faith from being taken advantage of by the counterparty. Such a suspension can counter the effects of holding up and holding out. Hold up occurs when SEP owners demand settlement from a standard implementer in a manner that "prompt[s] settlement driven by the timing of the demand rather than its merits." *See* Colleen V. Chien, *Holding Up and Holding Out*, 21 MICH. TELECOMM. & TECH. L. REV. 1, 3 (2014). If such demands are made in bad faith, the SEP owner is not obligated to remain at the negotiating table and may avoid extortion. Hold out occurs when a standard implementer ignores the demands of the SEP owner "because the odds of getting caught are small." *See id.* at 5. If such holdout occurs, the SEP owner is then free to pursue lawful remedies.

---

[8] While the Court has not expressly touched on the obligation to license an SEP on FRAND terms, it follows that if the obligation to negotiate for a license is suspended, the ability to consummate a license is thwarted as well.

[9] As a matter of practice, a contract for a license to an SEP on FRAND terms cannot be reached if one party is acting in bad faith. Bad faith negotiations are fundamentally incompatible with the notion of reaching a contract that is "fair" and "reasonable" and "non-discriminatory." Since, practically speaking, such a contract cannot be consummated in the presence of bad faith, going forward with negotiations to reach that contract is impossible, as a matter of practicality.

For the reasons and supporting sources noted herein, the Court makes the following determination of French law pursuant to FRCP 44.1:

> Where a patent is contributed to an adopted standard established by a standard setting organization, such contribution contractually burdens the patent to thereafter be licensed on fair, reasonable, and non-discriminatory terms. This is known as the FRAND obligation. This obligation is irrevocable, and thereafter runs with the patent. However, if in negotiating for a license to a patent burdened by a FRAND obligation either the patent holder or the implementer of the adopted standard fails to act in good faith and thereby prevents a license from being granted, the other party's obligation to continue negotiations is suspended. This does not remove the burden of the FRAND obligation from the patent, but avoids obliging a party acting in good faith to continue negotiating with a party who fails to do so. If the bad faith actor ceases its bad faith and begins acting in good faith, the good faith negotiations must also resume.

## V.     CONCLUSION

As a matter of law, and pursuant to FRCP 44.1, the Court **DETERMINES** French law to be as follows:

1) In a negotiation for a license to a patent where the patent has been contributed to an adopted standard (which patent is known as a standard essential patent), if either negotiating party (being either the patent holder or the implementer of the adopted standard) fails to negotiate in good faith and thereby prevents a license from being granted on fair reasonable and non-discriminatory terms, then the party who fails to act in good faith is liable to the other party for any reasonable damages which arise from such breach, including but not limited to attorney's fees and the cost of litigation.

2) Where a patent is contributed to an adopted standard established by a standard setting organization, such contribution contractually burdens the patent to thereafter be licensed on fair, reasonable, and non-discriminatory terms. This is known as the FRAND obligation. This obligation is irrevocable, and thereafter runs with the patent. However, if in negotiating for a license to a patent burdened by a FRAND obligation either the patent holder or the implementer of the adopted standard fails to act in good faith and thereby prevents a license from being granted, the other party's obligation to continue negotiations is suspended. This does not remove the burden of the FRAND obligation from the patent, but avoids obliging a party acting in good faith to continue negotiating with a party who fails to do so. If the bad faith actor ceases its bad faith and begins acting in good faith, the good faith negotiations must also resume.

**So ORDERED and SIGNED this 22nd day of January, 2024.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE