**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| G+ COMMUNICATIONS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | Case No. 2:22-cv-00078-JRG |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD.; | § | **JURY TRIAL DEMANDED** |
| SAMSUNG ELECTRONICS AMERICA, | § | |
| INC.; | § | |
| | § | |
| Defendants. | § | |
| | § | |

**PROPOSED JURY INSTRUCTIONS[1]**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**INTRODUCTION**

Ladies and Gentlemen:

You have now heard the evidence in this case, and I will now instruct you on the law that you must apply.

Each of you is going to have your own printed copies of these final jury instructions that I'm giving you now, so there's really no need for you to take notes unless you just particularly want to.

---

[1] Submissions which are agreed to by both G+ and Samsung are not highlighted.  Submissions proposed by G+ that are not agreed to by Samsung are highlighted in green.  Submissions proposed by Samsung that are not agreed to by G+ are highlighted in yellow.  The parties have entered their objections, explanations, citations, and commentary in footnotes only.

Ladies and Gentlemen, as I have said previously, you, the jury, are the sole judges of the facts in this case.  Do not consider any statement that I have made in the course of the trial or make during these instructions as an indication to you that I have any opinion about the facts in this case.

You are about to hear closing arguments from the attorneys.  Statements and arguments of the attorneys are not evidence, and they are not instructions on the law.  They are intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you.  You will take this verdict form with you to the jury room, and when you have reached a unanimous decision or agreement as to the verdict, you will have your foreperson fill in the blanks in the verdict form, date it, and sign it.

Answer each question in the verdict form from the facts as you find them to be.  Do not decide who you think should win the case and then answer the questions to reach that result.  Again, your answers and your verdict must be unanimous.

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all the witnesses, regardless of who may have called them, and you may consider the effect of all the exhibits received and admitted into evidence, regardless of who may have produced or presented them.  Some of the testimony you heard was translated from another language.  In consideration of a witness's testimony, it is not relevant whether his or her testimony was in English or translated from another language into English. You, the jurors, are the sole judges of the credibility of each and every witness and the weight and effect to be given to the evidence in this case.

Now, in deciding the facts in this case, you may have to decide which testimony to believe and which testimony to not believe. You alone are to determine the questions of credibility or

truthfulness of the witnesses, and in weighing the testimony of the witnesses, you may consider the witness's manner and demeanor as reflected on the witness stand.

You may consider any feelings or interest a witness may have in the case and any bias or prejudice about the case that the witness may have, and you may consider the consistency or inconsistency of his or her testimony considered in the light of the circumstances.

Has the witness been contradicted by other evidence?  Has he or she made statements at other times in other places contrary to what he or she said on the witness stand?  You must give the testimony of each witness the amount of credibility and weight that you think it deserves.  You must keep in mind, however, ladies and gentlemen, that a simple mistake does not mean that a witness is not telling the truth.

You must consider whether any misstatement was an intentional falsehood or a simple lapse of memory and what significance could be attached to that testimony.

Now, unless I instruct you otherwise, you may properly determine that the testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all of the evidence you believe that single witness.

As I have told you previously, the attorneys in this case are acting as advocates for their competing parties and their competing claims, and they have a duty to object when they believe evidence is offered that should not be admitted under the rules of the Court.

In that case, when the Court has sustained an objection to a question addressed to a witness, you are to disregard the question entirely, and you may not draw any inferences from its wording or speculate about what the witness would have said if I had permitted them to answer the question. If, on the other hand, the objection was overruled, then you are to treat the answer to the question

and the question itself just as if no objection had been made; that is, like any other question and answer.

At times during the trial, it was necessary for the Court to talk to the lawyers here at the bench or outside of your hearing when you were in the jury room.  This happens because during a trial, there are things that sometimes come up that do not involve the jury.  You should not speculate about what was said during such discussions that took place outside of your presence.

Certain testimony in the case has been presented to you through depositions.  A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial.  If a witness cannot be present to testify in person, then the witness's testimony may be presented under oath in the form of a deposition.  Before the trial, the attorneys representing the parties in this case questioned these deposition witnesses under oath.  At that time, a court reporter was present and recorded their sworn testimony.  Deposition testimony is entitled to the same consideration by you, the jury, as testimony given by a witness in person from the witness stand in open court.  Accordingly, you should judge the credibility and importance of the deposition testimony to the best of your ability, just as if the witness had testified before you from the witness stand.

While you should consider only the evidence in this case, you should understand that you are permitted to draw such reasonable inferences from the testimony and the exhibits as you feel are justified in the light of common experience.

In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and the evidence in this case.  However, you should not base your decisions on any evidence not presented by the parties in open court during the trial of this case, including your own personal experiences with any particular products that are at issue in this case.

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence; that is, the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that you, the jury, find the facts based on the evidence presented, both direct and circumstantial.

The attorneys have used slides and other visual aids, sometimes referred to as "demonstrative exhibits," while presenting or examining a witness. Demonstrative exhibits are a party's picture or model to describe something involved in this trial. If your recollection of the evidence differs from the demonstrative exhibit, rely on your recollection. The demonstrative is not evidence, but the witness's testimony during which they use the demonstrative is evidence.

When knowledge of a technical subject may be helpful to the jury, a person who has special training and experience in that technical field, called an expert witness, is permitted to state his or her opinion on those technical matters to the jury. However, you are not required to accept that opinion. As with any other witness, it is solely up to you to decide who you believe and who you don't believe and whether or not you want to rely on their testimony.

Any patent holder has the right to file a suit in a United States District Court, and the right to a trial by jury, if it believes its patent rights are being infringed. However, you should make no inference from the fact that a suit was filed or brought to trial. You are to consider this suit as a dispute between two parties of equal worth and standing in the community, and render your verdict based solely on the evidence presented in the trial.

In any legal action, facts must be proven by a required amount of evidence known as the burden of proof. The burden of proof in this case is on the Plaintiff, G+, for some issues, and it is

5

on the Defendants, Samsung, for other issues.  There are two burdens of proof that you will apply in this case.  One is the preponderance of the evidence, and the other is clear and convincing evidence.

G+ has the burden of proving patent infringement by a preponderance of the evidence.  G+ also has the burden of proving damages for any patent infringement by a preponderance of the evidence.  A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true.  Sometimes this is talked about as being the greater weight and degree of credible testimony.

Samsung has the burden of proving patent invalidity by clear and convincing evidence. Clear and convincing evidence means evidence that produces in your mind an abiding conviction that the truth of the party's factual contentions are highly probable.  Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard.  If the proof establishes in your mind an abiding conviction in the truth of the matter, then the clear and convincing evidence standard has been met.

Both parties in this case allege that the other failed to act in good faith during their negotiations. Those allegations are subject to a preponderance of the evidence standard. Samsung has the burden of proving by a preponderance of the evidence that G+ breached its contract with ETSI that requires it to negotiate in good faith toward a FRAND license.  With respect to its contention that Samsung failed to act in good faith during the parties' negotiations, G+ also has the burden by a preponderance of the evidence.

Now, these two burdens of proof are not to be confused with the burden of proof known as beyond a reasonable doubt, which is the burden of proof applied in a criminal case, not in a civil

case such as this.  Clear and convincing evidence is a lower standard than beyond a reasonable doubt, but it is higher than a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all the witnesses, regardless of who called them, and all the exhibits received into evidence during the trial, regardless of who may have produced them.

## CONTENTIONS OF THE PARTIES

As I did at the beginning of the case, I'll give you a summary of each side's contentions, and then I'll provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I told you previously, this case concerns three United States Patents asserted by G+. G+'s patents are U.S. Patent Nos. 8,761,776; 10,736,130; and 10,594,443, which you have consistently heard referred to throughout the trial as the '776, '130, and '443 patents.  I will refer to them as the patents-in-suit.  I may also refer to them as the asserted patents.

G+ seeks money damages from Samsung for allegedly infringing the patents-in-suit, by making, using, importing, selling, and/or offering to sell in the United States the smartphones and tablets that operate over the "5G" cellular standard.  Sometimes in these instructions I will refer to these as the Samsung accused products.   G+ contends that the accused products infringe the following claims:

Claims 1 and 2 of the '776 Patent;

Claim 20 of the '130 Patent; and

Claim 10 of the '443 Patent.

These claims are sometimes referred to as the asserted claims.  G+ alleges that the accused products infringe the asserted claims both literally and under the Doctrine of Equivalents.  G+ seeks a reasonable royalty.

Samsung denies that the accused products infringe the asserted claims of the '776, '130, and '443 patents.

Samsung denies it owes G+ any damages in this case.

Samsung further contends that the asserted claims of the '776, '130, and '443 patents are invalid as being subject ineligible, anticipated, as being obvious, or lacking an adequate written description.

Invalidity is a defense to infringement. Invalidity and infringement, however, are separate and distinct issues.  Your job is to decide whether Samsung has infringed any of the asserted claims and whether those claims are invalid. If you decide that any claim has been infringed and is not invalid, you will then need to decide the amount of money damages, if any, to be awarded to G+ to compensate it for that infringement.

The parties agree that the Patents-in-Suit were declared by the patents' prior owner, ZTE, as essential to the 5G standard.  The parties disagree about whether the other party complied with their obligations regarding license negotiations.

Both parties in this case allege that the other failed to act in good faith during their negotiations.  Samsung contends that it negotiated in good faith with G+, and further that G+ breached an obligation to negotiate in good faith towards a FRAND license.  G+ contends that it negotiated in good faith with Samsung towards a FRAND license, and further that Samsung breached Samsung's obligation to negotiate in good faith.

[If you find a breach, any resulting damages must be proven by a preponderance of the evidence.[2]] / [If you decide that G+ breached its contract with ETSI, you will need to decide the amount of money damages, if any, Samsung has proven by a preponderance of the evidence it should be awarded as compensation for that breach.]][3]

## PATENT CLAIMS

Before you can decide many of the issues in this case, you will need to understand the role of the patent claims.

The claims of a patent are numbered sentences at the end of the patent.  The claims define G+'s rights under the law.  The claims are important, because it is the words of the claims themselves that define what the patent covers.  The figures and the text in the rest of the patent provide a description or examples of the invention, and they provide a context for the claims; but it is the claims that define the breadth of the patent's coverage.

---

[4] G+: This instruction is quoted from Federal Circuit binding precedent and has been used in this Court. *See, e.g., Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327–28 (Fed. Cir. 2010); *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1377 (Fed. Cir. 2022); *Optis Wireless Tech., LLC v. Huawei Techs. Co.,* No. 217CV00123JRGRSP, 2018 WL 3375192, at *1 (E.D. Tex. July 11, 2018) ("***There are different ways of showing infringement of a standard essential patent***. One could indirectly prove infringement by ***showing that (1) the standard necessarily meets the elements of the claim, (2) the accused product complies with the standard, and therefore (3) the accused product meets the claim***. This indirect evidence approach may not require significant analysis of the accused product. However, it relies upon a necessary inference tying the product to the standard and the standard to the claim.").

[4] G+: This instruction is quoted from Federal Circuit binding precedent and has been used in this Court. *See, e.g., Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327–28 (Fed. Cir. 2010); *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1377 (Fed. Cir. 2022); *Optis Wireless Tech., LLC v. Huawei Techs. Co.,* No. 217CV00123JRGRSP, 2018 WL 3375192, at *1 (E.D. Tex. July 11, 2018) ("***There are different ways of showing infringement of a standard essential patent***. One could indirectly prove infringement by ***showing that (1) the standard necessarily meets the elements of the claim, (2) the accused product complies with the standard, and therefore (3) the accused product meets the claim***. This indirect evidence approach may not require significant analysis of the accused product. However, it relies upon a necessary inference tying the product to the standard and the standard to the claim.").

Each claim is effectively treated as if it were its own separate patent, and each claim may cover more or may cover less than any other claim. Therefore, what a patent covers collectively or as a whole depends on what each of its claims cover.

## CLAIM CONSTRUCTION

You first need to understand what each claim covers in order to decide whether or not there is infringement of that claim and to decide whether or not the claim is invalid. And the first step is to understand the meaning of the words used in the patent claim. The law says that it is my role to define the terms of the claims, but it is your role to apply my definitions to the issues that you're asked to decide in this case.

Accordingly, as I explained at the beginning of the case, I have determined the meaning of certain claim language. I have provided the definitions of those claim terms in your jury notebooks. I incorporate those definitions by reference into my jury instructions. You must accept my definitions of these words in the claims as being correct, and it is your job to take these definitions that I have supplied and apply them to the issues that you are asked to decide, including the issues of infringement and invalidity.

For claim limitations where I have not construed, that is defined or interpreted, any particular term, you are to use the plain and ordinary meaning of that term as understood by one of ordinary skill in the art, which is to say, in the field of technology of the patent at the time of the alleged invention in light of the specification. The meanings of the words of the patent claims must be the same when deciding both the issues of infringement and validity.

You have been provided with copies of each of the three asserted patents, and these are inside your juror notebooks, and you may use them and refer to them during your deliberations.

## PATENT CLAIMS AND LIMITATIONS

10

I will now explain how a claim defines what it covers.  A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or method satisfies each of these requirements in that sentence, then it is covered by and infringes the claim. There can be several claims in a patent.  A claim may be narrower or broader than another claim by setting forth more or fewer requirements.  The coverage of a patent is assessed on a claim-by claim basis.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."

When a product meets all the requirements of a claim, where it meets all of its limitations or all of its elements, the claim is said to "cover" that product; and that product is said to "fall" within the scope of that claim.  In other words, a claim covers a product where each of the claim elements or limitations is present in that product.

If a product is missing even one limitation or element of a claim, the product is not covered by that claim unless an equivalent of the limitation is present.  If the product is not covered by the claim, the product does not infringe the claim.

## COMPRISING

The claims of the patents-in-suit use the word "comprising."  Comprising means including or containing. When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements.

For example, if you take a claim that covers the invention of a table, if the claim recites a table comprising a tabletop, four legs and glue that holds the legs and the tabletop together, the claim will cover any table that contains those structures, even if the table also contains other structures, such as leaves to go in the tabletop or wheels to go on the ends of the legs.  That is a

simple example using the word "comprising" and what it means.  But, in other words, it can have other features, in addition to those that are covered by the patent.

## INFRINGEMENT

I will now instruct you on infringement in more detail.  If a person makes, uses, sells, or offers for sale within the United States or imports into the United States what is covered by a patent claim without the patent owner's permission, that person is said to infringe the patent.

To determine whether there is infringement, you must compare the asserted patent claims, as I have defined each of them, to the accused products.  You should not compare the accused products with any specific example set out in the patent or with the prior art in reaching your decision on infringement.

[However, if an accused product practices a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product.][4] [Infringement can be proven

---

[4] G+: This instruction is quoted from Federal Circuit binding precedent and has been used in this Court. *See, e.g., Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327–28 (Fed. Cir. 2010); *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1377 (Fed. Cir. 2022); *Optis Wireless Tech., LLC v. Huawei Techs. Co.*, No. 217CV00123JRGRSP, 2018 WL 3375192, at *1 (E.D. Tex. July 11, 2018) ("***There are different ways of showing infringement of a standard essential patent***. One could indirectly prove infringement by ***showing that (1) the standard necessarily meets the elements of the claim, (2) the accused product complies with the standard, and therefore (3) the accused product meets the claim***. This indirect evidence approach may not require significant analysis of the accused product. However, it relies upon a necessary inference tying the product to the standard and the standard to the claim.").

Samsung's argument about "purported SEPs" and patents "not found to be essential to the standard" is a strawman. G+'s instruction starts: "if an accused product practices a standard."  Samsung's quotation of *Godo Kaisha*, affirms G+'s position: "In such cases, infringement must be proven by comparing the claims to the accused products, ***or by proving that the accused devices 'implement any relevant optional sections of the standard***.'" Thus, where G+ proves Samsung implements certain portions of the standard, then G+ can establish infringement by showing those portions of the standard necessarily practice the claims, which requires a comparison of the standard to the claims.  Instructing the jury that it is only proper to compare the claims to the accused product contradicts the authority cited by Samsung.

Samsung: This instruction is entirely inappropriate.  It is black letter patent law that the claims must be compared to the accused products.  G+ drops an essential part of this Court's opinion in *Optis Wireless Tech., LLC v. Huawei Techs. Co.*, No. 217CV00123JRGRSP, 2018 WL 3375192, at *1 (E.D. Tex. July 11, 2018) where the Court immediately clarifies that "[t]he downside is that ***if the patent is not found to be essential to the standard, the link between the product and the patent breaks. Another way is the ordinary***

by showing that an accused product practices an industry standard if the asserted claim is standard essential.][5]

---

*way of proving infringement, by comparing the claims to the accused product.*" *Id*. (emphasis added). This is how this Court ultimately instructed the jury. *Optis Wireless Technology v. Huawei Techs. Co.*, No. 2-17-cv-00123, Dkt. 284 at 11-12 (E.D. Tex. Aug. 25, 2018).

G+'s arguments are not correct. As the Federal Circuit recognizes in *Fujitsu Ltd. v. Netgear Inc.*, purported SEP claims can read on optional portions of standards. 620 F.3d 1321, 1327-28 (Fed. Cir. 2010). For purported SEP claims that read on optional portions of standards, a plaintiff must prove the accused products implement the optional sections of the standard. *Id*.

To the extent the Court includes G+'s proposal, the requirements articulated by the Federal Circuit in *Fujitsu, Godo Kaisha*, and *INVT* for relying on a technical standard to prove infringement must be provided to the jury to ensure a proper application of the governing law. *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010); *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, 967 F.3d 1380, 1385 (Fed. Cir. 2020); *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1377 (Fed. Cir. 2022). G+'s argument misses that the Federal Circuit has explained:

> "We recognized in *Fujitsu* that the fact that a patent's claims cover an industry standard does not necessarily establish that all standard-compliant devices implement the standard in the same way. And we noted that an asserted patent claim might not cover all implementations of an industry standard. In such cases, infringement ***must be*** proven by comparing the claims to the accused products, or by proving that the accused devices 'implement any relevant optional sections of the standard.'" *Godo Kaisha*, 967 F.3d at 1384 (quoting *Fujitsu*, 620 F.3d at 1328 (emphasis in original)).

That is the case here. The asserted patents do not cover all implementations of standards they are alleged to be essential to, nor do the accused products necessarily implement the products in the same way. Therefore, "infringement must be proven by comparing the claims to the accused products," or G+ must specifically prove the accused devices actually implement the optional sections of the standard. G+'s proposed instructions state that all it must show for infringement is the accused products practice the standard and that the patents cover the standard. This position is legally incorrect based on the facts here.

G+'s instruction is misleading and incomplete because G+ even acknowledges below regarding other instructions that some SEP claims may invoke "optional" standards. Thus, G+'s sentence is legally incorrect.

To the extent this instruction and the subsequent instruction are given, Samsung's more detailed instructions regarding showing infringement by practicing the standard (which G+ objects to in their entirety below) must be given.

[5] G+: <u>Authority</u>: *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327–28 (Fed. Cir. 2010) ("if an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product"); *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1377 (Fed. Cir. 2022) ("Infringement can be proven based on an accused product's use of an industry standard if the asserted claim is standard essential" because "If an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product"). This is true whether the standard practiced is optional or mandatory. *See, e.g., Fujitsu*, 620 F.3d at 1327–28 (Fed. Cir. 2010) ("the patent owner must compare the claims to the accused products or, if appropriate, prove that the accused products implement any relevant optional sections of the standard").

Samsung: Samsung objects to this instruction as prejudicial and because it is an incorrect statement of law as explained in the preceding footnote.

If elements of an asserted patent claim are steps of a process, such claim is a method claim, and can only be infringed if those steps are actually performed by the accused products.

[Samsung infringes a method claim if Samsung performs all steps of the method. Samsung also infringes a method claim if all steps of the method are performed by another, and

1. Samsung contracts with another to perform the steps of a claimed method;

2. Samsung conditions participation in an activity or receipt of a benefit upon performance by another of the patented method and establishes the manner or timing of that performance; or

3. Samsung has the right and ability to stop or limit the performance of steps of the method by another.[6]]

You must reach your decision as to each assertion of infringement based on my instructions about the meaning and the scope of the claims, the legal requirements for infringement, and the evidence presented to you by both of the parties.

I will now instruct you on the specific rules that you must follow to determine whether G+ has proven that Samsung has infringed one or more of the patent claims involved in this case by a preponderance of the evidence. [In this case, G+ contends that the accused products implement

---

[6] G+: Authority: *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015).

Samsung: G+'s instruction is legally wrong. There must be actual performance of the method by the accused products for infringement. Simply "contract[ing] with another to perform one or more steps," "condition[ing] participation in an activity or receipt of benefit upon performance by another of any steps of the patented method," or "hav[ing] the right and ability to stop or limit the performance of steps of the method by another"—as proposed in G+'s instructions—does ***not*** establish infringement. For example, establishing that a party "contracted" with another to perform steps, without proof that these steps were actually performed, is insufficient to show infringement. "Method claims are only infringed ***when the claimed process is performed***, not be sale of an apparatus that is capable of infringing use." *Ormco Corp.*, 463 F.3d at 1311. None of the cases G+ cites stand for the proposition that there can be infringement without proving the infringing process was performed. Indeed, Supreme Court precedence mandates the opposite. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) ("A method patent claims a number of steps; under this Court's case law, the patent is not infringed unless all the steps are carried out.")

certain ETSI 5G standards.  G+ further contends that the asserted patents are essential to those standards.  [If you find that the asserted patents are essential to standards that are implemented in the accused products, then G+ has established that the accused products infringe the Asserted Claims.][7] [It is not sufficient for G+ to establish infringement by arguing that the product practices

---

[7] G+: Samsung's proposed language is incomplete and inaccurate.  This instruction should be omitted. G+'s proposed language reduces but does not eliminate prejudice from this confusing and inaccurate instruction. Samsung misrepresents G+'s infringement contentions by suggesting G+ relies on standards alone to prove infringement. As G+ expert Dr. Akl explained repeatedly during his deposition, he relies on at least three sources of data to show infringement: (1) the source code and documentation for the accused products; (2) testing results from testing accused devices on actual networks; and (3) mandatory portions of ETSI standards.

Samsung: G+'s instructions are improper because they present an incorrect infringement standard.  As the Federal Circuit recognizes in *Fujitsu Ltd. v. Netgear Inc.*, purported SEP claims can read on optional portions of standards.  620 F.3d 1321, 1327-28 (Fed. Cir. 2010).  For purported SEP claims that read on optional portions of standards, a plaintiff must prove the accused products implement the optional sections of the standard.  *Id.*

G+'s argument misses that the Federal Circuit has explained:

> "We recognized in *Fujitsu* that the fact that a patent's claims cover an industry standard does not necessarily establish that all standard-compliant devices implement the standard in the same way. And we noted that an asserted patent claim might not cover all implementations of an industry standard.  In such cases, infringement **must be** proven by comparing the claims to the accused products, or by proving that the accused devices 'implement any relevant optional sections of the standard."  *Godo Kaisha*, 967 F.3d at 1384 (quoting *Fujitsu*, 620 F.3d at 1328 (emphasis in original)).

That is the case here.  The asserted patents do not cover all implementations of standards they are alleged to be essential to, nor do the accused products necessarily implement the products in the same way. Therefore, "infringement must be proven by comparing the claims to the accused products," or G+ must specifically prove the accused devices actually implement the optional sections of the standard.  G+'s proposed instructions state that all it must show for infringement is the accused products practice the standard and that the patents cover the standard.  This position is legally incorrect based on the facts here.

Nothing about this instruction suggests G+ relies on standards alone.  It simply states the legal requirement that, where optional standard portions are cited as evidence of infringement, additional evidence must be cited to demonstrate infringement.  As such, this instruction is necessary to account for the situation where the jury finds additional evidence cited along with optional standard sections lacking.

Samsung's proposed instructions are supported by Federal Circuit precedent.  *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010); *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, 967 F.3d 1380, 1385 (Fed. Cir. 2020); *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1377 (Fed. Cir. 2022).  Samsung's proposed instructions on standard essentiality are necessitated by G+'s repeated reliance on 5G standards throughout its infringement presentation at trial.  The Federal Circuit in *Fujitsu, Godo Kaisha*, and *INVT* has clearly articulated the requirements for relying on a technical standard to prove infringement, and these requirements must be provided to the jury to ensure a proper application of the governing law.  That is why Samsung's proposed instruction language comes directly from *Fujitsu*, in which the Federal Circuit set forth the law governing the use of technical standards to prove infringement.

the standard, if an industry standard does not provide the level of specificity required to establish that practicing that standard would always result in infringement, or if the relevant section of a technical standard is optional.][8]  [Only in the situation where a patent covers every possible implementation of a standard, [or G+ establishes that Samsung implements an optional section of the standard] will it be enough to prove infringement by showing standard compliance.][9]

---

[8] G+: Samsung's instruction is one-sided, prejudicial, redundant, and incorrect as a matter of law. For example, the *Fujitsu* case expressly states that a patentee "may rely on an industry standard in analyzing infringement" and that where "the reach of the claims includes any device that practices a standard, then this can be sufficient for a finding of infringement." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327–28 (Fed. Cir. 2010). As the Federal Circuit explained, "if an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product." *Id.* ("Public policy weighs in favor of this approach. If a court determines that all implementations of a standard infringe the claims of a patent, then it would be a waste of judicial resources to separately analyze every accused product that undisputedly practices the standard. This is not prejudicial "). As the Federal Circuit explained, Samsung "is free to either prove that the claims do not cover all implementations of the standard or to prove that it does not practice the standard." *Id.*

G+'s proposed instructions already provide that infringement can only be proven based on a standard by pointing to ***mandatory*** sections of the standard. Instructions about specificity of the standard are confusing and redundant of this point. G+'s language is directly quoted from *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327–28 (Fed. Cir. 2010).

Samsung: Authority: *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010); *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, 967 F.3d 1380, 1385 (Fed. Cir. 2020); *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1377 (Fed. Cir. 2022). Samsung: These instructions on standard essentiality are necessitated by G+'s repeated reliance on 3GPP 5G standards throughout its infringement presentation at trial. The Federal Circuit in *Fujitsu, Godo Kaisha,* and *INVT* has clearly articulated the requirements for relying on a technical standard to prove infringement, and these requirements must be provided to the jury to ensure a proper application of the governing law. That is why Samsung's proposed instruction language comes directly from *Fujitsu*, in which the Federal Circuit set forth the law governing the use of technical standards to prove infringement. G+'s arguments are incorrect as explained above.

[9] G+: Samsung's proposed language is incomplete and inaccurate. This instruction should be omitted. G+'s proposed language reduces but does not eliminate prejudice from this confusing and inaccurate instruction. As a matter of Federal Circuit binding precedent, contrary to Samsung's proposed instruction, G+ can show that Samsung infringes by showing that (1) Samsung implements a portion of a standard (whether or not it is mandatory or optional) and (2) that implementing that portion of the standard practices the claims. *See, e.g., Fujitsu Ltd. v. Netgear Inc.,* 620 F.3d 1321, 1327–28 (Fed. Cir. 2010) ("Or, as with the '952 patent, ***the relevant section of the standard is optional***, and standards compliance ***alone*** would not establish that the accused infringer chooses to implement the optional section. In these instances, it is not sufficient for the patent owner to establish infringement by arguing that the product admittedly practices the standard, therefore it infringes. In these cases, the patent owner must compare the claims to the accused products ***or, if appropriate, prove that the accused products implement any relevant optional sections of the standard***").

Samsung: Authority: *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010); *Godo Kaisha IP*

[Otherwise, G+ must compare its claims to the accused products [and can't rely solely on a comparison to the technical standard to prove infringement]/[rather than to the technical standard to prove infringement][10].][11]

You must reach your decision as to each assertion of infringement based on my instructions about the meaning and the scope of the claims, the legal requirements for infringement, and the evidence presented to you by both of the parties.

I will now instruct you on the specific rules that you must follow to determine whether G+ has proven that Samsung has infringed one or more of the patent claims involved in this case by a

---

*Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, 967 F.3d 1380, 1385 (Fed. Cir. 2020); *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1377 (Fed. Cir. 2022).  Samsung: The proposed instruction is consistent with the portions of the *Fujitsu* decision cited by G+. Specifically, where a portion of a claim that is relevant for consideration for purposes of infringement is optional, it is "not sufficient for the patent owner to establish infringement by arguing that the product admittedly practices the standard"; rather the "the patent owner must compare the claims to the accused products or, if appropriate, prove that the accused products implement any relevant optional sections of the standard."  620 F.3d at 1327-28.  Samsung's proposed instruction makes this point explicit to avoid potential juror confusion regarding whether the practicing of a standard including optional language, alone, is sufficient for purposes of demonstrating infringement..

[10] G+: Samsung's proposed language is incomplete and inaccurate.  This instruction should be omitted.  G+'s proposed language reduces but does not eliminate prejudice from this confusing and inaccurate instruction.  "Rather than" suggests G+ cannot rely on the standard in any manner except for mandatory portions. This is wrong. Samsung's documents show that Samsung implements parts of the ETSI standards which Samsung's experts contend are optional and G+'s experts contend are mandatory.  These sections of the standard are relevant regardless of whether the jury concludes they are optional or mandatory because they are implemented in Samsung's products.

Samsung: Authority: *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010); *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, 967 F.3d 1380, 1385 (Fed. Cir. 2020); *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1377 (Fed. Cir. 2022).  Samsung: As G+ admits, the parties' experts dispute whether certain sections of the standards at issue that are relevant for infringement analysis are mandatory or optional.  As jurors may agree with Samsung's experts and find relevant standard sections optional, it is necessary to provide instruction regarding how such a finding affects what G+ must show to demonstrate infringement..

[11] G+: G+ objects to this instruction in its entirety, including because portions of its are unrelated to the topic of the infringement standard, and other portions repeat (using different phrasing) earlier parts of the same instruction.  To the extent this instruction is given, however, G+'s additions are necessary for accuracy.

Samsung:  To the extent the Court includes any discussion of standards in the infringement section, Samsung preserves its counterproposals in this section.  These instructions are necessary to explain the level of specificity required for infringement and to address optional standards.  Without these instructions, the jury could find infringement without G+ meeting its legal burden.

preponderance of the evidence.  There are two possible ways that a claim may be directly infringed. The two types of infringement are called literal infringement and infringement under the doctrine of equivalents. I'll explain the requirements of each of these types of infringement to you.

### DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT"

In order to prove literal infringement, G+ must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Samsung made, used, sold, offered for sale within, or imported into the United States a product that meets all of the requirements of a claim, or performed the method steps of a claim [You must compare the product or method[, or the standard that Samsung implements in its products or methods][12] with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.][13]

A claim element is literally present if it exists in the accused product as it is described in the claim language either as I have explained it to you or if I did not explain it according to its ordinary meaning as understood by one of ordinary skill in the art.

[You must determine, separately for each asserted claim, whether or not there is infringement.  [An accused product infringes a claim if it satisfies the claim elements, even though

---

[12] Samsung: It is black letter patent law that the claims must be compared to the accused products.  G+'s proposals is legally incorrect, confusing to the jury, and prejudicial to Samsung.  *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010); *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, 967 F.3d 1380, 1385 (Fed. Cir. 2020); *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1377 (Fed. Cir. 2022); *Optis Wireless Technology, LLC et al v. Huawei Technologies Co., Ltd,*. No. 2-17-cv-00123, Dkt. 284 (Final Jury Instructions) at 11-12 (E.D. Tex. Aug. 25, 2018).

[13] G+: as explained above, it is incorrect to say in an SEP case that G+ must compare the claims to the product. This instruction is redundant.  If allowed, G+'s conditional added language should be included.

Samsung: Authority: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 3.1a Direct Infringement By "Literal Infringement."  Samsung: This language is taken directly from the FCBA model and directly addresses literal infringement, without injecting unnecessary issues. Samsung objects to informing the jury that it can compare the claims to the "standard" for the reasons given above.  Samsung proposes an instruction to address that issue and it is prejudicial and legally correct to refer to any comparison with the "standard" without the rest of the instruction.

it may be capable of non-infringing modes of operation.][14] [If any element recited in a claim is not found in an accused product, then you must find that particular product does not [literally] infringe that claim [but may still infringe under the doctrine of equivalents, as I will explain to you in a moment].][15] So long as an accused product has each and every one of the claim limitations, infringement in that claim is shown even if the product contains additional features or elements not required by the claim.[16]

Now, you must decide separately and for each asserted claim whether or not there is infringement.  A patent can be directly infringed even if the alleged infringer did not have knowledge of the patent and without the infringer knowing that what it was doing is infringement of the claim.[17]

### DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS[18]

---

[14] *See,* Netlist v. Samsung, 2:21-CV-463-JRG, final jury instructions. There is nothing ambiguous about this.  The last sentence does not convey the same concept: this instruction relates to how a device or method is used (in a non-infringing manner), while the final paragraph relates to whether the device or method includes additional structure or steps beyond the infringing structure or steps. Both are accurate and important.

Samsung: This sentence should not be included because it is vague due to the usage of the term "non-infringing mode."  This sentence is also unnecessary and repetitive because the last sentence of this paragraph agreed-upon by the parties conveys the same concept.

[15] G+: this instruction excludes DOE, and is redundant of the previous and the very next instructions regarding each and every claim element. If given, it should be made clear that the statement applies to literal infringement only, not DOE.

Samsung: Authority: *Netlist, Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-00463-JRG, Final Jury Instructions, Dkt. No. 478 at 1307:21-1308:3 (E.D. Tex. Apr. 21, 2023); *Acorn*, No. 2:19-cv-000347-JRG (May 19, 2021) (Final Jury Instructions).  Samsung: This instruction should be included because it provides a more complete, black letter law instruction to the jury on determining infringement. G+ provides no reason to omit this instruction.  The doctrine of equivalents is discussed and clarified elsewhere in the instructions and inserting the concept here risks confusing the jury regarding literal infringement. G+ explains no prejudice or other reason to exclude this instruction.  This instruction was given in *Netlist v. Samsung*.

[16] *See,* Netlist v. Samsung, 2:21-CV-463-JRG, final jury instructions.

[17] G+: *Whirlpool*, Case No. 2:15-cv-01528-JRG, Dkt. 166 (E.D. Tex. Mar. 23, 2017).

[18] Samsung preserves all rights to pursue a prosecution history estoppel at a bench trial.

If you find that the accused product does not literally infringe a claim of the asserted patents, then you may still find infringement if you find each element is met under the doctrine of equivalents.   Under the doctrine of equivalents, if a person makes, uses, sells, offers to sell within or imports into the United States a product that does not meet all of the requirements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product satisfies that claim under the doctrine of equivalents.

Under the doctrine of equivalents, a product infringes a claim if the accused product contains elements that literally meet or are equivalent to each and every requirement of the claim. You may find that an element is equivalent to a requirement of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the action or structure: (1) performs substantially the same function, (2) works in substantially the same way, (3) to achieve substantially the same result as the requirement of the claim.  [However, G+ must provide the particularized testimony and linking argument as to the insubstantiality of the differences between the claimed invention and the accused device, or with respect to the function, way, result, must be on a claim limitation-by-limitation basis to support a finding of infringement under the doctrine of equivalents.[19]  Generalized testimony as to the overall similarity between the claims

---

[19] G+:this statement is confusing because it suggests that doctrine of equivalents testimony must be provided for each and every claim limitation (as opposed to merely those elements, if any, the jury does not find are literally met) and because "particularized testimony and linking argument" is not a phrase that will be familiar to the jury.

Samsung: This instruction explains the requisite evidence to support a finding of infringement under the doctrine of equivalents.  *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed.Cir.1996).

and the accused products is not sufficient to support a finding infringement under the doctrine of equivalents.][20]

[Now, in order to prove direct infringement under the doctrine of equivalents, the Plaintiff, G+, must prove by a preponderance of the evidence that for each claim element or limitation not literally present in the accused product, the equivalent of that claim or limitation is present in that accused product.][21]

## MEANS-PLUS-FUNCTION CLAIMS

The "first reselection module" and "second reselection module" terms in asserted claim 2 of the '776 patent are so-called means-plus-function claim limitations.

Means plus function claims have a special meaning in patent law. It does not cover all the structures that could perform the function set forth in the claim. Instead, it covers a structure or set of structures that performs that function and that is either identical or equivalent to the structures described in the patent for performing the function.

To demonstrate that these limitations are literally met, G+ must prove by a preponderance of evidence (that is, it is more likely than not) that Samsung's products contain a structure that (1) performs the recited function; and (2) is identical or equivalent to the structure that is disclosed in the patent specification and drawings for performing the recited function. I have set forth in my claim construction order both the recited function that is to be performed by the structure, and the

---

[20] <u>Authority</u>: *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed.Cir.1996).

[21] G+: G+ conditionally agrees to this language if and only if Samsung's instruction which immediately precedes on "known interchangeability" is given; in that instance, the instruction on DOE would end in a confusing manner without it. However, if the language on interchangeability is not given, this language is redundant and should be removed.

Samsung: This instruction provides a final instruction on the DOE analysis that should be provided regardless of the "known interchangeability" decision.

structure that is disclosed in the patent specification that performs the recited function.  Those constructions are included under Tab __ of your Juror Notebook.

Whether the structure of the accused product is equivalent to a structure disclosed in the patent specification and drawings is decided from the perspective of a person of ordinary skill in the art.  The structure in the accused product and that disclosed in the patent are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial.  One way to show this is to demonstrate that the structure in the accused product performs the identical function in substantially the same way to achieve substantially the same result as would be achieved by the element that is disclosed in the patent specification.

In deciding whether the differences would be insubstantial you may consider whether people of ordinary skill in the art would have known that the accused structure and the structure identified in my claim construction were interchangeable at the time the patent issued.

[That the structure in the accused products may perform additional functions not disclosed in the patent specification does not mean the structure is not identical or equivalent to the structure that I identified in my claim construction order.  This is the case even if the accused structure achieves better performance than that is disclosed in the patent specification.  Further, even when two structures would not have been considered equivalent structures in other contexts, e.g., if performing functions other than the claimed function, they may nevertheless be equivalent for the means-plus-function term when performing the same function.][22]

---

[22] G+: Samsung is wrong that G+ has not asserted equivalence of the means plus function limitations. Further, the previous section does not cover the material in this paragraph. Moreover, there is no dispute that this instruction is accurate. It comes directly from *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1304-05 (Fed. Cir. 2011).

Samsung: This entire paragraph is unnecessary and superfluous.  It is covered by the instructions above.  Furthermore, this paragraph is not relevant to this case, because G+ has not asserted "structural equivalency" of those means-plus-function limitations over elements of the accused products.  The jury

## VALIDITY

I will now instruct you on the rules that you must follow in deciding whether or not Samsung has proven by clear and convincing evidence that the asserted claims of the patents are invalid.  Patent invalidity is a defense to patent infringement.  Invalidity and infringement are separate and distinct issues that must be separately decided by you, the jury.

An issued patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office, which you have heard referred to throughout this trial as the PTO or the Patent Office, acted correctly in issuing the patent.  However, that presumption of validity can be overcome if clear and convincing evidence is presented in court that the patent is invalid. Therefore, you the jury, must determine whether Samsung has proved that G+'s claims are invalid.

Like infringement, invalidity is determined on a claim-by-claim basis.  You must determine separately for each claim whether that claim is invalid.  If one claim of a patent is invalid, this does not necessarily mean that any other claim is invalid. You must apply the claim language consistently and in the same manner for issues of infringement and for issues of invalidity.

## PRIOR ART

A previous device, system, method, publication, or patent that predates the claimed invention is generally called prior art, and may include items that were publicly known or that had been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.   Prior art also includes the knowledge or use of an invention by a person of ordinary skill in the art in the United States at the time of

---

instructions already include the Court's claim construction and giving specific, technical examples about how the jury might apply the general instruction about means-plus-function claiming improperly risks invading the jury's fact-finding province.

invention.

In deciding validity, the only correct comparison is between the prior art and the limitations of the asserted claims.  It is improper to compare the prior art to the accused product.

## PERSON WITH ORDINARY SKILL IN THE ART

Several times in my instructions, I will refer to a person of ordinary skill in the field of the invention.  It is up to you to decide the level of ordinary skill in the field of the invention.

In deciding what the level of ordinary skill is, you should consider all of the evidence introduced at trial including but not limited to:

1.      the levels of education and experience of the inventors and other persons working in the field;

2.      the types of problems encountered in the field;

3.      prior art solutions to those problems;

4.      rapidity with which innovations are made; and

5.      the sophistication of the technology.

A person of ordinary skill in the art is a hypothetical person who is presumed to be aware of all of the relevant prior art at the time of the claimed invention.

## ANTICIPATION

In order for someone to be entitled to a patent, the invention must actually be "new." Samsung contends in this case that the asserted claims of the '776 and '443 patents are invalid because the claimed inventions are anticipated.  If an invention is not new, we say that it was anticipated by the prior art.  An invention that is anticipated by the prior art is not entitled to patent protection.  Samsung bears the burden of proving anticipation by clear and convincing evidence.

In patent law, a previous system, publication, or patent that predates the claimed invention is generally called "prior art." A publication qualifies as prior art if it is published or available to

public before the priority date of the asserted patent; and a patent qualifies as prior art if it was granted prior to the priority date of the asserted patent.  In addition, a patent or a patent publication qualifies as prior art if its priority date is before the priority date of the asserted patent.  Anticipation must be determined on a claim-by-claim basis.  Samsung must prove that all of the requirements of a claim are present in a single piece of prior art.

To anticipate the invention, the prior art does not have to use the same words as the claim, but all requirements of the claim must have been disclosed and arranged as in the claim.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider only what is expressly stated or proven by clear and convincing evidence to be inherently present.  Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art. Inherency may not be established by probabilities or possibilities. The mere fact that a certain thing may coincidentally result from a given set of circumstances is not sufficient. A party claiming anticipation by inherency must show that the elements of the claim are always present in the prior art or always result from the practice of the prior art.[23]

[The claim requirements may either be disclosed expressly or inherently such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference,

---

[23] G+: For verbatim instruction, *see, e.g., Mars, Inc. v. TruRX LLC et al*, 6-13-cv-00526, final jury instructions (EDTX May. 06, 2016) ("Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art. Inherency may not be established by probabilities or possibilities. The mere fact that a thing may coincidentally result from a given set of circumstances is not sufficient. A party claiming anticipation by inherency must show that the elements of the claim are always present in the prior art or always result from the practice of the prior art").

Samsung: Samsung's proposed instructions on inherency are much simpler.  G+'s proposal is unnecessarily long and duplicative (e.g., repeating "always present" and "elements as arranged in the claim"), which is prejudicial. G+'s proposal lengthens the jury instructions without any appreciable benefit.

==could make and use the claimed invention.  Inherent disclosure means that the missing element is==

==necessarily present or implied in the prior art.==][24]

## OBVIOUSNESS

Samsung contends in this case that the asserted claims of the '776  patent are invalid as obvious.  Even though an invention may not have been identically disclosed or identically described in a single prior art reference, the invention may have been obvious to a person of ordinary skill in the field of technology to which the claimed invention pertains at the effective filing date of the claimed invention.  Samsung may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art in the field of wireless communications at the time the invention was made.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness.[25]  Most, if not all, inventions rely on the building blocks of prior art.[26]  Now, in determining whether the patent is invalid because of obviousness, you must consider the scope and content of the prior art as a whole, the differences between the prior art and the claimed invention and the level of ordinary skill in the art.  In determining the

---

[24] G+: Samsung's instruction is incomplete and incorrect.  It is insufficient that a claim element merely be "implied" by the prior art. G+'s proposed instructions provide the correct standard for inherency. Anticipation by inherency is a stringent standard, and the details of what is required are important.

Samsung:  Authority: *Rexnord Indus., LLC v. Kappos*, 705 F.3d 1347 (Fed. Cir. 2013); Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 4.3.b-1, 4.2a. Samsung: This language follows the FCBA model language.  The FCBA model language is accurate, concise, and easy to understand.  Explaining inherency is necessary because the jury must know that an element does not have to be verbatim disclosed in a prior art reference to invalidate a claim element.

[25] Samsung:  Authority: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 4.3.c.

[26] Samsung:  Authority: 35 U.S.C. § 103; Trial Tr., *Whirlpool Corp v. TST Water, LLC*, No. 2:15-cv-01528-JRG, Dkt. 166 (E.D. Tex. Mar. 23, 2017); ECF No. 166; Trial Tr., *KAIST IP US LLC, v. Samsung Elecs. Co.*, No. 2:16-cv-1314-JRG-RSP  (E.D. Tex. June 15, 2018), ECF No. 498. Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 4.3.c.

level of ordinary skill in the art, you should consider the person of ordinary skill as one who is presumed to be aware of all pertinent prior art.

In considering whether a claimed invention is obvious, you should consider whether, as of the effective filing date of the asserted patent, there was a reason that would have prompted a person of ordinary skill in the field to combine the known elements in a way that the claimed invention does, taking into account facts such as:

1. whether the claimed invention was merely the predictable result of using prior art elements according to their known function;

2. whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3. whether the prior art teaches or suggests the desirability of combining elements in the claimed invention, such as where there is a motivation to combine;

4. whether the prior art teaches away from combining elements in the claimed invention;

5. whether it would have been obvious to try the combinations of elements in the claimed invention, such as where there is a design need or market pressure to solve a problem and there are a finite number of identified predictable solutions; and;

6. whether the change resulted more from design incentives or other market forces.

To find that it rendered the invention obvious, you must find that a person of ordinary skill in the art would have had a reasonable expectation of success in combining the teachings of the prior art to result in the claimed invention.

[In making these determinations, a person of ordinary skill uses simple common sense and can rely upon the inferences and creative steps that a person of ordinary skill in the art would employ.  Prior art is not limited to the patents and published materials, but includes the general

==knowledge that would have been available at the time to one of ordinary skill in the field of the invention. Also, Samsung does not need to show that one of ordinary skill would actually have combined the physical structures of two references.  One need only combine the teachings.]==[27] In determining whether the claimed invention was obvious, do not use hindsight.  Consider only what was known as of the priority date of the invention. In other words, you should not consider what a person of ordinary skill in the art would know now or what has been learned from the teachings of the asserted patents.

In making these assessments, you must also take into account any objective evidence, sometimes called secondary considerations, that may have existed at the time of the invention and afterwards that shed light on whether or not the claimed invention is obvious, such as:

1. whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

2. whether the invention satisfied a long-felt need;

3. whether others had tried and failed to make the claimed invention;

4. whether the invention achieved unexpected results:

5. whether others in the field praised the invention;

---

[27] G+: This instruction is confusing and unnecessary. It contradicts the requirement that the POSA must have a reasonable expectation of success. See, *Netlist v. Samsung*, 2:21-CV-463-JRG, final jury instructions.

Samsung: Authority: *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1365 (Fed. Cir. 2006).*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 420-21 (2007).  Samsung: This paragraph of instructions explains to the jury that a person of ordinary skill is not an automaton.  The instructions are important so that the jury applies the obviousness analysis in *KSR* correctly.  None of this language is confusing, and it certainly is not "unnecessary."  There is no contradiction here; the language is supported in Federal Circuit precedent.  The instructions already inform the jury there must be a reasonable expectation of success.  Nothing in these sentences is "contradictory," as G+ alleges without explanation.

6. whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention; and

7. whether others sought or obtained rights to the patent from the patent holder.

For commercial success [or any other secondary consideration] to be evidence non-obviousness, there must be a nexus between the patented features of the invention and the commercial success of the device.[28] [In support of obviousness, you may also consider whether others independently invented the claimed invention before or at about the same time as the named inventor thought of it.][29] While these objective indicia must be taken into account, you must consider all of the evidence related to obviousness before you reach a decision.

## SUBJECT MATTER ELIGIBILITY[30]

I will now instruct you about the rules to follow in deciding whether or not Samsung has proven by clear and convincing evidence that any of the asserted claims of the '776 and '443 patents are ineligible for patent protection.

---

[28] Samsung: <u>Authority</u>: Fox Factory, Inc. v. SRAM, LLC, 944 F.3d 1366, 1373-74 (Fed. Cir. 2019); *Mass Engineered Designs, Inc. v. Ergotron, Inc.,* Case No. 06-cv-272-LED, Final Jury Instructions, Dkt. 658 (E.D. Tex. Nov. 19, 2008).

[29] G+: This proposal is prejudicial. Objective indicia cannot "support obviousness." Further, "about the same time" is vague and not legally correct.

Samsung: <u>Authority</u>: Adapted from *TQ Delta, LLC v. CommScope Holding Co.*, No. 2:21-cv-000310-JRG, Final Jury Instructions, Dkt. No. 534, Vol. 1 Tr. 21:14-73:13 (E.D. Tex. Mar. 30, 2023). There is no prejudice here because the jury may consider objective indicia to evaluate obviousness. This instruction was also provided in *TQ Delta*.

[30] G+: The instruction on 101 should be given after anticipation and obviousness. "[T]he Supreme Court [has] recognized that in making the § 101 determination, the inquiry 'might sometimes overlap' with other fact-intensive inquiries like novelty under § 102." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). In this case, the only arguments set forth by Samsung's experts to support that the asserted patents are invalid under Alice step 2 was to incorporate the experts' opinions on 102 and 103.

Samsung: The jury must be instructed with respect to its role in the *Alice* analysis. The instructions here are adapted from *Infernal Tech., LLC v. Sony Interactive Entm't, LLC*, No. 2:19-cv-248-JRG, Dkt. 355 (Trial Transcript, Vol. 4) at 33:17-35:6 (E.D. Tex. Oct. 7, 2021). Samsung objects to the subject matter eligibility instruction being moved after the anticipation and obviousness sections. 35 U.S.C. § 101 precedes anticipation and obviousness in the statute. Invalidity is Samsung's burden, and Samsung should be permitted to provide the invalidity instructions in its preferred order.

You should consider all the evidence presented during the trial, including the testimony of the witnesses as well as the exhibits introduced, including the specifications of the '776 and '443 patents. If the evidence shows by clear and convincing evidence that the elements of any of the asserted claims, when taken both individually and as an ordered combination, involve no more than well-understood, routine,  and conventional activities, as understood by a person of ordinary skill in the art, then that claim is invalid.[31]

The mere fact that something was known in the art at the time does not necessarily mean that it was well-understood, routine, and conventional. Rather, ladies and gentlemen, the test is whether, in view of all the evidence, a person of ordinary skill in the art would have considered the claim to involve only technology that was well-understood, routine, and conventional as of the priority date of each patent.

## WRITTEN DESCRIPTION

Samsung contends that asserted claim of the '130 patent is invalid because the specification of the '130 patent allegedly does not contain an adequate written description of the invention. [The

---

[31] G+: The preliminary instructions properly used "and" instead of "or." Dkt. Day 1 Tr. 146:16-20.  "Or" is incorrect.  To prevail on this issue, Samsung must prove that both the individual claim elements <u>and</u> the combination was well understand.  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1366 (Fed. Cir. 2018) ("we consider the elements of each claim ***both individually and 'as an ordered combination'*** to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."). Samsung's proposal switches the "or" to "and" incorrectly states that Samsung only needs to establish either that the individual elements or the combination was well-known.

Samsung: Samsung disputes that this instruction is proper.  "Or" is correct here.  The jury will whether the elements taken individually or when taken as an ordered combination involve only technology that a POSA would have considered well-understood, route, or conventional. The jury instruction should be worded this way to avoid confusion that the consideration of the elements individually and as an ordered combination is done together.  *Infernal Tech., LLC v. Sony Interactive Entm't, LLC*.  No. 2:19-cv-248-JRG, Dkt. 355 (Trial Transcript, Vol. 4) at 35:2-3 (E.D. Tex. Oct. 7, 2021) ("…when taken individually or when taken as an ordered combination…") (emphasis added); *PPS Data, LLC v. Jack Henry & Assocs., Inc.*, No. 2:18-cv-00007-JRG, Dkt. No. 175 at 25:1-2 (same).

written description requirement helps ensure that the patent applicant actually invented the claimed subject matter.  If a patent claim lacks adequate written description, it is invalid.][32]

To succeed [on showing the asserted '130 patent claim lacks written description support], Samsung must show by clear and convincing evidence that [a person having ordinary skill in the field reading the patent specification as of date of the invention would not have recognized that] the specification [does not describe] [describes] the full scope of the claimed invention [as it is finally claimed], including each element thereof, either expressly or inherently.[33] A claimed element is disclosed inherently if a person having ordinary skill in the field as of the effective filing date would have understood that the element is necessarily present in what the specification discloses.  It is not sufficient that the specification discloses only enough to make the claimed invention obvious to the person having ordinary skill.

[Determining written description involves looking within the four corners of the specification to determine whether or not the inventors had possession of the invention as claimed. A broad claim is invalid when the specification clearly indicates that the invention is of a much narrower scope.  For example, if the specification clearly shows that the inventor did not actually possess a certain limitation that appears in a claim, then that claim is invalid.  In making this determination, you may consider the language of the claims as well as the entirety of the

---

[32] Samsung: <u>Authority</u>: Federal Circuit Bar Association Model Patent Jury Instructions (May 202), Instruction 4.2a; Samsung: <u>Authority</u>: *United Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 2:18-cv-366-JRG (E.D. Tex. Jan. 10, 2020); AIPLA Model Instruction No. 9 (2018).  This paragraphs comes from the FCBA model instructions and is needed to fully describe the written description requirements to the jury.

[33] Samsung: <u>Authority</u>: Federal Circuit Bar Association Model Patent Jury Instructions (May 202), Instruction 4.2a.  The additions to this paragraphs comes from the FCBA model instructions and is needed to fully describe the written description requirements to the jury.

specification, including the title of the patent, the patent's teachings, examples, and description of the problem to be solved and the solutions disclosed, and the prosecution history.][34]

[The written description does not have to be in the exact words of the claim.   [The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification.]  Adequate written description does not require either examples or an actual reduction to practice of the claimed invention(s).]

[It is unnecessary to spell out every detail of the invention in the specification, and specific examples are not required; only enough must be included in the specification to convince persons of ordinary skill in the art that the inventor possessed the full scope of the invention.[35]  It is unnecessary for the patent applicant to describe concepts relating to the invention that are already well known to persons of ordinary skill in the art.[36] The patent specification need not disclose every embodiment of the invention.  Description in the specification of as few as one example can be sufficient written description of a larger category of potential embodiments of the invention.][37]

---

[34] G+: These three paragraphs make the instructions more confusing and are redundant. Suggestion that the claims are written broadly but the invention is narrow is one-sided and unnecessary.  The final paragraph is self-contradictory, stating to look within the four corners of the patent to determine written description, but also to look at the prosecution history.

Samsung: <u>Authority</u>: *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1377-79 (Fed. Cir. 2009); *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1343-46 (Fed. Cir. 2005); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1480 (Fed. Cir. 1998). *Rivera v. Int'l Trade Comm'n*, 857 F.3d 1315, 1322 (Fed. Cir. 2017); *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1323 (Fed. Cir. 2002).  The foregoing instructions provide clarity and completeness to the instructions on written description.  Samsung's proposal is superior because it is clear, not duplicative, and well-founded in Federal Circuit authority.  There is nothing contradictory about this paragraph.  The "four corners" of the specification must provide the written description, but the prosecution history can be considered to make the determination regarding whether there is sufficient written description support.

[35] G+:*United Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 2:18-cv-366-JRG (E.D. Tex. Jan. 10, 2020); AIPLA Model Instruction No. 9 (2018).

[36] G+:*United Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 2:18-cv-366-JRG (E.D. Tex. Jan. 10, 2020); *Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1156 (Fed. Cir. 2004).

[37] G+: This paragraph explains in plain language what is not required. It is particularly necessary in light of Samsung's instruction that the specification must "describe" every limitation of the claims. *United*

[However, a mere wish or plan for obtaining the claimed invention(s) is not adequate written description.  Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.][38]

## DAMAGES

If you find that Samsung infringed any valid claim of the asserted patents, you must then consider what amount of damages to award to G+ for that infringement.  Now, I will instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win this case on any issue.  [If you do not find that Samsung infringes a patent, you will not consider damages for that patent.][39]

---

*Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 2:18-cv-366-JRG (E.D. Tex. Jan. 10, 2020); *Allergan Sales, LLC v. Sandoz, Inc.*, 717 F. App'x. 991 (2017).

Samsung: This entire paragraph is repetitive of the previous paragraph (which says "Adequate written description does not require either examples or an actual reduction to practice of the claimed invention(s).") and over-emphasizes what does not need to be disclosed in the written description, including repeating that disclosure of examples and every embodiment is not required.  Such emphasis improperly biases the instruction towards G+'s position and is prejudicial to Samsung.

[38] Samsung: Authority: *Netlist, Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-00463-JRG, Final Jury Instructions, Dkt. No. 478 at 1319:15-19 (E.D. Tex. Apr. 21, 2023); Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 4.2a.  Samsung: This paragraph appears in the *Netlist v. Samsung* instructions and in the FCBA model instructions.  It is legally accurate, and G+ offers no reason it is improper.

[39] G+:Samsung's proposal is prejudicial, biased, and repetitive. The instruction already states that damages are to be awarded only if infringement is found. There is no basis to instruct the jury on this two additional times, as Samsung proposes.

Samsung: Authority: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 5.1 Damages – Introduction; 35 U.S.C. § 284 ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement . . . ."); *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega systems, LLC*, 350 F.3d 1327, 1345-46 (Fed. Cir. 2003) (vacating damages award that was based on both infringed and non-infringed patents); *Acorn*, No. 2:19-cv-000347-JRG (May 19, 2021) (Final Jury Instructions).  Samsung: This instruction recites black-letter law and is necessary to instruct the jury on determining damages properly.  G+'s statement that this instruction is repetitive is incorrect – there is no other instruction that says if you find Samsung does not infringe, you will not consider damages for that patent.  Samsung's proposal also tracks the FCBA model.

The damages that you award in this case, if you find infringement, must be adequate to compensate G+ for any infringement.  You should also not include any additional amount for the purposes of punishing Samsung or for setting an example.  G+ in this case has the burden to establish the amount of its damages by a preponderance of the evidence.

The patent laws specifically provide that damages for infringement may not be less than a reasonable royalty.  Plaintiff G+ must prove the amount of its damages with reasonable certainty but need not prove the amount of damages with mathematical precision.  [The determination of a damages award is not an exact science, and the amount need not be proven with unerring precision. You may approximate, if necessary, the amount to which the patent owner is entitled. Damages, however, may not be determined by a mere speculation or a guess. It may be proper to award damages in an amount if the evidence shows the extent of the damages as a matter of just and reasonable inference.][40]  / [You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.][41]  G+ seeks damages in the form of a reasonable royalty.

---

[40] G+: *Optis Wireless Tech., LLC, et al., v. Huawei Techs. Co. Ltd.*, et al., No. 2:17-cv-123-JRG-RSP, Dkt. 310 (E.D. Tex. Aug. 24, 2018).  The instruction expressly states that damages "may not be determined by a mere speculation."  It is important for the jury to understand that approximation is allowed so long as it is not based on speculation or guess.

Samsung: G+'s overly lengthy instruction repeats, and thus overly emphasizes, the concept in the previous sentence about not having to prove damages with mathematical precision, thus biasing the instruction towards G+ and prejudicing Samsung.  Further, this language impermissibly encourages the jury to approximate damages and rely on guesswork.  The Federal Circuit explicitly forbids this type of speculation.  *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009) (a patent holder is not entitled to damages that are remote or speculative); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).  Samsung's instruction is legally correct, succinct, and clear.

[41] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 5.1.  Samsung: This language tracks verbatim with the FCBA model.  It properly instructs the jury they are not to speculate.

A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time immediately prior to when the infringement first began.

Reasonable royalty awards can take the form of a lump sum payment.  A lump sum payment is equal to an amount that the alleged infringer would have paid at the time of a hypothetical negotiation for a license covering all sales of the licensed product.

Now, in considering this hypothetical negotiation, you should focus on what the expectations of [the patent holder and the infringer]/[ZTE and Samsung][42] would have been had they entered into an agreement at that time and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the Asserted Claims were valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.  In the context of the hypothetical negotiation, it is not necessarily the case that each valid and infringed patent in the hypothetical negotiation contributes equally to the amount that Samsung would pay for that license, or that each patent covered by other licenses that were presented contributes equally to the amount that was paid for those licenses.

The law requires that any damages awarded to the Plaintiff corresponds to the value of the alleged inventions within the accused products, as distinct from other, unpatented features of the

---

[42] G+: There is no need to include ZTE by name 15 times in the instructions, as Samsung proposes.

Samsung: ***ZTE and Samsung*** must be identified as the parties to the hypothetical negotiation.  G+'s reason for objecting to this language is misleading about whether the hypothetical negotiation is between G+ and Samsung or ZTE and Samsung.  Both parties, and both party's damages experts, agree that ZTE and Samsung are the parties to the hypothetical negotiation.

accused product, or other factors such as marketing or advertising, or [either parties'][ZTE's][43] size or market position.  This is particularly true where the Accused Product has multiple features and multiple components not covered by the patent or where the Accused Product works in conjunction with other non-patented items. Therefore, the amount you find as damages must be based on the value attributable to the patented technology.[44]  [If the unpatented features contribute to an accused product, you must apportion that value to exclude any value attributable to unpatented features.  You must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.  G+ bears the burden to establish the amounts attributable to the patented features].[45]

In determining a reasonable royalty, you should consider all facts known and available to the parties at the time the infringement began.  You may also consider:

- The royalties received by the patentee for the licensing of the patent(s) in suit, proving or tending to prove an established royalty;

---

[43] Samsung:  Authority: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 5.12.  Samsung: FCBA Instruction 5.12 says the patent holder's size or market position.  ZTE is the patent holder in the hypothetical negotiation.

[44] Samsung:  Authority: Adapted from *TQ Delta, LLC v. CommScope Holding Co.*, No. 2:21-cv-000310-JRG, Final Jury Instructions, Dkt. No. 534, Vol. 1 Tr. 21:14-73:13 (E.D. Tex. Mar. 30, 2023).

[45] G+: This instruction is repetitive of the other instructions in this section, biased, and confusing. It immediately follows a sentence stating that damages must be based on value attributable to the patented technology, as distinct from unpatented features. Further, Samsung's 30(b)(6) witness could not answer any questions about value attributed regarding unpatented features so Samsung should not be permitted to enter any such evidence at trial or receive an instruction to the jury in this manner.

Samsung:  Authority: *TQ Delta, LLC v. CommScope Holding Co.*, No. 2:21-cv-000310-JRG, Final Jury Instructions, Dkt. No. 534, Vol. 1 Tr. 21:14-73:13 (E.D. Tex. Mar. 30, 2023); *Netlist, Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-00463-JRG, Final Jury Instructions, Dkt. No. 478 at 1322:13-21 (E.D. Tex. Apr. 21, 2023); *Acorn*, No. 2:19-cv-000347-JRG (May 19, 2021) (Final Jury Instructions).  Samsung: Federal Circuit precedent requires apportionment and this instruction appropriately explains the concept. Samsung's proposed language appears in three recent jury instructions provided in this Court.  These sentences provide important context to the jury for their damages assessment.  There is no basis for exclusion.  Samsung has produced documentation and provided testimony demonstrating the value of features of the accused products unrelated to the asserted patents.  Samsung's damages expert provided opinions apportionment, and this instruction is particularly important in a standard essential patent case.

- The rates paid by the licensee for the use of other patents comparable to the patent in suit;

- The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

- The duration of the patent and the term of the license;

- [The established profitability of the product made under the patent; its commercial success; and its current popularity[, taking into account only the value of the patented technology and not the value associated with incorporating the patented technology into the standard];[46]

- The utility and advantages of the patent over alternatives that could have been written into the standard instead of the patented technology in the period before the standard was adopted][47];

---

[46] G+: This added language is repetitive and confusing. The jury is already being instructed on apportionment of SEPs below. There is no reason to repeat this throughout the instructions. Further, if Samsung is found to infringe but the patents are found not to be essential, then this instruction is irrelevant.

Samsung: This clarification must be given with respect to the established profitability factor because the value associated with incorporating the patented technology into the standard cannot be taken into account regarding the profitability, commercial success, or popularity of a product made under the patent.  This language is taken verbatim from the final jury instructions in *Evolved Wireless v. Samsung*.  No. 2:21-cv-00033-JRG, Dkt. 254 (Final Jury Instructions) (E.D. Tex. Nov. 16, 2023).

[47] G+: Samsung previously did not oppose these instructions on Factors 8 and 9 and has waived its objection Dkt. 559-1 at 90. Regardless, as explained in G+'s proffer on this issue, Dkt. 569, in *Ericsson*, the Federal Circuit made clear that Factors 8-10 are still relevant; they simply need to be adjusted. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1206 (Fed. Cir. 2014). The proposed instructions properly include these adjustments. Dkt. 569 2-8.

Samsung: Factors 8 and 9 should not be given at all in a FRAND case.  *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1230 (Fed. Cir. 2014); *see also Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1305 (Fed. Cir. 2015) (citation omitted) (as the Federal Circuit explained that "*Ericsson* calls out factors 8[ and] 9[] as [] being irrelevant or misleading in cases involving SEPs."). To the extent these factors are given, Samsung's wording regarding Factor 8 is necessary to adjust this factor based on the FRAND encumbrances.

- The contribution of the patent to the technical capabilities of the standard and also the contribution of those relevant technical capabilities to the licensee and the licensee's products, taking into account only the value of the patented technology and not the value associated with incorporating the patented technology into the standard;

- [The extent to which the infringer has made use of the invention and any evidence probative of the value of that use;][48]

- The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions that are also covered by FRAND-committed patents.

- The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer, or the value of the patent's incorporation into a standard.

---

[48] G+: Samsung's contention that this instruction was only identified after revised jury instructions were submitted is incorrect. While this instruction was inadvertently omitted from the most recent version of the proposed jury instructions, it was included in the parties' Proposed Pre-Trial Order filed on October 9, 2023 without any objection from Samsung. Dkt. 345 at 109. Samsung has thus waived any such objection. Regardless Samsung's objections are without merit. *Georgia Pacific* factor 11 is not one of the factors that the Federal Circuit concluded was irrelevant in cases involving FRAND. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1230 (Fed. Cir. 2014) (identifying factors 4 and 5 as irrelevant). Regardless, Mr. Dell expressly stated in his report that he removed any consideration of the value attributed to the standardization of the patents Dkt. 233-1 at ¶242 ("I also recognize that the actual or anticipated commercial success of the inventions may be influenced by the assumed fact that they are required under certain telecommunication standards.")

Samsung: This factor is not relevant to the damage assessments here and should not be given in a FRAND case.  *See Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:21-cv-00033-JRG, Dkt. 254 (Final Jury Instructions) (E.D. Tex. Nov. 16, 2023) (omitting Factors 10 and 11).  Also, G+'s expert did not opine on this factor in the context of FRAND in his report.  Finally, this additional instruction was only identified to Samsung after revised jury instructions were sent to the Court, and Samsung objects to G+'s interjection of new, unnecessary disputes.

- The opinion testimony of qualified experts.

- The amount that a licensor (such as the [patent owner] [ZTE][49]) and a licensee (such as Samsung) would have agreed upon at the time the infringement began if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license taking into account the FRAND commitment and its purposes.

Now, no one of these factors is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may have heard these factors referred to during the trial as the *Georgia-Pacific* factors during testimony.

You may also consider any other factors which in your minds would have increased or decreased the royalty the infringer would have been willing to pay and that the patent owner would have been willing to accept, with both acting as normally prudent business people.

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.  If a license agreement is not sufficiently comparable, you may not rely on it in determining damages.  Whether a license agreement is comparable to the license under the hypothetical license scenario depends

---

[49] G+: G+'s proposed language is verbatim from *Evolved Wireless v. Samsung*.  There is no need to include ZTE by name 15 times in the instructions, as Samsung proposes.

Samsung: Both parties agree ZTE is party to the hypothetical negotiation.  It is more clear to state it.

on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope.  If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

Now, for purposes of determining a reasonable royalty, you may consider whether at the time of the hypothetical negotiation there were acceptable, non-infringing alternatives to taking a license [and, if not, what the next-best alternative was].[50]  To be an acceptable, non-infringing alternative, a product must have the advantages of the patented invention that were important to people who purchased an alleged infringer's product.  The party that advances a non-infringing

---

[50]  G+:  A non-infringing alternative must be acceptable to defeat a claim for lost profits.  But for determining a reasonable royalty, even where there is no acceptable and available non-infringing alternative, it is permissible to use the "next-best available alternative" to measure the benefits of the invention.  *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999) ('[O]nly by comparing the patented invention to its **next-best available alternative**(s) … can the court discern the market value of the patent owner's exclusive right, and therefore his expected profit or reward….').  Otherwise, a patentee like G+ would be punished by the fact that its invention has no acceptable alternatives, because it would not be permitted to measure technical damages by comparing to anything at all.  The Federal Circuit made clear in Grain Processing that such a comparison is proper and necessary for measuring the benefits of the invention.

The next-best alternative used to isolate the benefits of the invention is not the same as an acceptable non-infringing alternative which an infringer may argue it could have sold in place of the infringing product to avoid infringement.  If Samsung seeks to admit evidence that such an acceptable alternative exists, the burden is on Samsung to prove it satisfies the requirement for a non-infringing alternative.

Samsung: Authority: *Netlist, Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-00463-JRG, Final Jury Instructions, Dkt. No. 478 at 1326:6-10 (E.D. Tex. Apr. 21, 2023); *DataTreasury Corp. v. Wells Fargo & Co.*, 2011 U.S. Dist. LEXIS 118443, at *47 (E.D. Tex. Aug. 2, 2011); *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1298 (Fed. Cir. 2007); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 2011 U.S. Dist. LEXIS 5422, *10 (E.D. Tex. Jan. 20, 2011); *see also Spex SPEX Techs. v. Apricorn, Inc.*, 2020 U.S. Dist. LEXIS 50221, *7 (C.D. Cal. Jan. 21, 2020).  Samsung: This instruction was provided in the *Netlist v. Samsung* instructions. It is a necessary, proper instruction because it appropriately identifies that the party that advances a non-infringing burden bears the burden to show it was available.  G+'s cited *Grain Processing* case is not relevant to the instructions here, which relate to burdens when proffering non-infringing alternatives.  Also, G+ attempts to stretch *Grain Processing* beyond what it says.  *Grain Processing* simply states that comparing the patented invention to the best available alternative can help discern market value.  It does not state or suggest that "even where an alternative ***would not have been acceptable to Samsung***," such a comparison is still performed as part of a damages assessment.  To the contrary, a non-infringing alternative must be an acceptable one, as is reflected in the undisputed portion of the instruction.

alternative bears the burden to show by a preponderance of the evidence that this non-infringing alternative [was acceptable and][51] available at the time of the hypothetical negotiation and during the damages period.[52] [Even where an alternative would not have been acceptable to Samsung, comparing the patented solution to the next-best available alternative can indicate the market value of the patent owner's exclusive right.][53]

---

[51] G+: In the reasonable royalty context, there is no requirement that a party establish that an alternative is acceptable. *Salazar v. HTC Corp.*, No. 216CV01096JRGRSP, 2018 WL 2033709, at *3 (E.D. Tex. Mar. 28, 2018) ("acceptable non-infringing alternatives" don't play the same role in a reasonable-royalty determination. Rather, courts consider the next-best available alternative, which is not necessarily an "acceptable" alternative that precludes recovery of lost profits under Panduit").

Samsung: As is reflected in the undisputed part of the instruction, a non-infringing alternative must be both acceptable and available. *See also Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999) ("Without the infringing product, a rational would-be infringer is likely to offer an acceptable noninfringing alternative, if available, to compete with the patent owner rather than leave the market altogether."); *In re Encast, Inc.*, 96 Fed. App'x 710, 711 n.* (Fed. Cir. 2004) ("[U]nder Federal Circuit precedent evidence of the availability of an acceptable noninfringing alternative is relevant to a lost profits analysis, *see Grain Processing Corp. v. American Maize-Products*, 185 F.3d 1341, 1350-51 (Fed. Cir. 1999), and to a reasonable royalty analysis, *see Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571-72 (Fed. Cir. 1996)."). This language explains the burden of proof for all aspects of the non-infringement alternative.

[52] G+: Samsung's assertion that G+ has the burden to prove availability of non-infringing alternatives is incorrect. *Astrazeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1340-41 (Fed. Cir. 2015) makes clear that in a reasonable royalty case the infringer has burden to prove that it has non-infringing alternatives available to it. Further, Samsung's proposed instruction makes no sense. G+ is not arguing that there is an acceptable non-infringing alternatives. Rather, G+ is arguing that compared to the next best alternative Samsung could have implemented, the technical benefits of the patent can be derived.

Samsung: G+'s cited *Astrazeneca* case is distinguishable and does not allocate the burden of proof in a case analogous to this case. The party that advances a non-infringing alternative bears the burden to show it was available. *See* n.271 and n.272,, *supra*.

[53] G+: *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999) ('[O]nly by comparing the patented invention to its next-best available alternative(s) … can the court discern the market value of the patent owner's exclusive right, and therefore his expected profit or reward….'). A non-infringing alternative must be acceptable to defeat a claim for lost profits. But for determining a reasonable royalty, even where there is no acceptable and available non-infringing alternative, it is permissible to use the "next-best available alternative" to measure the benefits of the invention. Otherwise, a patentee like G+ would be punished by the fact that its invention has no acceptable alternatives, because it would not be permitted to measure technical damages by comparing to anything at all. The Federal Circuit made clear in Grain Processing that such a comparison is proper and necessary for measuring the benefits of the invention.

Samsung: G+ attempts to stretch *Grain Processing* beyond what it says. *Grain Processing* simply states that comparing the patented invention to the best available alternative can help discern market value. It

If you find that any of the asserted patents is essential to the 5G standard[,is infringed , and is not invalid][54] then a reasonable royalty must be fair, reasonable, and non-discriminatory.   In determining a reasonable royalty, the patented feature must be apportioned from all the unpatented features reflected in the standard. The patent owner's royalty must be premised on the value of the patented feature, not any value added by the standard's adoption of the patented technology.   [By referring to standard-essential patents, the Court is not instructing you that the asserted patents are actually essential to any standard.][55]

[A reasonable royalty is the minimum amount of compensation, but not the only form of compensation. You are permitted to consider all the benefits conferred to Samsung through its infringement of the asserted patents, including evidence of cost savings that Samsung achieved through the use of the asserted patents as well as evidence of additional profits and other benefits. A reasonable royalty can exceed the profits expected by the patentee.][56]

---

does not state or suggest that "even where an alternative *would not have been acceptable to Samsung*," such a comparison is still performed as part of a damages assessment.  To the contrary, a non-infringing alternative must be an acceptable one, as is reflected in the undisputed portion of the instruction.

[54] G+: this is duplicative and confusing.  The damages instructions begin by explaining this.

Samsung: This instruction is more clear and complete by expressly stating all perquisites to the determination of a reasonable royalty.

[55] G+: G+ objects to these additional instructions on FRAND as repetitive and unnecessary.

Samsung: Samsung: Authority: *TQ Delta, LLC v. CommScope Holding Co*., No. 2:21-cv-000310-JRG, Final Jury Instructions, Dkt. No. 534, Vol. 6, Tr. 67:22-68:3 (E.D. Tex. Mar. 30, 2023); Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 5.1.  Samsung: Samsung's language is directly from the FCBA model regarding a reasonable royalty analysis for SEPs.  It must be made clear to the jury that references to "standard essential patents" does not mean the patents have been determined to actually be standard essential.

[56] G+: *State Industries, Inc. v. Mor-Flo Industries, Inc*., 883 F.2d 1573, 1580, 12 U.S.P.Q.2d 1026 (Fed. Cir. 1989) ("The determination of a reasonable royalty … is based not on the infringer's profit margin, but on what a willing licensor and licensee would bargain for a hypothetical negotiations on the date infringement started. *There is no rule that a royalty be no higher than the infringer's net profit margin*[.]"); *United Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019).

Samsung: G+'s proposed instructions are unsupported, unnecessary, argumentative, and would mislead the jury about the scope of the case and the respective damages.  G+'s counsel attempted to inject this same

[You may also consider any evidence of royalty stacking.  "Royalty stacking" can arise when a standard implicates multiple patents, perhaps hundreds or thousands, which would cause a company that is forced to pay royalties for all such standard patents to pay royalties that "stack" on top of each other and may become excessive.][57]

## NEGOTIATION CONDUCT

As I explained at the beginning of the case, the parties both contend that the other breached obligations to negotiate in good faith. Both parties dispute the contention and contend that they negotiated in good faith.

Under French law, which defines the parties' obligations, you may consider various types of evidence to determine whether or not a party acted in good faith during negotiations.  For example, unreasonably delaying negotiations, voluntarily maintaining the other party in prolonged uncertainty, continuing to negotiate when the party has no intention of voluntarily entering into a contract, and making affirmative misrepresentations during negotiations are examples of actions that support a finding that a party failed to negotiate in good faith.  [Additionally, you may consider

language into the *Netlist v. Samsung* case.  The Court rejected this language.  It should be rejected again here.  Further, G+'s damages expert does not opine that there is any "evidence of cost savings that Samsung achieved through the use of the asserted patents."  And G+ is certainly not requesting more in reasonable royalty than Samsung's profits, and so there is no value of this instruction.  These instructions are prejudice Samsung by trying to generally encourage a higher damages amount.

[57] G+: There is no evidence of royalty stacking in this case or any alleged burden on Samsung, and the jury should not be instructed on royalty stacking absent evidence specific to the facts of this case. To the extent an instruction is given, reference to "hundreds or thousands" of patents being implicated by a standard and that royalties "may become excessive" is confusing and prejudicial, particularly when no such evidence exists in this case.  No such instruction has been given in past cases by this Court on this issue. *See, e.g.,* Optis Wireless Technology, LLC et al v. Huawei Technologies Co., Ltd. et al; 2-17-cv-00123 (Final Jury Instructions).

Samsung: Authority: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 5.1.  Samsung: This language is verbatim from the FCBA model instruction.  G+ argues Samsung does not have evidence of royalty stacking, but Samsung's damages expert provides paragraphs of analysis supporting his royalty stacking opinions.  *See* Dkt. No. 238 at 1-2 (citing ¶¶ 40-43, 137 of Mr. Meyer's opening report).  G+'s disagreement with Samsung's expert is not a legitimate basis to avoid this proper instruction.  G+'s motion to strike royalty stacking opinions of Mr. Meyer was denied.  Dkt. No. 548 at 2.

that a party filed one or more lawsuits when you assess the totality of the circumstances to determine whether each party acted in good faith.]⁵⁸ Where a patent is contributed to an adopted standard established by a standard setting organization, such contribution contractually burdens the patent to thereafter be licensed on fair, reasonable, and non-discriminatory terms. This is known as the FRAND obligation. This obligation is irrevocable, and thereafter runs with the

---

⁵⁸ G+: Samsung's proposed reference to filing of lawsuits is improper. The Court has already precluded Samsung from suggesting that G+'s suits were improper or violated ETSI rules. Dkt. 548 at 3 ("Samsung shall not suggest or imply that the act of filing cases in international courts and/or the act of seeking an injunction is improper or violative of ETSI Rules."). Moreover,  the Court was clear that neither party may reference foreign litigations at all without leave, so pre-instructing the jury on these issue would be highly prejudicial. Dkt. 552, Ex. D (11/30/23 PTC Tr.) at 197:20-24 ("I don't want either party to bring up any issue before this jury regarding either ZTE/Samsung license or litigation outside the United States, including the Brazil litigation, without clearing it with me first. These are two highly volatile issues[.]").

Additionally, there is no reason to provide a one-sided instruction focusing on a single alleged aspect, improperly giving more weight to it (and, even more inappropriately, suggesting that it is evidence of bad faith).

Samsung:  This instruction is based on the Court's guidance at the Pre-Trial Conference.  Dkt. No. 518 at 55:13-20 ("***That doesn't mean that the conduct and the decision to go and file the lawsuit is not something the jury can't take into account in determining within the totality of the circumstances whether on balance the Plaintiff has or has not breached its FRAND obligation or failed or not failed to act in good faith and fair dealing***. Those facts -- those lawsuits ere filed. Those are facts. We're not going to go into the merits of those lawsuits.") (emphasis added).  For example, a lawsuit filed for an improper purpose (*e.g.*, to increase pressure on negotiations) can be considered by the jury even if it legally permissible (whether under US law or foreign law) for the lawsuit to be filed.  *See* Rodermund Reb. Rep. at ¶ 37 (discussing Samsung having to incur costs to defend G+'s attempts to increase pressure and costs by filing lawsuits); Rodermund Op. Rep. at ¶¶ 84-88 (explaining the filing of lawsuits before negotiations began does not demonstrate good faith behavior); Molfessis Op. Rep. at ¶ 69 ("A SEP holder that would sue a standard implementer for patent infringement while avoiding or after failing to license patents that it contends are essential on FRAND terms would therefore be breaching its contractual obligations towards standards implementers.").  *See* Dkt. No. 575 at 4 ("The Court has made it clear that [the jury can consider] "the conduct and decision to go and file a lawsuit.").

G+'s French law expert testified in a sworn declaration that filing a lawsuit may violate a duty to act in good faith and result in compensable damages:

"8.  In case of the violation of a SEP holder's duty to negotiate in good faith towards a license, the would-be licensee is thus entitled under French law to damages covering all its losses caused by the SEP holder's bad faith, except for the loss of the benefits which were expected from the license contract.

9.  These compensable losses include the costs incurred while negotiating with a partner acting in bad faith.  ***They also include the costs of defending oneself against a suit brought by the other party in violation of its duty to act in good faith***.  In several cases, the *Cour de cassation*, France's highest court in civil matters, has accepted that a defendant had to compensate the plaintiff for the cost of paying people to repair or mitigate the harm caused by the former."  *Huawei Techs. Co. v. Samsung Elecs. Co.*, No. 16-cv-0287-WHO, Dkt. 439-29 (N.D. Cal. Jan. 22, 2019) at ¶¶ 8-9.

patent. However, if in negotiating for a license to a patent burdened by a FRAND obligation either the patent holder or the implementer of the adopted standard fails to act in good faith and thereby prevents a license from being granted, the other party's obligation to continue negotiations is suspended. This does not remove the burden of the FRAND obligation from the patent, but avoids obliging a party acting in good faith to continue negotiating with a party who fails to do so. If the bad faith actor ceases its bad faith and begins acting in good faith, the good faith negotiations must also resume.

Whether or not a license offer is FRAND will depend on the totality of the particular facts and circumstances existing during the negotiations and leading up to the license.  There is no fixed or required methodology for setting or calculating the terms of a FRAND license other than when all aspects have been considered, it is fair, reasonable, and non-discriminatory.

In a negotiation for a license to a patent where the patent has been contributed to an adopted standard (which patent is known as a standard essential patent), if either negotiating party (being either the patent holder or the implementer of the adopted standard) fails to negotiate in good faith and thereby prevents a license from being granted on fair reasonable and non-discriminatory terms, then the party who fails to act in good faith is liable to the other party for any reasonable damages which arise from such breach, including but not limited to attorney's fees and the cost of litigation.

During  this case the parties introduced licensing offers that G+ made to Samsung to license G+ patents. You are to consider these offers only, only, for the purpose of determining whether either party breached its commitment to negotiate in good faith.  You are not to consider these licensing offers to determine the amount of damages to be awarded if you find that the patents have been infringed and are valid. I'll instruct you later on the calculation of damages.

## DATE OF COMMENCEMENT OF PATENT DAMAGES

In calculating patent damages, you must determine when the damages began.  [Damages commence on the date that Samsung has both infringed and G+ notified Samsung of the alleged infringement of the asserted patents.][59]

With regard to the '130 patent, [Plaintiff can recover damages for Samsung's infringement dating back to the issuance of the patent][the damages period begins][60] on August 4, 2020.

With regard to the '443 patent, [Plaintiff can recover damages for Samsung's infringement dating back to the issuance of the patent]/[the damages period begins][61] on March 17, 2020.

---

[59] G+: this statement is legally incorrect, as actual notice is not required unless the defendant meets it burden of proving a marking defense. Here, Samsung did not plead or assert during discovery any defense of failure to mark.  On October 2, 2023 – more than three months after the end of fact discovery -  Samsung sent G+ a letter which purports to challenge G+'s compliance with the marking statute pursuant to 35 USC 287(a). However, Samsung never moved to supplement its pleadings or disclosures (and any such motion would have been clearly untimely).  Thus, no marking defense is part of this case. *Solas Oled Ltd. v. Samsung Elecs. Co.*, No. 2:21-CV-105-JRG-RSP, 2022 WL 1912873, at *2 (E.D. Tex. May 30, 2022) (holding Samsung did not timely assert a marking defense where allegedly unmarked products were not identified until the end of fact discovery); *Arctic Cat Inc. v. Bombardier Recreational Products Inc*., 876 F.3d 1350, 1365 (Fed. Cir. 2017 ("an alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287.").

Samsung: Authority: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 5.10; *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 950 F.3d 860, 864 (Fed. Cir. 2020) ("*Arctic Cat II*") ("Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device.") (quoting *Amsted Indus. Inc. v. Buckeye Steel Castings Co*., 24 F.3d 178, 187 (Fed. Cir. 1994)). This instruction is a simple way to state when the damages period begins.  G+'s motion to strike is moot. *See* Dkt. Nos. 354, 362.

[60] G+: G+'s instruction explains to the jury the reason for the different starting damages dates. These dates do not align with the grant dates of the patents.  To alleviate any potential confusion, a simple statement explains why the dates for each patent are what they are.

Samsung: Authority: *Netlist, Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-00463-JRG, Final Jury Instructions, Dkt. No. 478 at 1320:7-16 (E.D. Tex. Apr. 21, 2023).  Samsung: This instruction is a simple, clear, unbiased way to state when the damages period begins.  It tracks what was done in *Netlist v. Samsung*. G+'s language is unnecessary, unsupported, and prejudicial because it tries to inject that Samsung infringes.

[61] Samsung: Authority: *Netlist, Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-00463-JRG, Final Jury Instructions, Dkt. No. 478 at 1320:7-16 (E.D. Tex. Apr. 21, 2023). Samsung: This instruction is a simple, clear, unbiased way to state when the damages period begins.  It tracks what was done in *Netlist v. Samsung*. G+'s language is unnecessary, unsupported, and prejudicial because it tries to inject that Samsung infringes.

[[With regard to the '776 patent, [Plaintiff can recover damages for Samsung's infringement dating back to the first date of sale of Samsung's Accused Products]/[the damages period begins] in April 2019.]][62]

[[The parties dispute the date that the period of damages commence for the '776 patent.

If you find that a product has been sold or licensed, by a third party, that includes the claimed invention, you must determine whether that product has been "marked" with the patent number.[63]   "Marking" is placing either the word "patent" or the abbreviation "pat." with the patent's number on substantially all of the products that include the patented invention.  The marking requirement may also be satisfied by including with the product an internet address to a posting that associates the patented articles with the number of the applicable patents.

---

[62] G+: Samsung has waived this issue and G+'s instruction should be provided.

Samsung: ZTE licensed the asserted patents to a third party licensee who is required to mark its products to trigger the damages period to commence.  Samsung contends G+ has shown no such marking.  Therefore, the marking instruction below must be provided so that the jury can resolve the factual dispute between the parties about when the damages period begins.  G+'s proposed instruction that Plaintiff can recover damages for Samsung's infringement dating to April 2019 is incorrect.  To the extent this instruction is nonetheless provided, Samsung again reiterates that the more neutral "the damages period begins" language is more appropriate.  G+'s motion to strike is moot.  *See* Dkt. Nos. 354, 362.

[63] G+: this statement is legally incorrect, as Samsung did not plead or assert during discovery any defense of failure to mark.  On October 2, 2023 – more than three months after the end of fact discovery - Samsung sent G+ a letter which purports to challenge G+'s compliance with the marking statute pursuant to 35 USC 287(a).  However, Samsung never moved to supplement its pleadings or disclosures (and any such motion would have been clearly untimely).  Thus, no marking defense is part of this case.  *Solas Oled Ltd. v. Samsung Elecs. Co.*, No. 2:21-CV-105-JRG-RSP, 2022 WL 1912873, at *2 (E.D. Tex. May 30, 2022) (holding Samsung did not timely assert a marking defense where allegedly unmarked products were not identified until the end of fact discovery); *Arctic Cat Inc. v. Bombardier Recreational Products Inc*., 876 F.3d 1350, 1365 (Fed. Cir. 2017 ("an alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287.").

Samsung: ZTE licensed the asserted patents to a third party licensee who is required to mark its products to trigger the damages period to commence.  Samsung contends G+ has shown no such marking.  Therefore, the marking instruction below must be provided so that the jury can resolve the factual dispute between the parties about when the damages period begins.  G+'s proposed instruction that Plaintiff can recover damages for Samsung's infringement dating to April 2019 is incorrect.  To the extent this instruction is nonetheless provided, Samsung again reiterates that the more neutral "the damages period begins" language is more appropriate.  G+'s motion to strike is moot.  *See* Dkt. Nos. 354, 362.

G+ has the burden of establishing that it substantially complied with the marking requirement.  This means G+ must show that substantially all of the products made, offered for sale, or sold under the '776 patent have been marked and that reasonable efforts were made to ensure that licensees who made, offered for sale, or sold products under the '776 patent marked the products.[64]

If G+, ZTE, and any licensees have not marked practicing products with the patent number, or if any licensees were not required to mark practicing products, you must determine the date that Samsung received actual notice of the '776 patent and of the specific product alleged to infringe.  Actual notice means that G+ communicated to Samsung a specific charge of infringement of the '776 patent by a specific accused product or device.  The filing of the complaint in this case qualified as actual notice, so the damages period begins no later than the date the complaint was filed.  However, G+ claims to have provided actual notice prior to filing of the complaint, on September 8, 2021, when it sent a letter to Samsung.  G+ has the burden of establishing that it is more probable than not Samsung received notice of infringement on September 8, 2021.]][65]

---

[64] G+: this statement is legally incorrect, as Samsung did not plead or assert during discovery any defense of failure to mark, much less a defense based on the products listed in this proposed instruction.  On October 2, 2023 – more than three months after the end of fact discovery -  Samsung sent G+ a letter which purports to challenge G+'s compliance with the marking statute pursuant to 35 USC 287(a). However, Samsung never moved to supplement its pleadings or disclosures (and any such motion would have been clearly untimely). Thus, no marking defense is part of this case. *Solas Oled Ltd. v. Samsung Elecs. Co.*, No. 2:21-CV-105-JRG-RSP, 2022 WL 1912873, at *2 (E.D. Tex. May 30, 2022) (holding Samsung did not timely assert a marking defense where allegedly unmarked products were not identified until the end of fact discovery); *Arctic Cat Inc. v. Bombardier Recreational Products Inc*., 876 F.3d 1350, 1365 (Fed. Cir. 2017 ("an alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287.").

[65] G+: this statement is legally incorrect, as Samsung did not plead or assert during discovery any defense of failure to mark.  On October 2, 2023 – more than three months after the end of fact discovery -  Samsung sent G+ a letter which purports to challenge G+'s compliance with the marking statute pursuant to 35 USC 287(a). However, Samsung never moved to supplement its pleadings or disclosures (and any such motion would have been clearly untimely). Thus, no marking defense is part of this case. *Solas Oled Ltd. v. Samsung Elecs. Co.*, No. 2:21-CV-105-JRG-RSP, 2022 WL 1912873, at *2 (E.D. Tex. May 30, 2022) (holding Samsung did not timely assert a marking defense where allegedly unmarked products were not

[If you find that products sold under the '776 patent have been properly marked with the patent number, then the marking and notice requirements do not affect the damages period.][66]

Now, with those instructions, we're ready to hear closing arguments from the attorneys in this case.

## DELIBERATIONS

You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be controlled by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and partially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.  You have heard all of the evidence in this case.  You have now heard the argument of counsel.  The Court has now given you the charge in this case.  In just a few moments you're going to retire to the jury room, select one of your members to act as foreperson and begin performing the function for which you have been chosen and for which you have been impaneled in accordance with the oath that you took as jurors.

You will remember at the beginning of this trial the Court admonished you not to discuss this case with each other until it was submitted to you.

It is now time for you to begin your discussions, and you certainly may express an opinion from the evidence that you have heard and use any reasonable means to persuade other members

---

identified until the end of fact discovery); *Arctic Cat Inc. v. Bombardier Recreational Products Inc*., 876 F.3d 1350, 1365 (Fed. Cir. 2017 ("an alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287.").

[66] G+: Samsung has waived this issue and G+'s instruction should be provided.

Samsung: <u>Authority</u>: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 5.10.  Samsung: This language is taken from the FCBA model instruction.  If G+ establishes the marking and notice requirements were met, the damages period is not affected.  G+'s motion to strike is moot.  *See* Dkt. Nos. 354, 362.

of the jury to your convictions and to your honest opinion.  You are to reach a verdict which speaks the truth and which does justice to all parties without favor, bias or prejudice in any particular, either for or against any party to this lawsuit.

In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous, but do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinions of your fellow jurors or for the mere purpose of returning a verdict.

Answer the questions in the verdict form based on the facts as you find them to be, following the instructions that the Court has given you on the law. Do not decide who you think should win this case and then answer the questions accordingly.  Again, I remind you, your answers and your verdict in this case must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stages in life.

The law recognizes no distinction between types of parties. All corporations, all partnerships, all other organizations stand equal before the law, regardless of their size, regardless of who owns them, and they are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you'll each have a copy of these written jury instructions to take with you.  If you desire, during your deliberations, to review any of the exhibits which the Court has admitted into evidence during the trial, you should advise me by written note delivered to the Court Security Officer. He will bring me your note, and then I will send you that exhibit or those exhibits.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence.  Select your Foreperson

and conduct your deliberations.  If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.  After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you've taken over the course of the trial are aids to your memory only. If your memory should differ from your notes, then you should rely on your memory and not your notes.  The notes are not evidence.  Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time during your deliberations, you should give a written message or a question to the Court Security Officer who will bring it to me. I'll then respond as promptly as possible, either in writing or by having you brought back into the courtroom where I can address you orally.  I will always first disclose to the attorneys in the case your question and my response before I answer your question.

After you have reached your verdict and I have discharged you from your duty as jurors, you need to understand that you are not required to talk with anyone about your service in this case.  By the same token, after I have discharged you from your duty as jurors, you are completely free to discuss your service as jurors in this case with anyone that you choose to.  The choice is yours.

You should understand the practice in this Court is that after you are discharged, if you wish to talk about your service as jurors with any of the attorneys in the case, it's up to you to initiate a conversation with them. They are not permitted to initiate a conversation with you.

All right. I will now hand eight copies of these final jury instructions and one clean copy of the verdict form to the Court Security Officer to deliver to the jury in the jury room.

Ladies and Gentlemen of the Jury, you may now retire to the jury room to deliberate. We await your verdict.