IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| G+ COMMUNICATIONS, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:22-CV-00078-JRG |
| | § | |
| SAMSUNG ELECTRONICS CO. LTD., SAMSUNG ELECTRONICS AMERICA, INC., | § § § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

The Court issues this Memorandum Opinion and Order *sua sponte*. For the reasons set forth herein, the Court **ORDERS** a new trial on damages as to U.S. Patent Nos. 8,761,776 (the "'776 Patent") and 10,736,130 (the "'130 Patent").

**II.   BACKGROUND**

On January 19, 2024, the Court empaneled a jury and commenced trial. (*See* Dkt. No. 597.) Plaintiff G+ Communications, LLC ("G+") asserted that Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung") infringed Claims 1 and 2 of the '776 Patent, Claim 20 of the '130 Patent, and Claim 10 of U.S. Patent No. 10,594,443 (the "'443 Patent"). (Dkt. No. 560 at 1.) Samsung also asserted that all three asserted patents were invalid under 35 U.S.C. § 101. (Dkt. No. 563 at 1.) The parties rested after five days of evidence. (*See* Dkt. No. 604 at 1319:5–10.)

On January 26, 2024, the jury returned its unanimous verdict. (Dkt. No. 585 at 11.) The jury found that Claim 1 and/or Claim 2 of the '776 Patent and Claim 1 of the '130 Patent were

infringed. (*Id.* at 4.) It also found that Claim 10 of the '443 Patent was not infringed. (*Id.*) Additionally, the jury found that Claim 10 of the '443 Patent was invalid under 35 U.S.C. § 101, as being directed to a concept that is well-known, routine, and conventional given that the Court had previously found it was primarily directed towards an abstract concept. (*See id.* at 4.)

Consistent with the Court's instructions, the jury awarded damages for the infringement of the '776 Patent and the '130 Patent, but not the '443 Patent. (*Id.* at 7.) The jury awarded $45,000,000.00 for the infringement of the '776 Patent, and $22,500,000.00 for the infringement of the '130 Patent. (*Id.*) Importantly, the jury also indicated that these amounts were awarded as a running royalty, as opposed to a lump sum. (*Id.* at 8.)

### III. LEGAL STANDARD

Rule 59(d) provides that "the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion." "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). Indeed, Rule 59 "confirms the trial court's historic power to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict." *Id.* at 612–13.

### IV. ANALYSIS

The Court is persuaded that a new trial should be granted on the issue of damages for the '776 and '130 Patents because the Court has material concerns about jury confusion regarding the form of the reasonable royalty awarded herein—*i.e.*, that the jury may have awarded damages in the form of a running royalty when it intended to award them as a lump sum.

Damages in a patent case generally take the form of a reasonable royalty designated as either: a running royalty or a lump sum royalty.[1] During this trial neither side addressed whether a reasonable royalty award should be a running royalty.[2] Only upon the Court's suggestion after the close of the evidence that some clarification was necessary for the benefit of the jury, did the parties agree that the jury should decide and specify in their verdict whether any damages awarded would be a running royalty or a lump sum. (*See* Dkt. No. 585 at 8 (jury verdict form asking jury to decide the form of the reasonable royalty); Dkt. No. 592 at 25:22–25 (counsel for G+ and Samsung stating that they have no objection to a question in the verdict form regarding the form of the royalty).) Accordingly, the Court submitted that particular question to the jury as part of the verdict form.

Had the Court not raised this issue, and had the jury awarded a reasonable royalty without specifying whether it was a running royalty or a lump sum, as the parties initially proposed, it is a given that Plaintiff would thereafter take the position that it was a running royalty and seek entry of a forward looking royalty at an enhanced rate for future infringing sales, while it is equally a given that Defendants would insist the reasonable royalty was a lump sum effectively giving them a fully paid-up license for the remaining life of the patents. Though the parties never raised this in their proposed charge or verdict form, the Court was unwilling to be silent in the face of such a guaranteed "train wreck".

---

[1] "In a standard running royalty license, the amount of money payable by the licensee to the patentee is tied directly to how often the licensed invention is later used or incorporated into products by the licensee." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1326 (Fed. Cir. 2009). On the other hand,

> [a] lump-sum license "benefits the patentholder in that it enables the company to raise a substantial amount of cash quickly and benefits the target [*i.e.*, the licensee] by capping its liability and giving it the ability, usually for the remainder of the patent term, to actually use the patented technology in its own products without any further expenditure."

*Id.* (quoting Richard F. Cauley, *Winning the Patent Damages Case* 47 (2009)).

[2] Plaintiff G+ rarely but occasionally sprinkled the phrase "lump sum" into its evidence without meaningful explanation.

However, because of counsel's failure to develop and educate the jury about these very different concepts during the trial, the jury's verdict on damages is not sufficiently reliable. The words "running royalty" were spoken in front of the jury exactly four times prior to their deliberations, and these four instances came from the Court in its final instructions, never from the parties. (Dkt. No. 592 at 81:12–82:8.[3] *See* Dkt. Nos. 597, 598, 600, 602, 604.) Importantly, neither party addressed this issue in their closing arguments.[4] (*See* Dkt. No. 592.) Counsel for G+ and Samsung equally failed throughout the trial to explain to the jury what constituted a running royalty or how it differed from a lump sum. Further, neither party's damages expert substantially addressed this matter in their testimony. In fact, had the Court not raised this during the charge conference, after the evidence had closed, both sides would have been silent on this key issue throughout the entirety of the trial, guaranteeing the train wreck described above.

Not only did the parties fail to present these concepts to the jury, they also contributed to the likely confusion on the jury's part. During the evidence regarding damages, Samsung's counsel cross-examined G+'s damages expert about how a sizeable portion of the damages G+ was seeking

---

[3] The Court's instruction on this topic was:

> And you may have heard references throughout the trial as to whether G+ should be entitled to a running royalty or a lump-sum royalty. If you find that G+ is entitled to damages, you must decide whether the parties would have agreed to a running royalty or a fully paid-up lump-sum royalty at the time of the hypothetical negotiation. A running royalty, ladies and gentlemen, is a fee paid for the right to use the patent that is paid for each unit of the infringing products that have been sold. If there are additional units sold in the future, any damages for these [sales] will not be addressed by you. If, however, you decide that a running royalty is appropriate, then the damages you award, if any, should reflect the total amount necessary to compensate G+ for Samsung's past infringement. However, a lump-sump royalty is when the infringer pays a single price for a license covering both past and future infringing sales. If you decide that a lump-sum is appropriate, then the damages you award, if any, should reflect the total amount necessary to compensate G+ for Samsung's past and future infringement.

(Dkt. No. 592 at 81:12–82:8.)

[4] The closest the parties came to addressing this during closing was when counsel for Samsung stated that "they are asking us to pay out in the future." (Dkt. No. 592 at 135:14–15.) This is far from sufficient to explain to the jury the difference between a lump sum and a running royalty.

were in fact future damages which had not yet accrued.[5] Viewing this matter with the clarity of hindsight, the Court is materially concerned that the brief instructions given without the benefit of counsel's development or further discussion during the presentation of evidence and closing arguments might well have (and probably did) lead the jury to believe that the award of a running royalty would avoid penalizing Samsung with these highlighted future damages—when in fact, this is exactly what their verdict accomplished.[6] The truth is that this important concept was all but ignored by counsel for both sides and their respective experts.

---

[5] Mr. Dell, G+'s damages expert, testified on cross-examination as follows:

> Q. And, in fact, sir, this $237.3 million number that you have here, isn't it fair that the majority of that number that you presented to the members of the jury, that's not for what's happened in the past, that's for what happens in the future in 2037. Isn't that right?
> A. I would say a portion of it does happen in the future. In terms of what proportion, I haven't done the calculation, but it would be more than half, I would guess.
> Q. Yeah, it wouldn't surprise you if it was actually more than half of the number – you are telling the jurors to award in this case more than half the $237.3 million is for stuff that hasn't happened yet. Isn't that right?
> A. Technically, I would agree in a lump-sum calculation there are royalties for future periods.
> Q. And, sir, you know, we had discussion earlier in this courtroom about Matthew, Mark, Luke, and John, and sort of related to that, sir, I think you and I can agree there's only one being in the universe that's going to know what is going to happen in 2038 and it ain't you and me. Isn't that right?
> A. I don't claim to know what's going to happen in the future. I'll agree with that.
> Q. And, in fact, sir, you have no idea what's going to happen to Samsung in 2037. Isn't that right?
> A. Not specifically.
> Q. So you're telling the members of the jury that most of the award that you want them to write in the box, most of this is about stuff that happens two weeks from now, two months from now, two years from now, over a decade from now. Isn't that right?
> A. That's correct.
> Q. And you think that's fair and reasonable, and Samsung in the hypothetical negotiation is going to go ZTE, yes, 2037, we have no idea we're going to be around then, but here's your check. That is what Samsung is going to conclude in the hypothetical negotiation. Isn't that right, sir?
> A. That is correct.

(Dkt. No. 600 at 852:20–854:5.)

[6] The instructions made clear that a running royalty compensates for "past infringement" and a lump sum covers "past and future infringing sales." (Dkt. No. 592 at 81:23–82:4.) However, a thirty-second explanation from either side during closing would have made it clear that a running royalty would <u>not</u> have avoided the unaccrued damages stressed by Samsung in its cross examination of G+'s damages expert. So while it could be argued that Samsung largely brought this result upon themselves, the Court's responsibility is to see that an accurate verdict is produced, even where one party's conduct may have contributed to their own adverse result.

An examination of the remainder of the jury's verdict on damages only compounds the Court's concern as to the reliability of the entire damages award. The jury awarded a $22.5MM running royalty for Samsung's infringement of the '130 Patent. (Dkt. No. 585 at 7.) The evidence adduced at trial regarding the number of accused units through trial, the royalty base, is "48 million." (Dkt. No. 604 at 1171:7–13.) This equates to a per-unit royalty rate of 46.8 cents per unit, which exceeds Plaintiff's highest requested per-unit rate of 35 cents. (*See* Dkt. No. 602 at 879:19–21.) For Samsung's infringement of the ''776 Patent, the jury awarded a $45MM running royalty. (Dkt. No. 585 at 7.) The evidence for the units accused of infringing the '776 Patent is also "48 million." (Dkt. No. 600 at 747:6–13.) This equates to a per-unit royalty of 93.4 cents, which is less than Plaintiff's highest requested per-unit rate of $1.00. (*See* Dkt. No. 602 at 879:16–18.) To put a fine point on it, the damages awarded for the '130 Patent exceeds any evidentiary support, while the damages awarded for the '776 Patent does not. This only adds support to the Court's conclusion that a new trial on damages is necessary.

This situation also highlights the critical role of the trial judge—who is in the room, hears the same testimony, sees the same exhibits and demonstratives, and is equally immersed with counsel and the jury in the ongoing nonverbal communications and nuance of the trial process. Sometimes, in the heat of trial, counsel for both parties fail to present evidence on a critical element to the jury. In that case, the trial judge must be able to sound the alarm. Here the alarm was sounded, before the charge was given and before either side presented its closing arguments. Despite such an alarm, the parties did not address this serious risk of jury confusion. The resulting circumstances described above require a new trial on damages.

## V.  CONCLUSION

For the foregoing reasons, the Court **ORDERS** a new trial on the issues of damages for the '776 and '130 Patents. Such new trial shall address all issues related to a damages award, including but not limited to whether such damages, in the form of a reasonably royalty, are to be structured as a running royalty or a lump sum. This Order does not disturb the jury verdict as to the infringement, invalidity, or any other non-damages result. Further, the Court **specially sets** the retrial of damages before a jury to be empaneled at **9:00 a.m. CT** on **April 15, 2024** with all prior pre-trial rulings from the earlier trial to be carried forward for this new damages trial.

**So ORDERED and SIGNED this 1st day of March, 2024.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE