# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| G+ COMMUNICATIONS, LLC,<br><br>          Plaintiff,<br><br>   v.<br><br>SAMSUNG ELECTRONICS CO., LTD.;<br>SAMSUNG ELECTRONICS AMERICA,<br>INC.,<br><br>         Defendants. | Case No. 2:22-cv-00078-JRG<br><br>**JURY TRIAL DEMANDED** |

## PROPOSED JURY INSTRUCTIONS[1]

---

[1] G+ and Samsung have both used the prior trial instruction as a baseline, but have each modified to account for the prior trial and to preserve objections. Submissions which are agreed to by both G+ and Samsung are not highlighted. Submissions proposed by G+ that are not agreed to by Samsung are highlighted in green. Submissions proposed by Samsung that are not agreed to by G+ are highlighted in yellow. The parties have entered their objections, explanations, citations, and commentary in footnotes only. The parties reserve their respective rights to further object or propose new instructions based on their pending motions or further development at trial.

The parties continue to meet and confer regarding final jury instruction and will provide proposed instructions upon the Court's request.

# JURY CHARGE

## INTRODUCTION

You've each been sworn as the jurors in this case, and as the jury, you are the sole judges of the facts. And as such, you will decide and determine what all the facts are in this case.

As the Judge, I will give you instructions on the law. I will decide any questions of law that arise over the course of the trial, and handle all matters related to evidence and procedure. I'm also responsible for managing the flow of the evidence in the course of the trial and maintaining the decorum in the courtroom.

At the end of the evidence, I'll give you detailed instructions about the law to apply in deciding this case. And at that time, I'll give you a list of questions that you are then to answer.

This list of questions is called the verdict form, and your answers to those questions will need to be unanimous, and those unanimous answers to those questions will constitute your verdict in this case.

Now I want to briefly tell you what the case is about. This case involves a dispute regarding two separate United States patents. I know you've each seen the patent video produced by the Federal Judicial Center, but I need to give you additional instructions now and on the record.

Patents, ladies and gentlemen, are granted or denied by the United States Patent and Trademark Office. You'll sometimes hear that simply called the PTO for short, you'll also sometimes hear it simply called the Patent Office for short. But those references relate to the United States Patent and Trademark Office, which is an agency of the United States government. It's actually part of the Department of Commerce in the Executive Branch of our government.

---

PROPOSED JURY INSTRUCTIONS

Now, a valid United States patent gives the patentholder the right for up to 20 years from the date the patent application is filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patentholder's permission.

A patent is a form of property referred to as intellectual property. And like other forms of property, a patent can be bought or sold.

The process of obtaining a patent from the PTO is called patent prosecution. To obtain a patent, one must first file an application with the PTO. The PTO is an agency of the United States government, and it employs trained examiners who review applications for patents.  [If an inventor files an application in a foreign country and wants to rely on that application before the U.S. PTO, then he may do so as long as he complies with the Patent Cooperation Treaty and U.S. PTO rules, such as translating the application into English and paying a fee.  Neither the PTO nor U.S. Government has to give permission for a foreign inventor to file a patent application in the United States.][2]

---

[2] G+: Samsung's proposed instruction is incorrect.  For an inventor to file a patent application for national patentability examination in the USPTO, the applicant must receive permission from the USPTO to do so. See, 35 U.S.C. § 371; 37 C.F.R. § 1.495 ("Entering the national stage in the United States of America").  The USPTO must provide a notice of acceptance before such an examination may proceed.

Samsung:  This instruction is necessary given GComm's legally erroneous argument and testimony that the ZTE inventors required permission of the U.S. Government to file the applications that led to the patents-in-suit.  *See, e.g.*, Trial Tr. at 174:7-9;  *id.* at 175:22-176:1 ("ZTE sought formal permission from the United States government to file for and obtain patent rights in the United States, and this is an example of that formal permission. The United States Patent Office recognized the incredible importance of these patents.");  *id.* at 225:11-21; Trial Tr. (Day 6) at 92:18-21.  The PTO grants national stage acceptance "when the applicant has filed the documents and fees required by 35 U.S.C. § 371(c)(1) and (c)(2) within the time period set in § 1.495."  37 C.F.R. § 1.491.  GComm provides no reason why Samsung's instruction is false.  Instead, it is false to suggest that the U.S. patent office "recognized the incredible importance of these patents" simply because the procedural rules of the PTO for national stage entry were met.  Authority: 35 U.S.C. § 371; 37 C.F.R. § 1.495.

Now, an application submitted to the PTO includes within it something called a specification. The specification contains a written description of the claimed invention, telling what the invention is, how it works, how to make it, and how to use it. The specification concludes or ends with one or more numbered sentences, and it is those numbered sentences that we refer to as the patent claims.

And when a patent is granted by the United States Patent and Trademark Office, the claims define the boundaries of its protection and it's the claims that give notice to the public of those boundaries.

[Now, after the applicant files their application with the PTO, the PTO assigns an examiner, and the examiner reviews the application to determine whether or not the claims presented are patentable--that is, appropriate for patent protection, and whether or not the specification adequately describes the claimed invention.][3]

This process of evaluating patent applications may go back and forth between the examiner and the applicant for some time until the examiner is ultimately satisfied that the application meets the requirements for a patent; or in the alternative, if the examiner ultimately concludes that the patent application should be rejected, then no patent is issued.

## OVERVIEW OF THE PARTIES

---

[3] G+: Samsung's proposed instruction regarding whether or not the invention is patentable and whether the specification complied with the written description requirement is not relevant to this case, where validity is established.

Samsung: This language was read in the prior trial.  Trial Tr. at 141:20-25.  It provides a high level overview of how the process of evaluating patent applications works (as referred to in the next instruction) and is not prejudicial to either party.

Now, to help you follow the evidence, I'm going to give you a brief summary of the positions of the competing parties.

The party that brings a lawsuit, that initiates a lawsuit, is called the Plaintiff, and in this case, the Plaintiff is G+ Communications, LLC. You're also going to hear them [referred to throughout trial simply as either Plaintiff or G+] [probably called GComm, you may hear them called G+,][4] but all of those references are to the same entity, which is the patent owner in this case.  You may also hear reference to a company called ZTE Corporation, or ZTE.  ZTE was the owner of the asserted patents at the time of the hypothetical negotiation that you'll hear about in this case.  ZTE is not a party to this litigation.

The individual or the entity against which a lawsuit is filed is called the defendant. In this case we have two Defendants. They are related companies. They are Samsung Electronics Company, Ltd., and Samsung Electronics America, Inc. And you're going to hear these two parties, these two Defendants, referred to throughout the case collectively simply as the Defendants. You'll hear them called the Defendants. That means both of those entities. You'll also hear them called collectively again Samsung. So if you hear Samsung or Defendants, it means these two entities that I've identified for you.

---

[4] G+: G+ objects to Samsung using a term that G+ does not associate with to refer to G+ during trial, and particularly to endorsing the incorrect name by stating that the plaintiff will "probably be called GComm."

Samsung:  This instruction matches what was given in the previous trial.  *See* Trial Tr. at 144:6-9.  It clarifies what terms may be used to refer to the Plaintiff.  Mr. Pitcock, the only individual ever associated with GComm, testified that he is fine with calling his company GComm.  Pitcock Tr. at 17:19-24 ("Q: [B]y the way, do you call it G+ or GComm? Are both acceptable?  A: You can call it whatever you like, I know what mean, but I call it personally G+ Communications. But you can call it whatever you like and I know what you're talking about.").  Both parties and witnesses have used "GComm" to refer to the Plaintiff all throughout this case, including in depositions and expert reports.  GComm's attorney service email moniker is titled "#**GComm**-Samsung."

## PATENTS-IN-SUIT

As I've already mentioned, there are two United States patents that are at issue in this case and owned by G+.

Patents are commonly referred to by their last three digits. So in this case, Patent No. 8,761,776 is going to be referred to as the '776 Patent. You might hear it called the '776 Patent.

Patent No. 10,736,130 is going to be called the '130 Patent. You might hear it called the '130 Patent.

Now these patents collectively may be referred to at various times in the case as the asserted patents. You may also hear them referred to collectively as the patents-in-suit. These patents generally relate to 5G technology.

[It's already been decided that certain Samsung products infringe one or more claims of the asserted patents. As a result, this trial is solely about setting a fair and reasonable compensation for that infringement. This trial will only be concerned with this issue. Your job as the jury is to determine the amount of monetary damages to be awarded to the Plaintiff as compensation for Samsung's previously established infringement.][5]

---

[5] G+: This instruction comes directly from damages retrials in past cases in this Court.  G+ incorporates G+'s opposition to Samsung's motion to modify preliminary jury instructions (Dkt. 620, citing *Optis Wireless v. Apple*, 2:19-cv-66-JRG (August 10, 2021) at 112:5-7 ).

Samsung: The preliminary and final jury instructions should focus solely on the damages issue in dispute and not discuss the prior trial or any jury findings.  *See* Dkt. No. 614.  Samsung's position is further detailed below, in support of its alternate proposal.

---

[Now, during the trial you may hear the Patents-in-Suit, the two patents I just mentioned, being referred to as standard essential patents, or SEPs.[6]

A standard is set and maintained by a global body to ensure that certain processes and devices operate and work in the same way anywhere in the world. For example, if you have a cell phone that works in the United States, and if you fly across the Atlantic Ocean to London, England, when you get off of the airplane in London, England, the same cell phone works there just like it did in the United States. Patents or patent applications may be declared by their owners during the standards setting process as containing technology that is or may become standard essential.

The organization responsible for administering the 5G standard, called ETSI, defines the standard for whether a patent is actually essential. Under the ETSI standard, an essential patent as a patent for which it is not possible on technical grounds, taking into account normal technical practice and the state of the art generally, to operate equipment or methods which comply with the 5G standard without infringing that patent.][7]

[Now, the 5G technology in the asserted patents is governed by certain technical standards. A standard, ladies and gentlemen, is a uniform design for a product. Companies make devices in

---

[6] G+: G+ objects to any discussion of FRAND or SEPs during trial.  *See,* Dkt. 612.  G+ has included conditional jury instructions on these matters to the extent the Court determines these issues remain part of the case.

Samsung: The patents are FRAND-encumbered, and the jury must be instructed about SEPs and FRAND.  *See* Dkt. No. 619 at 1-12.

[7] G+:  From *Optis Wireless v. Apple*, 2:19-CV-066-JRG (Aug. 10, 2021) (preliminary jury instructions) at 112:15-113:21.

Samsung: Samsung objects to GComm's proposed instructions, instead proposing that the Court give the same instructions introducing the jury to standards, standard essential patents, and FRAND from the previous trial as shown in the competing proposal below.  There is no reason to deviate from the instructions on the background of SEPs and FRAND given at the prior trial.

accordance with the same standard so that the devices made by different manufacturers can work together in the same ecosystem.

These standards are set by what are known as standard-setting organizations, sometimes called SSOs. A standard-setting organization in this case is the Third Generation Partnership Project, which you'll probably hear referred to for short as 3GPP, the Third Generation Partnership Project, 3GPP.

Now, that is an organization that develops standards such as 5G, and it's comprised of a number of organizational partners, including the European Telecommunication Standards Institute. And you will hear this entity, the European Telecommunication Standards Institute, referred to simply for short as ETSI, and it's going to be pronounced ETSI. So if you hear ETSI, that means the European Telecommunication Standards Institute. And this agency, this entity, ETSI, oversees the development of standards related to information and communications technologies.

Now, if a patent implements technology that is covered by a standard and it would not be technically possible to implement the standard without infringing the patent, then the patent is called a standard essential patent. And you'll sometimes hear standard essential patent referred to by shorthand as S-E-P. Some people might call it SEP. I generally hear it referred to as S-E-P, standard essential patent.

If a company makes a device that implements a standard that is covered by a standard essential patent, a SEP, then that company may need to obtain a license to use that technology.

PROPOSED JURY INSTRUCTIONS

Now, G+ is bound by a commitment to ETSI that it will license standard essential patents to other parties on a fair, reasonable, and non-discriminatory basis. This is known as FRAND, F-R-A-N-D, fair, reasonable, and non-discriminatory.][8]

[In this trial, you are called on to determine what a reasonable royalty is for the use of GComm's patents. Specifically, the royalty you determine is appropriate in this case must be fair, reasonable, and nondiscriminatory. More simply, we refer to this as "FRAND," which is an acronym often used in these cases for fair, reasonable, and nondiscriminatory. A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. To determine a FRAND royalty, you must consider the royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when infringement first began, where both parties must assume that the patents are valid and infringed. As such, in this trial, in determining what the appropriate FRAND royalty is, you must assume that the patents are valid and infringed. I will give you more information on how to determine a FRAND royalty later in the case.][9]

---

[8] G+: It is inappropriate to ask the jury to merely assume infringement, as the patents were found actually infringed and not invalid. This instruction is not correct for purposes of this trial because Samsung did not argue that if the patents were infringed then the patents are essential, , and has never admitted that the patents are essential. Such a finding was not necessarily part of the prior verdict, as G+ independently presented evidence based on Samsung's code and documentations; a FRAND obligation applies only if patents are or become, and remain, actually essential. *See,* Dkt. 612.

Samsung:  This instruction matches what was given in the previous trial.  *See* Trial Tr. at 146:21-148:8. It is settled law of the case that a FRAND obligation attached when the patents are declared essential to ETSI.  *See* Dkt. No. 619 at 5-11.  There is no reason to change the FRAND damages instructions from the prior case.  The jury must be instructed about the basics of SEPs and FRAND for GComm's FRAND-encumbered patents, and there is no reason to deviate from the instructions given in the prior trial on these topics.

[9] G+: G+'s proposed instruction regarding the jury's prior verdict comes from damages retrials in past cases in this Court and should be given, as explained in G+'s opposition to Samsung's motion to modify preliminary jury instructions (Dkt. 620).

---

PROPOSED JURY INSTRUCTIONS

## OVERVIEW OF APPLICABLE LAW

Now, [your job in this case is to decide the amount of money damages to be awarded to the Plaintiff as compensation for the infringement of the two Patents-in-Suit.][10]  My job in this case is to tell you what the law is, handle rulings on evidence and procedure, and to oversee the trial as efficiently and effectively as possible.  Now, in deciding the issues that are before you, you will be asked to consider specific legal rules relating to calculation of damages, and I'll give you an overview of those rules now, and then at the conclusion of the case I'll give you more detailed instructions.

A damages award, ladies and gentlemen, must be adequate to compensate the patentholder for the infringement, and in no event may a damage award be less than what the patentholder would have received had it been paid a reasonable royalty for the use of its patents.  [Additionally, if the G+ patents are essential, then[11] the ETSI standard requires the royalty on the asserted patents

---

Samsung: The preliminary and final jury instructions should focus solely on the damages issue in dispute and not discuss the prior trial or any jury findings.  Samsung's pending motion includes the jury instruction language here and explains why referring to the prior trial or any results thereof (i.e., Samsung was found to infringe) is unwarranted and prejudicial to Samsung.  *See* Dkt. No. 614.  The jury should be told simply to assume validity and infringement for the damages assessment, which is entirely consistent with how the hypothetical negotiation is assessed.

[10] G+: From *Optis Wireless v. Apple*, 2:19-CV-066-JRG (Aug. 10, 2021) (preliminary jury instructions) at 114:18-23.

Samsung: Both parties have alternate proposals above that instruct the jury what their job is in this case.  This repetitive instruction is unwarranted.  Samsung also objects to the language about Samsung's "infringement" for the reasons stated above.

[11] G+: G+: If Samsung seeks to argue that a FRAND obligation applies, then Samsung bears the burden of establishing that the patents are actually standard essential.

Samsung: The jury is not deciding whether the patents are essential, rendering this instruction confusing and inappropriate.  Also, GComm's obligation to license the patents on FRAND terms applies whether or not the patents are actually standard essential, as this Court instructed in the first trial.  *See* Trial Tr. (Day 6) at 82:23-83:1: ("You should determine a FRAND royalty in the case, whether or not you find that the Patents-in-Suit are standard essential . . . .").  Samsung incorporates its positions detailed more extensively in its briefing opposing GComm's allegation that its patents are not FRAND-encumbered.

to be on fair, reasonable, and nondiscriminatory, sometimes abbreviated FRAND, terms and conditions[, and that G+ be adequately and fairly rewarded for the use of its patents][12].  However, damages are meant to compensate the patent holder and they are not meant to punish the Defendants and  you may not include in any damages award an additional amount as a fine or a penalty above what is necessary to fully compensate the patent holder for the infringement.

Also, damages cannot be speculative, and the Plaintiff G+ must prove the amount of its damages to you for this infringement by a preponderance of the evidence.

I'll give you more detailed instructions about the calculation of damages at the conclusion of the trial, including giving you specific instructions with regard to the calculation of a reasonable royalty.

### CONDUCT OF JURY

Now, ladies and gentlemen, you're going to be hearing from a number of witnesses during the trial of this case, and I want you to keep an open mind while you're listening to the evidence and not decide any of the facts until you've heard all of the evidence from all of the witnesses.

---

*See* Dkt. No. 619 at 1-12.  The patents are FRAND-encumbered based on the settled law of the case, as discussed above.  GComm's language should not be included.

[12] G+:  Federal Circuit binding precedent requires that jury instructions on a FRAND commitment match the actual language of the commitment.  This is the relevant language from the standard. *See,* Dkt. 612.

Samsung: This instruction was not provided in this first trial.  It is prejudicial to Samsung to suggest that GComm should be "rewarded" for the use of its patents.  This section already states that the damages award must be adequate to compensate the patentholder and should not be less than a reasonable royalty.  The statement in this instruction defining FRAND is accurate, but is unnecessarily repetitive given that the instructions above already inform the jury that the royalty here must be FRAND.

And this is important. While the witnesses are testifying, remember that You, the ladies and gentlemen of the jury, will have to decide and determine the degree of credibility and believability to allocate to each witness and the testimony and evidence that they give.

So while the various witnesses are testifying in this case, you should be asking yourselves things like this: Does the witness impress you as being truthful? Does he or she have a reason not to tell the truth? Does he or she have any personal interest in the outcome of the case? Does the witness seem to have a good memory? Did he or she have an opportunity and ability to observe accurately the things that they've testified about? Does the witness appear to understand the questions clearly and answer them directly? And, of course, does the witness' testimony differ from the testimony of any other witness? And if it does differ, how does it differ?

These are some of the things you should be thinking about while you're listening to each witness over the course of the trial.

Also, ladies and gentlemen, I want to talk to you briefly about expert witnesses.

When knowledge of a technical subject may be helpful to you, the jury, a person who has special training and experience in that particular field -- we call them an expert witness -- is permitted to testify to you about his or her opinions on those technical matters.

However, you're not required to accept an expert's or any witness's opinions at all. It's up to you to decide whether you believe what an expert witness has told you and whether that in any matter is correct or incorrect or whether you want to believe it or not believe it.

Now, I anticipate that there will be expert witnesses testifying in support of both sides of this case. But when they do, it will be up to you to listen to their qualifications. And when they give you an opinion and explain the basis for that opinion, you will have to evaluate what they say

and whether you believe it and whether you want to give it any weight or credibility. And if you do, what degree and weight of credibility do you want to give it.

Remember, ladies and gentlemen, judging and evaluating the credibility and believability of each and every witness is a very important part of your job as jurors.

Now, during the course of the trial, it's possible that there will be testimony from one or more witnesses that are going to be presented to you through what we call a deposition.

In trials like this, it's difficult to get every witness here in person in the courtroom at the same time. So the lawyers for both sides prior to the trial take the depositions of all the witnesses.

In a deposition, the witness is present, they are sworn and placed under oath, a court reporter is present just as if this was in open court, and then the parties through their counsel ask the witness questions, and the questions are answered by the witness under oath, and it is all recorded and taken down. Sometimes it's taken down only in writing, sometimes it is taken down in writing and recorded by video camera, but in any event, it is always recorded.

Now it's important, ladies and gentlemen of the jury, to understand that these depositions may last up to seven hours, and so there's seven hours of questions and answers that are asked of a person.

When it comes time for the trial, that person can't be here in person so their testimony is presented by way of deposition.  But let's say, for example, only 30 minutes of those sever hours is determined by the lawyers to be relevant and important to show to the jury.  Well, you will not have to listen to seven hours of testimony to get 30 minutes of testimony.  That seven hours will be cut and spliced and reconnected.  If it's videotape, it will be spliced and put back together, and

you will see and have played to you just that 30 minutes.  But it may come from different parts of that overall seven-hour deposition.

So while you're watching a deposition witness who's being presented by video, you may see little glitches or skips or you may hear differences in tone or voice or anything like that.   Just know that's an unavoidable part of pulling that 30 minutes out of that seven hours and putting it together for you.  And hearing a few glitches and seeing a few irregularities is a whole lot better than having to listen to seven hours just to get 30 minutes worth of testimony.

So when that happens, don't pay attention and don't get focused on and don't get distracted by those glitches or irregularities or difference voices.  Focus on the questions asked and the answers given under oath.  But that's what I wanted to explain to you so you would understand if you see it that way.

This deposition testimony under the law is entitled to the same consideration and insofar as is possible should be judged by you as to its weight and credibility and otherwise considered just as if the witness had been personally present in the courtroom and given their testimony from the witness stand.

Also, ladies and gentlemen, over the course of this trial, it's possible that you're going to be shown certain documents as exhibits, and in some of those exhibits there may be what we call redactions. Some portion of the language in that document may be blacked out so that you can't read it. That -- if that is the case, you need to understand that those redactions have been ordered by the Court, and you're not to focus on what's not there; you are to focus on what is there.

Pay attention to what you can read and what's legible and understandable from the document shown to you. Don't try to guess what's blacked out and redacted and you can't see.

_____
13
PROPOSED JURY INSTRUCTIONS

Focus on what you can see and ignore the redactions. But understand if they are there, they're only there because the Court found that they were proper and necessary and ordered them to be put in place.

Before today, many, many hours were spent working with the Court and the parties through their counsel to streamline what's going to be presented to you over the course of this trial. And one of the things that's been streamlined is the issue of exhibits.

There have been many exhibits that have been presented to the Court by the parties. Some of them have been objected to by the Plaintiff against an exhibit proposed by the Defendant or by the Defendants, they've objected to an exhibit that would be proposed by the Plaintiff. All those objections and all those disputes regarding the exhibits have already been heard by the Court. The Court's already ruled on them.

So if something wasn't objected to, then it's certainly available to be shown to you as an exhibit during the trial. If it was objected to and the Court, hearing the arguments and examining the document, determined that it was properly admissible under the rules of evidence, then I have admitted it as an exhibit and it, too, will be available to be shown to you over the course of the trial.

If it was presented and objected to and I found the objections to be valid, then I have sustained those objections and that document is not an exhibit in the case and you won't see it and it won't be presented to you. And the process of many hours going through many, many documents has already taken place between the lawyers and the Court, and you don't have to sit here during this trial and hear all that presented and let me make a ruling right then and there. I've already done it.

PROPOSED JURY INSTRUCTIONS

So when a document is shown to you as an exhibit, understand the Court's already reviewed it and judged that it is admissible or there was no objection to it in the first place. And this process of what we call pre-admitting the exhibits and taking up all those disputes long before today has saved you many, many hours of having to sit there in the jury box and watch us go through that now as opposed to having done it earlier.

But even though that's the case and even though that's been done, it is still possible that objections may arise over the course of the trial. If I should sustain an objection to a question addressed to a witness, then you must disregard the question entirely and you may draw no inference from its wording or speculate about what the witness would have said if the Court had allowed them to answer the question.

The law of the United States permits a district judge to comment to the jury on the evidence in the case, but such comments from the judge on the evidence are only an expression of the judge's opinion and the jury is free to disregard those comments entirely because, as I've told you, you, the jury, are the sole judges of the facts, you are the sole judges of the credibility and believability of the witnesses and how much weight, if any, to give to all the testimony and evidence.

Therefore, even though the law may permit me to comment to you on the evidence, I am going to do my very best not to comment on the evidence, not to let you know what I think about the evidence, because, again, determining the facts of this case from the evidence is your job as the jury.  It is not my job in this trial as the judge.

Now, Mr. McRoberts, who's sitting in front of me, is our court reporter, and his job is to take down everything that's said in the courtroom over the course of the trial. But the transcript, the written version of what was said, the questions that were asked, the answers that were given,

that's not going to be prepared and available for you to consider when you retire at the end of the evidence to deliberate on your verdict. That means, ladies and gentlemen, that you're going to have to rely on your memory of the testimony and the evidence that's been presented over the course of this trial.

And you are entitled to take notes during the course of the trial about the evidence, if you choose to do so. If you do, those notes are for your own personal use. But even if you take notes, you're still required to rely upon your own memory of the evidence. And if you take notes, those notes are meant just to reflect and refresh your recollection about the testimony that was given and your memory of the testimony and evidence that was given. You should not abandon your own recollection of the evidence because some other juror's notes might indicate something differently.

Again, if you take notes, your notes are solely to refresh your recollection of the evidence and that's the only reason you should be keeping them, if you decide to take them. That's up to you.

Now, at this time I'm going ask our Court Security Officer to distribute juror notebooks to each member of the jury.

In these notebooks, ladies and gentleman, if you'll look at them with me briefly, you're going to see that in the front, you each have a copy of each of the two asserted patents, the Patents-in-Suit that we've talked about and that are at issue in this case.

Then behind these patents, you are going to find a section of tabbed witness pages. For any witness that might testify in this case, either live or by deposition, there should be a page in there for each witness.  And at the top of each page there should be a head-and-shoulders photograph of

the witness and their name, and then below there should be ruled lines if you want to take notes there.

The Court's found that it's been very helpful to juries in the past to be able to look back and see a picture of the person that testified when you're trying to recall all the evidence during your deliberations.  So that's why those witness pages are there.  And there should be tabs on each page because there are quite a few witnesses that may be called and that will make it easier for you to find the particular page that relates to that witness.

And then behind these witness pages, you should find a new legal pad that's been hole-punched so that it will fit in these notebooks, and there should be a pen in these notebooks for you to use should you decide to take notes you can take notes anywhere in that notebook you want  to – on the legal pad, on the witness pages, anywhere you want to take notes.  It's up to you, if you decide to, to take those notes.

But, again, if you take notes over the course of the trial about the testimony and the evidence, you still have to rely on your recollection of the evidence, and those notes are there simply to refresh your recollection about the testimony and the evidence that you've heard.

Now, in a moment we're going to get on to opening statements from the attorneys in the case. These opening statements are designed to give you, the jury, a road map of what each side thinks and expects the evidence will show you in this case.

And you should remember, ladies and gentlemen, as I've already mentioned, what the lawyers tell you in this case is not evidence.  The evidence is the sworn testimony that you'll hear from the witnesses from the witness stand, subject to cross-examination, and the exhibits which the Court has determined are properly admissible.

PROPOSED JURY INSTRUCTIONS

The sworn testimony of the witnesses and the admitted exhibits, those are all the evidence in this case. What the lawyers tell you is not evidence.

Now the lawyers have a duty to try and point out to you what they believe the evidence is. But, remember, what they tell you is not evidence. The sworn testimony and the exhibits are the evidence.

Now, after each side through its counsel presents these opening statements to you, then we will move on to the actual evidence in the case, and at that time the Plaintiff will call its witnesses. The Plaintiff will call its witnesses, they'll testify, the Defense lawyers will cross-examine their witnesses. Then the next Plaintiff's witness will be called, they will testify, and they'll be cross-examined by the Defense lawyers, and we'll go through each of the Plaintiff's witnesses.

And when all the witnesses that the Plaintiff calls have been -- have testified and they've been cross-examined, then the Plaintiff will rest what's called the Plaintiff's chase in chief. It will rest its case in chief. When the Plaintiff rests its case in chief, then we'll switch to the other side, and we'll proceed with the Defendants' case in chief, which means the Defendants will then call their witnesses and the Defendants' witnesses will testify and they'll be cross-examined by the Plaintiff's counsel.  And we'll go through each of the Defendants' witnesses until we've heard all of the Defendants' witnesses, at which point the Defendants will rest the Defendants' case in chief.

Now, at that point, the Plaintiffs have an option to call, if they choose to, but they're not required to, what are called rebuttal witnesses to rebut anything the Defendants have put on in the Defendants' case in chief. If the Plaintiff elects to call rebuttal witnesses, then they'll testify and they'll be subject to cross examination by the Defense lawyers.

And when all these rebuttal witnesses, however many there are, have been presented, then the Plaintiff will rest its rebuttal case.

At the end of the Plaintiff's case in chief and the Defendants' case in chief, if there is no rebuttal witnesses, then that will complete all the evidence. If there are rebuttal witnesses, then at the end of the Plaintiff's rebuttal case, that will complete all the evidence.

And once all the evidence has been presented, that at that point the Court will give you its final instructions on the law. This is often called the Court's charge to the jury. And after I've given you my final instructions on the law that you're to follow in reaching your verdict, then the parties through their attorneys will present to you their closing arguments. The Plaintiff will present its closing arguments and then the Defendants will present their closing arguments.

After you've heard the closing arguments from both sides, then I will instruct you to retire to the jury room and to deliberate on your verdict. That's when I will say, "Ladies and Gentlemen of the jury, you may now retire to the jury room to deliberate on your verdict." And I will send a document back with you at that point, a printed document, that will have various questions in it that you are to answer. That document is called the verdict form. And your unanimous answers to each of those questions will constitute the jury's verdict in this case.

And after you've reached a unanimous verdict, you will inform the Court security officer that you've reached a verdict, I will bring you back in the courtroom, I will receive your verdict and review it, and if I find it to be proper, everything's been done as the way I've instructed you to do it, then the Court will accept your verdict. And once I've accepted the verdict, the trial is over and I will release you and dismiss you as jurors. So that's the overview of the steps we'll take and the structure of the trial.

---

Let me do this because it's so important. I want to remind you, throughout this trial you are not to discuss or communicate with anyone about this case, including the eight of you, and only when you are in the jury room after you've heard all the evidence and you've heard my final charge to the jury and you've heard closing arguments of the lawyers and I've instructed you to deliberate on your verdict, only then you are at that point required to discuss all the evidence you heard in coming to a unanimous decision as to how to answer those questions in the verdict form. But until that point, you must not discuss this case or anything about it among the eight of yourselves or with anybody else.

And I'll touch on this very briefly just one more time. Over the course of this coming week, if you see these folks, the lawyers, the witnesses, the support team, and they are not friendly and they don't speak to you, just understand they're doing what I've told them to do. Don't take that as being rude or unfriendly. Don't try to start a conversation with them because they're not going to talk with you.

Again, the only information that you should have and what you must be limited to in answering the questions in the verdict form is the sworn testimony of the witnesses and the exhibits admitted into evidence by the Court. So with that, ladies and gentlemen, at this point we're going to proceed to hear opening statements from the parties. We will begin with the Plaintiff's opening statement, and then we'll hear the Defendants' opening statement.